# EXHIBIT 8

PTO/SB/05 (04-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 C.F.R. 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | R Malhotra 7 (LCNT/126709) |
| First Inventor | Richa Malhotra |
| Title | METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK |
| Express Mail Label No. | EV566249619US |

## APPLICATION ELEMENTS
*See MEPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:** Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

1. ☒ Fee Transmittal Form (e.g., PTO/SB/17)
(Submit an original and a duplicate for fee processing)

2. ☐ Applicant claims small entity status.
See 37 CFR 1.27.

3. ☒ Specification                [Total Pages  14  ]
(preferred arrangement set forth below)
- Descriptive title of the Invention
- Cross Reference to Related Applications
- Statement Regarding Fed sponsored R & D
- Reference to sequence listing, a table, or a computer program listing appendix
- Background of the Invention
- Brief Summary of the Invention
- Brief Description of the Drawings ( if filed)
- Detailed Description
- Claim(s)
- Abstract of the Disclosure

4. ☒ Formal Drawing(s) (35 U.S.C. 113) [Total Sheets  4  ]

5. Oath or Declaration               [Total Sheets  2  ]
    a. ☒ Newly executed (original or copy)
    b. ☐ Copy from a prior application (37 CFR 1.63 (d))
        (for a continuation/divisional with Box 18 completed)
        i. ☐ DELETION OF INVENTOR(S)
        Signed statement attached deleting inventor(s) named in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).

6. ☐ Application Data Sheet. See 37 CFR 1.76

7. ☐ CD-ROM or CD-R in duplicate, large table or Computer Program (Appendix)

8. Nucleotide and/or Amino Acid Sequence Submission (if applicable, all necessary)
    a. ☐ Computer Readable Form (CRF)
    b. Specification Sequence Listing in:
        i. ☐ CD-ROM or CD-R (2 copies); or
        ii. ☐ Paper
    c. ☐ Statements verifying identity of above copies

### ACCOMPANYING APPLICATIONS PARTS

9. ☒ Assignment Papers (cover sheet & document)
10. ☐ 37 C.F.R. 3.73(b) Statement    ☒ Power of (when there is an assignee)    Attorney
11. ☐ English Translation Document (if applicable)
12. ☐ Information Disclosure Statement (IDS)/PTO-1449    ☐ Copies of IDS Citations
13. ☐ Preliminary Amendment
14. ☒ Return Receipt Postcard (MPEP 503) (Should be specifically itemized)
15. ☐ Certified Copy of Priority Document(s) (if foreign priority is claimed)
16. ☐ Nonpublication Request under 35 U.S.C. 122 (b)(2)(B)(i). Applicant must attach form PTO/SB/35 or its equivalent.
17. ☐ Other:

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:
☐ Continuation    ☐ Divisional    ☐ Continuation-in-part (CIP)    of prior application No: _____ / _____
Prior application information:    Examiner _____    Art Unit: _____
For CONTINUATION or DIVISIONAL APPS only: The entire disclosure of the prior application, from which an oath or declaration is supplied under Box 5b, is considered a part of the disclosure of the accompanying or divisional application and is hereby incorporated by reference. The incorporation can only be relied upon when a portion has been inadvertently omitted from the submitted application parts.

## 19. CORRESPONDENCE ADDRESS

☒ Customer Number    **46,363**    OR ☐ Correspondence address below

| | | | | | |
|---|---|---|---|---|---|
| Name | | | | | |
| Address | | | | | |
| City | | State | | Zip Code | |
| Country | | Telephone | 732-530-9404 | Fax | 732-530-9808 |

| | | |
|---|---|---|
| Name (Print/Type) | Eamon J. Wall | Registration No. (Attorney/Agent)  39,414 |
| Signature | *EM Wall* | Date  3/23/05 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

348453-1

PTO/SB/17 (12-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| *Effective on 12/08/2004.*<br>*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).* | Complete if Known | |
|---|---|---|
| **FEE TRANSMITTAL**<br>**for FY 2005** | Application Number | Unknown |
| | Filing Date | Herewith |
| | First Named Inventor | Malhotra |
| ☐ Applicant claims small entity status. See 37 CFR 1.27 | Examiner Name | Unknown |
| | Art Unit | Unknown |
| TOTAL AMOUNT OF PAYMENT   ($) **1,040** | Attorney Docket No. | R Malhotra 7 (LCNT/126709) |

## METHOD OF PAYMENT (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify) : _____

☒ Deposit Account   Deposit Account Number: 20-0782   Deposit Account Name: MOSER, PATTERSON & SHERIDAN, LLP

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☒ Charge fee(s) indicated below                    ☐ Charge fee(s) indicated below, **except for the filing fee**

☒ Charge any additional fee(s) or underpayments of fee(s)   ☒ Credit any overpayments
   Under 37 CFR 1.16 and 1.17

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | |
|---|---|---|---|---|---|---|---|
| **Application Type** | Fee ($) | Small Entity Fee($) | Fee($) | Small Entity Fee($) | Fee($) | Small Entity Fee($) | Fees Paid ($) |
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | 1,000 |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | _____ |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | _____ |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | _____ |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| **Fee Description** | | |
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | Extra Claims | Fee($) | | Fee Paid ($) | Multiple Dependent Claims | |
|---|---|---|---|---|---|---|
| 19 | -20 or HP= 0 | x 50 | = 0 | | Fee ($) | Fee Paid ($) |
| HP = highest number of total claims paid for, if greater than 20. | | | | | 360 | 0 |

| Indep. Claims | Extra Claims | Fee($) | | Fee Paid ($) |
|---|---|---|---|---|
| 3 | - 3 or HP= 0 | x 200 | = 0 | |
| HP = highest number of independent claims paid for, if greater than 3. | | | | |

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | | Fee ($) | | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 14 | - 100 = 0 / 50= | 0  (round **up** to a whole number) | x | 250 | = | 0 |

### 4. OTHER FEE(S)

| | Fees Paid ($) |
|---|---|
| Non-English Specification, $130 fee (no small entity discount) | |
| Other (e.g., late filing surcharge) : Assignment recordation | 40 |

## SUBMITTED BY

| Signature | *E.J. Wall* | Registration No.<br>(Attorney/Agent) | 39,414 | Telephone | 732-530-9404 |
|---|---|---|---|---|---|
| Name (Print/Type) | EAMON J. WALL | | | Date | 3/25/05 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing this form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

348467-1

PTO/SB/05 (04-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 C.F.R. 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | R Malhotra 7 (LCNT/126709) |
| First Inventor | Richa Malhotra |
| Title | METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK |
| Express Mail Label No. | EV566249619US |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:** Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

1. ☒ Fee Transmittal Form (e.g., PTO/SB/17)
   *(Submit an original and a duplicate for fee processing)*
2. ☐ Applicant claims small entity status.
   See 37 CFR 1.27.
3. ☒ Specification          [Total Pages  14  ]
   *(preferred arrangement set forth below)*
   - Descriptive title of the Invention
   - Cross Reference to Related Applications
   - Statement Regarding Fed sponsored R & D
   - Reference to sequence listing, a table,
     or a computer program listing appendix
   - Background of the Invention
   - Brief Summary of the Invention
   - Brief Description of the Drawings ( if filed)
   - Detailed Description
   - Claim(s)
   - Abstract of the Disclosure

4. ☒ Formal Drawing(s) (35 U.S.C.113) [Total Sheets  4  ]
5. Oath or Declaration          [Total Sheets  2  ]
   a. ☒ Newly executed (original or copy)
   b. ☐ Copy from a prior application (37 CFR 1.63 (d))
      *(for a continuation/divisional with Box 18 completed)*
      i. ☐ DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s)
         named in the prior application, see 37 CFR
         1.63(d)(2) and 1.33(b).
6. ☐ Application Data Sheet. See 37 CFR 1.76

7. ☐ CD-ROM or CD-R in duplicate, large table or
   Computer Program (Appendix)
8. Nucleotide and/or Amino Acid Sequence Submission
   *(if applicable, all necessary)*
   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

### ACCOMPANYING APPLICATIONS PARTS

9. ☒ Assignment Papers (cover sheet & document(s))
10. ☐ 37 C.F.R. 3.73(b) Statement    ☒ Power of
    *(when there is an assignee)*       Attorney
11. ☐ English Translation Document (if applicable)
12. ☐ Information Disclosure    ☐ Copies of IDS
    Statement (IDS)/PTO-1449         Citations
13. ☐ Preliminary Amendment
14. ☒ Return Receipt Postcard (MEEP 503)
    *(Should be specifically itemized)*
15. ☐ Certified Copy of Priority Document(s)
    *(if foreign priority is claimed)*
16. ☐ Nonpublication Request under 35 U.S.C. 122
    (b)(2)(B)(i). Applicant must attach form PTO/SB/35
    or its equivalent.
17. ☐ Other:

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:
☐ Continuation    ☐ Divisional    ☐ Continuation-in-part (CIP)    of prior application No: _____ / _____
*Prior application information:*    Examiner _____    Art Unit: _____

For CONTINUATION or DIVISIONAL APPS only: The entire disclosure of the prior application, from which an oath or declaration is supplied under Box 5b, is considered a part of the disclosure of the accompanying or divisional application and is hereby incorporated by reference. The incorporation can only be relied upon when a portion has been inadvertently omitted from the submitted application parts.

## 19. CORRESPONDENCE ADDRESS

☒ Customer Number   **46,363**    OR ☐ Correspondence address below

| | |
|---|---|
| Name | |
| Address | |
| City | |
| Country | |

| State | | Zip Code | |
|---|---|---|---|
| Telephone | 732-530-9404 | Fax | 732-530-9808 |

| Name (Print/Type) | Eamon J. Wall | Registration No. (Attorney/Agent) | 39,414 |
|---|---|---|---|
| Signature | *E M Wall* | Date | 3/23/05 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

348453-1

PTO/SB/17 (12-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

*Effective on 12/08/2004.*
*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).*

# FEE TRANSMITTAL
# for FY 2005

☐ Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) | **1,040** |
|---|---|---|

| Complete if Known | |
|---|---|
| Application Number | Unknown |
| Filing Date | Herewith |
| First Named Inventor | Malhotra |
| Examiner Name | Unknown |
| Art Unit | Unknown |
| Attorney Docket No. | R Malhotra 7 (LCNT/126709) |

## METHOD OF PAYMENT (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify) : _____

☒ Deposit Account   Deposit Account Number: 20-0782   Deposit Account Name: MOSER, PATTERSON & SHERIDAN, LLP

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☒ Charge fee(s) indicated below                    ☐ Charge fee(s) indicated below, **except for the filing fee**

☒ Charge any additional fee(s) or underpayments of fee(s)    ☒ Credit any overpayments
Under 37 CFR 1.16 and 1.17

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | |
|---|---|---|---|---|---|---|---|
| | | Small Entity | | Small Entity | | Small Entity | |
| Application Type | Fee ($) | Fee($) | Fee($) | Fee($) | Fee($) | Fee($) | Fees Paid ($) |
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | 1,000 |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | _____ |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | _____ |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | _____ |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| | | Small Entity |
|---|---|---|
| **Fee Description** | Fee ($) | Fee ($) |
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | Extra Claims | Fee($) | | Fee Paid ($) | | Multiple Dependent Claims | |
|---|---|---|---|---|---|---|---|
| 19 | -20 or HP= 0 | x 50 | = 0 | | | Fee ($) | Fee Paid ($) |
| | | | | | | 360 | 0 |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee($) | Fee Paid ($) |
|---|---|---|---|
| 3 | - 3 or HP= 0 | x 200 | = 0 |

HP = highest number of independent claims paid for, if greater than 3.

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| 14 | - 100 = 0 / 50= | 0 (round **up** to a whole number) x | 250 | = 0 |

### 4. OTHER FEE(S)

| | Fees Paid ($) |
|---|---|
| Non-English Specification, $130 fee (no small entity discount) | |
| Other (e.g., late filing surcharge) : Assignment recordation | 40 |

## SUBMITTED BY

| Signature | *E J Wall* | Registration No. (Attorney/Agent) | 39,414 | Telephone | 732-530-9404 |
|---|---|---|---|---|---|
| Name (Print/Type) | EAMON J. WALL | | | Date | 3/2 5/05 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing this form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

348467-1

R. Malhotra 7

## METHOD AND APPARATUS FOR FLOW CONTROL OF DATA
## IN A NETWORK

### FIELD OF THE INVENTION

5          The present invention relates to computer networks such as LANs
(local area networks), and more particularly to an intelligent method for
reducing network congestion via using messages propagated upstream from
congestion related nodes.

10    **DESCRIPTION OF THE BACKGROUND ART**

         In networks, data is typically exchanged between communicating
devices in the form of "frames."  Frames include a source MAC address and a
destination MAC address.  A MAC address uniquely identifies a network
device in a "Layer 2" communication protocol used in Ethernet and Token

15    Ring LANs.  A routing device (i.e., switch, bridge, or the like) connected
between communicating devices uses the destination MAC address in an
incoming frame generated by a source device and forwards the frame to the
appropriate destination device.

         Flow control of such frame-based data in a network using Ethernet

20    protocol is achieved by either dropping packets or with a congestion
avoidance mechanism such as back-pressure or pause.  Either of these
mechanisms is executed in a hop-by-hop method.  A node in the network
experiencing the congestion condition reacts in a manner such that a node
that is upstream of the congested node receives a back-pressure or pause

25    message that stops all transmission towards such congested node.
Unfortunately, this type of messaging can propagate further in the network.
That is, a distinction cannot be made among the different data flows between
various nodes as to which flow is the cause of the congestion.  Additionally,
the back-pressure method may also propagate in such a way as to throttle

30    traffic which might not be passing the congested node.  Accordingly, Ethernet
is inherently incapable of differentiating between problematic and acceptable
traffic flows or streams in a network.  In other words, Ethernet has no
selective flow mechanism or capabilities.

348395-1
                                    1

R. Malhotra 7

This condition is further aggravated when Ethernet bridges are used to connect nodes (via pathways) because Ethernet bridges learn every MAC address that is passing therethrough.  The Ethernet bridge is not capable of determining whether such MAC address resides one hop away or several

5   hops away in another portion of the network either of which may or may not be contributing to part of the congestion pathways

## SUMMARY OF THE INVENTION

10   These and other deficiencies of the prior art are addressed by the present invention of a method of controlling data flow in a network.  The method includes the steps of detecting a congestion condition in the network, sending a congestion message to one or more nodes upstream of the congestion condition, learning address information of one or more nodes

15   pertaining to the congestion condition, broadcasting or advertising to other nodes the learned information such as  MAC addresses pertaining to the congestion condition and controlling a flow of data based on the learned address information.  The learning and advertising method helps distinguish problematic congestion causing flows from the non-congestion causing flows,

20   thus leading to intelligent differentiation in flow control.

In one embodiment of the invention, the learned address information is the MAC address of a destination node to which the data is flowing towards. In another embodiment, the learned address information is the MAC address of a source node generating the data flow.  In another embodiment, the

25   learned address information is a MAC address pair of the nodes between which the data is flowing.  The method may be practiced in for example a computer readable medium containing a program which, when executed, performs an operation of controlling data flow in the prescribed manner.  As a result, data flows causing congestion are differentiated from data flows that

30   are not causing congestion allowing improved performance of Ethernet-based networks.

## BRIEF DESCRIPTION OF THE DRAWINGS

348395-1

2

R. Malhotra 7

The teachings of the present invention can be readily understood by considering the following detailed description in conjunction with the accompanying drawings, in which:

FIG. 1 depicts an exemplary network operating in accordance with the

5  method of the subject invention;

FIG. 2 depicts a logical topology of the exemplary network of FIG. 1; and

FIG. 3 depicts a flow chart for managing data flow in accordance with the subject invention; and

10  FIG. 4 depicts an apparatus operating in accordance with the subject invention.

To facilitate understanding, identical reference numerals have been used, where possible, to designate identical elements that are common to the figures.

15

**DETAILED DESCRIPTION**

The invention will be described within the context of improving data flow in Ethernet based networks and, more specifically, to Ethernet based networks having the particular ability to manage flow control based on the

20  differentiation of data flows by virtue of their MAC addresses.  It will be appreciated by those skilled in the art that the invention is applicable to other network topologies and data flow methodologies where the management if distinct data flows is desirable.

Generally speaking, a method according to one embodiment of the

25  invention for controlling data flow in a network includes detecting a congestion condition in the network, sending a congestion message to one or more nodes upstream of the congestion condition, learning address information of one or more end nodes or stations pertaining to the congestion condition sending another congestion message containing these learned MAC

30  addresses and ( the nodes receiving this congestion message with the MAC addresses)controlling a flow of data  of the learned address information is the congestion message.  The learned address information is the MAC address of a destination node to which the data is flowing towards or is a MAC address pair of the nodes between which the data is flowing.

348395-1

3

**R. Malhotra 7**

      FIG. 1 shows an example of a typical network configuration 100. Network devices 106 are connected by physical medium (represented as a plurality of links $104_N$) such as personal computers, servers, terminals for data entry and display, printers and the like, to a plurality of nodes $102_N$. The

5    nodes $102_N$ represent specific network devices such as bridges, switches, routers, and hubs/repeaters (not shown). Data generated by end users of the network devices 106 travels across the network 100 to other end users via the physical medium and the nodes, which perform the processing necessary to ensure the data arrives in a usable condition to the proper recipient. For

10   example, information passing from a first network device $106_1$ connected to a second node $102_2$ passes information to a second network device $106_2$ which is connected to a fourth node $102_4$. Interconnection between first node $102_2$ and fourth node $102_4$ is accomplished, for example and in one potential pathway, through a third node $102_3$ and interconnecting links $104_{2-3}$ and

15   $104_{3-4}$.

      In general, bridges and switches (at any one or all of the network nodes $102_n$) transfer data frames, by filtering, flooding or forwarding the data frames. Filtering refers to dropping or discarding a received data frame when processing the MAC addresses associated with such data frames according

20   to a set of rules. Flooding refers to forwarding a data frame to all ports of a network device having a given destination address, when the address has not been previously learned (and thus unrecognized). Forwarding refers to sending an incoming data frame having a learned MAC address to the corresponding known port or ports of the next (or formal destination) node.

25      As noted above, MAC addresses uniquely identify a network device in a Layer 2 communication protocol. The Layer 2 protocol may be viewed as occupying a level in a "protocol stack" of established, commonly-used communication standards, beginning with a Layer 1, representing the physical medium used to transfer data, followed by Layer 2, then by a Layer 3 and 4

30   and so on. Generally speaking, the layers above Layer 2 handle exchanges between network entities where the exchanges require more processing than at the lower levels.

      As is known and understood, Ethernet bridges cannot operate within loop environments (such as the network 100 as shown in FIG. 1). Therefore,

348395-1

4

a spanning tree protocol (well known in the art and disclosed in the Ethernet Protocol Communications Standard 802.1D) is used to create a representative environment that is free of loops.  Such a representative environment is shown in FIG. 2 as topology 200.  Specifically, the plurality of
5       nodes $102_N$ are linearly connected with the distinction of a break 108 (see FIG. 1) in network 100 being created to establish the new topology.  In such a new topology, interconnecting links $104_N$ continue to connect the plurality of nodes $102_N$ with the exception of the link $104_{5-1}$ that would otherwise join a fifth node $102_5$ and the first node $102_1$.  Network devices 106 are further
10     represented as stations.  In this particular example, and for sake of clarity, two such network devices or stations 106 are represented by call letters at each of the plurality of nodes $102_N$.  Specifically, first node $102_1$ is connected to stations A and B.  Second node $102_2$ is connected to stations C and D. Third node $102_3$ is connected to stations E and F.  Fourth node $102_4$ is
15     connected to stations G and H.  Fifth node $102_5$ is connected to stations I and J.

In a representative example, consider that data traffic is moving from one station to another station and sharing the nodes and interconnecting links with other data traffic moving to other stations along the same nodes and
20     links.  Exemplary traffic rates are for example:

Traffic AG = 50 Mbps
Traffic BC = 50 Mbps
Traffic CG = 40 Mbps
Traffic DE = 10 Mbps
25     Traffic FG = 30 Mbps

If each of the links $104_N$ has a link capacity of 100 Mbps, then it is realized that third link $104_{3-4}$ is congested as the total traffic attempting to travel over this link is 100 Mbps with the final destination being the network device 106 located at station G.  In other words, and with specific reference to the
30     presented example, it is observed that traffic moving from station A to station G does so at a rate of 50 Mbps.  Traffic moving from station C to station G travels at a rate of 40 Mbps, and traffic moving from station F to station G travels at a rate of 30 Mbps for a total of 120 Mbps which is in excess of the link capacity of third link $104_{3-4}$.

348395-1

R. Malhotra 7

   In accordance with an embodiment of the invention, the third node $102_3$ will detect this congestion condition and will have to limit or otherwise control the amount of data traveling over the third link $104_{3-4}$.  That is, the third node $102_3$ (or other similar node detecting a congestion condition) will

5   send a congestion message upstream (back towards nodes from which data is being sent).  Based on information contained within the congestion message sent upstream, the upstream nodes can control future downstream traffic that is causing the congestion rather than the node detecting the congestion dropping packets from traffic flows coming into the node, which

10   disrupts all communication.

   One option for the congested node is to drop excess packets for the complete aggregate leading to unfair division in bandwidth. It is known for the Ethernet that in this case stations/nodes closest to the congested node will grab most of the capacity. Other congestion control schemes such as back-

15   pressure/pause frames will again act on the aggregate and propagate further into the network. This will end up disrupting traffic for flows which are not causing congestion, for example traffic from BtoC and traffic from DtoE. According to the invention, the congestion message will be received by nodes $102_1$ and $102_2$ . $102_2$ will control its traffic to G and $102_1$ its traffic from A to G,

20   but not from B to C. Thus with the help of the message an intelligent distinction can be made and unnecessary penalizing of traffic from BtoC can be avoided.  This also leads to better utilization of network resources.

   Specifically, a method of performing congestion control in a network is depicted in FIG. 3 as a series of method steps 300.  The method

25   starts at step 302 and proceeds to step 304 where upon detection of a congestion condition at a particular node, said particular node creates a congestion message.

   Referring to box 303, the congestion condition may be determined by noting a queue maximum occupancy being exceeding, by noting that

30   monitored input data to the node exceeds the output link capability of the node, by noting that a queue data drop rate exceeds a threshold level in terms of an amount of data dropped, an amount of data dropped over time, a number of data drops over time or some other congestion indicative condition.

348395-1

6

Referring to box 305, a congestion message may include any of the MAC address of the congestion detection node, the MAC address(es) of nodes beyond (i.e., downstream from) the congestion node, information useful in affecting a congestions reduction (e.g., alternate paths, nodes and
5    the like).  Additionally, types of traffic flows may be indicated such that prioritization of rerouted flows may be provided.

In one embodiment of the invention the a congestion message comprises a header portion and a payload portion,  The payload portion comprises a destination MAC addresses or pair of MAC addresses (e.g., a
10   source/destination pair).  The header portion comprises a type of message indicator (i.e., congestion message type), such that a receiving node may properly process the congestion indication information within the payload portion.  The header or payload may optionally include information indicative of an appropriate means for resolving the congestion.  Once the congestion
15   message is created, the node detecting the congestion condition sends the congestion message to one or more upstream nodes at step 306.

At step 308, one or more upstream nodes receives the congestion condition message and learns information about the congestion.  Referring to box 307, the learning may comprise determining the destination address of
20   packets passing through the congestion indicating node, the Ethernet MAC learning process, the address(es) of nodes in a congestion queue and/or other learning techniques.  The upstream node receiving the congestion message then compares the addresses mentioned in the congestion message to those it has learnt on its ports. Alternatively more intelligent
25   schemes could be applied, for example keeping track of both source and destination pairs. If the addresses indicated in the congestion message are the same as some addresses learnt on its output ports or conforms to the traffic flows it sends towards the congested node, it can rate limit this flows.

In one embodiment the invention, the congestion indicative information
30   comprises the MAC address(es) which are creating the excessive data flow and, hence, the congestion condition.  In the particular example discussed above with respect to FIGS. 1-2, the congestion information comprises, illustratively, the MAC address for the network device 106 existing at station G.  In an alternate embodiment of the invention, the information may be the

348395-1

7

R. Malhotra 7

source and destination address pair causing the problem flow.  For example, and in the example discussed above, the source and destination address pair information for the network devices 106 contained at station pairs A,G and C,G.  Accordingly, when third node 1023 detects this congestion condition, it

5    will send the MAC address information for traffic from station A to station G and from station C to station G.

Once the congestion condition address information is learned, the method moves to step 310 where control of the downstream traffic causing the congestion condition occurs.  Specifically, the traffic flows indicated above

10   are controlled or otherwise limited because their specific address information (which was learned through the congestion message) is identified as the source of the congestion.  Traffic flows will be limited or otherwise controlled so the link capacity at third link $104_{3-4}$ is no longer exceeded.  The method ends at step 312.

15   Generally speaking, an upstream node receiving the message interprets it as a congestion message by, illustratively, a type identifier in a header or payload portion of a packet structure associated with the message. From the payload of the message, the upstream node learns the addresses/pairs of the MAC addresses causing the congestion situation.  The

20   upstream node then takes action to control/reduce the congestion (or communicates with a controlling entity such as a management software layer to take actions to control/reduce the congestion).

The controlling action comprises, illustratively, dropping all or some percentage of packets destined for the MAC addresses mentioned in the

25   congestion message (or the source destination pair).  The controlling action may also be modified according to a service level agreement (SLA) associated with the congested node(s).  For example, flow control may be implemented in a manner that favors certain flows such that the SLA associated with those favored flows is honored (e.g., not drop packets from

30   favored flows).  The preferential treatment of some flows may be indicated by, for example, notifying the congested node that the upstream node or controlling entity did act on its request.

In a first example, if the congestion message contains only a destination address (e.g., the address of a end-node/end-station G), then the

348395-1

8

R. Malhotra 7

upstream node or controlling entity may drop all or a certain percentage of packets destined for node G.

In a second example, if the congestion message contains an source/destination address pair (e.g., the address of nodes AB), then the
5   upstream node or controlling entity may drop all or a certain percentage of packets sourced from node A that are destined for node B.  If the source address is not known,  then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node B.

Figure 4 details the internal circuitry of exemplary hardware that is
10   used to execute the above-identified method 300 of FIG. 3 in the manner described to control the flow of data in a network in accordance with the subject invention.  The hardware 424 is contained within or is otherwise part of each of the devices making up the nodes 102n (switches, bridges, routers and the like) as a computer or other type of processing device inside network
15   100.  Specifically, the computing device 424 comprises at least one central processing unit (CPU) 430 connected to support circuits 434 and memory 436.  The CPU 430 may comprise one or more conventionally available microprocessors.  The support circuits 434 are well known circuits that comprise power supplies, clocks, input/output interface circuitry and the like.
20   These components execute the necessary processing to move data (according to network protocol and the flow control methods of the subject invention) between an input port 410 and output port 420 of the device 102n.

Memory 436 may comprise random access memory, read only memory, removable disk memory, flash memory, and various combinations of
25   these types of memory.  The memory 436 is sometimes referred to as main memory and may in part be used as cache memory or buffer memory.  The memory 436 stores various software packages (i.e., packages 432 and 438) that dictate the steps required to control data flow in accordance with method described above thus forming a special purpose machine for doing same
30   when running said software packages.  Alternately the software packages may be a corresponding ASIC.

Accordingly, a novel solution to network congestion is identified.  By advertising the MAC addresses of data flows that are in excess of network or link capacity and subsequently controlling said traffic from points that are

348395-1

9

**R. Malhotra 7**

upstream of the identified congestion points, Ethernet traffic is now improved. Specifically, Ethernet traffic is now capable of making a distinction between different data flows and managing them according to their MAC address. Since this messaging format runs within existing Ethernet protocol, there is no

5      additional hardware or complex messaging software that must be incorporated into an existing network to accomplish this type of traffic flow control.

Although various embodiments which incorporate the teachings of the present invention have been shown and described in detail herein, those

10     skilled in the art can readily devise many other varied embodiments that still incorporate these teachings.

348395-1

10

**R. Malhotra 7**

WHAT IS CLAIMED IS:

1.    Method for data flow control in a network, comprising:
        detecting a congestion condition in the network; and
5        sending a congestion message to one or more nodes upstream of the
congestion condition;
        said congestion message adapted to enable an upstream node to
learn address information of at least one node associated with the congestion
condition to enable thereby the control of data flows in a manner tending to
10    reduce the congestion condition.

2.    The method of claim 1, wherein:
        the congestion condition is determined when a queue maximum
occupancy is exceeded.

15
3.    The method of claim 1, wherein:
        the congestion condition is determined when data received by a node
exceeds an output link capability of the node.

20    4.    The method of claim 1, wherein:
        the congestion condition is determined when a queue data drop rate
exceeds a threshold level.

5.    The method of claim 4, wherein:
25        the threshold level is determined with respect to at least one of an
amount of data dropped, an amount of data dropped over time and a number
of data drops over time.

6.    The method of claim 1, wherein:
30        the congestion message comprises an indication that a congestion
condition exists.

7.    The method of claim 6, wherein:

348395-1                                        11

**R. Malhotra 7**

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.     The method of claim 6, wherein:

5          the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.     The method of claim 1, wherein:

          at least one node associated with the congestion condition comprises
10    one of an end-node and an end-stations.

10.    The method of claim 1, wherein the learned address information is the MAC address of a destination node.

15    11.    The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.    The method of claim 1, wherein the data flow is controlled by dropping
20    at least a portion of those packets associated with the destination node address.

13.    The method of claim 1, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination
25    node addresses.

14.    The method of claim 13, wherein:

          in response to the source address node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with
30    only the destination node address.

16.    The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said flow to be controlled.

348395-1                                    12

R. Malhotra 7

17.     The method of claim 16, further comprising:
receiving an indication of an inability to drop packets in accordance with the
Service Level Agreement.

5

18.     A computer readable medium containing a program which, when
executed, performs an operation of controlling data flow in a network
comprising:
        detecting a congestion condition in the network; and
        sending a congestion message to one or more nodes upstream of the
congestion condition;
        said congestion message adapted to enable an upstream node to
learn address information of at least one node associated with the congestion
condition to enable thereby the control of data flows in a manner tending to
reduce the congestion condition.

10

15

19.  Apparatus for controlling flow of data in a network comprising:
        means for detecting a congestion condition in the network; and
        means for sending a congestion message to one or more nodes
upstream of the congestion condition;
        said congestion message adapted to enable an upstream node to
learn address information of at least one node associated with the congestion
condition to enable thereby the control of data flows in a manner tending to
reduce the congestion condition.

20

25

348395-1

R. Malhotra 7

# METHOD AND APPARATUS FOR FLOW CONTROL OF DATA
# IN A NETWORK

## ABSTRACT

5

A method of controlling data flow in a network includes detecting a congestion condition in the network, sending a congestion message to one or more nodes upstream of the congestion condition, learning address information of one or more nodes pertaining to the congestion condition,

10  sending another congestion message containing these learned MAC addresses and, via the nodes receiving the congestion message with the MAC addresses, controlling a flow of data associated with the learned address information from the congestion message.  The learned address information may be the MAC address of a destination node to which the data

15  is flowing towards or a MAC address pair of the nodes between which the data is flowing.

348395-1

Malhotra 7
"Method and Apparatus for Flow Control of Data in a Network"

1/4



FIG. 1



FIG. 2

Malhotra 7
"Method and Apparatus for Flow Control of Data in a Network"



300

3/4

```
                          ( START )  ～ 302

         ┌────────────────────────────────────┐
         │ -QUEUE OCCUPANCY EXCEEDED           │
         │ -MONITORED INPUT DATA EXCEEDS       │
         │  OUTPUT LINK CAPACITY               │ ～ 303
         │ -QUEUE DATA DROPS EXCEED            │
         │  THRESHOLD LEVEL IN DATA AMOUNT     │
         │  OR DROPS OVER TIME                 │
         │ -OTHER                              │
         └────────────────────────────────────┘

              ┌──────────────────────────┐
              │ ON CONGESTION CONDITION,  │ ～ 304
              │ CREATE CONGESTION MESSAGE │
              └──────────────────────────┘

         ┌────────────────────────────────────┐
         │ -MAC ADDRESSES BEYOND CONGESTION    │
         │  NODE(S)                            │ ～ 305
         │ -CONGESTION NODE ADDRESS            │
         │ -SUGGESTED REMEDY                   │
         └────────────────────────────────────┘

              ┌──────────────────────────┐
              │ SEND CONGESTION MESSAGE TO │ ～ 306
              │ ONE OR MORE UPSTREAM NODES │
              └──────────────────────────┘

         ┌────────────────────────────────────┐
         │ -DESTINATION ADDRESS OF PACKETS     │
         │  PASSING THROUGH NODE               │
         │ -ETHERNET MAC LEARNING              │ ～ 307
         │ -ADDRESSES OF NODES IN CONGESTION   │
         │  QUEUE                              │
         │ -OTHER                              │
         └────────────────────────────────────┘

         ┌────────────────────────────────────┐
         │ UPSTREAM NODE(S) LEARN CONGESTION   │
         │ CONDITION ADDRESS INFORMATION FROM  │ ～ 308
         │ CONGESTION MESSAGE                  │
         └────────────────────────────────────┘

              ┌──────────────────────────┐
              │ CONTROL DOWNSTREAM TRAFFIC │
              │ CAUSING CONGESTION         │ ～ 310
              │ CONDITION BASED ON         │
              │ LEARNED INFORMATION        │
              └──────────────────────────┘

                         ( END )  ～ 312
```

FIG. 3

Malhotra 7
"Method and Apparatus for Flow Control of Data in a Network"

4/4



FIG. 4

R MALHOTRA 7

IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE

Declaration and Power of Attorney

As the below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and sole inventor (if a single name listed below) or an original, first and joint inventor (if plural names listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled **METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK** the specification of which

[ **X** ] is attached hereto

OR

[ ] was filed on _____ as application Serial No. _____.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to in this oath or declaration.

I acknowledge the duty to disclose all information known to me which is material to patentability as defined in Title 37, Code of Federal Regulations, 1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

None

I hereby claim the benefit under Title 35, United States Code, 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, 112, I acknowledge the duty to disclose all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application:

None

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

03/2004

2                                         R MALHOTRA 7

I hereby appoint Practitioners associated with Customer No.

## 46,363

as my Attorneys with full power of substitution and revocation, to prosecute said application, to make alterations and amendments therein, to receive the patent, and to transact all business in the Patent and Trademark Office connected therewith:

Telephone calls should be made to EAMON J. WALL at:

Phone No.:   732-530-9404

Fax No.:      732-530-9808

All written communications are to be addressed to:

**CUSTOMER #46,363**
**MOSER, PATTERSON & SHERIDAN, LLP/**
**LUCENT TECHNOLOGIES, INC.**
**595 Shrewsbury Avenue**
**Suite 100**
**Shrewsbury, New Jersey 07702**
**Attention: Eamon J. Wall**

I hereby authorize these Attorneys to insert in the above blanks the filing date and application serial no. when known.

Full name of 1st inventor:  **RICHA MALHOTRA**

Inventor's
signature _____   Date 23rd March 2005

Residence: **De Klomp 75-16 Twente, Enschede, Netherlands 7511DG**
Citizenship: **India**

Post Office Address:        **same as above**

348430-1

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective December 8, 2004

11088073

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 19 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 19 minus 20= * | 0 |
| INDEPENDENT CLAIMS | 3 minus 3 = * | 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2.

**SMALL ENTITY TYPE** ☐   OR   **OTHER THAN SMALL ENTITY**

| RATE | FEE | | RATE | FEE |
|---|---|---|---|---|
| BASIC FEE | 150.00 | OR | BASIC FEE | 300.00 |
| X$ 25= | | OR | X$50= | |
| X100= | | OR | X200= | |
| +180= | | OR | +360= | |
| TOTAL | | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|
| Total * | Minus ** | = |
| Independent * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 25= | | OR | X$50= | |
| X100= | | OR | X200= | |
| +180= | | OR | +360= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|
| Total * | Minus ** | = |
| Independent * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 25= | | OR | X$50= | |
| X100= | | OR | X200= | |
| +180= | | OR | +360= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|
| Total * | Minus ** | = |
| Independent * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 25= | | OR | X$50= | |
| X100= | | OR | X200= | |
| +180= | | OR | +360= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875   (Rev. 10/04)                    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

03/28/2005 RHEBRAHT 00000063 200782    11088073

01 FC:1011        300.00 DA
02 FC:1111        500.00 DA
03 FC:1311        200.00 DA

PTO-1556
   (5/87)

*U.S. Government Printing Office: 2002 — 489-267/69033

BEST AVAILABLE COPY

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 27686873 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:12 |
| L2 | 185 | L1 and (congest$3 same capacity same (queue buffer fifo) same drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:14 |
| L3 | 46 | L1 and (congest$3 same capacity same (queue buffer fifo) same drop$6 same exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 17:48 |
| L4 | 2 | L1 and (congest$3 same (drop$6 near rate) same exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:40 |
| L5 | 90 | L1 and (congest$3 same (drop$6 near rate)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:41 |
| L6 | 10 | L1 and (congest$3 same threshold same (drop$6 near rate)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:43 |

## EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| L7 | 0 | L1 and (source near2 unknown) with (destination near3 drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 17:50 |
| L8 | 0 | L1 and (source near2 unknown) same (destination near3 drop$6) with address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 17:52 |
| L9 | 8 | L1 and (source near2 unknown) same (destination with drop$6 with address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 17:54 |
| S1 | 8 | (Malhotra near2 Richa).in. and (Lucent Alcatel).as. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:13 |
| S2 | 4289 | 370/229,230,1,231.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:15 |
| S3 | 27688673 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:32 |
| S4 | 3805 | S2 and S3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 15:26 |

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S5 | 4 | S4 and (congest$3 same (upstream uplink)) and (SLA (service adj level adj agreement)) and (MAC near address) and drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:48 |
| S6 | 0 | S4 and (congest$3 same (upstream uplink) same (MAC near address)) and (SLA (service adj level adj agreement)) and drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:45 |
| S7 | 0 | S3 and (congest$3 same (upstream uplink) same (MAC near address)) and (SLA (service adj level adj agreement)) and drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 13:45 |
| S8 | 19 | S3 and (congest$3 same (upstream uplink)) and (SLA (service adj level adj agreement)) and (MAC near address) and drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:08 |
| S9 | 1 | S3 and (congest$3 same (upstream uplink) same (MAC near address) same drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:14 |
| S10 | 1 | S3 and (congest$3 same (upstream uplink) same (MAC near address)) and drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:16 |
| S11 | 162 | S4 and (congest$3 same (upstream uplink)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:16 |

# EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S12 | 31 | S4 and (((reduc$3 alleviat$3) near2 congest$3) same (upstream uplink)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:17 |
| S13 | 42 | S4 and (((detect$3 determin$6) near2 congest$3) same (upstream uplink)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:18 |
| S14 | 2 | S4 and (((detect$3 determin$6) near2 congest$3) same (upstream uplink) same MAC) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:21 |
| S15 | 2 | S4 and (((detect$3 determin$6) near2 congest$3) same (upstream uplink) same address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:26 |
| S16 | 14 | S4 and (congest$3 same (upstream uplink) same address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 16:33 |
| S17 | 0 | us-2003210653-$.did. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:45 |
| S18 | 2 | us-20030210653-$.did. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 14:45 |

## EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| S19 | 4 | S4 and (congest$3 same (upstream uplink) same message same (MAC address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 16:43 |
| S20 | 8 | S4 and ((congest$3 near2 message) same (up$1link up$1stream)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 16:55 |
| S21 | 0 | S3 and "370"/$.ccls. and ((congest$3 near2 message) same (up$1link up$1stream) same (MAC address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 16:57 |
| S22 | 0 | S3 and ((congest$3 near2 message) same (up$1link up$1stream) same (MAC address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 17:01 |
| S23 | 91 | S3 and ((congest$3) same (up$1link up$1stream) same (MAC address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 17:04 |
| S24 | 34 | S3 and ((congest$3) with (up$1link up$1stream) same (MAC address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 17:15 |
| S25 | 14 | S3 and (congest$3 same (up$1link up$1stream) with (address (MAC adj address))) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 17:39 |

## EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S26 | 50 | S23 not S24 not S25 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/25 17:39 |
| S27 | 4289 | 370/229,230,230.1,231.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 15:27 |
| S28 | 27686873 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 15:27 |
| S29 | 3805 | S27 and S28 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 15:27 |
| S30 | 1 | S29 and (drop$6 same (MAC adj address) same congest$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 15:29 |
| S31 | 22 | S28 and (drop$6 same (MAC adj address) same congest$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 16:25 |
| S32 | 55 | S28 and (congest$3 same (SLA "Service Level Agreement") same drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:23 |

## EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| S33 | 0 | S28 and (congest$3 same (SLA "Service Level Agreement") same ("cannot inability can't unable") near2 drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 17:41 |
| S34 | 0 | S28 and ((SLA "Service Level Agreement") same ("cannot inability can't unable") near2 drop$6) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 17:41 |
| S35 | 27686873 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:26 |
| S36 | 1 | S35 and (source near2 unknown) with drop$6 with destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:34 |
| S37 | 19 | S35 and (source near2 unknown) same drop$6 same destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:45 |
| S38 | 4289 | 370/229,230,230.1,231.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:45 |
| S39 | 27686873 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:45 |

10/27/2007 8:40:28 PM
C:\Documents and Settings\xwong\My Documents\EAST\Workspaces\Malhotra_102707.wsp

# EAST Search History

| Ref | Count | Query | Databases | Op | Default | Timestamp |
|---|---|---|---|---|---|---|
| S40 | 3805 | S38 and S39 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:45 |
| S41 | 60 | S40 and drop$6 near4 destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:46 |
| S42 | 6 | S40 and drop$6 near4 destination near address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:47 |
| S43 | 0 | S39 and (source near2 unknown) same drop$6 near4 destination near address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:50 |
| S44 | 1 | S40 and (source near2 unknown) same drop$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:50 |
| S45 | 1 | S40 and (source near2 unknown) same drop$6 and destination near address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:56 |
| S46 | 1 | S39 and (source near2 unknown) same drop$6 with destination near address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:56 |

## EAST Search History

| | | | | | | |
|---|---|---|---|---|---|---|
| S47 | 608 | S39 and (congest$3 same (end near (node point station))) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 20:59 |
| S48 | 287 | S39 and (congest$3 with (end near (node point station))) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:01 |
| S49 | 0 | S39 and (congest$3 with (end near (node point station))) same upstream same address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:02 |
| S50 | 6 | S39 and (congest$3 with (end near (node point station))) same upstream | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:16 |
| S51 | 3 | S39 and (congest$3 near3 (end near (node point station))) same upstream | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:18 |
| S52 | 78 | S39 and (congest$3 near2 (end near (node point station))) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:32 |
| S53 | 26 | S39 and (congest$3 near3 (end near (node point station))) not S52 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:42 |

## EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| S54 | 110 | S39 and (congest$3 same (drop (drop near rate)) same threshold same exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:45 |
| S55 | 102 | S39 and (congest$3 same (drop (drop near rate)) same threshold with exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:46 |
| S56 | 1 | S39 and (congest$3 same (drop near rate) same threshold with exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:48 |
| S57 | 120 | S39 and (congest$3 same (queue buffer fifo) same drop$6 same threshold with exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/26 21:51 |
| S58 | 88 | S39 and (congest$3 same (queue buffer fifo) same drop$6 with threshold with exceed$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/10/27 16:07 |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        11/01/2007
PATTERSON & SHERIDAN, LLP/
LUCENT TECHNOLOGIES, INC
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2616 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/01/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| **Office Action Summary** | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2616 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS,
WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>23rd March 2005</u>.
2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-18</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-18</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.
10)☒ The drawing(s) filed on <u>23rd March 2005</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some * c)☐ None of:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1)☒ Notice of References Cited (PTO-892) ✓
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06)                    Office Action Summary                    Part of Paper No./Mail Date 20071023

Application/Control Number: 11/088,073                                Page 2
Art Unit: 2616

## DETAILED ACTION

### Claim Objections

The numbering of claims is not in accordance with 37 CFR 1.126 which requires

the original numbering of the claims to be preserved throughout the prosecution.  When

claims are canceled, the remaining claims must not be renumbered.  When new claims

are presented, they must be numbered consecutively beginning with the number next

following the highest numbered claims previously presented (whether entered or not).

Misnumbered claims **16-19** have been renumbered **15-18** respectively.

Claim **9** is objected to because of the following informalities: "an end-node and

*an* end-station*s*" on line 2.  Appropriate correction is required.

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(e) the invention was described in (1) an application for patent, published under section 122(b), by
another filed in the United States before the invention by the applicant for patent or (2) a patent
granted on an application for patent by another filed in the United States before the invention by the
applicant for patent, except that an international application filed under the treaty defined in section
351(a) shall have the effects for purposes of this subsection of an application filed in the United States
only if the international application designated the United States and was published under Article 21(2)
of such treaty in the English language.

Claims **1, 2, 6, 7, 17** and **18** are rejected under 35 U.S.C. 102(e) as being

anticipated by **Choe** et al (**US 2005/0100031 A1**).

Consider claims **1, 6, 7, 17** and **18**, **Choe** et al disclose an apparatus comprising

computer-readable medium comprising method and means for detecting congestion in a

network ([0055]: 1-3); sending a congestion (fairness) message to upstream nodes and

Application/Control Number: 11/088,073                                    Page 3

Art Unit: 2616

learn the MAC address of a downstream node associated with the congestion ([0055]:

3-9) and enabling control of data flow and reduce traffic (congestion) amount ([0056]: 1-

8).

Consider claim **2**, as applied to claim **1**, **Choe** et al disclose congestion exists

when buffer (queue) traffic of a (downstream) node exceeds a low_threshold (therefore,

queue occupancy exceeded) ([0054]) and a fairness message indicating the congestion

([0055]).

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.  Determining the scope and contents of the prior art.
2.  Ascertaining the differences between the prior art and the claims at issue.
3.  Resolving the level of ordinary skill in the pertinent art.
4.  Considering objective evidence present in the application indicating obviousness or nonobviousness.

This application currently names joint inventors.  In considering patentability of

the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of

the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary.  Applicant is advised of the obligation

Application/Control Number: 11/088,073                                         Page 4
Art Unit: 2616

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g)

prior art under 35 U.S.C. 103(a).

Claims **3-5** are rejected under 35 U.S.C. 103(a) as being unpatentable over

**Choe** et al (**US 2005/0100031 A1**) in view of **Vaananen** et al (**US 2007/0058536 A1**).

Consider claims **3-5**, as applied to claims **1** and **4**, **Choe** et al disclose the

claimed invention except may not have explicitly disclosed the congestion condition is

determined when data received by a node exceeds an output link capability of the node

and a threshold exceeds a drop rate, which is determined with respect to an amount of

packet dropped or an amount of data dropped over time and a number of data drops

over time. **Vaananen** et al disclose congestion is determined when a queue (in a node)

receives packets exceeding a threshold (queue length exceeded / output capacity) ([0056]:

1-6/23-27); a congestion limitation measures the dropping of packets (reads on as an

amount of packets dropped) ([0056]: 6-12). It would have been obvious to one of ordinary

skill in the art to combine the teachings of **Vaananen** et al to the invention of **Choe** et al

for congestion management in overbooked links.

Claims **8** and **10-13** are rejected under 35 U.S.C. 103(a) as being unpatentable

over **Choe** et al (**US 2005/0100031 A1**) in view of **Nguyen** et al (**US 2004/0179470 A1**).

Consider claims **8** and **10-13**, as applied to claims **1**, **6** and **8**, **Choe** et al disclose

the claimed invention except explicitly mentioning dropping congestion-causing packets

associated with a source and destination MAC address pair (and nodes). **Nguyen** et al

disclose dropping packets (packet groups), according to source and destination MAC address, identified to cause traffic congestion ([0048]). It would have been obvious to one of ordinary skill in the art to incorporate the teachings of **Nguyen** et al to the invention of **Choe** et al for data flow control.

Claim **9** is rejected under 35 U.S.C. 103(a) as being unpatentable over **Choe** et al (**US 2005/0100031 A1**) in view of **Minhazuddin** et al (**US 2004/0073641 A1**).

Consider claim **9**, as applied to claim **1**, **Choe** et al disclose the claimed invention except may not have explicitly mentioned the node associated with the congestion comprises an *end-node* and an *end-station*. **Minhazuddin** et al disclose an end-points being too congested to support additional traffic (congestion) ([0039]). It would have been obvious to one of ordinary skill in the art to incorporate the teachings of **Minhazuddin** et al to the invention of **Choe** et al for monitoring network flow.

Claim **14** are rejected under 35 U.S.C. 103(a) as being unpatentable over **Choe** et al (**US 2005/0100031 A1**) in view of **Nguyen** et al (**US 2004/0179470 A1**), as applied to claim **13**, and in further view of **Bare** (**US 6,556,541 B1**).

Consider claim **14**, as applied to claim **13**, **Choe** et al, as modified by **Nguyen** et al, disclose the claimed invention except dropping packet portion associated with only the destination address when source address is unknown. **Bare** discloses dropping a packet directed to (associated with) a destination address when source address of the packet is unknown (col. 12: 28-51). It would have been obvious to one of ordinary skill in the art to incorporate the teachings of **Bare** to the invention of **Choe** et al and **Nguyen** et al for forwarding control of packets and load balancing purposes.

Application/Control Number: 11/088,073                                Page 6
Art Unit: 2616

Claims **16** and **17** are rejected under 35 U.S.C. 103(a) as being unpatentable

over **Choe** et al (**US 2005/0100031 A1**) in view of **Schwartz** et al (**US 7,240,124 B2**).

Consider claims **16** and **17**, as applied to claims **1** and **16**, **Choe** et al disclose

the claimed invention except specifically mentioning a Service Level Agreement (SLA)

associated to the flow and indicating inability to drop packets according to the SLA.

**Schwartz** et al disclose a route optimizer that makes reports (indications) on policing

parameters such as passing packets (e.g. inability to drop packets) and dropping packets

according to SLA policies (col. 4: 4-18). It would have been obvious to one of ordinary

skill in the art to incorporate the teachings of **Schwartz** et al to the invention of **Choe** et

al for defining optimal paths.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Wong whose telephone number is 571-270-1780.

The examiner can normally be reached on Monday through Friday 8 am - 5 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571-272-3174. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

Application/Control Number: 11/088,073                                    Page 7

Art Unit: 2616

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

*Xavier Szewai Wong*
X.S.W / x.s.w
26th October 2007

SEEMA S. RAO      10|29|07
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2600

| Notice of References Cited | Application/Control No. | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA | |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2616 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2005/0100031 A1 | 05-2005 | Choe et al. | 370/404 |
| * | B | US-2007/0058536 A1 | 03-2007 | Vaananen et al. | 370/230 |
| * | C | US-2004/0179470 A1 | 09-2004 | Nguyen et al. | 370/216 |
| * | D | US-7,240,124 B2 | 07-2007 | Schwartz et al. | 709/238 |
| * | E | US-2004/0073641 A1 | 04-2004 | Minhazuddin et al. | 709/223 |
| * | F | US-6,556,541 B1 | 04-2003 | Bare, Ballard C. | 370/235 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 7089

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 RULE | 370 | 2616 | R Malhotra 7 (LCNT/126709 |

**APPLICANTS**
Richa Malhotra, Enschede, NETHERLANDS;

** CONTINUING DATA ************************* *n/2  10.25.07  XSW*

** FOREIGN APPLICATIONS ************************* *n/2  10.25.07  XSW*

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
04/19/2005

| Foreign Priority claimed ☐ Yes ☒ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☒ No | ☐ Met after Allowance | NETHERLANDS | 4 | 18 | 3 |
| Verified and Acknowledged  *Xavier Wong* Examiner's Signature | Initials | | | | |

**ADDRESS**
PATTERSON & SHERIDAN, LLP/
LUCENT TECHNOLOGIES, INC
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702
UNITED STATES

**TITLE**
Method and apparatus for flow control of data in a network

| FILING FEE RECEIVED 1000 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Wong, Xavier Szewai | 2616 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |

Part of Paper No. : 20071023



### Search Notes

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 11/088,073 | MALHOTRA, RICHA |
| Examiner | Art Unit | |
| Xavier Szewai Wong | 2616 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229 | 10/25/2007 | XSW |
| | 230 | 10/25/2007 | XSW |
| | 230.1 | 10/25/2007 | XSW |
| | 231 | 10/25/2007 | XSW |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST image and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 10/25/2007 | XSW |
| Inventor Name and Assignee search in PALM ExPO and EAST | 10/25/2007 | XSW |
| ESP@CENET | 10/25/2007 | XSW |
| | | |
| | | |
| | | |
| | | |
| | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Serial No. 11/088,073
Page 1 of 11

# IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

RECEIVED
CENTRAL FAX CENTER

DEC 3 1 2007

### Patent Application

| | | | |
|---|---|---|---|
| Inventor(s): | Richa Malhotra | | |
| Case: | R Malhotra 7 (LCNT/126709) | | |
| Serial No.: | 11/088,073 | Group Art Unit: | 2616 |
| Filed: | March 23, 2005 | | |
| Examiner: | Wong, Xavier S | Confirmation #: | 7089 |
| Title: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

> CERTIFICATE OF MAILING OR TRANSMISSION
> I hereby certify that this correspondence is being deposited with the
> United States Postal Service with sufficient postage for first class
> mail in an envelope addressed to: Commissioner for Patents, P.O.
> Box 1450, Alexandria, VA 22313-1450. or being facsimile
> transmitted to the USTPO, on the date indicated below.
>
> _12-31-07_      _C. Wilson_
> Date              C. Wilson

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

SIR:

### RESPONSE AMENDMENT

In response to the non-final Office Action mailed November 1, 2007, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this amendment to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

The Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 20-0782/LCNT/**126709**.

625021-1

Dec-31-2007  03:11pm  From-Patterson & Sheridan, LLP - NJ          +17325309808          T-213  P.002/011  F-400

Serial No. 11/088,073
Page 2 of 11

**RECEIVED**
**CENTRAL FAX CENTER**

DEC 3 1 2007

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1. (currently amended) ~~Method~~ A method for data flow control in a network, comprising:

detecting a congestion condition in the network; and

sending a congestion message to one or more nodes upstream of the congestion condition;

said congestion message adapted to enable an upstream node to learn address information of at least one ~~node~~ end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition.

2. (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3. (original) The method of claim 1, wherein:

the congestion condition is determined when data received by a node exceeds an output link capability of the node.

4. (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5. (original) The method of claim 4, wherein:

625021-1

Serial No. 11/088,073
Page 3 of 11

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (currently amended) The method of claim 1, wherein the learned address information is the MAC address of a destination node end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (currently amended) The method of claim [[1]] 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination node address.

13.     (currently amended) The method of claim [[1]] 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination node addresses.

14.     (currently amended) The method of claim 13, wherein:

625021-1

Dec-31-2007  03:12pm   From-Patterson & Sheridan, LLP - NJ          +17325309808          T-213  P.004/011  F-400

Serial No. 11/088,073
Page 4 of 11

in response to the source address node end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination node address.

15.    (original) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said flow to be controlled.

16.    (original) The method of claim 16, further comprising:

receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.    (currently amended) A computer readable medium containing a program which, when executed, performs an operation of controlling data flow in a network comprising:

detecting a congestion condition in the network; and

sending a congestion message to one or more nodes upstream of the congestion condition;

said congestion message adapted to enable an upstream node to learn address information of at least one node end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition.

18.    (currently amended) Apparatus for controlling flow of data in a network comprising:

means for detecting a congestion condition in the network; and

means for sending a congestion message to one or more nodes upstream of the congestion condition;

said congestion message adapted to enable an upstream node to learn address information of at least one node end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition.

625021-1

Serial No. 11/088,073
Page 5 of 11

## Remarks

Claims 1-18 are pending in the application.

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 102(e) as being anticipated by Choe et al. (US 2005/0100031 A1, hereinafter Choe).

Claims 3-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Vaananen et al. (US 2007/0058536 A1, hereinafter Vaananen).

Claims 8 and 10-13 are rejected under 35 U.S.C. 35 U.S.C. 103(a) as being unpatentable over Choe in view of Nguyen et al. (US 2004/0179470 A1, hereinafter Nguyen).

Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Minhazuddin et al. (US 2004/0073641 A1, hereinafter Minhazuddin).

Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Nguyen as applied to claim 13, and further in view of Bare (US 6,556,541 B1, hereinafter Bare).

Claims 16 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Schwartz et al. (US 7,240,124 B2, hereinafter Schwartz). Applicant believes that the Examiner's statement that claims 16 and 17 are rejected under 35 U.S.C. 103(a) is incorrect due to the original mis-numbering of the claims. As such, Applicant believes that the rejection under 35 U.S.C. 103(a) applies to renumbered claims 15 and 16. Applicant respectfully requests that the Examiner indicate if this is not the case.

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known

625021-1

PAGE 5/11 * RCVD AT 12/31/2007 3:13:40 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-4/21 * DNIS:2738300 * CSID:+17325309808 * DURATION (mm-ss):03-16

Serial No. 11/088,073
Page 6 of 11

prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

## Claim Objections

### Claims 16 – 19

Claims 16 – 19 are objected to due to a problem with the claim numbering. Applicant notes the Examiner's statement that "[m]isnumbered claims 16 – 19 have been renumbered 15 – 18 respectively." (Office Action, Pg. 2). Applicant has reflected the new claim numbering in the present response. Accordingly, Applicant respectfully requests that the objection be withdrawn.

### Claim 9

Claim 9 is objected to due to a typographical error. Applicant has herein cancelled claim 9. Accordingly, Applicant respectfully requests that the objection be withdrawn.

625021-1

Serial No. 11/088,073
Page 7 of 11

## Rejection Under 35 U.S.C. 102

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 102(e) as being anticipated by Choe. The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claimed invention, arranged as in the claim. Choe fails to disclose each and every element of Applicant's claim 1, as arranged the claim.

As noted by the Examiner in the Office Action, Choe fails to disclose that the address information of the at least one node associated with the congestion condition is address information of at least one end-node associated with the congestion condition. Rather, Choe discloses that a fairness message that is sent to upstream nodes is sent from a network node and includes the MAC address of the network node, not address information of an end-node. As such, Choe fails to teach or suggest at least the limitation that "said congestion message adapted to enable an upstream node to learn address information of at least one end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

As such, independent claim 1 is not anticipated by Choe and is patentable under 35 U.S.C. 102. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 are not anticipated by Choe and are patentable under 35 U.S.C. 102. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim is also allowable over Choe under 35 U.S.C. 102.

Therefore, the rejection should be withdrawn.

## Rejection Under 35 U.S.C. 103(a)

### Claims 3-5

Claims 3-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Vaananen. The rejections are traversed.

625021-1

Serial No. 11/088,073
Page 8 of 11

Claims 3-5 depend directly or indirectly from claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 102 given Choe. Since the rejection of claim 1 under 35 U.S.C. 102 given Choe has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Choe to render claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### Claims 8 and 10-13

Claims 8 and 10-13 are rejected under 35 U.S.C. 35 U.S.C. 103(a) as being unpatentable over Choe in view of Nguyen. The rejections are traversed.

Claims 8 and 10-13 depend directly or indirectly from claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 102 given Choe. Since the rejection of claim 1 under 35 U.S.C. 102 given Choe has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Choe to render claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### Claim 9

Claim 9 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Minhazuddin. The rejections are traversed.

Claim 9 was cancelled herein; however, Applicant respectfully notes that the rejection of claim 9 was predicated on the validity of the rejection of claim 1 under 35 U.S.C. 102 given Choe, which has been overcome for at least the reasons described herein with respect to claim 1. Specifically, Choe fails to teach or suggest at least the limitation of "said congestion message adapted to enable an upstream node to learn address information of at least one end-node associated with the congestion condition to

625021-1

Serial No. 11/088,073
Page 9 of 11

enable thereby the control of data flows in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Furthermore, Applicant notes that Minhazuddin fails to bridge the substantial gap between Choe and Applicant's claim 1. Namely, Minhazuddin, like Choe, fails to teach or suggest at least the limitation of "said congestion message adapted to enable an upstream node to learn address information of at least one end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

In the Office Action, the Examiner cites a specific portion of Minhazuddin (namely, Para. 0039), however, the cited portion of Minhazuddin merely states that a monitor 204 determines if requests for entering a detailed monitoring state are being accepted, and describes some situations in which the system does not allow the session monitor and end points to enter into a detailed monitoring state. Although the cited portion of Minhazuddin mentions network congestion and end-points, the cited portion of Minhazuddin is devoid of any teaching or suggestion of any address information associated with any end-points, much less sending any message including address information.

As such, Minhazuddin, alone or in combination with Choe, fails to teach or suggest at least the limitation of "said congestion message adapted to enable an upstream node to learn address information of at least one end-node associated with the congestion condition to enable thereby the control of data flows in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

As such, Choe and Minhazuddin, alone or in combination, fail to teach or suggest Applicant's claim 1, as whole.

### Claim 14

Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Nguyen as applied to claim 13, and further in view of Barc. The rejection is traversed.

Claim 14 depends directly or indirectly from claim 1. This ground of rejection applies only to a dependent claim, and is predicated on the validity of the rejection of

625021-1

Serial No. 11/088,073
Page 10 of 11

claim 1 under 35 U.S.C. 102 given Choe. Since the rejection of claim 1 under 35 U.S.C. 102 given Choe has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Choe to render claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

### Claims 16 and 17

Claims 16 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Schwartz. Applicant believes that the Examiner's statement that claims 16 and 17 are rejected under 35 U.S.C. 103(a) is incorrect due to the original mis-numbering of the claims. As such, Applicant believes that the rejection under 35 U.S.C. 103(a) applies to renumbered claims 15 and 16. Applicant respectfully requests that the Examiner indicate if this is not the case. The rejections are traversed.

Claims 16 and 17 (renumbered as claims 15 and 16) depend directly or indirectly from claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 102 given Choe. Since the rejection of claim 1 under 35 U.S.C. 102 given Choe has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Choe to render claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

Serial No. 11/088,073
Page 11 of 11

## Conclusion

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 530-9404 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated:   12/31/07

Eamon J. Wall
Registration No. 39,414
Attorney for Applicant(s)

PATTERSON & SHERIDAN, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-530-9404
Facsimile: 732-530-9808

625021-1

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**PATENT APPLICATION FEE DETERMINATION RECORD**
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 11/088,073 | 03/23/2005 | ☐ To be Mailed |

## APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **12/31/2007** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $ = | | X $50= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus ***3 | = 0 | X $ = | | X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | OR | | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/AMANDA FORD/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363          7590          04/14/2008

PATTERSON & SHERIDAN, LLP/
LUCENT TECHNOLOGIES, INC
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2616 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/14/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/088,073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** | |
| | Xavier Szewai Wong | 2616 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *31st December 2007*.

2a)☒ This action is **FINAL**.      2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) *1-8 and 10-18* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-8 and 10-18* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☒ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____ .

PTOL-326 (Rev. 08-06)     **Office Action Summary**     Part of Paper No./Mail Date 20080331

Application/Control Number: 11/088,073                                    Page 2
Art Unit: 2616

## DETAILED ACTION

Claims **1**-**8** and **10**-**18** are pending

Claims **1**, **10**, **12**-**14** and **17**-**18** have been amended with claim **9** canceled

### *Claim Objections*

Claim **16** is objected to because of the following informalities: The method of

claim ~~16~~ → **15** on line *1*.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148

USPQ 459 (1966), that are applied for establishing a background for determining

obviousness under 35 U.S.C. 103(a) are summarized as follows:

1.     Determining the scope and contents of the prior art.
2.     Ascertaining the differences between the prior art and the claims at issue.
3.     Resolving the level of ordinary skill in the pertinent art.
4.     Considering objective evidence present in the application indicating obviousness or nonobviousness.

This application currently names joint inventors.  In considering patentability of

the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of

the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary.  Applicant is advised of the obligation

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

Application/Control Number: 11/088,073                                Page 3
Art Unit: 2616

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g)

prior art under 35 U.S.C. 103(a).

Claims **1**, **2**, **6**, **7**, **17** and **18** are rejected under 35 U.S.C. 103(a) as being

unpatentable over **Choe** et al (**US 2005/0100031 A1**) in view of **Jacobs** et al (**US**

**2003/0107994 A1**).

Consider claims **1**, **6**, **7**, **17** and **18**, **Choe** et al disclose an apparatus comprising

computer-readable medium comprising method and means for detecting congestion in a

network ([0055]: *1-3*); sending a congestion (fairness) message to upstream nodes and

learn the MAC address of a downstream node associated with the congestion ([0055]: *3-

9*) and enabling control of data flow and reduce traffic (congestion) amount ([0056]: *1-8*).

However, **Choe** et al may not have *specifically* disclosed learning address information

of an <u>end-node</u> associated with the congestion. **Jacobs** et al teach when a congestion

is detected at a router ([0024] ln. *34-37*, <u>threshold</u> level is reached), an end-node address is

learned associated with the congestion ([0024] ln. *37-42*, a packet is *subsequently* received

at a <u>destination address</u>… <u>customer terminal</u> reads ... *congestion* notification field; fig. *1* router

*B* and end-node *3*). It would have been obvious to one of ordinary skill in the art at the

time the invention was made to modify the steps of address learning of a node of **Choe**

et al into learning an end-node address associated with a congestion of **Jacobs** et al so

that the end-node may notify data sender to reduce flow rate of the relevant data stream

and, therefore, reduce congestion at the relevant router.

Application/Control Number: 11/088,073                                    Page 4
Art Unit: 2616

Consider claim **2**, as applied to claim **1**, **Choe** et al, as modified by **Jacobs** et al,
disclose congestion exists when buffer (queue) traffic of a (downstream) node exceeds a
low_threshold (therefore, queue occupancy exceeded) ([0054]) and a fairness message
indicating the congestion ([0055]).

Claims **3-5** are rejected under 35 U.S.C. 103(a) as being unpatentable over
**Choe** et al (**US 2005/0100031 A1**) in view of **Jacobs** et al (**US 2003/0107994 A1**), as
applied to claims **1** and **4**, **Vaananen** et al (**US 2007/0058536 A1**).

Consider claims **3-5**, as applied to claims **1** and **4**, **Choe** et al, as modified by
**Jacobs** et al, disclose the claimed invention except may not have *explicitly* disclosed
the congestion condition is determined when data received by a node exceeds an
output link capability of the node and a threshold exceeds a drop rate, which is
determined with respect to an amount of packet dropped or an amount of data dropped
over time and a number of data drops over time. **Vaananen** et al disclose congestion is
determined when a queue (in a node) receives packets exceeding a threshold (queue
length exceeded / output capacity) ([0056]: 1-6/23-27); a congestion limitation measures
the dropping of packets (reads on as an amount of packets dropped) ([0056]: 6-12). It would
have been obvious to one of ordinary skill in the art to combine the teachings of
**Vaananen** et al to the invention of **Choe** et al, as modified by **Jacobs** et al, for
congestion management in overbooked links.

Claims **8** and **10**-**13** are rejected under 35 U.S.C. 103(a) as being unpatentable
over **Choe** et al (**US 2005/0100031 A1**) in view of **Jacobs** et al (**US 2003/0107994 A1**),

Application/Control Number: 11/088,073                                    Page 5
Art Unit: 2616

as applied to claims **1**, **6** and **8**, and in further view of **Nguyen** et al (**US 2004/0179470 A1**).

Consider claims **8** and **10**-**13**, as applied to claims **1**, **6** and **8**, **Choe** et al disclose the claimed invention except explicitly mentioning dropping congestion-causing packets associated with a source and destination <u>MAC</u> address pair and learned address information is the <u>MAC</u> address of a destination end-node. **Jacobs** et al disclose learning destination address of a customer terminal ([0024] ln. *38-42*; end-node), it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the steps of address learning of a node of **Choe** et al into learning an end-node address associated with a congestion of **Jacobs** et al so that the end-node may notify data sender to reduce flow rate of the relevant data stream and, therefore, reduce congestion at the relevant router. However, **Choe** et al and **Jacob** et al do not specifically teach learning a <u>MAC</u> address pair. **Nguyen** et al disclose dropping packets (packet groups), according to source and destination MAC address (pair), identified to cause traffic congestion ([0048]). It would have been obvious to one of ordinary skill in the art to incorporate the teachings of **Nguyen** et al to the invention of **Choe** et al, as modified by **Jacobs** et al, for data flow control.

Claim **14** are rejected under 35 U.S.C. 103(a) as being unpatentable over **Choe** et al (**US 2005/0100031 A1**) in view of **Jacobs** et al (**US 2003/0107994 A1**) and **Nguyen** et al (**US 2004/0179470 A1**), as applied to claim **13**, and in further view of **Bare** (**US 6**,**556**,**541 B1**).

Application/Control Number: 11/088,073                                                                Page 6
Art Unit: 2616

        Consider claim **14**, as applied to claim **13**, **Choe** et al, as modified by **Jacobs** et

al and **Nguyen** et al, disclose the claimed invention except dropping packet portion

associated with only the destination address when source address is unknown. **Bare**

discloses dropping a packet directed to (associated with) a destination address when

source address of the packet is unknown (col. 12: 28-51). It would have been obvious to

one of ordinary skill in the art to incorporate the teachings of **Bare** to the invention of

**Choe** et al, as modified by **Jacobs** et al and **Nguyen** et al, for forwarding control of

packets and load balancing purposes.

        Claims **15** and **16** are rejected under 35 U.S.C. 103(a) as being unpatentable

over **Choe** et al (**US 2005/0100031 A1**) in view of **Jacobs** et al (**US 2003/0107994 A1**),

as applied to claims **1** and **15**, **Schwartz** et al (**US 7,240,124 B2**).

        Consider claims **15** and **16**, as applied to claims **1** and **15**, **Choe** et al, as

modified by **Jacobs** et al, disclose the claimed invention except specifically mentioning

a Service Level Agreement (SLA) associated to the flow and indicating inability to drop

packets according to the SLA. **Schwartz** et al disclose a route optimizer that makes

reports (indications) on policing parameters such as passing packets (e.g. inability to drop

packets) and dropping packets according to SLA policies (col. 4: 4-18). It would have

been obvious to one of ordinary skill in the art to incorporate the teachings of **Schwartz**

et al to the invention of **Choe** et al, as modified by **Jacobs** et al, for defining optimal

paths.

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2616

*Conclusion*

1.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

2.      **Fawaz** et al (**US 2003/0133406 A1**) teach packets being classified according to

SLA by their source and destination addresses; and implements congestion control that

does not require nodes to be shut off completely during congestion

3.      **Enomoto** et al (**US 2003/0076781 A1**) teach transferring packets to different

directions by destination congestion controls

        Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, this action is made Final.  See MPEP § 706.07(a).

Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Wong whose telephone number is 571-270-1780.

The examiner can normally be reached on Monday through Friday 8 am - 5 pm (EST).

Application/Control Number: 11/088,073                                      Page 8
Art Unit: 2616

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571-272-3174.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Seema S. Rao/
Supervisory Patent Examiner,
Art Unit 2616

*Xavier Szewai Wong*
X.S.W / x.s.w
1st April 2008

| *Notice of References Cited* | Application/Control No.<br>11/088,073 | Applicant(s)/Patent Under Reexamination<br>MALHOTRA, RICHA | |
|---|---|---|---|
| | Examiner<br>Xavier Szewai Wong | Art Unit<br>2616 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2003/0107994 A1 | 06-2003 | Jacobs et al. | 370/235 |
| * | B | US-2003/0076781 A1 | 04-2003 | Enomoto et al. | 370/229 |
| * | C | US-2003/0133406 A1 | 07-2003 | FAWAZ et al. | 370/229 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Wong, Xavier Szewai | 2616 |

| | | | | | |
|---|---|---|---|---|---|
| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|

| CLAIM | | DATE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | 04/01/2008 | | | | | |
| | 1 | ✓ | ✓ | | | | | |
| | 2 | ✓ | ✓ | | | | | |
| | 3 | ✓ | ✓ | | | | | |
| | 4 | ✓ | ✓ | | | | | |
| | 5 | ✓ | ✓ | | | | | |
| | 6 | ✓ | ✓ | | | | | |
| | 7 | ✓ | ✓ | | | | | |
| | 8 | ✓ | ✓ | | | | | |
| | 9 | ✓ | - | | | | | |
| | 10 | ✓ | ✓ | | | | | |
| | 11 | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | | | | | |
| | 18 | ✓ | ✓ | | | | | |

| *Application Number* | Application/Control No. | Applicant(s)/Patent under Reexamination | |
|---|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA | |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2616 | |



***Search Notes***

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 11/088,073 | MALHOTRA, RICHA |
| **Examiner** | **Art Unit** | |
| Xavier Szewai Wong | 2616 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| updated | search | 4/1/2008 | XSW |
| 370 | 229-230.1 | | |
| | 231 | | |
| | 235 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| updated EAST class, text and image search | 4/1/2008 | XSW |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 6437 | 370/229,230,230.1,231,235.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:33 |
| L2 | 30142574 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:34 |
| L3 | 768589 | @pd > "20071025" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:34 |
| L4 | 481 | L1 and L3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:34 |
| L5 | 315 | L4 and L2 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:34 |
| L6 | 5562 | L1 and L2 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:35 |
| L7 | 5 | L5 and (congest$5 same ((end adj (node point station device unit) destination) with address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:42 |
| L8 | 5 | L5 and (congest$5 same (end adj (node point station device unit) destination) same address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:45 |
| L9 | 143 | L6 and (congest$5 same (end adj (node point station device unit) destination) with address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:46 |
| L10 | 12 | L6 and (congest$5 same ((destination end) adj (node point station device unit) ) with address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 17:46 |

| L11 | 3 | L6 and (congest$5 same (loop ring closed adj circuit) same ((destination end) adj (node point station device unit) ) same address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/04/01 18:08 |
|-----|---|------------------------------------------------------------------|----------------------------|----|----|-------------------|

4/1/2008 8:26:11 PM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_040108_X.wsp

Serial No. 11/088,073
Page 1 of 13

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

## Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case**: | R Malhotra 7 (LCNT/126709) | | |
| **Serial No.**: | 11/088,073 | **Group Art Unit**: | 2616 |
| **Filed**: | March 23, 2005 | | |
| **Examiner**: | Wong, Xavier S | **Confirmation #**: | 7089 |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AF**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### RESPONSE AMENDMENT AFTER FINAL REJECTION

In response to the final Office Action mailed April 14, 2008, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a request therefor does not otherwise accompany this amendment, any necessary extension of time is hereby requested.

Applicant does not believe that any fee is due in connection with this response. In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 20-0782/LCNT/**126709**.

Serial No. 11/088,073
Page 2 of 13

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1.     (currently amended) A method for data flow control in a network, comprising:

detecting a congestion condition <u>at a network node</u> in the network; and

sending a congestion message <u>from the network node at which the congestion condition is detected</u> to one or more <u>network</u> nodes upstream of the congestion condition;

said congestion message adapted to enable ~~an upstream node~~ <u>said one or more upstream network nodes</u> to learn address information of at least one end-node associated with the congestion condition to enable thereby the control of <u>at least one</u> data ~~flows~~ <u>flow</u> in a manner tending to reduce the congestion condition.

2.     (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.     (currently amended) The method of claim 1, wherein:

the congestion condition is determined when data received by a <u>network</u> node exceeds an output link capability of the node.

4.     (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.     (original) The method of claim 4, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

Serial No. 11/088,073
Page 3 of 13

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (previously presented) The method of claim 1, wherein the learned address information is the MAC address of a destination end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

Serial No. 11/088,073
Page 4 of 13

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.     (currently amended) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said <u>at least one</u> flow to be controlled.

16.     (currently amended) The method of claim ~~16~~<u>15</u>, further comprising:
            receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.     (currently amended) A computer readable medium containing a program which, when executed, performs an operation of controlling data flow in a network comprising:
            detecting a congestion condition <u>at a network node</u> in the network; and
            sending a congestion message <u>from the network node at which the congestion condition is detected</u> to one or more <u>network</u> nodes upstream of the congestion condition;
            said congestion message adapted to enable ~~an upstream node~~ <u>said one or more upstream network nodes</u> to learn address information of at least one end-node associated with the congestion condition to enable thereby the control of <u>at least one</u> data ~~flows~~ <u>flow</u> in a manner tending to reduce the congestion condition.

18.     (currently amended) Apparatus for controlling flow of data in a network comprising:
            means for detecting a congestion condition <u>at a network node</u> in the network; and
            means for sending a congestion message <u>from the network node at which the congestion condition is detected</u> to one or more <u>network</u> nodes upstream of the congestion condition;
            said congestion message adapted to enable ~~an upstream node~~ <u>said one or more upstream network nodes</u> to learn address information of at least one end-node associated

Serial No. 11/088,073
Page 5 of 13

with the congestion condition to enable thereby the control of at least one data ~~flows~~ flow

in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 6 of 13

<u>R e m a r k s</u>

Claims 1-8 and 10-18 are pending in the application. Claims 16 is objected to because of an informality.

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe et al. (US 2005/0100031 A1, hereinafter Choe) in view of Jacobs et al. (US 2003/0107994 A1, hereinafter Jacobs).

Claims 3-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1 and 4, Vaananen et al. (US 2007/0058536 A1, hereinafter Vaananen). Claims 8 and 10-13 are rejected under 35 U.S.C. 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1, 6 and 8, and in further view of Nguyen et al. (US 2004/0179470 A1, hereinafter Nguyen). Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs and Nguyen as applied to claim 13, and further in view of Bare (US 6,556,541 B1, hereinafter Bare). Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1 and 15, Schwartz et al. (US 7,240,124 B2, hereinafter Schwartz).

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Entry of this Amendment is proper under 37 CFR 1.116 since the amendment: (a) places the application in condition for allowance for reasons discussed herein; (b) does not raise any new issue requiring further search and/or consideration since the amendments amplify issues previously discussed throughout prosecution; (c) satisfies a requirement of form asserted in the previous Office Action; (d) does not present any additional claims without canceling a corresponding number of finally rejected claims; or (e) places the application in better form for appeal, should appeal be necessary. The amendment is necessary and was not earlier presented because it is made in response to arguments raised in the final rejection. Entry of the amendment is respectfully requested.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being

Serial No. 11/088,073
Page 7 of 13

made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

## Claim Objections

Claim 16 is objected to for being dependent upon claim 16. Applicant has amended claim 16 to be dependent upon claim 15. As such, the objection should be withdrawn.

## Rejection Under 35 U.S.C. 103(a)

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs. The rejection is traversed.

Serial No. 11/088,073
Page 8 of 13

The Office Action failed to establish a *prima facie* case of obviousness because the combination of Choe and Jacobs fails to teach or suggest all the claim elements.

As noted by the Examiner in the Office Action, Choe fails to disclose that the address information of the at least one node associated with the congestion condition is address information of at least one end-node associated with the congestion condition. Rather, Choe discloses that a fairness message that is sent to upstream nodes is sent from a network node and includes the MAC address of the network node from which the fairness message is sent, not address information of an end-node. As such, Choe fails to teach or suggest at least the limitation of "sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition; said congestion message adapted to enable said one or more upstream network nodes to learn address information of at least one end-node associated with the congestion condition," as claimed in Applicant's claim 1.

Furthermore, Jacobs fails to bridge the substantial gap between Choe and Applicant's invention of independent claim 1.

In general, Jacobs discloses transmission of control packets from a data receiver to a data sender to provide a congestion notification from the data receiver to the data sender. (Jacobs, Abstract). Jacobs discloses that a router, upon detecting congestion due to packets traversing the router, writes appropriate values in congestion notification bits contained in header fields of the packets and then forwards the packets downstream toward the data receiver for which the packets are intended. (Jacobs, Para. 0024, Lines 17-18). Jacobs further discloses that when a packet thus marked is received at the data receiver, the data receiver reads the value from the congestion notification field and generates a control message that is transmitted back to the data sender, and, that when the data sender receives the control message, the data sender reduces the rate of flow of data in the relevant data stream. (Jacobs, Para. 0024, Lines 35-45).

In other words, Jacobs merely discloses a system in which a router that detects a congestion condition forwards an indication of the congestion condition downstream to the data receiver, and, further, in which the data receiver sends a congestion control message to the data sender.

Serial No. 11/088,073
Page 9 of 13

The transmission of an indication of congestion <u>downstream</u> <u>from a network node</u> <u>to an end node</u> (i.e., data receiver), as disclosed in Jacobs, does not teach or suggest sending a congestion message <u>from the network node at which the congestion condition</u> <u>is detected</u> to one or more <u>network nodes</u> <u>upstream</u> of the congestion condition where the congestion message is adapted to enable the one or more <u>upstream network nodes</u> to learn address information of at least one end-node associated with the congestion condition, as claimed in Applicants' claim 1.

Similarly, transmission of an indication of congestion <u>upstream</u> <u>from one end</u> <u>node</u> (i.e., data receiver) <u>to another end node</u> (i.e., data sender), as disclosed in Jacobs, does not teach or suggest sending a congestion message <u>from the network node at which</u> <u>the congestion condition is detected</u> to one or more <u>network nodes</u> <u>upstream</u> of the congestion condition where the congestion message is adapted to enable the one or more <u>upstream network nodes</u> to learn address information of at least one end-node associated with the congestion condition, as claimed in Applicants' claim 1.

Thus, Jacobs fails to teach or suggest "sending a congestion message <u>from the</u> <u>network node at which the congestion condition is detected</u> to one or more <u>network nodes</u> <u>upstream of the congestion condition;</u> said congestion message adapted to enable said one or more <u>upstream network nodes</u> to learn address information of at least one <u>end-node</u> associated with the congestion condition," as claimed in Applicants' claim 1.

Furthermore, Applicants' note that even assuming that Choe and Jacobs can be operably combined, the resulting system would merely disclose: (1) a network node that sends a fairness message (including its own MAC address) upstream and marks packets being transmitted in the downstream direction with an indication of congestion, and (2) a data receiver that receives packets marked with an indication of congestion and transmits a control message from the data receiver <u>to the data sender</u>. Thus, in a system according to the combination of Choe and Jacobs, (1) the upstream <u>network nodes</u> receive MAC address information of the <u>network node</u> that detected the congestion and (2) the upstream <u>end-node</u> (i.e., data sender) receives a congestion indication from the downstream end-node (i.e., data receiver), but the upstream network nodes <u>do not receive</u> address information of at least one end-node associated with the congestion condition. Thus, a system according to the combination of Choe and Jacobs fails to teach or suggest

Serial No. 11/088,073
Page 10 of 13

at least the limitation of "sending a congestion message <u>from the network node at which</u> <u>the congestion condition is detected</u> to one or more <u>network nodes upstream of the</u> <u>congestion condition;</u> said congestion message adapted to enable said one or more <u>upstream network nodes</u> to learn address information of at least one <u>end-node</u> associated with the congestion condition," as claimed in Applicants' claim 1.

As such, independent claim 1 is patentable under 35 U.S.C. 103(a) over Choe in view of Jacobs. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are patentable under 35 U.S.C. 103(a) over Choe in view of Jacobs. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is patentable under 35 U.S.C. 103(a) over Choe in view of Jacobs.

Therefore, the rejection should be withdrawn.

### Claims 3-5

Claims 3-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1 and 4, Vaananen. The rejections are traversed.

Claims 3-5 depend directly or indirectly from independent claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs. Since the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that Vaananen supplies that which is missing from Choe and Jacobs to render independent claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### Claims 8 and 10-13

Claims 8 and 10-13 are rejected under 35 U.S.C. 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1, 6 and 8 and further in view of Nguyen. The rejections are traversed.

Serial No. 11/088,073
Page 11 of 13

Claims 8 and 10-13 depend directly or indirectly from independent claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs. Since the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that Nguyen supplies that which is missing from Choe and Jacobs to render independent claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### Claim 14

Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs and Nguyen as applied to claim 13, and further in view of Bare. The rejection is traversed.

Claim 14 depends directly or indirectly from independent claim 1. This ground of rejection applies only to a dependent claim and is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs. Since the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that Nguyen and Bare alone or in combination supply that which is missing from Choe and Jacobs to render independent claim 1 unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

### Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Choe in view of Jacobs as applied to claims 1 and 15, Schwartz. The rejections are traversed.

Claims 15 and 16 depend directly or indirectly from independent claim 1. Each ground of rejection applies only to dependent claims, and each is predicated on the validity of the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs. Since the rejection of claim 1 under 35 U.S.C. 103 given Choe in view of Jacobs has been

Serial No. 11/088,073
Page 12 of 13

overcome, as described hereinabove, and there is no argument put forth by the Office
Action that Schwartz supplies that which is missing from Choe and Jacobs to render
independent claim 1 unpatentable, these grounds of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

Serial No. 11/088,073
Page 13 of 13

## Conclusion

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 530-9404 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: 5/12/08

Eamon J. Wall
Registration No. 39,414
Attorney for Applicant(s)

PATTERSON & SHERIDAN, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-530-9404
Facsimile: 732-530-9808

769552-1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3302774 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 14-MAY-2008 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 14:25:44 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | LCNT126709eFinalAmend5_14_08.pdf | 486597  3773c2914198888b2fb9cfe8ed600d4f684d83ae | yes | 13 |

**Multipart  Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment After Final | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 13 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 486597 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/088,073 | Filing Date<br>03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| | (Column 1) | (Column 2) | | | | |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | OR |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **05/14/2008** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | X $ = | OR | X $50= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | ***3 | = 0 | X $ = | OR | X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DENISE HOPKINS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

| 46363        7590        05/27/2008 |
|---|
| PATTERSON & SHERIDAN, LLP/ |
| LUCENT TECHNOLOGIES, INC |
| 595 SHREWSBURY AVENUE |
| SHREWSBURY, NJ 07702 |

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2616 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/27/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| ***Advisory Action*** | Application No. | Applicant(s) |
| | 11/088,073 | MALHOTRA, RICHA |
| ***Before the Filing of an Appeal Brief*** | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2616 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED 14th May 2008 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☒ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:

   a) ☐  The period for reply expires _____months from the mailing date of the final rejection.

   b) ☒  The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

       Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce an earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☒ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

   (a)☒ They raise new issues that would require further consideration and/or search (see NOTE below);

   (b)☐ They raise the issue of new matter (see NOTE below);

   (c)☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

   (d)☐ They present additional claims without canceling a corresponding number of finally rejected claims.

      NOTE:  *amended claims 1, 17 and 18 require further consideration*. (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____.

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☒ For purposes of appeal, the proposed amendment(s): a) ☒ will not be entered, or b) ☐ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:

   Claim(s) allowed: _____.

   Claim(s) objected to: _____.

   Claim(s) rejected: *1-18*.

   Claim(s) withdrawn from consideration: _____.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

13. ☐ Other: _____.

  /Seema S. Rao/

  Supervisory Patent Examiner, Art Unit 2616

**Application No.**

Serial No. 11/088,073
Page 1 of 13

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case**: | R Malhotra 7 (LCNT/126709) | | |
| **Serial No.**: | 11/088,073 | **Group Art Unit**: | 2616 |
| **Filed**: | March 23, 2005 | | |
| **Examiner**: | Wong, Xavier S | **Confirmation #**: | 7089 |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

Please Don't Enter, X.S.W, 22.05.08

**MAIL STOP AF**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### RESPONSE AMENDMENT AFTER FINAL REJECTION

In response to the final Office Action mailed April 14, 2008, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a request therefor does not otherwise accompany this amendment, any necessary extension of time is hereby requested.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 20-0782/LCNT/**126709**.

U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Request For Continued Examination (RCE) Transmittal | Application Number | 11/088,073 |
|---|---|---|
| | Filing Date | 03/23/2005 |
| Address to: | First Named Inventor | Malhotra |
| Mail Stop RCE | Art Unit | 2616 |
| Commissioner for Patents P.O. Box 1450 | Examiner Name | Xavier S. WONG |
| Alexandria, VA  22313-1450 | Attorney Docket Number | R. Malhotra 7 (LCNT/126709) |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 C.F.R. 1.114**   Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☒ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____
      ii. ☒ Other Response Amendment After Final Rejection filed 5/14/08

   b. . ☐ Enclosed
      i. ☐ Amendment/Reply          iii. ☐ Information Disclosure Statement (IDS)
      ii ☐ Affidavit(s)/Declaration(s)   iv. ☐ Other _____

2. **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 C.F.R. 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 C.F.R. 1.17(i) required)
   b. ☐ Other _____

3. **Fees**   The RCE fee under 37 C.F.R. 1.17(e) is required by 37 C.F.R. 1.114 when the RCE is filed.

   a. ☐ The Director is hereby authorized to charge the following fees, or credit any overpayments, to Deposit Account No._____ .  I have enclosed a duplicate copy of this sheet.
      i. ☐ RCE fee required under 37 C.F.R. 1.17(e)
      ii. ☐ Extension of time fee (37 C.F.R. 1.136 and 1.17)
      iii. ☐ Other _____
   b. ☐ Check in the amount of $ _____ enclosed
   c. ☒ Payment by credit card.  The fee of **$810** has been paid with the submission of this paper using the Patent Electronic Business Center.  In the event of an additional fee, kindly charge that fee to Deposit Account No. 20-0782.

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| Signature | *E.J.Wall* | Date | 7/10/08 |
|---|---|---|---|
| Name (Print /Type) | Eamon J. Wall | Registration No. | 39,414 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11088073 |
| **Filing Date:** | 23-Mar-2005 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| First Named Inventor/Applicant Name: | Richa Malhotra |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| Filed as Large Entity | |

## Utility       Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 810 | 810 |
| **Total in USD ($)** | | | | **810** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3597968 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 10-JUL-2008 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 17:05:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $810 |
| RAM confirmation Number | 2344 |
| Deposit Account | 200782 |
| Authorized User | WALL,EAMON J. |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | LCNT126709eRCE7_10_08.pdf | 59079 <br> 6addc7f6fc4ce4ab9768eeeb5ee1a0d6 30988fc1 | no | 1 |

| Warnings: |
|---|
| This is not a USPTO supplied RCE SB30 form. |

| Information: |
|---|

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 8186 <br> c80f4f2e066596433609a5ed6c7af2849 141db91 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| Total Files Size (in bytes): | 67265 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 11/088,073 | Filing Date 03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | OR |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|---|

| AMENDMENT | 07/10/2008 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $ = | | OR X $50= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus ***3 | = 0 | X $ = | | OR X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | 0 |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | | OR TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DAVINA G. BUTLER/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Serial No. 11/088,073
Page 1 of 13

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (LCNT/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2616 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AF**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA 22313-1450**

SIR:

### RESPONSE AMENDMENT AFTER FINAL REJECTION

In response to the final Office Action mailed April 14, 2008, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a request therefor does not otherwise accompany this amendment, any necessary extension of time is hereby requested.

Applicant does not believe that any fee is due in connection with this response. In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 20-0782/LCNT/**126709**.

769552-1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

| | |
|---|---|
| 46363          7590          08/21/2008 | EXAMINER |
| PATTERSON & SHERIDAN, LLP/ LUCENT TECHNOLOGIES, INC 595 SHREWSBURY AVENUE SHREWSBURY, NJ 07702 | WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2616 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/21/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| ***Office Action Summary*** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** | |
| | Xavier Szewai Wong | 2616 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

  A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>14th May 2008</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8 and 10-18</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-8 and 10-18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____

Application/Control Number: 11/088,073                                        Page 2
Art Unit: 2616

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 14th

May 2008 has been entered.

### *Claim Rejections - 35 USC § 102*

2.      The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

3.      Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 102(b) as being

anticipated by Enomoto et al (US 2003/0076781 A1, "Enomoto").

4.      Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-

readable medium containing a program which when executed performs an operation of

controlling data flow in a network (figs. 1-4) comprising:

        means for detecting a congestion condition at a network node in the network

([0126]; fig. 1: congestion control part A13 of node A1); and

        means for sending a congestion message from the network node (A1) at which

the congestion condition is detected to one or more network nodes upstream of the

congestion condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to

node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction

Application/Control Number: 11/088,073                                        Page 3
Art Unit: 2616

determination part A11);

said congestion message adapted to enable said one or more upstream network

nodes to enable thereby the control of at least one data flow in a manner tending to

reduce the congestion condition ([0154, 156 & 158]); wherein address information is

learned of at least one end-node associated with the congestion condition ([0402 & 406];

fig. 8).


Claim 2, applied to claim 1: Enomoto discloses the congestion condition is

determined when a queue maximum occupancy is exceeded ([0227]).

Claim 3, applied to claim 1: Enomoto discloses the congestion condition is

determined when data received by a network node exceeds an output link capability of

the node ([0227]).

Claim 6, applied to claim 1: Enomoto discloses the congestion message

comprises an indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Paul et al (US 6,148,005,

"Paul").

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed

invention yet not *very specifically* mentioned congestion condition is dependent of a

queue data drop rate exceeding a threshold level wherein the threshold is determined

by at least one of an amount of data dropped, an amount of data dropped over time and

Application/Control Number: 11/088,073                              Page 4
Art Unit: 2616

a number of data drops over time. Paul mentions the *concept* of when a packet loss

(drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves

into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been obvious

to one of ordinary skill in the art at the time the invention was created to apply such

congestion condition determination policies taught by Paul to the congestion buffer used

amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error

recovery to recover lost packets based on the congestion state.


        Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of

Kawakami et al (US 2002/0136163 A1, "Kawakami").

        Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the

claimed invention yet the specifics of: the congestion message comprising a <u>MAC</u>

address pair, which has source and destination addresses, of a traffic flow or an end-

node contributing to the congestion are not *very expressively* mentioned. Kawakami

mentions the congestion notification packet wherein a MAC address of a terminal (end-

node) to which flow (data flow) control is to be applied is specified as the destination

address of the packet; and in a data packet, the transmission source address specified

in the packet is the MAC address of a source terminal, however in the case of a

congestion notification packet a unique address is specified as the source address

([0108]). It would have been obvious to one of ordinary skill in the art to apply the

Application/Control Number: 11/088,073                                    Page 5
Art Unit: 2616

concept of pair MAC (source, destination) address congestion message of Kawakami to

the congestion notification of Enomoto to avoid packet loss from a congested flow.


Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Kawakami et al (US

2002/0136163 A1, "Kawakami"), applied to claim 11, and in further view of Lee et al (US

6,636,510 B1, "Lee").

Claim 12, applied to claim 11: Enomoto, modified by Kawakami, disclose the

claimed invention yet may not have *very expressively* mentioned dropping packets

associated with the *destination address*. Lee discloses destination address modification

for congestion may be accompanied by partial packet discard, through destination

address modification of the remaining cells forming part of a multiple cell packet to

remove the destination address for the congested port; and, sending with destination

address modification and optional partial packet discard if the queue size is above the

threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify the packet

dropping policy of Enomoto, modified by Kawakami, to use the destination address

based packet dropping policy of Lee to avoid overflow buffer in transmission.


Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Kawakami et al (US

2002/0136163 A1, "Kawakami"), applied to claims 11 and 13, and in further view of

Bare (US 7,283,476 B2).

Application/Control Number: 11/088,073                                    Page 6
Art Unit: 2616

Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami, disclose the claimed invention yet may not have *very expressively* mentioned the dropping of packets associated with *source and destination addresses* wherein when the *source end-node address is unknown*, the data flow is controlled by dropping those packets associated only with the destination address. Bare mentions both source and destination addresses are used to determine packet dropping conditions; and, that a packet with unknown source address is dropped directed to a specific destination MAC address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary skill in the art at the time the invention was created to modify the packet dropping policy of Enomoto, modified by Kawakami, to use the source and destination addresses as taught by Bare to maintain load balancing by checking whether a packet from a certain source address were received within a predetermined time window.

Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Agrawal et al (US 2003/0081546 A1, "Agrawal").

Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed invention yet not specifically about Service Level Agreement flow control and dropping policies. Agrawal teaches flows are given various priority levels depending upon the customer's Service Level Agreements (SLA), which determine whether the flows are delayed or dropped when there is congestion in the network or within the source node itself ([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2616

interpreted as a condition for inability to drop since there are the options of "flows are

delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in

the art at the time the invention was made to use the well-known SLA to determine flow

control policies as taught by Agrawal to the flow control function of Enomoto to realize

the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and

leads to minimum de-jittering delay at an end receiving unit.


### Conclusion

5.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

6.      Nakamura et al (US 2001/0012269 A1) disclose generating and sending RM cell

immediately to a communication terminal that is transmitting a cell which causes

congestion within a communication apparatus having a congestion cell buffer at the time

of generation of a congestion of a cell buffer in the node

7.      Ma et al (US 7,369,498 B1) disclose controlling congestion in a packet-switched

network wherein a packet queue length in a network node is determined and a

congestion notification is transmitted back to a source address of an incoming data

packet received at the network node if the packet queue length exceeds a

predetermined threshold

8.      Nakazaki et al (US 6,222,839 B1) disclose a control part for discarding a frame

taking an origination address of a packet as its destination address in case that

information showing a congestion state is added to said packet received by a packet communication part

9.      Joung et al (US 6,754,222 B1) disclose port transmission/reception control sections perform an error checking operation; wherein specifically, if there were MAC error, unknown source address, address move, and destination address occur with respect to the packets, the respective port transmission/reception control sections determine a drop, broadcast, or forward to host

10.     Golikeri et al (US 2005/0190754 A1) disclose an intermediate device typically creates its address entries dynamically whenever the intermediate device receives an unknown address. For example, when an intermediate device receives a protocol message including an unknown source address, the intermediate device may create an address entry mapping the particular address to the interface over which the protocol message was received. Thereafter, when the intermediate device receives a protocol message with a destination address equal to that particular address, the intermediate device processes the protocol message based upon the filtering and routing information in the address entry. Specifically, the intermediate device typically "drops" the protocol message, if the protocol message is received over network interface that is associated with that particular address, or forwards the protocol message onto the network interface that is associated with that particular address, if the protocol message is received over a different network interface than the network interface associated with that particular network address

Application/Control Number: 11/088,073                                                    Page 9
Art Unit: 2616

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Xavier Wong whose telephone number is (571)270-1780.  The examiner can normally be reached on Monday through Friday 8:30 am - 6:00 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Seema Rao can be reached on 571-272-3174.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

*/Xavier Szewai Wong/*
X.S.W / x.s.w
08.08.2008

/Brenda  Pham/

Primary Examiner, Art Unit 2616

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | Page 1 of 1 |
| | Xavier Szewai Wong | 2616 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2003/0081546 A1 | 05-2003 | Agrawal et al. | 370/229 |
| * | B | US-7,283,476 B2 | 10-2007 | Bare, Ballard C. | 370/236 |
| * | C | US-6,636,510 B1 | 10-2003 | Lee et al. | 370/390 |
| * | D | US-2002/0136163 A1 | 09-2002 | Kawakami et al. | 370/229 |
| * | E | US-6,148,005 | 11-2000 | Paul et al. | 370/469 |
| * | F | US-2003/0076781 A1 | 04-2003 | Enomoto et al. | 370/229 |
| * | G | US-2005/0190754 A1 | 09-2005 | Golikeri et al. | 370/383 |
| * | H | US-6,754,222 B1 | 06-2004 | Joung et al. | 370/412 |
| * | I | US-6,222,839 B1 | 04-2001 | Nakazaki et al. | 370/352 |
| * | J | US-7,369,498 B1 | 05-2008 | Ma et al. | 370/235 |
| * | K | US-2001/0012269 A1 | 08-2001 | NAKAMURA et al. | 370/230 |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20080807



### Search Notes

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 11/088,073 | MALHOTRA, RICHA |
| **Examiner** | **Art Unit** | |
| Xavier Szewai Wong | 2616 | |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231 | 8/7/2008 | XSW |
| | 235-236 | 8/7/2008 | XSW |
| | 236.1-.2 | 8/7/2008 | XSW |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST image and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 8/7/2008 | XSW |
| EAST image and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 8/11/2008 | XSW |
| | | |
| | | |
| | | |
| | | |
| | | |

Part of Paper No.  20080807

| *Application Number* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** | |
| | Xavier Szewai Wong | 2616 | |

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2616 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | 04/01/2008 | 08/08/2008 | | | | | |
| | 1 | ✓ | ✓ | ✓ | | | | | |
| | 2 | ✓ | ✓ | ✓ | | | | | |
| | 3 | ✓ | ✓ | ✓ | | | | | |
| | 4 | ✓ | ✓ | ✓ | | | | | |
| | 5 | ✓ | ✓ | ✓ | | | | | |
| | 6 | ✓ | ✓ | ✓ | | | | | |
| | 7 | ✓ | ✓ | ✓ | | | | | |
| | 8 | ✓ | ✓ | ✓ | | | | | |
| | 9 | ✓ | - | - | | | | | |
| | 10 | ✓ | ✓ | ✓ | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | ✓ | | | | | |
| | 18 | ✓ | ✓ | ✓ | | | | | |

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7683 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 15:56 |
| L2 | 10078 | 370/253,312,349,389,471.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 15:58 |
| L3 | 154 | 370/395.71.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:13 |
| L4 | 30213578 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:14 |
| L5 | 6514 | L4 and L1 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:23 |
| L6 | 558 | L4 and L2 and L1 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:25 |
| L7 | 1 | L4 and L3 and L2 and L1 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:26 |
| L8 | 73 | L5 and (congest$5 same (upstream uplink) same (notification message)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 16:59 |
| L9 | 11 | L5 and (congest$5 same (upstream uplink) same (notification message) same (MAC address MAC adj address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 17:00 |
| L11 | 1 | L10 and (congest$5 same (notification message) and (MAC address MAC adj address)) and (upstream uplink) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 17:03 |

| L12 | 1 | L10 and (congest$5 same (upstream uplink) same (notification message) and (MAC address MAC adj address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 17:04 |
| L13 | 14850 | (L1 L2 L3) and L4 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 17:50 |
| L14 | 7 | L13 and congest$5 same (upstream uplink) same (notifi$7 messag$5) same (ring loop) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 17:52 |
| L15 | 10 | L13 and congest$5 same (MAC adj address MAC address) same (notifi$7 messag$5) same (ring loop) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/07 18:02 |

8/7/2008 6:11:31 PM
C:\Documents and Settings\xwong\My Documents\EAST\Workspaces\Malhotra_080708_O.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L7 | 7683 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:26 |
| L8 | 10078 | 370/253,312,349,389,471.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:26 |
| L9 | 154 | 370/395.71.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:26 |
| L10 | 30213578 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:26 |
| L11 | 14850 | (L7 L8 L9) and L10 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:26 |
| L12 | 59 | L11 and (congest$5 with address with (message notification)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/08 17:35 |

8/8/2008 7:14:24 PM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_080708_O.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L14 | 7683 | 370/229-231,235,236,236.1,236.2.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L15 | 10078 | 370/253,312,349,389,471.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L16 | 154 | 370/395.71.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L17 | 30213578 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L18 | 14850 | (L14 L15 L16) and L17 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L19 | 10 | L18 and (queue buffer) with ((drop$4 discard$4) near rate) with exceed$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:07 |
| L20 | 14 | L18 and (queue buffer) with ((drop$4 discard$4) near rate) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/09 17:08 |

8/9/2008 5:17:17 PM
C:\Documents and Settings\xwong\My Documents\EAST\Workspaces\Malhotra_080708_O.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S22 | 7683 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:22 |
| S23 | 29443872 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:22 |
| S24 | 6514 | S23 and S22 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:22 |
| S25 | 3 | S24 and (Service adj Level adj Agreement) same (drop$4 discard $4) same (destination adj address) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:22 |
| S26 | 4 | S24 and (Service adj Level adj Agreement) same (drop$4 discard $4) same destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:23 |
| S27 | 20 | S24 and (Service adj Level adj Agreement) with (drop$4 discard$4) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 01:25 |
| S28 | 48 | S24 and ((drop$4 discard$4) near rate) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 02:23 |
| S29 | 2 | S24 and ((drop$4 discard$4) near rate) with congest$5 with threshold | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 02:53 |

8/10/2008 3:37:57 AM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_080708_O.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7683 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:23 |
| L2 | 30213878 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:23 |
| L3 | 6514 | L2 and L1 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:23 |
| L4 | 0 | L3 and (((MAC adj address) near5 pair$4) same congest$5) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:23 |
| L5 | 14 | L3 and ((MAC adj address) with congest$5) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:23 |
| L6 | 4 | L3 and ((MAC adj address) with congest$5) same flow | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:25 |
| L7 | 4 | L3 and ((MAC adj address) same congest$5) same flow same source same destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 04:27 |
| L8 | 7 | L3 and ((MAC adj address) same congest$5) same destination same (drop$4 discard$4) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 05:29 |

8/10/2008 5:41:16 AM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_080708_O.wsp

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7683 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L2 | 10078 | 370/253,312,349,389,471.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L3 | 154 | 370/395.71.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L4 | 30213878 | @RLAD < "20050323" @AD < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L5 | 14850 | (L1 L2 L3) and L4 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L6 | 178 | L5 and (congest$5 same destination same source same (drop$4 discard $4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:27 |
| L7 | 146 | L1 and L4 and (congest$5 same destination same source same (drop $4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:34 |
| L8 | 24 | L1 and L4 and (congest$5 with destination with source with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:43 |
| L9 | 9 | L1 and L4 and (congest$5 same (destination adj address) same (source adj address) same (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/10 23:49 |
| L10 | 0 | L1 and L4 and (congest$5 with (source adj address) with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:07 |

| L11 | 2 | L4 and (congest$5 with (source adj address) with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:08 |
|---|---|---|---|---|---|---|
| L12 | 43 | L4 and L1 and ((source adj address) with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:13 |
| L13 | 9 | L4 and (congest$5 with (destination adj address) with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:14 |
| L14 | 1 | L4 and L1 and ((source adj address) with unknown with (drop$4 discard $4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:39 |
| L15 | 0 | L4 and L1 and ((source adj address) with unknown same (destination adj address) same (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:40 |
| L16 | 8 | L4 and ((source adj address) with unknown same (destination adj address) same (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 00:40 |
| L17 | 22 | L4 and ((source adj address) same unknown same (destination adj address) same (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:07 |
| L18 | 2 | "6556541".pn. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:16 |
| L19 | 15 | L4 and ((source adj address) with (unknown "not found") with (drop$4 discard$4)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:29 |
| L20 | 10 | L4 and ((source adj address) with (unknown "not found") same (drop$4 discard$4) same destination) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:32 |
| L21 | 5 | L4 and ((source with (unknown "not found")) with (drop$4 discard$4) with destination) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:48 |

| L22 | 27 | L4 and ((source with (unknown "not found")) same (drop$4 discard$4) with destination) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2008/08/11 01:57 |

8/11/2008 2:54:21 AM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_080708_O.wsp

Serial No. 11/088,073
Page 1 of 9

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (LCNT/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2616 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

## RESPONSE AMENDMENT

In response to the non-final Office Action mailed August 21, 2008, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 20-0782/LCNT/**126709**.

Serial No. 11/088,073
Page 2 of 9

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1.      (currently amended) A method for data flow control in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;

wherein said congestion message ~~adapted to enable said one or more upstream network nodes to learn~~ comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

Serial No. 11/088,073
Page 3 of 9

6.    (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.    (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.    (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.    (cancelled)

10.    (currently amended) The method of claim 1, wherein the ~~learned~~ address information is the MAC address of a destination end-node.

11.    (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.    (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.    (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.    (previously presented) The method of claim 13, wherein:

829715-1

Serial No. 11/088,073
Page 4 of 9

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.    (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.    (previously presented) The method of claim 15, further comprising:
        receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.    (currently amended) A computer readable medium containing a program which, when executed, performs an operation of controlling data flow in a network comprising:
        detecting a congestion condition at a network node in the network; and
        sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message ~~adapted to enable said one or more upstream network nodes to learn~~ comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.    (currently amended) Apparatus for controlling flow of data in a network comprising:
        means for detecting a congestion condition at a network node in the network; and
        means for sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message ~~adapted to enable said one or more upstream network nodes to learn~~ comprises address information of at least one end-node associated

Serial No. 11/088,073
Page 5 of 9

with the congestion condition to enable thereby the control of at least one data flow in a
manner tending to reduce the congestion condition.

<u>R e m a r k s</u>

Claims 1-8 and 10-18 are pending in the application.

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto et al. (US 2003/0076781 A1, "Enomoto"). Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami et al. (US 2002/0136163 A1, "Kawakami"). Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, "Lee"). Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, "Bare"). Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal et al (U.S. 2003/0081546 A1, "Agrawal").

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent

Serial No. 11/088,073
Page 7 of 9

form.  That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed.  This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it.  Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered.  If the Examiner is of a different view, he is respectfully requested to so indicate.

### Rejection Under 35 U.S.C. 102(b)

Claims 1, 2, 6, 7, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto.  The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claimed invention, arranged as in the claim.

Enomoto fails to disclose each and every element of the claimed invention, as arranged in independent claim 1.  Namely, Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicants' claim 1.

Rather, Enomoto merely discloses a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the address of the congestion control node that generates the congestion notification.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a congestion notification sender." (Enomoto, Para. 398, Emphasis added).

829715-1

Serial No. 11/088,073
Page 8 of 9

  In other words, Enomoto merely discloses a system in which a congestion notification message includes an address of the node that generates the congestion notification message. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one end-node associated with a congestion condition</u>, as claimed in Applicants' claim 1.

  As such, independent claim 1 is patentable under 35 U.S.C. 102(b) over Enomoto. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are patentable under 35 U.S.C. 102(b) over Enomoto. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is patentable under 35 U.S.C. 102(b) over Enomoto.

  Therefore, the rejection should be withdrawn.

<u>**Rejection Under 35 U.S.C. 103(a)**</u>

  Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami. Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, applied to claim 11, and in further view of Lee. Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami as applied to claims 11 and 13, and in further view of Bare. Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal. The rejections are traversed.

  Each of these grounds of rejection applies only to dependent claims, and each is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, these grounds of rejection cannot be maintained.

  Therefore, the rejections should be withdrawn.

Serial No. 11/088,073
Page 9 of 9

## Conclusion

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance.  Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 530-9404 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: _11/17/08_

_E J Wall_
Eamon J. Wall
Registration No. 39,414
Attorney for Applicant(s)

PATTERSON & SHERIDAN, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-530-9404
Facsimile: 732-530-9808

829715-1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4310419 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 18-NOV-2008 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:26:25 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | LCNT1267909eAmend11_18_08.pdf | 318209 / 9908b1b830b35f93644d3630f35c0b90715 12a0b | yes | 9 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 9 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 318209 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/088,073 | Filing Date<br>03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED<br>(Column 1) | NUMBER EXTRA<br>(Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | OR | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **11/18/2008** | CLAIMS REMAINING AFTER AMENDMENT<br>(Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR<br>(Column 2) | PRESENT EXTRA<br>(Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | X $ = | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | ***3 | = 0 | X $ = | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | **0** | |

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT<br>(Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR<br>(Column 2) | PRESENT EXTRA<br>(Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/ERIC DANTZLER/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        03/04/2009

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2416 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/04/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 11/088,073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** | |
| | Xavier Szewai Wong | 2416 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>18th November 2008</u>.
2a)☒ This action is **FINAL**.         2b)☐ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-8 and 10-18</u> is/are pending in the application.
　　 4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-8 and 10-18</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
　　 Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
　　 Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
　　 a)☐ All   b)☐ Some * c)☐ None of:
　　　　 1.☐ Certified copies of the priority documents have been received.
　　　　 2.☐ Certified copies of the priority documents have been received in Application No. _____.
　　　　 3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
　　 * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
　　 Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
　　 Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

## DETAILED ACTION

### *Response to Arguments*

Applicant's arguments filed *18th November 2008* have been considered but they are not persuasive.

Applicants raised the issue that Enomoto does not teach "congestion message comprises address information of at least one end-node associated with the congestion condition" (Remarks: pg. 7). Enomoto does mention a congestion notification identifies "a congestion section from ID of the generation <u>source</u> (e.g. <u>end-node</u>) node of notification and ID of the adjacent node…[0406]." Thus, as long as the <u>source ID</u> related to <u>congestion</u> is identified, it reads on as end-node associated with the congestion condition.

### *Claim Rejections - 35 USC § 102*

1.      The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

2.      Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto et al (US 2003/0076781 A1, "Enomoto").

3.      Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-readable medium containing a program which when executed performs an operation of controlling data flow in a network (figs. 1-4) comprising:

means for detecting a congestion condition at a network node in the network ([0126]; fig. 1: congestion control part A13 of node A1); and

means for sending a congestion message from the network node (A1) at which the congestion condition is detected to one or more network nodes upstream of the congestion

Application/Control Number: 11/088,073                                        Page 3
Art Unit: 2416

condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to node A2 from A1;

fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction determination part A11);

said congestion message adapted to enable said one or more upstream network nodes to

enable thereby the control of at least one data flow in a manner tending to reduce the congestion

condition ([0154, 156 & 158]); wherein address information is learned of at least one end-node

associated with the congestion condition ([0402 & 406]; fig. 8).

Claim 2, applied to claim 1: Enomoto discloses the congestion condition is determined

when a queue maximum occupancy is exceeded ([0227]).

Claim 3, applied to claim 1: Enomoto discloses the congestion condition is determined

when data received by a network node exceeds an output link capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto discloses the congestion message comprises an

indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto

et al (US 2003/0076781 A1, "Enomoto") in view of Paul et al (US 6,148,005, "Paul").

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed invention yet

not *very specifically* mentioned congestion condition is dependent of a queue data drop rate

exceeding a threshold level wherein the threshold is determined by at least one of an amount of

data dropped, an amount of data dropped over time and a number of data drops over time. Paul

mentions the *concept* of when a packet loss (drop) rate goes above a certain level (threshold), a

network node (e.g. receiver) moves into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It

would have been obvious to one of ordinary skill in the art at the time the invention was created

Application/Control Number: 11/088,073                                          Page 4
Art Unit: 2416

to apply such congestion condition determination policies taught by Paul to the congestion buffer

used amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error

recovery to recover lost packets based on the congestion state.


Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Kawakami et al (US

2002/0136163 A1, "Kawakami").

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the claimed

invention yet the specifics of: the congestion message comprising a <u>MAC</u> address pair, which

has source and destination addresses, of a traffic flow or an end-node contributing to the

congestion are not *very expressively* mentioned. Kawakami mentions the congestion notification

packet wherein a MAC address of a terminal (end-node) to which flow (data flow) control is to be

applied is specified as the destination address of the packet; and in a data packet, the

transmission source address specified in the packet is the MAC address of a source terminal,

however in the case of a congestion notification packet a unique address is specified as the

source address ([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to the

congestion notification of Enomoto to avoid packet loss from a congested flow.


Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al

(US 2003/0076781 A1, "Enomoto") in view of Kawakami et al (US 2002/0136163 A1,

"Kawakami"), applied to claim 11, and in further view of Lee et al (US 6,636,510 B1, "Lee").

Claim 12, applied to claim 11: Enomoto, modified by Kawakami, disclose the claimed invention yet may not have *very expressively* mentioned dropping packets associated with the *destination address*. Lee discloses destination address modification for congestion may be accompanied by partial packet discard, through destination address modification of the remaining cells forming part of a multiple cell packet to remove the destination address for the congested port; and, sending with destination address modification and optional partial packet discard if the queue size is above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify the packet dropping policy of Enomoto, modified by Kawakami, to use the destination address based packet dropping policy of Lee to avoid overflow buffer in transmission.

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Kawakami et al (US 2002/0136163 A1, "Kawakami"), applied to claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami, disclose the claimed invention yet may not have *very expressively* mentioned the dropping of packets associated with *source and destination addresses* wherein when the *source end-node address is unknown*, the data flow is controlled by dropping those packets associated only with the destination address. Bare mentions both source and destination addresses are used to determine packet dropping conditions; and, that a packet with unknown source address is dropped directed to a specific destination MAC address (col. 13 lines 42-50 & 66-67). It would

Application/Control Number: 11/088,073                                    Page 6
Art Unit: 2416

have been obvious to one of ordinary skill in the art at the time the invention was created to

modify the packet dropping policy of Enomoto, modified by Kawakami, to use the source and

destination addresses as taught by Bare to maintain load balancing by checking whether a packet

from a certain source address were received within a predetermined time window.


        Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, "Enomoto") in view of Agrawal et al (US 2003/0081546

A1, "Agrawal").

        Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed invention

yet not specifically about Service Level Agreement flow control and dropping policies. Agrawal

teaches flows are given various priority levels depending upon the customer's Service Level

Agreements (SLA), which determine whether the flows are delayed or dropped when there is

congestion in the network or within the source node itself ([0003]); wherein clearly flows are

controlled by SLA and flows being *delayed* is interpreted as a condition for inability to drop

since there are the options of "flows are delayed *or* dropped" specifically. It would have been

obvious to one of ordinary skill in the art at the time the invention was made to use the well-

known SLA to determine flow control policies as taught by Agrawal to the flow control function

of Enomoto to realize the benefit of end-to-end bandwidth guarantees while maintaining per flow

shaping and leads to minimum de-jittering delay at an end receiving unit.

Application/Control Number: 11/088,073                                  Page 7
Art Unit: 2416

*Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

1. Kawakami, US 2002/0136163 A1: congestion notification packet which is

transmitted upon occurrence of said first degree of congestion is an individual

congestion notification packet containing destination address information identifying

said congestion origin terminal

2. Lee, US 2005/0052994 A1: a congestion indicator includes: a congestion

indicator type value designated CI_TYPE; a second field carrying an originator identity

value designated ORIGINATOR_ID so that a receiver node may determine the location

in the network that is affected by congestion; the originator identity value

ORIGINATOR_ID tells the receiver about the identity of the entity that generated the

congestion indicator


This action is made Final.  See MPEP § 706.07(a).  Applicant is reminded of the

extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO

MONTHS of the mailing date of this final action and the advisory action is not mailed until after

the end of the THREE-MONTH shortened statutory period, then the shortened statutory period

will expire on the date the advisory action is mailed, and any extension fee pursuant to 37

CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,

Application/Control Number: 11/088,073                                    Page 8
Art Unit: 2416

however, will the statutory period for reply expire later than SIX MONTHS from the date of this

final action.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Wong whose telephone number is 571.270.1780.  The

examiner can normally be reached on Monday through Friday 8:30 am - 6:00 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571.272.3174.  The fax phone number for the

organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866.217.9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.


/Xavier Szewai Wong/                          /Seema S. Rao/
x.s.w                                         Supervisory Patent Examiner, Art Unit
2nd March 2009                                2416

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |  |
|---|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA | |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2416 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0136163 A1 | 09-2002 | Kawakami et al. | 370/229 |
| * | B | US-2005/0052994 A1 | 03-2005 | Lee, Man-Ho Lawrence | 370/230 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 8403 | 370/229-231,235,236,236.1,236.2. ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:02 |
| L2 | 10795 | 370/253,312,349,389,471.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:02 |
| L3 | 156 | 370/395.71.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:02 |
| L4 | 15629 | (L1 L2 L3) and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:02 |
| L5 | 950 | L4 and (congest$5 with (end$1node end$1station terminal destination)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:12 |
| L6 | 34 | L4 and (congest$5 with (message notification) with (ID identification identifier address) with (end$1node end$1station terminal destination)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:17 |
| L7 | 14 | L4 and (congest$5 with (message notification) with (ID identification identifier address) with (end$1node end$1station terminal)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:20 |
| L9 | 27 | L4 and (congest$5 with (ID identification identifier address) with origin$5) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/03/01 23:27 |

3/1/2009 11:32:53 PM
C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra.03-01-09.wsp

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2416 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | 04/01/2008 | 08/08/2008 | 03/01/2009 | | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 9 | ✓ | - | - | - | | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Wong | 2416 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 03.01.09 | XSW |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| updated EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | XSW |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

Serial No. 11/088,073
Page 1 of 15

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2416 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AF**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### RESPONSE AMENDMENT AFTER FINAL REJECTION

In response to the final Office Action mailed March 4, 2009, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

Serial No. 11/088,073
Page 2 of 15

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1.      (previously presented) A method for data flow control in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

1005129-1

Serial No. 11/088,073
Page 3 of 15

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

1005129-1

Serial No. 11/088,073
Page 4 of 15

15.     (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.     (previously presented) The method of claim 15, further comprising:
        receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.     (previously presented) A computer readable medium containing a program which, when executed, performs an operation of controlling data flow in a network comprising:
        detecting a congestion condition at a network node in the network; and
        sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.     (previously presented) Apparatus for controlling flow of data in a network comprising:
        means for detecting a congestion condition at a network node in the network; and
        means for sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

## R e m a r k s

Claims 1-8 and 10-18 are pending in the application.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto et al. (US 2003/0076781 A1, "Enomoto").

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Paul et al. (US 6,148,005, "Paul")>

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami et al. (US 2002/0136163 A1, "Kawakami").

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, "Lee").

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, "Bare").

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal et al (U.S. 2003/0081546 A1, "Agrawal").

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Entry of this Amendment is proper under 37 CFR 1.116 since the amendment: (a) places the application in condition for allowance for the reasons discussed herein; (b) does not raise any new issue requiring further search and/or consideration since the amendments amplify issues previously discussed throughout prosecution; (c) satisfies a requirement of form asserted in the previous Office Action; (d) does not present any additional claims without canceling a corresponding number of finally rejected claims; or (e) places the application in better form for appeal, should an appeal be necessary. The amendment is necessary and was not earlier presented because it is made in response to arguments raised in the final rejection. Entry of the amendment is thus respectfully requested.

Serial No. 11/088,073
Page 6 of 15

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

## Rejection Under 35 U.S.C. 102(b)

### Claims 1, 2, 3, 6, 17 and 18

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claim, arranged as in the claim.

Serial No. 11/088,073
Page 7 of 15

Enomoto fails to disclose each and every element of Applicants' independent claim 1, as arranged in independent claim 1. Namely, Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicants' claim 1.

Rather, Enomoto merely discloses a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the <u>address of the congestion control node that generates the congestion notification</u>.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a congestion notification *sender*</u>." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification message includes an address of the node that generates the congestion notification message. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one *end-node* associated with a congestion condition</u>, as claimed in Applicants' claim 1.

Thus, Applicants submit that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicants' claim 1.

In the Response to Arguments Section of the Final Office Action, the Examiner states that "Enomoto does mention a congestion notification identifies 'a congestion section from ID of the generation <u>source</u> (e.g. <u>end-node</u>) <u>node</u> of notification and ID of

the adjacent node…[0406].'" (Final Office Action, Pg. 2). Applicants respectfully disagree.

In response, Applicants respectfully submit that the Examiner is impermissibly generalizing Applicants' claim 1. More specifically, the Examiner is generalizing the "end-node" of Applicants' claim 1.

Applicants note that the standard for claim interpretation during the examination of a patent application is that "claims … are to be given their broadest reasonable interpretation consistent with the specification, *and* … claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1365; 70 U.S.P.Q. 2D (BNA) 1827 (Fed. Cir. 2004), citing *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) and *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir.1999).

Applicants respectfully submit that the Examiner has interpreted Applicants' claim 1 in an unreasonably broad manner that is inconsistent with Applicants' specification. The Examiner unreasonably generalizes the term "end-node" to cover network nodes and then, on the basis of this unreasonable generalization, concludes that the network node of Enomoto discloses the end-node of Applicants' claim 1. Applicants respectfully submit that such an interpretation is improper and, thus, cannot support a rejection of Applicants' claim 1 in view of Enomoto.

Applicants note that Applicants' specification and Applicants' claim 1 both differentiate between end-nodes (identified using reference number 106) and network nodes (identified using reference number 102). As indicated in Applicants' specification, an end-node, or end-station, is the source node or destination node of a data flow.

For example, Applicants' specification states that "…a method according to one embodiment of the invention for controlling data flow in a network includes detecting a congestion condition in the network, sending a congestion message to one or more nodes upstream of the congestion condition, learning address information of one or more end nodes or stations pertaining to the congestion condition sending another congestion message containing these learned MAC addresses and (the nodes receiving this congestion message with the MAC addresses) controlling a flow of data of the learned address information is the congestion message. The learned address information is the

Serial No. 11/088,073
Page 9 of 15

MAC address of a destination node to which the data is flowing towards or is a MAC address pair of the nodes between which the data is flowing." (Specification, Pg. 3, Lines 24-34).

Similarly, for example, Applicants' specification states that "[i]n a first example, if the congestion message contains only a destination address (e.g., the address of a end-node/end-station G), then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node G. In a second example, if the congestion message contains an source/destination address pair (e.g., the address of nodes AB), then the upstream node or controlling entity may drop all or a certain percentage of packets sourced from node A that are destined for node B.  If the source address is not known, then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node B." (Specification, Pg. 8, Line 33 – Pg. 9, Line 8).

Thus, Applicants' specification clearly distinguishes between network nodes and end-nodes/end-stations, where end-nodes or end-stations of a data flow are the source and destination of the data flow.

Furthermore, Applicants' claim 1 similarly distinguishes between network nodes and end-nodes, including limitations of "detecting a congestion condition at a network node in the network," "sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition," and "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition."

Thus, since Applicants' specification and claims clearly distinguish between network nodes and end-nodes/end-stations, where end-nodes or end-stations of a data flow are the source and destination of the data flow, Applicants respectfully submit that the Examiner has interpreted Applicants' claim 1 in an unreasonably broad manner that is inconsistent with Applicants' specification and which fails to acknowledge the distinction between network nodes and end-nodes/end-stations.

In rejecting Applicants' claim 1, the Examiner fails to acknowledge the distinction between network nodes and end-nodes that is present in Applicants' claim 1.

Serial No. 11/088,073
Page 10 of 15

The Examiner cites the "generation source" node of Enomoto, asserting that the "generation source" node of Enomoto is the <u>end-node</u> as claimed in Applicants' claim 1. As discussed in Enomoto, however, the "generation source" node of Enomoto (also referred to as a "notification generation node") is a <u>network node</u> that generates a congestion notification and thus, is the <u>source of the congestion notification</u>. The "generation source" of Enomoto is <u>not</u> an <u>end-node</u> as recited in Applicants' specification and Applicants' claim 1. This is evident from the portions of Enomoto described hereinabove, as well as from the additional portion of Enomoto relied upon by the Examiner (namely, Para. 0406), each of which states that the "generation source" of Enomoto is the <u>source of a congestion notification message</u> ("ID of the <u>generation source</u> <u>node</u>"), <u>not a source of a data flow</u>. For example, Enomoto refers to "…a generation source of the congestion notification…" on multiple occasions. (Enomoto, Para. 0360, 0362). Thus, Applicants submit that the "generation source" of Enomoto is a <u>network</u> <u>node</u>, not an <u>end-node</u> as recited in Applicants' specification and Applicants' claim 1.

Thus, Applicants respectfully submit that, in view of the Examiner's unreasonably broad interpretation of the term "end-node" in Applicants' claim 1, and further in view of the teachings of Enomoto regarding the "generation source" node, the "generation source" node of Enomoto is not an "end-node" as claimed in Applicants' claim 1.

Furthermore, Applicants note that the Examiner contradicts his own interpretation of the term "end-node" in applying rejections of Applicants' dependent claims. For example, with respect to Applicants' dependent claims 7, 8, 10, and 11, the Examiner interprets the "end-node" of Applicants' claim 1 as a terminal such as a source terminal or destination terminal. Specifically, the Examiner states that "Kawakami mentions the congestion notification packet wherein a MAC address of a terminal (end-node) to which flow (data flow) control is to be applied…." (Office Action, Pg. 4). In other words, the Examiner interprets the term "end-node" one way when describing the rejection of Applicants' claim 1 and then interprets the term "end-node" another way when describing the rejection of Applicants' claims 7, 8, 10, and 11. The Examiner, by acknowledging in the rejection of claims 7, 8, 10, and 11 that the term "end-node" of Applicants' claim 1 should be associated with an end terminal that is the source or destination of a data flow,

Serial No. 11/088,073
Page 11 of 15

further illustrates that the interpretation of "end-node" applied by the Examiner in rejecting Applicants' claim 1 is unreasonable.

Thus, since the Examiner, in judging the patentability of Applicants' claim 1 against Enomoto, has interpreted the limitations of Appellants' claim 1 in an unreasonably broad manner that is inconsistent with Applicants' specification, the Examiner's arguments with respect to Enomoto cannot support a rejection of Applicants' claim 1. Applicants submit that, using a proper interpretation of "end-node" of Applicants' claim 1, Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicants' claim 1.

As such, independent claim 1 is patentable under 35 U.S.C. 102(b) over Enomoto. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are patentable under 35 U.S.C. 102(b) over Enomoto. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is patentable under 35 U.S.C. 102(b) over Enomoto.

Therefore, the rejection should be withdrawn.


## <u>Rejection Under 35 U.S.C. 103(a)</u>

### <u>Claims 4 and 5</u>

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Paul. The rejections are traversed.

Applicants note that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the

Serial No. 11/088,073
Page 12 of 15

additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

**Claims 7, 8, 10, and 11**

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami.  The rejections are traversed.

Applicants note that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained. Therefore, the rejection should be withdrawn.

Applicants further note that the Examiner's arguments with respect to Applicants' claims 7, 8, 10, and 11 modify the Examiner's original arguments with respect to Applicants' claim 1 such that the rejection of Applicants' claim 1 cannot be maintained and, therefore, the rejection of Applicants' claims 7, 8, 10, and 11 cannot be maintained. In the Examiner's rejection of claim 1, the Examiner asserts that a <u>network node</u> of Enomoto is equivalent to the "end-node" of Applicants' claim 1.  Then, in the Examiner's rejection of claims 7, 8, 10, and 11, the Examiner cites the "terminal" of Kawakami, asserting that the <u>terminal</u> of Kawakami is equivalent to the "end-node" of Applicants' claim 1.  In other words, in applying a rejection of Applicants' claims 7, 8, 10, and 11, the Examiner applies a different definition of the term "end-node" than applied in the rejection of Applicants' claim 1.  Applicants note that, by interpreting the "end-node" of Applicants' claim 1 as a <u>network node</u> in the rejection of claim 1, and then re-interpreting the "end-node" of Applicants' claim 1 as a <u>terminal</u> in the rejection of claims 7, 8, 10, and 11, the Examiner is <u>improperly applying two different definitions to the same term</u>. Thus, since the Examiner's rejection of Applicants' claim 1 is based on an improper interpretation of the term "end-node", the Examiner's rejection of claim 1 cannot be maintained and, therefore, the Examiner's rejection of Applicants' claims 7, 8, 10, and 11

Serial No. 11/088,073
Page 13 of 15

using a combination of Enomoto and Kawakami cannot be maintained.  Furthermore, Applicants maintain that, as described hereinabove, the Examiner's interpretation of the term "end-node" as being one of the network nodes of Enomoto is unreasonably broad such that the Examiner's rejections of claim 1 cannot be maintained and, therefore, the Examiner's rejection of Applicants' claims 7, 8, 10, and 11 using a combination of Enomoto and Kawakami cannot be maintained.

Therefore, the rejections should be withdrawn.

## Claim 12

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, applied to claim 11, and in further view of Lee.  The rejections are traversed.

Applicants note that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 13 and 14

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami as applied to claims 11 and 13, and in further view of Bare.  The rejections are traversed.

Applicants note that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 14 of 15

### Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal. The rejections are traversed.

Applicants note that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 15 of 15

## <u>Conclusion</u>

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance.  Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 842-8110 x120 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: _4/30/09_          _____
                          Eamon J. Wall
                          Registration No. 39,414
                          Attorney for Applicant(s)

WALL & TONG, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-842-8110
Facsimile: 732-842-8388

1005129-1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5270842 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 04-MAY-2009 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:24:07 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | LCNT126709eFinalAmend5_4_09.pdf | 641543<br>330433953ce6299836c684152030073e2a6b0045 | yes | 15 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment After Final | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 15 |

| Warnings: | |
|---|---|
| **Information:** | |

| | Total Files Size (in bytes): | 641543 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 11/088,073 | Filing Date 03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  | | | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|
| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) FEE ($) | | RATE ($) FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | OR | X $ = |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL |

## APPLICATION AS AMENDED – PART II

|  |  | | | | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|---|
| AMENDMENT | 05/04/2009 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) ADDITIONAL FEE ($) | | RATE ($) ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 Minus | ** 20 | = 0 | X $ = | OR | X $52= 0 |
| | Independent (37 CFR 1.16(h)) | * 3 Minus | *** 3 | = 0 | X $ = | OR | X $220= 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE 0 |

| AMENDMENT |  | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) ADDITIONAL FEE ($) | | RATE ($) ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * Minus | ** | = | X $ = | OR | X $ = |
| | Independent (37 CFR 1.16(h)) | * Minus | *** | = | X $ = | OR | X $ = |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/BRENDA WEBB/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        05/19/2009
WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2416 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/19/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

Application/Control Number: 11/088,073                                        Page 2
Art Unit: 2416

**Remarks**

Applicants suggest that Enomoto does not teach "congestion message

comprises address information of at least one *end-node* associated with the congestion

condition (remarks pg. 7 of 15, first paragraph)."

As a further clarification of the examiner's interpretation:

First, Enomoto cites, for example:

"The second congestion control node <u>A2 measures a transmission rate</u> and a
destination node number (or a flow number) of the <u>frames which are supplied from the
second client group C2</u> and which are transferred to the first one-way ring R11.
Subsequently, the second congestion control node A2 calculates "the transmission rate
÷ the flow number" as the allowable output amount and <u>transmits a congestion
notification</u> to the third congestion control node A3 using the second one-way ring R12
with the allowable output amount. It is herein assumed that the frame amount
transferred from the second client group C2 to the first one-way ring R11 is equal to 2
megabits/sec. In this event, inasmuch as the destination node is equal to one of the first
congestion control node A1, the second congestion control node A2 transmits, as the
allowable output amount, 2 megabits/sec ÷ 1 = 2 megabits/sec. [0295]"

Therefore, the A2 congestion control node receives packet flow from a client C2

(*end-node* or *source*) and the A2 calculates whether the flow from C2 is causing a

congestion. Packets in a flow *must* have a <u>source and destination address</u> (emphasis

added) for routing purposes in this case, the source address is the C2 end-node

address.

Second, Enomoto further cites:

"The transfer direction determination part A11 **(within A1-A4) has a function as
follows. That is, the transfer direction determination part A11 receives, as received
frames, frames from the first client group C1 **(or any of C2-C4), the first congestion
control part A13, and the second congestion control part A14. The transfer direction
determination part A11 determines a destination node address for the received frames.
The transfer direction determination part A11 transfers the received frames toward the
first client group C1, the first congestion control node A13, and the second congestion
control node A14 in accordance with description of the <u>routing table A12</u>. In addition, all

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2416

of frames going from the first one-way ring R11 to the second one-way ring R12, frames going the second one-way ring R12 to the first one-way ring R11, and frames where the first client group C1 **(or any of C2-C4) is a destination or a sender go by way of the transfer direction determination part A11. [0123]" and;

"The estimating part 342 **(within A1-A4) serves as a congestion flow estimation arrangement for estimating, with reference to the received congestion information and the routing table A12, as an estimated flow, a flow having the congestion level which is not less than a predetermined level in the transfer path in the destination. The congestion flow estimation arrangement produces an estimated result indicative of the estimated flow. The congestion flow estimation arrangement makes the estimated flow communication between the congestion control nodes on the network. The congestion flow estimation arrangement makes the estimated flow include communication between each of the congestion control nodes on the network and a client connected to the congestion control node in question. [0155]"

Therefore, a client (*end-node* or *source*) in question of causing a congestion is

being accounted for and information is being recorded in a routing table  wherein routing

table *must* contain at least a source and destination address (emphasis added), including

the client node in question.


Third, Enomoto also cites:

"...the congestion notification reception transfer part A134 identifies a congestion section from ID of the generation source node of notification and ID of the adjacent node for transferring the notification and estimates a flow passing through the congestion section using the routing table A12. [0406]"

Therefore, through the routing table, a congestion notification reception transfer

part identifies an ID of a congestion source node, which does not exclude a congestion

node in question (e.g. client C2 or any of C1, C3 or C4) since the routing table includes the

source and destination addresses of the clients are recorded.

Application/Control Number: 11/088,073                                         Page 4
Art Unit: 2416

      In view of the above, the examiner believes that Enomoto does read on

"congestion message comprises address information of at least one *end-node*

associated with the congestion condition" as interpreted.


*/Xavier Szewai Wong/*
x.s.w
14th May 2009


/Seema S. Rao/

Supervisory Patent Examiner, Art Unit 2416

18th May 2009

| | Application No. | Applicant(s) |
|---|---|---|
| ***Advisory Action*** <br> ***Before the Filing of an Appeal Brief*** | *11/088,073* | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** | |
| | Xavier Szewai Wong | 2416 | |

**--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

THE REPLY FILED 4th May 2009 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

1. ☒ The reply was filed after a final rejection, but prior to or on the same day as filing a Notice of Appeal. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. The reply must be filed within one of the following time periods:

   a) ☐ The period for reply expires _____months from the mailing date of the final rejection.

   b) ☒ The period for reply expires on: (1) the mailing date of this Advisory Action, or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

      Examiner Note: If box 1 is checked, check either box (a) or (b). ONLY CHECK BOX (b) WHEN THE FIRST REPLY WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37 CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☐ The proposed amendment(s) filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

   (a)☐ They raise new issues that would require further consideration and/or search (see NOTE below);

   (b)☐ They raise the issue of new matter (see NOTE below);

   (c)☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

   (d)☐ They present additional claims without canceling a corresponding number of finally rejected claims.

      NOTE: _____. (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____.

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☒ For purposes of appeal, the proposed amendment(s): a) ☐ will not be entered, or b) ☒ will be entered and an explanation of how the new or amended claims would be rejected is provided below or appended.

   The status of the claim(s) is (or will be) as follows:

   Claim(s) allowed: _____.

   Claim(s) objected to: _____.

   Claim(s) rejected: *1-8 and 10-18*.

   Claim(s) withdrawn from consideration: _____.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ The affidavit or other evidence filed after a final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

9. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing a good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

10. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

11. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

12. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

13. ☒ Other: <u>see remarks</u>.

Please Enter 05.14.09 /xsw/

Serial No. 11/088,073
Page 1 of 15

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

## Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2416 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AF**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### RESPONSE AMENDMENT AFTER FINAL REJECTION

In response to the final Office Action mailed March 4, 2009, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

1005129-1

U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **NOTICE OF APPEAL** FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional) Malhotra 7 (ALU/126709) |
|---|---|

In re Application of
Malhotra 7

| Application Number 11/088,073 | Filed 3/23/05 |
|---|---|

For   METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK

| Art Unit 2416 | Examiner Xavier S. Wong |
|---|---|

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the last decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1)) ............................ $ __540.00__

☐ Applicant claims small entity status.  See 37 CFR 1.27.  Therefore, the fee shown above is reduced by half, and the resulting fee is: ........ $ _____

☐ A check in the amount of the fee is enclosed.

☒ Payment by credit card.  The fee of **$540** has been paid with the submission of this paper using the Patent Electronic Business Center.  In the event of an additional fee, kindly charge that fee to Deposit Account No. 50-4802.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☐ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment to Deposit Account No. _____ .

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

I am the

☐ applicant /inventor.

☐ assignee of record of the entire interest.
See 37 CFR 3.71.  Statement under 37 CFR 3.73(b)
is enclosed.   (Form PTO/SB/96)

☒ attorney or agent of record.

Registration number    39,414

☐ attorney or agent acting under 37 CFR 1.34.

Registration number if acting under 37 CFR 1.34. _____

_____
Signature

_____
Eamon J. Wall
Typed or printed name

732-842-8110 X120
Telephone number

5-29-09
Date

NOTE:  Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required.
Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

1011849-1

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11088073 |
| **Filing Date:** | 23-Mar-2005 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa Malhotra |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Notice of appeal | 1401 | 1 | 540 | 540 |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **540** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5423275 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 29-MAY-2009 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:49:50 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 540 |
| RAM confirmation Number | 3217 |
| Deposit Account | 504802 |
| Authorized User | WALL,EAMON |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Notice of Appeal Filed | LCNT12709eNoticeofAppeal5_29_09.pdf | 35901 / d4265f80bf21f57cc9520cbb496e1b7bb820 8452 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 29945 / b8f252fa18084cf53e36e2af2c33d9d27aaf7 45a | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 65846 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Serial No. 11/088,073
Page 1 of 57

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case**: | R Malhotra 7 (ALU/126709) | | |
| **Serial No.**: | 11/088,073 | **Group Art Unit**: | 2416 |
| **Filed**: | March 23, 2005 | | |
| **Examiner**: | Wong, Xavier S | **Confirmation #**: | 7089 |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP APPEAL BRIEF-PATENTS**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### APPEAL BRIEF

Appellant submits this appeal brief to the Board of Patent Appeals and Interferences on appeal from the decision of the Examiner of Group Art Unit 2613 mailed March 4, 2009 finally rejecting claims 1-8 and 10-18.

In the event that an extension of time is required for this appeal brief to be considered timely, and a petition therefor does not otherwise accompany this appeal brief, any necessary extension of time is hereby petitioned for.

Appellant believes the only fee due is the **$540** Appeal Brief fee which is being charged to counsel's credit card.  In the event Appellant is incorrect, the Commissioner is authorized to charge any other fees to Deposit Account No. 50-4802/**ALU/126709**.

1012180_1

Serial No. 11/088,073
Page 2 of 57

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | Identification Page………………………………………………… | 1 |
| 2. | Table of Contents ………………………………………………..... | 2 |
| 3. | Real Party in Interest …………………………………………..... | 3 |
| 4. | Related Appeals and Interferences …………………….......... | 4 |
| 5. | Status of Claims …………………………………………………... | 5 |
| 6. | Status of Amendments ………………………………………….... | 6 |
| 7. | Summary of Claimed Subject Matter ………………………….... | 7 |
| 8. | Grounds of Rejection to be Reviewed on Appeal ……………….……... | 10 |
| 9. | Arguments …………………………………………………….... | 11 |
| 10. | Conclusion …………………………………………………….... | 52 |
| 11. | Claims Appendix …………………………………………………... | 53 |
| 12. | Evidence Appendix ………………………………………………... | 56 |
| 13. | Related Proceedings Appendix ……………………………….......... | 57 |

Serial No. 11/088,073
Page 3 of 57

## **REAL PARTY IN INTEREST**

The real party in interest is ALCATEL-LUCENT. The assignee of record is LUCENT TECHNOLOGIES INC, which merged with ALCATEL to form ALCATEL-LUCENT.

Serial No. 11/088,073
Page 4 of 57

## <u>RELATED APPEALS AND INTERFERENCES</u>

Appellant asserts that no appeals or interferences are known to Appellant, Appellant's legal representative, or assignee which will directly affect or be directly affected by or have a bearing on the Board's decision in the pending appeal.

Serial No. 11/088,073
Page 5 of 57

# STATUS OF CLAIMS

Claims 1-8 and 10-18 are pending in the application.  Claims 1-18 were originally presented in the application. Claims 1, 3, 10 and 12-18 have been amended.  Claim 9 has been canceled.  The final rejection of claims 1-8 and 10-18 is appealed.

Serial No. 11/088,073
Page 6 of 57

## STATUS OF AMENDMENTS

All claim amendments have been entered.

## SUMMARY OF CLAIMED SUBJECT MATTER

Embodiments of the present invention include a method, computer readable medium, and apparatus for providing data flow control in a network using a congestion message.

In one embodiment, a method includes detecting a congestion condition at a network node in the network and sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition. The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

In one embodiment, a computer readable medium contains a program which, when executed, performs a method including detecting a congestion condition at a network node in the network and sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition. The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

In one embodiment, an apparatus includes means for detecting a congestion condition at a network node in the network and means for sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition. The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

For the convenience of the Board of Patent Appeals and Interferences, Appellant's independent claims 1, 17, and 18 are presented below with citations to various figures and appropriate citations to at least one portion of the Specification for elements of the appealed claims.

Serial No. 11/088,073
Page 8 of 57

Claim 1 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

1.      (previously presented) A method (300) for data flow control in a network (100, 200), comprising: (FIGs. 1-3; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16)

detecting (303) a congestion condition at a network node (102) in the network (100, 200); and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)

sending (304, 306, 308) a congestion message from the network node (102) at which the congestion condition is detected to one or more network nodes (102) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)

wherein said congestion message comprises address information of at least one end-node (102) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Claim 17 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

17.      (previously presented) A computer readable medium (436) containing a program (432, 438) which, when executed, performs an operation of controlling data flow in a network (100, 200) comprising: (FIGs. 1-4; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16; Pg. 9, Lines 9 – 31)

detecting (303) a congestion condition at a network node (106) in the network; and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)

sending (304, 306, 308) a congestion message from the network node (106) at which the congestion condition is detected to one or more network nodes (106) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)

Serial No. 11/088,073
Page 9 of 57

wherein said congestion message comprises address information of at least one end-node (102) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Claim 18 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

18.    (previously presented) Apparatus (102) for controlling flow of data in a network (100, 200) comprising: (FIGs. 1-4; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16; Pg. 9, Lines 9 – 31)

means for detecting (424) a congestion condition at a network node (102) in the network (100, 200); and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)

means for sending (424) a congestion message from the network node (102) at which the congestion condition is detected to one or more network nodes (102) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)

wherein said congestion message comprises address information of at least one end-node (106) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Serial No. 11/088,073
Page 10 of 57

## GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto et al. (US 2003/0076781 A1, hereinafter "Enomoto").

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Paul et al. (US 6,148,005, "Paul").

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami et al. (US 2002/0136163 A1, hereinafter "Kawakami").

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, hereinafter "Lee").

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, hereinafter "Bare").

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal et al (U.S. 2003/0081546 A1, hereinafter "Agrawal").

1012180_1

# **ARGUMENTS**

## I.    **Rejection of Claims 1, 2, 3, 6, 17 and 18 Under 35 U.S.C. 102(b)**

### **A. Claims 1, 2, 3, and 6**

Claims 1, 2, 3, and 6 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

#### ***1. Response to Rejection in Final Office Action***

Claims 1, 2, 3, and 6 are rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claim, arranged as in the claim.

Appellant respectfully submits that Enomoto fails to anticipate Appellant's claim 1, because Enomoto fails to disclose each and every element of Appellant's independent claim 1, as arranged in independent claim 1.

Namely, Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one *end-node* associated with the congestion condition," as claimed in Appellant's claim 1.

Enomoto discloses a congestion control system including a plurality of congestion control nodes A1 – A4 and a plurality of client groups C1 – C4. The congestion control nodes A1 – A4 communicate using a pair of unidirectional rings. Each client group C1 – C4 is associated with one of the congestion control nodes C1 – C4, respectively. Each client group includes one or more clients. (See Enomoto, Figure 1, Para. [0103] – [0107]).

As disclosed in Enomoto, a congestion control node, in response to detecting a congestion condition, generates a congestion notification and sends the congestion notification to other congestion control nodes. (See Enomoto, Abstract, Para. [0047]).

Serial No. 11/088,073
Page 12 of 57

As further disclosed in Enomoto, the congestion notification includes an allowable bandwidth amount and the <u>address/identifier of the congestion control node that generates the congestion notification</u>.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a congestion notification *sender*</u>." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification includes an address of the node that generates and sends the congestion notification, which, in the system of Enomoto, is the <u>congestion control node</u>. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one *end-node* associated with a congestion condition</u>, as claimed in Appellant's claim 1.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>," as claimed in Appellant's claim 1.

## *2. Response to Examiner's Arguments in Claim Rejections Section of Final Office Action*

In the Claim Rejections Section of the Final Office Action, the Examiner fails to establish that Enomoto anticipates Appellant's claim 1, because the Examiner fails to address each and every limitation of Appellant's claim 1.

Namely, in attempting to establish that that Enomoto anticipates Appellant's claim 1, the Examiner appears to refer to a limitation that is not present in Appellant's claim 1, while at the same time failing to address the relevant limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 1.

Specifically, in attempting to map portions of Enomoto onto Appellant's claim 1, the Examiner states "…said congestion message adapted to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition ([0154], 156 & 158]); wherein address information is learned of at least one end-node associated with the congestion condition ([0402 & 406]; fig. 8)." (Final Office Action, Pg. 2 – 3).

First, Appellant notes that the limitation attributed to Appellant's claim 1 by the Examiner is not present in claim 1. Namely, claim 1 does not include a limitation of "wherein address information is learned of at least one end-node associated with the congestion condition."

Second, Appellant notes that, in explaining the rejection, the Examiner fails to address the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 1. The Examiner does not even mention this limitation, much less cite portions of Enomoto which the Examiner believes disclose this limitation or provide reasoning as to how Enomoto may be considered to disclose this limitation.

Thus, at least for these reasons, Appellant submits that the Examiner has failed to establish that Enomoto anticipates Appellant's claim 1, because the Examiner fails to address each and every limitation of Appellant's claim 1.

Furthermore, Appellant notes that each of the portions of Enomoto cited by the Examiner in the Claim Rejections Section of the Final Office Action (namely, Para. [0154], [0156], [0158], [0402], and [0406]) fails to teach or suggest the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 1.

The first cited portion of Enomoto (Para. [0154]) describes the portions of a congestion control node that detect congestion and notify other congestion control nodes of the detected congestion. This portion is devoid of any teaching or suggestion regarding the content of a congestion notification, much less that a congestion notification includes address information of at least one end-node associated with the congestion condition.

The second cited portion of Enomoto (Para. [0156]) states that a transfer processing part of a congestion control node acts as a determining arrangement for

determining an estimated flow as a restriction candidate flow for restricting a transmission amount. This portion of Enomoto is devoid of any teaching or suggestion of the content of a congestion notification, much less that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The third cited portion of Enomoto (Para. [0158]) describes components of a congestion control node, and the associated operation of those components in generating a control command for instructing restriction of communication for other congestion control nodes and transmitting the control command to the other congestion control nodes. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The fourth cited portion of Enomoto (Para. [0402]) states that a congestion notification reception transfer part of a congestion control node "...refers the <u>notification generation node address</u> included in the congestion notification...." (Enomot, Para. [0402], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>node that generates the notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The fifth cited portion of Enomoto (Para. [0406]) states that a congestion notification reception transfer part of a congestion control node "...identifies a congestion section from ID of the <u>generation source node of notification</u>...." (Enomot, Para. [0406], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>notification generation node which is the source of the congestion notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

As described hereinabove, Enomoto clearly discloses that a congestion notification includes an address of the node that generates and sends the congestion notification which, in the system of Enomoto, is the <u>congestion control node</u>.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 1.

### 3. Response to Examiner's Primary Argument in Response to Arguments Section of Final Office Action and Advisory Action

In the Response to Arguments Section of the Final Office Action, the Examiner stated that "Enomoto does mention a congestion notification identifies 'a congestion section from ID of the generation source (e.g. end-node) node of notification and ID of the adjacent node…[0406].'" (Final Office Action, Pg. 2). Then, in the Advisory Action, citing the same portion of Enomoto, the Examiner, citing that portion of Enomoto, concluded that "…through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3).

In response, Appellant notes that, due to the Examiner's failure to elaborate on the argument in the Final Office Action, Appellant first interpreted the Examiner's statement in the Response to Arguments Section of the Final Office Action to be a statement that the congestion control node of Enomoto is an end-node as recited in Appellant's claim 1. Thus, in Appellant's Response, dated May 4, 2009, to the Final Office Action, Appellant addressed the Examiner's statement in Response to Arguments Section of the Final Office Action by showing that the congestion control node of Enomoto is not an end-node as recited in Appellant's claim 1. However, based on the additional arguments provided by the Examiner in the Advisory Action, Appellant submits that the Examiner's statement in the Response to Arguments Section of the Final Office Action appears to have been an attempt by the Examiner to show that Enomoto discloses that an identifier of a source node (a client of Enomoto, which the Examiner appears to equate to an end-node of Appellant's claim 1) is included in a congestion notification generated by a

congestion control node. Appellant has not yet addressed this second interpretation of the Examiner's statement in the Response to Arguments Section of the Final Office Action.

As such, given the two different potential interpretations of the Examiner's arguments, for the purposes of completeness the Appellant addresses each of these two interpretations hereinbelow.

*Appellant's Response Based on First Interpretation of Primary Argument*

With respect to the first interpretation of the Examiner's arguments (assuming *arguendo* that this interpretation is the one which the Examiner intended), Appellant respectfully submits that the Examiner, in judging the patentability of Appellant's claim 1 against Enomoto, has interpreted the limitations of Appellant's claim 1 in an unreasonably broad manner that is inconsistent with Appellant's specification, and, thus, that the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 1.

Appellant notes that the standard for claim interpretation during the examination of a patent application is that "claims ... are to be given their broadest reasonable interpretation consistent with the specification, *and* ... claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1365; 70 U.S.P.Q. 2D (BNA) 1827 (Fed. Cir. 2004), citing *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) and *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir.1999).

Appellant respectfully submits that the Examiner unreasonably generalizes the term "end-node" to include network nodes and then, on the basis of this unreasonable generalization, concludes that the congestion notification node of Enomoto discloses the end-node of Appellant's claim 1. Appellant respectfully submits that such an interpretation is improper and, thus, cannot support a rejection of Appellant's claim 1 in view of Enomoto.

Appellant notes that Appellant's application, including Appellant's specification, drawings, and claims, distinguishes between network nodes (identified in Appellant's application using reference number 102) and end-nodes (identified in Appellant's application using reference number 106).

Serial No. 11/088,073
Page 17 of 57

Appellant's specification clearly distinguishes between network nodes and end-nodes.

For example, Appellant's specification states that:

"[t]he nodes $102_N$ represent specific network devices such as bridges, switches, routers, and hubs/repeaters (not shown). Data generated by end users of the network devices 106 travels across the network 100 to other end users via the physical medium and the nodes, which perform the processing necessary to ensure the data arrives in a usable condition to the proper recipient.

[Appellant's Specification, Pg. 4, Lines 4-9]

Similarly, for example, Appellant's specification states that:

"[s]pecifically, the plurality of nodes $102_N$ are linearly connected with the distinction of a break 108 (see FIG. 1) in network 100 being created to establish the new topology. In such a new topology, interconnecting links $104_N$ continue to connect the plurality of nodes $102_N$ with the exception of the link $104_{5-1}$ that would otherwise join a fifth node $102_5$ and the first node $102_1$. Network devices 106 are further represented as stations. In this particular example, and for sake of clarity, two such network devices or stations 106 are represented by call letters at each of the plurality of nodes $102_N$. Specifically, first node $102_1$ is connected to stations A and B. Second node $102_2$ is connected to stations C and D. Third node $102_3$ is connected to stations E and F. Fourth node $102_4$ is connected to stations G and H. Fifth node $102_5$ is connected to stations I and J.

In a representative example, consider that data traffic is moving from one station to another station and sharing the nodes and interconnecting links with other data traffic moving to other stations along the same nodes and links."

[Appellant's Specification, Pg. 5, Lines 4 – 20]

Similarly, for example, Appellant's specification states that:

"[i]n a first example, if the congestion message contains only a destination address (e.g., the address of a end-node/end-station G), then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node G. In a second example, if the congestion message contains an source/destination address pair (e.g., the address of nodes AB), then the upstream node or controlling entity may drop all or a certain percentage of packets sourced from node A that are destined for node B. If the source address is not known, then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node B."

[Appellant's Specification, Pg. 8, Line 33 – Pg. 9, Line 8]

Serial No. 11/088,073
Page 18 of 57

Appellant's drawings also distinguish between network nodes and end-nodes. Figure 1 depicts an exemplary network including network nodes 102 for facilitating communication between end-nodes 106. Similarly, Figure 2 depicts an exemplary network including network nodes 102 for facilitating communication between end-nodes/end-stations 106 associated with the network nodes 102.

Furthermore, Appellant's claim 1 similarly distinguishes between network nodes and end-nodes, including limitations of "detecting a congestion condition at a <u>network node</u> in the network," "sending a congestion message from the <u>network node</u> at which the congestion condition is detected to one or more <u>network nodes upstream of the congestion condition</u>," and "wherein said congestion message comprises address information of at least one <u>end-node</u> associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition."

Thus, since Appellant's specification, drawings, and claims clearly distinguish between network nodes and end-nodes, Appellant respectfully submits that the Examiner has interpreted Appellant's claim 1 in an unreasonably broad manner that is inconsistent with Appellant's specification and which fails to acknowledge the distinction between network nodes and end-nodes.

As discussed hereinabove, in rejecting Appellant's claim 1, the Examiner fails to acknowledge the distinction between network nodes and end-nodes that is present in Appellant's claim 1. More specifically, the Examiner cites the "generation source" node of Enomoto, asserting that the "generation source" node of Enomoto is the <u>end-node</u> as claimed in Appellant's claim 1. Appellant respectfully disagrees. First, Appellant submits that the "generation source" node of Enomoto referred to by the Examiner is the <u>source of the congestion notification</u> (also referred to as a "notification generation node"). This is evident from the portions of Enomoto described hereinabove, as well as from the additional portion of Enomoto relied upon by the Examiner (namely, Para. 0406), each of which states that the "generation source" of Enomoto is the <u>source of a congestion notification</u> message ("ID of the <u>generation source node</u>"). For example, Enomoto refers to "…a generation source of the congestion notification…" on multiple occasions. (See Enomoto, Para. 0360, 0362). Second, as noted hereinabove, Enomoto

discloses that the source of the congestion notification is a <u>congestion control node</u> (See Enomoto, Abstract, Para. [0047]). Third, as noted hereinabove, Enomoto clearly indicates that the congestion control nodes of Enomoto are <u>network nodes</u>, not <u>end-nodes</u>. Thus, Appellant submits that the "generation source" of Enomoto referred to by the Examiner is a <u>network node</u>, <u>not</u> an <u>end-node</u> as recited in Appellant's specification and Appellant's claim 1.

In view of the Examiner's unreasonably broad interpretation of the term "end-node" in Appellant's claim 1, and further in view of the teachings of Enomoto regarding the "generation source" node, Appellant respectfully submits that the "generation source" node of Enomoto is not an "end-node" as claimed in Appellant's claim 1 and, thus, that Enomoto fails to teach or suggest Appellant's claim 1.

Thus, since the Examiner, in judging the patentability of Appellant's claim 1 against Enomoto, has interpreted the limitations of Appellant's claim 1 in an unreasonably broad manner that is inconsistent with Appellant's specification, the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 1. Appellant submits that, using a proper interpretation of "end-node" of Appellant's claim 1, Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>," as claimed in Appellant's claim 1.

### *Appellant's Response Based on Second Interpretation of Primary Argument*

With respect to the second interpretation of the Examiner's arguments (assuming *arguendo* that this interpretation is the one which the Examiner intended), Appellant respectfully submits that the Examiner's argument fails to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 1.

As noted hereinabove, in the Advisory Action the Examiner cites a portion of Enomoto and then concludes that "...through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the

routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3). Appellant respectfully disagrees.

In response, Appellant submits the rejection of Appellant's claim 1 on this basis cannot be maintained, because the Examiner's reasoning is based on an improper parsing of Enomoto.

Contrary to the Examiner's assertion, the portion of Enomoto cited by the Examiner does not reference an ID of a "generation source node." Rather, the portion of Enomoto cited by the Examiner refers to an "ID of the generation source node of notification." (See Enomoto, Para. [0406]). In other words, the Examiner, in an attempt to support his argument, impermissibly cites only a portion of the relevant term, failing to acknowledge the last portion of the term. The entire term in Enomoto is: "ID of the generation source node of notification." Appellant submits that, taking the term as a whole, this portion of Enomoto is not referring to an identifier of the node that is the source of congestion (i.e., one of the clients); rather, this term, taken as a whole, clearly refers to the source of the congestion notification, which, as Enomoto clearly indicates, is a congestion control node.

This is confirmed by various other portions of Enomoto discussed hereinabove, such as where Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node" and that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a *congestion notification sender*." (Enomoto, Para. [0210] and [0398], Emphasis added).

Thus, contrary to the Examiner's assertion, the entire term from the cited portion of Enomoto (i.e., "ID of the generation source node of notification") does exclude the clients, because Enomoto clearly indicates that the source of a congestion notification is a congestion control node and that the congestion notification includes the ID of the congestion control node. Thus, Appellant submits that, since the Examiner's reasoning is based on an improper parsing of Enomoto, the rejection of Appellant's claim 1 on this basis cannot be maintained.

Thus, at least for these reasons, Appellant respectfully submits that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said congestion

message comprises address information of at least one end-node associated with the
congestion condition" that is recited in Appellant's claim 1.

### *4. Response to Examiner's Additional Arguments in Advisory Action*

In the Advisory Action, the Examiner provides additional arguments in support of
the assertion that Enomoto discloses the limitation of "wherein said congestion message
comprises address information of at least one end-node associated with the congestion
condition" that is recited in Appellant's claim 1. Appellant respectfully disagrees.

First, the Examiner cites a portion of Enomoto and then concludes that "...the A2
congestion control node receives packet flow from a client C2 (*end-node* or *source*) and
the A2 calculates whether the flow from C2 is causing a congestion. Packets in a flow
must have a source and destination address (emphasis added) for routing purposes in this
case, the source address is the C2 end-node address." (Advisory Action, Pg. 2).

In response, Appellant notes that the Examiner's conclusion fails to address the
relevant limitation of Appellant's claim 1. The Examiner's argument fails to establish, or
even assert for that matter, that a congestion notification generated by the congestion
control node A2 comprises address information of client C2. Rather, the Examiner's
argument merely asserts that packets of a packet flow originating from C2 include a
source address of C2. The fact that packets of a packet flow from C2 include a source
address of C2 (assuming *arguendo* that the cited portion of Enomoto does indeed teach
this) in no way teaches or suggests inclusion of a source address of C2 in a congestion
notification generated by congestion control node A2. Additionally, Appellant notes that
the portion of Enomoto cited by the Examiner in support of this argument (namely, Para.
[0295]) is devoid of any teaching or suggestion that the congestion notification generated
by congestion control node A2 includes a source address of client C2. The cited portion
of Enomoto is silent regarding the content of the congestion notification; rather, the cited
portion merely includes a general statement indicating that congestion control node A2
transmits a congestion notification to congestion control node A3. Thus, the cited portion
of Enomoto, and the Examiner's associated arguments, fail to establish that Enomoto
discloses the limitation of "wherein said congestion message comprises address

information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 1.

Second, the Examiner cites a portion of Enomoto and then concludes that "…a client (*end-node* or *source*) in question of causing a congestion is being accounted for and information is being recorded in a routing table wherein routing table *must* contain at least a source and destination address (emphasis added), including the client node in question." (Advisory Action, Pg. 3).

In response, Appellant notes that, again, the Examiner's conclusion fails to address the relevant limitation of Appellant's claim 1. The Examiner's argument fails to establish, or even assert for that matter, that a <u>congestion notification</u> generated by the congestion control node A2 comprises address information of client C2. Rather, the Examiner's argument merely asserts that a client in question of causing congestion is being accounted for in a routing table. The fact that a client is accounted for in a routing table (assuming *arguendo* that the cited portion of Enomoto does indeed teach this) in no way teaches or suggests inclusion of a source address of a client in a <u>congestion notification</u> generated by congestion control node. Similarly, the fact that a routing table includes address information for a client in no way teaches or suggests inclusion of a source address of client in a <u>congestion notification</u> generated by congestion control node. Additionally, Appellant notes that the portion of Enomoto cited by the Examiner in support of this argument (namely, Para. [0123] and [0155]) is devoid of any teaching or suggestion that the congestion notification generated by a congestion control node includes a source address of a client. The cited portion of Enomoto is silent regarding the content of the congestion notification; rather, the cited portion merely includes a general statement indicating that congestion control node A2 transmits a congestion notification to congestion control node A3. Thus, the cited portion of Enomoto, and the Examiner's associated arguments, clearly fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 1.

Third, as noted hereinabove in Appellant's response to the Examiner's primary argument, the Examiner cites a portion of Enomoto and then concludes that "…through the routing table, a congestion notification reception transfer part identifies an ID of a

congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3). Appellant has shown hereinabove that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 1.

Thus, these additional arguments provided by the Examiner in the Advisory Action fail to establish that Enomoto discloses the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 1.

### 5.    *Conclusion*

Thus, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 1.

As such, independent claim 1 is patentable under 35 U.S.C. 102(b) over Enomoto. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is patentable under 35 U.S.C. 102(b) over Enomoto.

Therefore, the rejection should be withdrawn.

### B.  Claim 17

Claim 17 is rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Appellant's independent claim 17 includes limitations similar to the limitations of Appellant's independent claim 1. As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's independent claim 1.  Accordingly, Appellant

Serial No. 11/088,073
Page 24 of 57

respectfully submits that Enomoto also fails to teach or suggest all of the elements of Appellant's independent claim 17.

Thus, Appellant submits that Appellant's independent claim 17 is allowable over Enomoto at least for the same reasons provided hereinabove with respect to Appellant's independent claim 1. Appellant discuss these reasons again hereinbelow with respect to Appellant's independent claim 17.

### *1. Response to Rejection in Final Office Action*

Claim 17 is rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claim, arranged as in the claim.

Appellant respectfully submits that Enomoto fails to anticipate Appellant's claim 17, because Enomoto fails to disclose each and every element of Appellant's independent claim 17, as arranged in independent claim 17.

Namely, Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one *end-node* associated with the congestion condition," as claimed in Appellant's claim 17.

Enomoto discloses a congestion control system including a plurality of congestion control nodes A1 – A4 and a plurality of client groups C1 – C4. The congestion control nodes A1 – A4 communicate using a pair of unidirectional rings. Each client group C1 – C4 is associated with one of the congestion control nodes C1 – C4, respectively. Each client group includes one or more clients. (See Enomoto, Figure 1, Para. [0103] – [0107]).

As disclosed in Enomoto, a congestion control node, in response to detecting a congestion condition, generates a congestion notification and sends the congestion notification to other congestion control nodes. (See Enomoto, Abstract, Para. [0047]).

As further disclosed in Enomoto, the congestion notification includes an allowable bandwidth amount and the address/identifier of the congestion control node that generates the congestion notification.

1012180_1

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a congestion notification sender." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification includes an address of the node that generates and sends the congestion notification, which, in the system of Enomoto, is the congestion control node. Enomoto is devoid of any teaching or suggestion that a congestion message includes address information of at least one end-node associated with a congestion condition, as claimed in Appellant's claim 17.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 17.

## 2. Response to Examiner's Arguments in Claim Rejections Section of Final Office Action

In the Claim Rejections Section of the Final Office Action, the Examiner fails to establish that Enomoto anticipates Appellant's claim 17, because the Examiner fails to address each and every limitation of Appellant's claim 17.

Namely, in attempting to establish that that Enomoto anticipates Appellant's claim 17, the Examiner appears to refer to a limitation that is not present in Appellant's claim 17, while at the same time failing to address the relevant limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 17.

Specifically, in attempting to map portions of Enomoto onto Appellant's claim 17, the Examiner states "...said congestion message adapted to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition ([0154],

156 & 158]); wherein address information is learned of at least one end-node associated with the congestion condition ([0402 & 406]; fig. 8)." (Final Office Action, Pg. 2 – 3).

First, Appellant notes that the limitation attributed to Appellant's claim 17 by the Examiner is not present in claim 17.  Namely, claim 17 does not include a limitation of "wherein address information is learned of at least one end-node associated with the congestion condition."

Second, Appellant notes that, in explaining the rejection, the Examiner fails to address the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 17.  The Examiner does not even mention this limitation, much less cite portions of Enomoto which the Examiner believes disclose this limitation or provide reasoning as to how Enomoto may be considered to disclose this limitation.

Thus, at least for these reasons, Appellant submits that the Examiner has failed to establish that Enomoto anticipates Appellant's claim 17, because the Examiner fails to address each and every limitation of Appellant's claim 17.

Furthermore, Appellant notes that each of the portions of Enomoto cited by the Examiner in the Claim Rejections Section of the Final Office Action (namely, Para. [0154], [0156], [0158], [0402], and [0406]) fails to teach or suggest the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 17.

The first cited portion of Enomoto (Para. [0154]) describes the portions of a congestion control node that detect congestion and notify other congestion control nodes of the detected congestion.  This portion is devoid of any teaching or suggestion regarding the content of a congestion notification, much less that a congestion notification includes address information of at least one end-node associated with the congestion condition.

The second cited portion of Enomoto (Para. [0156]) states that a transfer processing part of a congestion control node acts as a determining arrangement for determining an estimated flow as a restriction candidate flow for restricting a transmission amount.  This portion is devoid of any teaching or suggestion of the content

of a congestion notification, much less that a congestion notification includes <u>address</u> <u>information of at least one end-node associated with the congestion condition</u>.

The third cited portion of Enomoto (Para. [0158]) describes components of a congestion control node, and the associated operation of those components in generating a control command for instructing restriction of communication for other congestion control nodes and transmitting the control command to the other congestion control nodes. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The fourth cited portion of Enomoto (Para. [0402]) states that a congestion notification reception transfer part of a congestion control node "…refers the <u>notification</u> <u>generation node address</u> included in the congestion notification…." (Enomot, Para. [0402], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>node that generates the notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address</u> <u>information of at least one end-node associated with the congestion condition</u>.

The fifth cited portion of Enomoto (Para. [0406]) states that a congestion notification reception transfer part of a congestion control node "…identifies a congestion section from ID of the <u>generation source node of notification</u>…." (Enomot, Para. [0406], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>notification generation node which is the source of the congestion</u> <u>notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-</u> <u>node associated with the congestion condition</u>.

As described hereinabove, Enomoto clearly discloses that a congestion notification includes an address of the node that generates and sends the congestion notification which, in the system of Enomoto, is the <u>congestion control node</u>.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address</u>

Serial No. 11/088,073
Page 28 of 57

information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 17.

### *3. Response to Examiner's Primary Argument in Response to Arguments Section of Final Office Action and Advisory Action*

In the Response to Arguments Section of the Final Office Action, the Examiner stated that "Enomoto does mention a congestion notification identifies 'a congestion section from ID of the generation <u>source</u> (e.g. <u>end-node</u>) <u>node</u> of notification and ID of the adjacent node…[0406].'" (Final Office Action, Pg. 2). Then, in the Advisory Action, citing the same portion of Enomoto, the Examiner, citing that portion of Enomoto, concluded that "…through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3).

In response, Appellant notes that, due to the Examiner's failure to elaborate on the argument in the Final Office Action, Appellant first interpreted the Examiner's statement in the Response to Arguments Section of the Final Office Action to be a statement that the congestion control node of Enomoto is an end-node as recited in Appellant's claim 17. Thus, in Appellant's Response, dated May 4, 2009, to the Final Office Action, Appellant addressed the Examiner's statement in Response to Arguments Section of the Final Office Action by showing that the congestion control node of Enomoto is not an end-node as recited in Appellant's claim 17. However, based on the additional arguments provided by the Examiner in the Advisory Action, Appellant submits that the Examiner's statement in the Response to Arguments Section of the Final Office Action appears to have been an attempt by the Examiner to show that Enomoto discloses that an identifier of a source node (a client of Enomoto, which the Examiner appears to equate to an end-node of Appellant's claim 17) is included in a congestion notification generated by a congestion control node. Appellant has not yet addressed this second interpretation of the Examiner's statement in the Response to Arguments Section of the Final Office Action.

1012180_1

As such, given the two different potential interpretations of the Examiner's arguments, for the purposes of completeness the Appellant addresses each of these two interpretations hereinbelow.

### *Appellant's Response Based on First Interpretation of Primary Argument*

With respect to the first interpretation of the Examiner's arguments (assuming *arguendo* that this interpretation is the one which the Examiner intended), Appellant respectfully submits that the Examiner, in judging the patentability of Appellant's claim 17 against Enomoto, has interpreted the limitations of Appellant's claim 17 in an unreasonably broad manner that is inconsistent with Appellant's specification, and, thus, that the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 17.

Appellant notes that the standard for claim interpretation during the examination of a patent application is that "claims ... are to be given their broadest reasonable interpretation consistent with the specification, *and* ... claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1365; 70 U.S.P.Q. 2D (BNA) 1827 (Fed. Cir. 2004), citing *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) and *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir.1999).

Appellant respectfully submits that the Examiner unreasonably generalizes the term "end-node" to include network nodes and then, on the basis of this unreasonable generalization, concludes that the congestion notification node of Enomoto discloses the end-node of Appellant's claim 17.   Appellant respectfully submits that such an interpretation is improper and, thus, cannot support a rejection of Appellant's claim 17 in view of Enomoto.

Appellant notes that Appellant's application, including Appellant's specification, drawings, and claims, distinguishes between network nodes (identified in Appellant's application using reference number 102) and end-nodes (identified in Appellant's application using reference number 106).

Appellant's specification clearly distinguishes between network nodes and end-nodes.

Serial No. 11/088,073
Page 30 of 57

For example, Appellant's specification states that:

"[t]he nodes $102_N$ represent specific network devices such as bridges, switches, routers, and hubs/repeaters (not shown). Data generated by end users of the network devices 106 travels across the network 100 to other end users via the physical medium and the nodes, which perform the processing necessary to ensure the data arrives in a usable condition to the proper recipient.
[Appellant's Specification, Pg. 4, Lines 4-9]

Similarly, for example, Appellant's specification states that:

"[s]pecifically, the plurality of nodes $102_N$ are linearly connected with the distinction of a break 108 (see FIG. 1) in network 100 being created to establish the new topology. In such a new topology, interconnecting links $104_N$ continue to connect the plurality of nodes $102_N$ with the exception of the link $104_{5-1}$ that would otherwise join a fifth node $102_5$ and the first node $102_1$. Network devices 106 are further represented as stations. In this particular example, and for sake of clarity, two such network devices or stations 106 are represented by call letters at each of the plurality of nodes $102_N$. Specifically, first node $102_1$ is connected to stations A and B. Second node $102_2$ is connected to stations C and D. Third node $102_3$ is connected to stations E and F. Fourth node $102_4$ is connected to stations G and H. Fifth node $102_5$ is connected to stations I and J.

In a representative example, consider that data traffic is moving from one station to another station and sharing the nodes and interconnecting links with other data traffic moving to other stations along the same nodes and links."
[Appellant's Specification, Pg. 5, Lines 4 – 20]

Similarly, for example, Appellant's specification states that:

"[i]n a first example, if the congestion message contains only a destination address (e.g., the address of a end-node/end-station G), then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node G. In a second example, if the congestion message contains an source/destination address pair (e.g., the address of nodes AB), then the upstream node or controlling entity may drop all or a certain percentage of packets sourced from node A that are destined for node B. If the source address is not known, then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node B."
[Appellant's Specification, Pg. 8, Line 33 – Pg. 9, Line 8]

Appellant's drawings also distinguish between network nodes and end-nodes. Figure 1 depicts an exemplary network including network nodes 102 for facilitating communication between end-nodes 106. Similarly, Figure 2 depicts an exemplary

network including network nodes 102 for facilitating communication between end-nodes/end-stations 106 associated with the network nodes 102.

Furthermore, Appellant's claim 17 similarly distinguishes between network nodes and end-nodes, including limitations of "detecting a congestion condition at a <u>network node</u> in the network," "sending a congestion message from the <u>network node</u> at which the congestion condition is detected to one or more <u>network nodes upstream of the congestion condition</u>," and "wherein said congestion message comprises address information of at least one <u>end-node</u> associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition."

Thus, since Appellant's specification, drawings, and claims clearly distinguish between network nodes and end-nodes, Appellant respectfully submits that the Examiner has interpreted Appellant's claim 17 in an unreasonably broad manner that is inconsistent with Appellant's specification and which fails to acknowledge the distinction between network nodes and end-nodes.

As discussed hereinabove, in rejecting Appellant's claim 17, the Examiner fails to acknowledge the distinction between network nodes and end-nodes that is present in Appellant's claim 17. More specifically, the Examiner cites the "generation source" node of Enomoto, asserting that the "generation source" node of Enomoto is the <u>end-node</u> as claimed in Appellant's claim 17. Appellant respectfully disagrees. First, Appellant submits that the "generation source" node of Enomoto referred to by the Examiner is the <u>source of the congestion notification</u> (also referred to as a "notification generation node"). This is evident from the portions of Enomoto described hereinabove, as well as from the additional portion of Enomoto relied upon by the Examiner (namely, Para. 0406), each of which states that the "generation source" of Enomoto is the <u>source of a congestion notification message</u> ("ID of the <u>generation source node</u>"). For example, Enomoto refers to "...a generation source of the congestion notification..." on multiple occasions. (See Enomoto, Para. 0360, 0362). Second, as noted hereinabove, Enomoto discloses that the source of the congestion notification is a <u>congestion control node</u> (See Enomoto, Abstract, Para. [0047]). Third, as noted hereinabove, Enomoto clearly indicates that the congestion control nodes of Enomoto are <u>network nodes</u>, not <u>end-nodes</u>. Thus,

Appellant submits that the "generation source" of Enomoto referred to by the Examiner is a <u>network node</u>, <u>not</u> an <u>end-node</u> as recited in Appellant's specification and Appellant's claim 17.

In view of the Examiner's unreasonably broad interpretation of the term "end-node" in Appellant's claim 17, and further in view of the teachings of Enomoto regarding the "generation source" node, Appellant respectfully submits that the "generation source" node of Enomoto is not an "end-node" as claimed in Appellant's claim 17 and, thus, that Enomoto fails to teach or suggest Appellant's claim 17.

Thus, since the Examiner, in judging the patentability of Appellant's claim 17 against Enomoto, has interpreted the limitations of Appellant's claim 17 in an unreasonably broad manner that is inconsistent with Appellant's specification, the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 17.   Appellant submits that, using a proper interpretation of "end-node" of Appellant's claim 17, Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>," as claimed in Appellant's claim 17.

### _Appellant's Response Based on Second Interpretation of Primary Argument_

With respect to the second interpretation of the Examiner's arguments (assuming _arguendo_ that this interpretation is the one which the Examiner intended), Appellant respectfully submits that the Examiner's argument fails to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17.

As noted hereinabove, in the Advisory Action the Examiner cites a portion of Enomoto and then concludes that "...through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3).   Appellant respectfully disagrees.

In response, Appellant submits the rejection of Appellant's claim 17 on this basis cannot be maintained, because the Examiner's reasoning is based on an improper parsing of Enomoto.

Contrary to the Examiner's assertion, the portion of Enomoto cited by the Examiner does not reference an ID of a "generation source node." Rather, the portion of Enomoto cited by the Examiner refers to an "ID of the generation source node of notification." (See Enomoto, Para. [0406]). In other words, the Examiner, in an attempt to support his argument, impermissibly cites only a portion of the relevant term, failing to acknowledge the last portion of the term. The entire term in Enomoto is: "ID of the generation source node of notification." Appellant submits that, taking the term as a whole, this portion of Enomoto is not referring to an identifier of the node that is the source of congestion (i.e., one of the clients); rather, this term, taken as a whole, clearly refers to the source of the congestion notification, which, as Enomoto clearly indicates, is a congestion control node.

This is confirmed by various other portions of Enomoto discussed hereinabove, such as where Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node" and that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a *congestion notification sender*." (Enomoto, Para. [0210] and [0398], Emphasis added).

Thus, contrary to the Examiner's assertion, the entire term from the cited portion of Enomoto (i.e., "ID of the generation source node of notification") does exclude the clients, because Enomoto clearly indicates that the source of a congestion notification is a congestion control node and that the congestion notification includes the ID of the congestion control node. Thus, Appellant submits that, since the Examiner's reasoning is based on an improper parsing of Enomoto, the rejection of Appellant's claim 17 on this basis cannot be maintained.

Thus, at least for these reasons, Appellant respectfully submits that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 17.

### *4. Response to Examiner's Additional Arguments in Advisory Action*

In the Advisory Action, the Examiner provides additional arguments in support of the assertion that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17. Appellant respectfully disagrees.

First, the Examiner cites a portion of Enomoto and then concludes that "...the A2 congestion control node receives packet flow from a client C2 (*end-node* or *source*) and the A2 calculates whether the flow from C2 is causing a congestion. Packets in a flow must have a source and destination address (emphasis added) for routing purposes in this case, the source address is the C2 end-node address." (Advisory Action, Pg. 2).

In response, Appellant notes that the Examiner's conclusion fails to address the relevant limitation of Appellant's claim 17. The Examiner's argument fails to establish, or even assert for that matter, that a <u>congestion notification</u> generated by the congestion control node A2 comprises address information of client C2. Rather, the Examiner's argument merely asserts that <u>packets of a packet flow</u> originating from C2 include a source address of C2. The fact that packets of a packet flow from C2 include a source address of C2 (assuming *arguendo* that the cited portion of Enomoto does indeed teach this) in no way teaches or suggests inclusion of a source address of C2 in a congestion notification generated by congestion control node A2. Additionally, Appellant notes that the portion of Enomoto cited by the Examiner in support of this argument (namely, Para. [0295]) is devoid of any teaching or suggestion that the congestion notification generated by congestion control node A2 includes a source address of client C2. The cited portion of Enomoto is silent regarding the content of the congestion notification; rather, the cited portion merely includes a general statement indicating that congestion control node A2 transmits a congestion notification to congestion control node A3. Thus, the cited portion of Enomoto, and the Examiner's associated arguments, fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17.

Second, the Examiner cites a portion of Enomoto and then concludes that "…a client (*end-node* or *source*) in question of causing a congestion is being accounted for and information is being recorded in a routing table wherein routing table *must* contain at least a source and destination address (emphasis added), including the client node in question." (Advisory Action, Pg. 3).

In response, Appellant notes that, again, the Examiner's conclusion fails to address the relevant limitation of Appellant's claim 17. The Examiner's argument fails to establish, or even assert for that matter, that a <u>congestion notification</u> generated by the congestion control node A2 comprises address information of client C2. Rather, the Examiner's argument merely asserts that a client in question of causing congestion is being accounted for in a routing table. The fact that a client is accounted for in a routing table (assuming *arguendo* that the cited portion of Enomoto does indeed teach this) in no way teaches or suggests inclusion of a source address of a client in a <u>congestion notification</u> generated by congestion control node. Similarly, the fact that a routing table includes address information for a client in no way teaches or suggests inclusion of a source address of client in a <u>congestion notification</u> generated by congestion control node. Additionally, Appellant notes that the portion of Enomoto cited by the Examiner in support of this argument (namely, Para. [0123] and [0155]) is devoid of any teaching or suggestion that the congestion notification generated by a congestion control node includes a source address of a client. The cited portion of Enomoto is silent regarding the content of the congestion notification; rather, the cited portion merely includes a general statement indicating that congestion control node A2 transmits a congestion notification to congestion control node A3. Thus, the cited portion of Enomoto, and the Examiner's associated arguments, clearly fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17.

Third, as noted hereinabove in Appellant's response to the Examiner's primary argument, the Examiner cites a portion of Enomoto and then concludes that "…through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and

destination addresses of the clients are recorded." (Advisory Action, Pg. 3). Appellant has shown hereinabove that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17.

Thus, these additional arguments provided by the Examiner in the Advisory Action fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 17.

### *5.     Conclusion*

Thus, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 17.

As such, independent claim 17 is patentable under 35 U.S.C. 102(b) over Enomoto. Therefore, the rejection should be withdrawn.

### C. Claim 18

Claim 18 is rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Appellant's independent claim 17 includes limitations similar to the limitations of Appellant's independent claim 1. As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's independent claim 1. Accordingly, Appellant respectfully submits that Enomoto also fails to teach or suggest all of the elements of Appellant's independent claim 17.

Thus, Appellant submits that Appellant's independent claim 17 is allowable over Enomoto at least for the same reasons provided hereinabove with respect to Appellant's independent claim 1. Appellant discuss these reasons again hereinbelow with respect to Appellant's independent claim 17.

### *1. Response to Rejection in Final Office Action*

Claim 18 is rejected under 35 U.S.C. 102(b) as being anticipated by Enomoto. The rejection is traversed.

Anticipation requires the presence in a single prior art disclosure of each and every element of the claim, arranged as in the claim.

Appellant respectfully submits that Enomoto fails to anticipate Appellant's claim 18, because Enomoto fails to disclose each and every element of Appellant's independent claim 1, as arranged in independent claim 18.

Namely, Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one *end-node* associated with the congestion condition," as claimed in Appellant's claim 18.

Enomoto discloses a congestion control system including a plurality of congestion control nodes A1 – A4 and a plurality of client groups C1 – C4. The congestion control nodes A1 – A4 communicate using a pair of unidirectional rings. Each client group C1 – C4 is associated with one of the congestion control nodes C1 – C4, respectively. Each client group includes one or more clients. (See Enomoto, Figure 1, Para. [0103] – [0107]).

As disclosed in Enomoto, a congestion control node, in response to detecting a congestion condition, generates a congestion notification and sends the congestion notification to other congestion control nodes. (See Enomoto, Abstract, Para. [0047]).

As further disclosed in Enomoto, the congestion notification includes an allowable bandwidth amount and the address/identifier of the congestion control node that generates the congestion notification.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a congestion notification *sender*." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification includes an address of the node that generates and sends the congestion notification, which, in the system of Enomoto, is the <u>congestion control node</u>. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one *end-node* associated with a congestion condition</u>, as claimed in Appellant's claim 18.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>," as claimed in Appellant's claim 18.

## 2. *Response to Examiner's Arguments in Claim Rejections Section of Final Office Action*

In the Claim Rejections Section of the Final Office Action, the Examiner fails to establish that Enomoto anticipates Appellant's claim 18, because the Examiner fails to address each and every limitation of Appellant's claim 18.

Namely, in attempting to establish that that Enomoto anticipates Appellant's claim 18, the Examiner appears to refer to a limitation that is not present in Appellant's claim 18, while at the same time failing to address the relevant limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 18.

Specifically, in attempting to map portions of Enomoto onto Appellant's claim 18, the Examiner states "...said congestion message adapted to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition ([0154], 156 & 158]); wherein address information is learned of at least one end-node associated with the congestion condition ([0402 & 406]; fig. 8)." (Final Office Action, Pg. 2 – 3).

First, Appellant notes that the limitation attributed to Appellant's claim 18 by the Examiner is not present in claim 18. Namely, claim 18 does not include a limitation of "wherein address information is learned of at least one end-node associated with the congestion condition."

Second, Appellant notes that, in explaining the rejection, the Examiner fails to address the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is present in Appellant's claim 18. The Examiner does not even mention this limitation, much less cite portions of Enomoto which the Examiner believes disclose this limitation or provide reasoning as to how Enomoto may be considered to disclose this limitation.

Thus, at least for these reasons, Appellant submits that the Examiner has failed to establish that Enomoto anticipates Appellant's claim 18, because the Examiner fails to address each and every limitation of Appellant's claim 18.

Furthermore, Appellant notes that each of the portions of Enomoto cited by the Examiner in the Claim Rejections Section of the Final Office Action (namely, Para. [0154], [0156], [0158], [0402], and [0406]) fails to teach or suggest the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 18.

The first cited portion of Enomoto (Para. [0154]) describes the portions of a congestion control node that detect congestion and notify other congestion control nodes of the detected congestion. This portion is devoid of any teaching or suggestion regarding the content of a congestion notification, much less that a congestion notification includes address information of at least one end-node associated with the congestion condition.

The second cited portion of Enomoto (Para. [0156]) states that a transfer processing part of a congestion control node acts as a determining arrangement for determining an estimated flow as a restriction candidate flow for restricting a transmission amount. This portion is devoid of any teaching or suggestion of the content of a congestion notification, much less that a congestion notification includes address information of at least one end-node associated with the congestion condition.

The third cited portion of Enomoto (Para. [0158]) describes additional components of a congestion control node, and the associated operation of those components in generating a control command for instructing restriction of communication for other congestion control nodes and transmitting the control command to the other congestion control nodes. This portion is devoid of any teaching or

suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The fourth cited portion of Enomoto (Para. [0402]) states that a congestion notification reception transfer part of a congestion control node "...refers the <u>notification generation node address</u> included in the congestion notification...." (Enomot, Para. [0402], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>node that generates the notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

The fifth cited portion of Enomoto (Para. [0406]) states that a congestion notification reception transfer part of a congestion control node "...identifies a congestion section from ID of the <u>generation source node of notification</u>...." (Enomot, Para. [0406], Emphasis added). In other words, this portion of Enomoto, like other portions cited hereinabove, clearly indicates that the congestion notification includes the address of the <u>notification generation node which is the source of the congestion notification</u>, i.e., a congestion control node. This portion is devoid of any teaching or suggestion that a congestion notification includes <u>address information of at least one end-node associated with the congestion condition</u>.

As described hereinabove, Enomoto clearly discloses that a congestion notification includes an address of the node that generates and sends the congestion notification which, in the system of Enomoto, is the <u>congestion control node</u>.

Thus, at least for these reasons, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>," as claimed in Appellant's claim 18.

### *3. Response to Examiner's Primary Argument in Response to Arguments Section of Final Office Action and Advisory Action*

In the Response to Arguments Section of the Final Office Action, the Examiner stated that "Enomoto does mention a congestion notification identifies 'a congestion

section from ID of the generation <u>source</u> (e.g. <u>end-node</u>) <u>node</u> of notification and ID of the adjacent node…[0406].'" (Final Office Action, Pg. 2). Then, in the Advisory Action, citing the same portion of Enomoto, the Examiner, citing that portion of Enomoto, concluded that "…through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3).

In response, Appellant notes that, due to the Examiner's failure to elaborate on the argument in the Final Office Action, Appellant first interpreted the Examiner's statement in the Response to Arguments Section of the Final Office Action to be a statement that the congestion control node of Enomoto is an end-node as recited in Appellant's claim 18. Thus, in Appellant's Response, dated May 4, 2009, to the Final Office Action, Appellant addressed the Examiner's statement in Response to Arguments Section of the Final Office Action by showing that the congestion control node of Enomoto is not an end-node as recited in Appellant's claim 18. However, based on the additional arguments provided by the Examiner in the Advisory Action, Appellant submits that the Examiner's statement in the Response to Arguments Section of the Final Office Action appears to have been an attempt by the Examiner to show that Enomoto discloses that an identifier of a source node (a client of Enomoto, which the Examiner appears to equate to an end-node of Appellant's claim 18) is included in a congestion notification generated by a congestion control node. Appellant has not yet addressed this second interpretation of the Examiner's statement in the Response to Arguments Section of the Final Office Action.

As such, given the two different potential interpretations of the Examiner's arguments, for the purposes of completeness the Appellant addresses each of these two interpretations hereinbelow.

### *Appellant's Response Based on First Interpretation of Primary Argument*

With respect to the first interpretation of the Examiner's arguments (assuming *arguendo* that this interpretation is the one which the Examiner intended), Appellant

respectfully submits that the Examiner, in judging the patentability of Appellant's claim 18 against Enomoto, has interpreted the limitations of Appellant's claim 18 in an unreasonably broad manner that is inconsistent with Appellant's specification, and, thus, that the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 18.

Appellant notes that the standard for claim interpretation during the examination of a patent application is that "claims … are to be given their broadest reasonable interpretation consistent with the specification, *and* … claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re American Academy of Science Tech Center*, 367 F.3d 1359, 1365; 70 U.S.P.Q. 2D (BNA) 1827 (Fed. Cir. 2004), citing *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) and *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir.1999).

Appellant respectfully submits that the Examiner has interpreted Appellant's claim 18 in an unreasonably broad manner that is inconsistent with Appellant's specification. The Examiner unreasonably generalizes the term "end-node" to include network nodes and then, on the basis of this unreasonable generalization, concludes that the congestion notification node of Enomoto discloses the end-node of Appellant's claim 18. Appellant respectfully submits that such an interpretation is improper and, thus, cannot support a rejection of Appellant's claim 18 in view of Enomoto.

Appellant notes that Appellant's application, including Appellant's specification, drawings, and claims, distinguishes between network nodes (identified in Appellant's application using reference number 102) and end-nodes (identified in Appellant's application using reference number 106).

Appellant's specification clearly distinguishes between network nodes and end-nodes.

For example, Appellant's specification states that:

"[t]he nodes $102_N$ represent specific network devices such as bridges, switches, routers, and hubs/repeaters (not shown). Data generated by end users of the network devices 106 travels across the network 100 to other end users via the physical medium and the nodes, which perform the processing necessary to ensure the data arrives in a usable condition to the proper recipient.
[Appellant's Specification, Pg. 4, Lines 4-9]

Serial No. 11/088,073
Page 43 of 57

Similarly, for example, Appellant's specification states that:

"[s]pecifically, the plurality of nodes $102_N$ are linearly connected with the distinction of a break 108 (see FIG. 1) in network 100 being created to establish the new topology.   In such a new topology, interconnecting links $104_N$ continue to connect the plurality of nodes $102_N$ with the exception of the link $104_{5-1}$ that would otherwise join a fifth node $102_5$ and the first node $102_1$. Network devices 106 are further represented as stations.   In this particular example, and for sake of clarity, two such network devices or stations 106 are represented by call letters at each of the plurality of nodes $102_N$.   Specifically, first node $102_1$ is connected to stations A and B.   Second node $102_2$ is connected to stations C and D. Third node $102_3$ is connected to stations E and F.   Fourth node $102_4$ is connected to stations G and H.  Fifth node $102_5$ is connected to stations I and J.

In a representative example, consider that data traffic is moving from one station to another station and sharing the nodes and interconnecting links with other data traffic moving to other stations along the same nodes and links."

[Appellant's Specification, Pg. 5, Lines 4 – 20]

Similarly, for example, Appellant's specification states that:

"[i]n a first example, if the congestion message contains only a destination address (e.g., the address of a end-node/end-station G), then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node G. In a second example, if the congestion message contains an source/destination address pair (e.g., the address of nodes AB), then the upstream node or controlling entity may drop all or a certain percentage of packets sourced from node A that are destined for node B.  If the source address is not known, then the upstream node or controlling entity may drop all or a certain percentage of packets destined for node B."

[Appellant's Specification, Pg. 8, Line 33 – Pg. 9, Line 8]

Appellant's drawings also distinguish between network nodes and end-nodes. Figure 1 depicts an exemplary network including network nodes 102 for facilitating communication between end-nodes 106.   Similarly, Figure 2 depicts an exemplary network including network nodes 102 for facilitating communication between end-nodes/end-stations 106 associated with the network nodes 102.

Furthermore, Appellant's claim 18 similarly distinguishes between network nodes and end-nodes, including limitations of "means for detecting a congestion condition at a <u>network node</u> in the network," "means for sending a congestion message from the <u>network node</u> at which the congestion condition is detected to one or more <u>network nodes</u>

upstream of the congestion condition," and "wherein said congestion message comprises address information of at least one <u>end-node</u> associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition."

Thus, since Appellant's specification, drawings, and claims clearly distinguish between network nodes and end-nodes, Appellant respectfully submits that the Examiner has interpreted Appellant's claim 18 in an unreasonably broad manner that is inconsistent with Appellant's specification and which fails to acknowledge the distinction between network nodes and end-nodes.

As discussed hereinabove, in rejecting Appellant's claim 18, the Examiner fails to acknowledge the distinction between network nodes and end-nodes that is present in Appellant's claim 18. More specifically, the Examiner cites the "generation source" node of Enomoto, asserting that the "generation source" node of Enomoto is the <u>end-node</u> as claimed in Appellant's claim 18. Appellant respectfully disagrees. First, Appellant submits that the "generation source" node of Enomoto referred to by the Examiner is the <u>source of the congestion notification</u> (also referred to as a "notification generation node"). This is evident from the portions of Enomoto described hereinabove, as well as from the additional portion of Enomoto relied upon by the Examiner (namely, Para. 0406), each of which states that the "generation source" of Enomoto is the <u>source of a congestion notification message</u> ("ID of the <u>generation source node</u>"). For example, Enomoto refers to "...a generation source of the congestion notification..." on multiple occasions. (See Enomoto, Para. 0360, 0362). Second, as noted hereinabove, Enomoto discloses that the source of the congestion notification is a <u>congestion control node</u> (See Enomoto, Abstract, Para. [0047]). Third, as noted hereinabove, Enomoto clearly indicates that the congestion control nodes of Enomoto are <u>network nodes</u>, not <u>end-nodes</u>. Thus, Appellant submits that the "generation source" of Enomoto referred to by the Examiner is a <u>network node</u>, <u>not</u> an <u>end-node</u> as recited in Appellant's specification and Appellant's claim 18.

In view of the Examiner's unreasonably broad interpretation of the term "end-node" in Appellant's claim 18, and further in view of the teachings of Enomoto regarding the "generation source" node, Appellant respectfully submits that the "generation source"

node of Enomoto is not an "end-node" as claimed in Appellant's claim 18 and, thus, that Enomoto fails to teach or suggest Appellant's claim 18.

Thus, since the Examiner, in judging the patentability of Appellant's claim 18 against Enomoto, has interpreted the limitations of Appellant's claim 18 in an unreasonably broad manner that is inconsistent with Appellant's specification, the Examiner's arguments with respect to Enomoto cannot support a rejection of Appellant's claim 18. Appellant submits that, using a proper interpretation of "end-node" of Appellant's claim 18, Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 18.

*Appellant's Response Based on Second Interpretation of Primary Argument*

With respect to the second interpretation of the Examiner's arguments (assuming *arguendo* that this interpretation is the one which the Examiner intended), Appellant respectfully submits that the Examiner's argument fails to establish that Enomoto discloses the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 18.

As noted hereinabove, in the Advisory Action the Examiner cites a portion of Enomoto and then concludes that "…through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3). Appellant respectfully disagrees.

In response, Appellant submits the rejection of Appellant's claim 18 on this basis cannot be maintained, because the Examiner's reasoning is based on an improper parsing of Enomoto.

Contrary to the Examiner's assertion, the portion of Enomoto cited by the Examiner does not reference an ID of a "generation source node." Rather, the portion of Enomoto cited by the Examiner refers to an "ID of the generation source node of notification." (See Enomoto, Para. [0406]). In other words, the Examiner, in an attempt

to support his argument, impermissibly cites only a <u>portion</u> of the relevant term, <u>failing to acknowledge the last portion of the term</u>. The entire term in Enomoto is: "ID of the generation source node <u>of notification</u>."  Appellant submits that, taking the term as a whole, this portion of Enomoto is <u>not</u> referring to an identifier of the <u>node that is the source of congestion</u> (i.e., one of the clients); rather, this term, taken as a whole, clearly refers to the <u>source</u> of the <u>congestion notification</u>, which, as Enomoto clearly indicates, is a <u>congestion control node</u>.

This is confirmed by various other portions of Enomoto discussed hereinabove, such as where Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>" and that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a *congestion notification sender*</u>." (Enomoto, Para. [0210] and [0398], Emphasis added).

Thus, contrary to the Examiner's assertion, the entire term from the cited portion of Enomoto (i.e., "ID of the generation source node <u>of notification</u>") <u>does exclude the clients</u>, because Enomoto clearly indicates that the source of a congestion notification is a <u>congestion control node</u> and that the congestion notification includes the ID of the congestion control node.  Thus, Appellant submits that, since the Examiner's reasoning is based on an improper parsing of Enomoto, the rejection of Appellant's claim 18 on this basis cannot be maintained.

Thus, at least for these reasons, Appellant respectfully submits that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 18.

### *4. Response to Examiner's Additional Arguments in Advisory Action*

In the Advisory Action, the Examiner provides additional arguments in support of the assertion that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 18. Appellant respectfully disagrees.

First, the Examiner cites a portion of Enomoto and then concludes that "…the A2 congestion control node receives packet flow from a client C2 (*end-node* or *source*) and the A2 calculates whether the flow from C2 is causing a congestion. Packets in a flow must have a source and destination address (emphasis added) for routing purposes in this case, the source address is the C2 end-node address." (Advisory Action, Pg. 2).

In response, Appellant notes that the Examiner's conclusion fails to address the relevant limitation of Appellant's claim 18. The Examiner's argument fails to establish, or even assert for that matter, that a <u>congestion notification</u> generated by the congestion control node A2 comprises address information of client C2. Rather, the Examiner's argument merely asserts that <u>packets of a packet flow</u> originating from C2 include a source address of C2. The fact that packets of a packet flow from C2 include a source address of C2 (assuming *arguendo* that the cited portion of Enomoto does indeed teach this) in no way teaches or suggests inclusion of a source address of C2 in a congestion notification generated by congestion control node A2. Additionally, Appellant notes that the portion of Enomoto cited by the Examiner in support of this argument (namely, Para. [0295]) is devoid of any teaching or suggestion that the congestion notification generated by congestion control node A2 includes a source address of client C2. The cited portion of Enomoto is silent regarding the content of the congestion notification; rather, the cited portion merely includes a general statement indicating that congestion control node A2 transmits a congestion notification to congestion control node A3. Thus, the cited portion of Enomoto, and the Examiner's associated arguments, fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 18.

Second, the Examiner cites a portion of Enomoto and then concludes that "…a client (*end-node* or *source*) in question of causing a congestion is being accounted for and information is being recorded in a routing table wherein routing table *must* contain at least a source and destination address (emphasis added), including the client node in question." (Advisory Action, Pg. 3).

In response, Appellant notes that, again, the Examiner's conclusion fails to address the relevant limitation of Appellant's claim 18. The Examiner's argument fails to

establish, or even assert for that matter, that a <u>congestion notification</u> generated by the congestion control node A2 comprises address information of client C2. Rather, the Examiner's argument merely asserts that a client in question of causing congestion is being accounted for in a routing table. The fact that a client is accounted for in a routing table (assuming *arguendo* that the cited portion of Enomoto does indeed teach this) in no way teaches or suggests inclusion of a source address of a client in a <u>congestion notification</u> generated by congestion control node. Similarly, the fact that a routing table includes address information for a client in no way teaches or suggests inclusion of a source address of client in a <u>congestion notification</u> generated by congestion control node. Additionally, Appellant notes that the portion of Enomoto cited by the Examiner in support of this argument (namely, Para. [0123] and [0155]) is devoid of any teaching or suggestion that the congestion notification generated by a congestion control node includes a source address of a client. The cited portion of Enomoto is silent regarding the content of the congestion notification; rather, the cited portion merely includes a general statement indicating that congestion control node A2 transmits a congestion notification to congestion control node A3. Thus, the cited portion of Enomoto, and the Examiner's associated arguments, clearly fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 18.

Third, as noted hereinabove in Appellant's response to the Examiner's primary argument, the Examiner cites a portion of Enomoto and then concludes that "...through the routing table, a congestion notification reception transfer part identifies an ID of a congestion source node, which does not exclude a congestion node in question (e.g., client C2 or any of C1, C3 or C4) since the routing table includes the source and destination addresses of the clients are recorded." (Advisory Action, Pg. 3). Appellant has shown hereinabove that the Examiner has failed to establish that Enomoto discloses the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u>" that is recited in Appellant's claim 18.

Thus, these additional arguments provided by the Examiner in the Advisory Action fail to establish that Enomoto discloses the limitation of "wherein said <u>congestion</u>

message comprises address information of at least one end-node associated with the congestion condition" that is recited in Appellant's claim 18.

### 5.      Conclusion

Thus, Appellant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition," as claimed in Appellant's claim 18.

As such, independent claim 18 is patentable under 35 U.S.C. 102(b) over Enomoto.  Therefore, the rejection should be withdrawn.

## II.      Rejection of Claims 4, 5, 7, 8, and 10-16 Under 35 U.S.C. 103(a)

### A.  Claims 4 and 5

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Paul.  The rejections are traversed.

As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's claim 1. Claims 4 and 5 depend from claim 1, and recites additional limitations therefor.  Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto.  Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### B.  Claims 7, 8, 10, and 11

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami.  The rejections are traversed.

As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's claim 1. Claims 7, 8, 10, and 11 each depend from claim 1, and recite additional limitations therefor.  Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto.  Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.


## C.  Claim 12

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, and in further view of Lee.  The rejections are traversed.

As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's claim 1. Claim 12 depends from claim 1, and recites additional limitations therefor.  Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto. Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.


## D.  Claims 13 and 14

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kawakami, and in further view of Bare.  The rejection is traversed.

As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's claim 1.  Claims 13 and 14 depend from claim 1, and recite additional limitations therefor. Appellant notes that this ground of rejection applies only to a dependent claim, and is predicated on the validity of the rejection under 35 U.S.C. 102(b)

Serial No. 11/088,073
Page 51 of 57

given Enomoto.  Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional reference supplies that which is missing from Enomoto to render independent claims obvious, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

### E.  Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Agrawal.  The rejections are traversed.

As described hereinabove, Enomoto fails to teach or suggest all of the elements of Appellant's claim 1. Claims 15 and 16 depend from claim 1, and recite additional limitations therefor.   Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 102(b) given Enomoto.  Since the rejection under 35 U.S.C. 102(b) given Enomoto has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto to render the independent claims anticipated, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 52 of 57

# **CONCLUSION**

Thus, Appellant submits that all of the claims presently in the application are allowable.

For the reasons advanced above, Appellant respectfully urges that the rejection of claims 1-8 and 10-18 is improper.  Reversal of the rejection of the Final Office Action is respectfully requested.

Respectfully submitted,

Dated: _7/28/09_         _____
                         Eamon J. Wall
                         Registration No. 39,414
                         Wall & Tong, L.L.P.
                         595 Shrewsbury Ave. Suite 100
                         Shrewsbury, NJ 07702
                         Telephone:  (732) 842-8110 X120
                         Facsimile:  (732) 842-8388
                         Attorney for Appellant(s)

1012180_1

Serial No. 11/088,073
Page 53 of 57

# **CLAIMS APPENDIX**

1.      (previously presented) A method for data flow control in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

Serial No. 11/088,073
Page 54 of 57

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

Serial No. 11/088,073
Page 55 of 57

15.    (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.    (previously presented) The method of claim 15, further comprising:
        receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.    (previously presented) A computer readable medium containing a program which, when executed, performs an operation of controlling data flow in a network comprising:
        detecting a congestion condition at a network node in the network; and
        sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.    (previously presented) Apparatus for controlling flow of data in a network comprising:
        means for detecting a congestion condition at a network node in the network; and
        means for sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition;
        wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 56 of 57

## <u>EVIDENCE APPENDIX</u>

None

Serial No. 11/088,073
Page 57 of 57

## <u>RELATED PROCEEDINGS APPENDIX</u>

None

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11088073 |
| **Filing Date:** | 23-Mar-2005 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa Malhotra |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Filing a brief in support of an appeal | 1402 | 1 | 540 | 540 |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **540** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5784399 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 28-JUL-2009 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:02:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 540 |
| RAM confirmation Number | 2107 |
| Deposit Account | 504802 |
| Authorized User | WALL,EAMON |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) | |

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Appeal Brief Filed | ALU126709eAppealBrief7_28_09.pdf | 2546762 <br> c59c300c8a0b1280a2b32608b1a88fb77c165248 | no | 57 |

| Warnings: |
|---|

| Information: |
|---|

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 30070 <br> ccd098bd02f8d766eaf90e85fd5ef8eb86d1378d | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| | | | **Total Files Size (in bytes):** | 2576832 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363          7590          11/10/2009
WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/10/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| **Office Action Summary** | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2462 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on *28th July 2009*.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) *1-8 and 10-18* is/are pending in the application.

     4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-8 and 10-18* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All   b)☐ Some * c)☐ None of:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____.

       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

     * See the attached detailed Office action for a list of the certified copies not received.

### Attachment(s)

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
     Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
     Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____

Application/Control Number: 11/088,073                                    Page 2
Art Unit: 2462

## DETAILED ACTION

### 12.187  *Reopening of Prosecution After Appeal Brief or Reply Brief*

In view of the Appeal Brief filed on 28th July 2009, PROSECUTION IS HEREBY

REOPENED. New ground(s) of rejection is/are set forth below.

To avoid abandonment of the application, appellant must exercise one of the following

two options:

(1) file a reply under 37 CFR 1.111 (if this Office action is non-final) or a reply under 37

CFR 1.113 (if this Office action is final); or,

(2) initiate a new appeal by filing a notice of appeal under 37 CFR 41.31 followed by an

appeal brief under  37 CFR 41.37. The previously paid notice of appeal fee and appeal

brief fee can be applied to the new appeal. If, however, the appeal fees set forth in 37

CFR 41.20 have been increased since they were previously paid, then appellant must

pay the difference between the increased fees and the amount previously paid.

A Supervisory Patent Examiner (SPE) has approved of reopening prosecution by signing

below:/Seema S. Rao/

Supervisory Patent Examiner, Art Unit 2462

### *Response to Arguments*

Applicant's arguments filed *18th November 2008* have been considered but they are moot

in view of new grounds of rejection.

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2462

    Applicants raised the issue that Enomoto does not teach "congestion message comprises address information of at least one end-node associated with the congestion condition" (Remarks: pg. 7). See **Meifu** below.

### *Claim Rejections - 35 USC § 101*

    35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

    Claims **17** is rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.  The specification fails to clearly define the term "computer-readable medium." When nonfunctional descriptive material is recorded on some computer-readable medium, in a computer or on an electromagnetic carrier signal, it is not statutory since no requisite functionality is present to satisfy the practical application requirement. Merely claiming nonfunctional descriptive material, i.e., abstract ideas, stored on a computer-readable medium, in a computer, or on an electromagnetic carrier signal, does not make it statutory. See >Diamond v.< Diehr, 450 U.S. *>175,< 185-86, 209 USPQ *>1,< 8 (noting that the claims for an algorithm in Benson were unpatentable as abstract ideas because "[t]he sole practical application of the algorithm was in connection with the programming of a general purpose computer."). Such a result would exalt form over substance. In re Sarkar, 588 F.2d 1330, 1333, 200 USPQ 132, 137 (CCPA 1978) ("[E]ach invention must be evaluated as claimed; yet semantogenic considerations preclude a determination based solely on words appearing in the claims. In the final analysis under § 101, the claimed invention, as a whole, must be evaluated for what it is.") (quoted with approval in Abele, 684 F.2d at 907, 214 USPQ at 687). See also In

Application/Control Number: 11/088,073                                    Page 4
Art Unit: 2462

re Johnson, 589 F.2d 1070, 1077, 200 USPQ 199, 206 (CCPA 1978) ("form of the claim is often

an exercise in drafting").

### *Claim Rejections - 35 USC § 103*

The text of those sections of Title 35, U.S. Code not included in this action can be found

in a prior Office action.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911

A1, Meifu).

Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-readable

medium containing a program which when executed performs an operation of controlling data

flow in a network (figs. 1-4) comprising:

means for detecting a congestion condition at a network node in the network ([0126]; fig.

1: congestion control part A13 of node A1); and

means for sending a congestion message from the network node (A1) at which the

congestion condition is detected to one or more network nodes upstream of the congestion

condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to node A2 from A1;

fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction determination part A11);

said congestion message adapted to enable said one or more upstream network nodes to

enable thereby the control of at least one data flow in a manner tending to reduce the congestion

condition ([0154, 156 & 158]).

Enomoto does not very expressively mention "wherein address information is learned of at

least one end-node associated with the congestion condition."  Meifu teaches address

Application/Control Number: 11/088,073                                            Page 5
Art Unit: 2462

information is learned of at least one end-node associated with the congestion condition ([0424]:
normal end identifier is information representing whether the communication has normally
ended or not – whether the communication has abnormally ended due to occurrence of a failure
or a congestion). It would have been obvious to one of ordinary skill in the art at the time the
invention was created to learn address of an end-node generating congestion notification as
taught by Meifu to the congestion handling method of Enomoto for effective retransmission error
recovery to recover lost packets based on the congestion state and quickly identify the root cause
of a possible failure along a communication route.

Claim 2, applied to claim 1: Enomoto, in combination with Meifu, disclose the
congestion condition is determined when a queue maximum occupancy is exceeded ([0227]).

Claim 3, applied to claim 1: Enomoto, in combination with Meifu, disclose the
congestion condition is determined when data received by a network node exceeds an output link
capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto, in combination with Meifu, disclose the
congestion message comprises an indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto
et al (US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911 A1, Meifu) and
in further view of Paul et al (US 6,148,005, Paul).

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed invention yet
not *very specifically* mentioned congestion condition is dependent of a queue data drop rate
exceeding a threshold level wherein the threshold is determined by at least one of an amount of

Application/Control Number: 11/088,073                                    Page 6
Art Unit: 2462

data dropped, an amount of data dropped over time and a number of data drops over time. Paul

mentions the *concept* of when a packet loss (drop) rate goes above a certain level (threshold), a

network node (e.g. receiver) moves into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It

would have been obvious to one of ordinary skill in the art at the time the invention was created

to apply such congestion condition determination policies taught by Paul to the congestion buffer

used amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error

recovery to recover lost packets based on the congestion state.


    Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911 A1,

Meifu) and in further view of Kawakami et al (US 2002/0136163 A1, Kawakami).

    Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the claimed

invention yet the specifics of: the congestion message comprising a <u>MAC</u> address pair, which

has source and destination addresses, of a traffic flow or an end-node contributing to the

congestion are not *very expressively* mentioned. Kawakami mentions the congestion notification

packet wherein a MAC address of a terminal (end-node) to which flow (data flow) control is to be

applied is specified as the destination address of the packet; and in a data packet, the

transmission source address specified in the packet is the MAC address of a source terminal,

however in the case of a congestion notification packet a unique address is specified as the

source address ([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to the

congestion notification of Enomoto to avoid packet loss from a congested flow.

Application/Control Number: 11/088,073                                  Page 7
Art Unit: 2462

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al

(US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911 A1, Meifu) and

Kawakami et al (US 2002/0136163 A1, Kawakami), applied to claim 11, and in further view of

Lee et al (US 6,636,510 B1, Lee).

Claim 12, applied to claim 11: Enomoto, modified by Meifu and Kawakami, disclose the

claimed invention yet may not have *very expressively* mentioned dropping packets associated

with the *destination address*. Lee discloses destination address modification for congestion may

be accompanied by partial packet discard, through destination address modification of the

remaining cells forming part of a multiple cell packet to remove the destination address for the

congested port; and, sending with destination address modification and optional partial packet

discard if the queue size is above the threshold (abstract; col. 3 lines 20-30). It would have been

obvious to modify the packet dropping policy of Enomoto, modified by Kawakami, to use the

destination address based packet dropping policy of Lee to avoid overflow buffer in

transmission.

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911 A1,

Meifu) and Kawakami et al (US 2002/0136163 A1, Kawakami), applied to claims 11 and 13, and

in further view of Bare (US 7,283,476 B2).

Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the dropping of

Application/Control Number: 11/088,073                                      Page 8
Art Unit: 2462

packets associated with *source and destination addresses* wherein when the *source end-node*

*address is unknown*, the data flow is controlled by dropping those packets associated only with

the destination address. Bare mentions both source and destination addresses are used to

determine packet dropping conditions; and, that a packet with unknown source address is

dropped directed to a specific destination MAC address (col. 13 lines 42-50 & 66-67). It would

have been obvious to one of ordinary skill in the art at the time the invention was created to

modify the packet dropping policy of Enomoto, modified by Kawakami, to use the source and

destination addresses as taught by Bare to maintain load balancing by checking whether a packet

from a certain source address were received within a predetermined time window.


        Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Meifu et al (US 2002/0103911 A1,

Meifu) and in further view of Agrawal et al (US 2003/0081546 A1, Agrawal).

        Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed invention

yet not specifically about Service Level Agreement flow control and dropping policies. Agrawal

teaches flows are given various priority levels depending upon the customer's Service Level

Agreements (SLA), which determine whether the flows are delayed or dropped when there is

congestion in the network or within the source node itself ([0003]); wherein clearly flows are

controlled by SLA and flows being *delayed* is interpreted as a condition for inability to drop

since there are the options of "flows are delayed *or* dropped" specifically. It would have been

obvious to one of ordinary skill in the art at the time the invention was made to use the well-

known SLA to determine flow control policies as taught by Agrawal to the flow control function

Application/Control Number: 11/088,073                                    Page 9
Art Unit: 2462

of Enomoto to realize the benefit of end-to-end bandwidth guarantees while maintaining per flow

shaping and leads to minimum de-jittering delay at an end receiving unit.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Wong whose telephone number is 571.270.1780.  The

examiner can normally be reached on Monday through Friday 8:30 am - 6:00 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571.272.3174.  The fax phone number for the

organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866.217.9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

/Xavier Szewai Wong/                        /Seema S. Rao/
x.s.w                                       Supervisory Patent Examiner, Art Unit
22nd October 2009                       2462

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2462 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0103911 A1 | 08-2002 | Meifu et al. | 709/227 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes*<br> | Application/Control No.<br><br>11088073 | Applicant(s)/Patent Under Reexamination<br><br>MALHOTRA, RICHA |
|---|---|---|
| | Examiner<br><br>Xavier Szewai Wong | Art Unit<br><br>2416 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 03.01.09 | XSW |
| updated | above | 10.25.09 | XSW |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | XSW |
| updated above | 10.25.09 | XSW |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 8299 | 370/229,230,230.1,231,235.ccls. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:20 |
| L2 | 30408535 | @rlad < "20050323" @ad < "20050323" | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:20 |
| L3 | 6656 | L1 and L2 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:21 |
| L4 | 1 | L2 and (end adj (terminal node) end $1node end$1terminal) near3 (ID identification identifier address) same congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:22 |
| L5 | 80 | (end terminal) near (ID identification identifier address) same congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:25 |
| L6 | 28 | (end terminal end adj node end$1node) near (ID identification identifier address) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:27 |
| L7 | 1 | 11/088073 and computer adj readable | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2009/10/26 04:40 |

**EAST Search History (Interference)**

< This search history is empty>

**10/26/2009 4:47:27 AM**
**C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_10.25.09.wsp**

Serial No. 11/088,073
Page 1 of 14

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case**: | R Malhotra 7 (ALU/126709) | | |
| **Serial No.**: | 11/088,073 | **Group Art Unit**: | 2462 |
| **Filed**: | March 23, 2005 | | |
| **Examiner**: | Wong, Xavier S | **Confirmation #**: | 7089 |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

SIR:

### RESPONSE AMENDMENT

In response to the non-final Office Action mailed November 10, 2009, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

1023418_1

Serial No. 11/088,073
Page 2 of 14

**IN THE CLAIMS:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**LISTING OF CLAIMS:**

1.      (currently amended) A method for ~~data flow control~~ controlling data flow in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected [[to]] toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

1023418_1

Serial No. 11/088,073
Page 3 of 14

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.       (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.       (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.       (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.       (cancelled)

10.      (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.      (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.      (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.      (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.      (previously presented) The method of claim 13, wherein:

Serial No. 11/088,073
Page 4 of 14

   in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.  (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.  (previously presented) The method of claim 15, further comprising:
   receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.  (currently amended) A computer readable <u>storage</u> medium <s>containing</s> <u>having stored thereon</u> a program which, when executed <u>by a computer,</u> <s>performs an operation of</s> <u>causes the computer to perform a method for</u> controlling data flow in a network<u>, the method</u> comprising:
   detecting a congestion condition at a network node in the network; and
   sending a congestion message from the network node at which the congestion condition is detected [[to]] <u>toward</u> one or more network nodes upstream of the congestion condition;
   wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.  (currently amended) Apparatus for controlling <s>flow of</s> data <u>flow</u> in a network comprising:
   means for detecting a congestion condition at a network node in the network; and
   means for sending a congestion message from the network node at which the congestion condition is detected [[to]] <u>toward</u> one or more network nodes upstream of the congestion condition;

Serial No. 11/088,073
Page 5 of 14

    wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 6 of 14

## R e m a r k s

Claims 1-8 and 10-18 are pending in the application.

Claim 17 is rejected under 35 U.S.C. 101 as being directed to non-statutory subject matter.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al. (US 2003/0076781 A1, "Enomoto") in view of Meifu et al. (US 2002/0103911 A1, "Meifu") in view of Meifu et al. (US 2002/0103911 A1, "Meifu").

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and further in view of Paul et al. (US 6,148,005, "Paul")>

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and further in view of Kawakami et al. (US 2002/0136163 A1, "Kawakami").

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and further in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, "Lee").

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and further in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, "Bare").

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and further in view of Agrawal et al (U.S. 2003/0081546 A1, "Agrawal").

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims.  They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code

Serial No. 11/088,073
Page 7 of 14

or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

## Rejection Under 35 U.S.C. 101

Claim 17 is rejected under 35 U.S.C. 101 as being directed to non-statutory subject matter. The rejection is traversed.

Applicant has herein amended claim 17 from "computer readable medium" to "computer readable storage medium." Thus, claim 17 satisfies the requirements of 35 U.S.C. 101.

Therefore, the rejection should be withdrawn.

## Rejection Under 35 U.S.C. 103(a)

The Examiner bears the initial burden of establishing a prima facie case of obviousness. See MPEP § 2141. Establishing a prima facie case of obviousness begins

Serial No. 11/088,073
Page 8 of 14

with first resolving the factual inquiries of Graham v. John Deere Co. 383 U.S. 1 (1966).
The factual inquiries are as follows:

(A) determining the scope and content of the prior art;

(B) ascertaining the differences between the claimed invention and the prior art;

(C) resolving the level of ordinary skill in the art; and

(D) considering any objective indicia of nonobviousness.

Once the Graham factual inquiries are resolved, the Examiner must determine whether the claimed invention would have been obvious to one of ordinary skill in the art. The key to supporting a rejection under 35 U.S.C. §103 is the clear articulation of the reasons why the claimed invention would have been obvious. The analysis supporting such a rejection must be explicit. "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." In re Kahn, 441 F. 3d 977, 988 (CA Fed. 2006), cited with approval in KSR Int'l Co. v. Teleflex, Inc., 126 S. Ct. 2965 (2006); see also MPEP §2141.

According to MPEP §2143.03: "All words in a claim must be considered in judging the patentability of that claim against the prior art" (quoting, In re Wilson, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970)).  In addition, to establish a prima facie case of obviousness the prior art reference (or references when combined) must teach or suggest all elements of the subject claim.  In re Wada, 2007-3733 (BPAI Jan. 14, 2008) (citing, CMFT, Inc. v. Yieldup Intern. Corp., 349 F.3d 1333, 1342 (Fed.Cir. 2003)).


**Claims 1, 2, 3, 6, 17 and 18**

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu.  The rejection is traversed.

Enomoto and Meifu, alone or in any permissible combination, fail to teach all elements of Applicant's independent claim 1.

Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

1023418_1

Serial No. 11/088,073
Page 9 of 14

Rather, Enomoto merely discloses a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the <u>address of the congestion control node that generates the congestion notification</u>.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a congestion notification *sender*</u>." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification message includes an address of the node that generates the congestion notification message. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one *end-node* associated with a congestion condition</u>, as claimed in Applicant's claim 1.

Thus, Applicant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Furthermore, Meifu fails to bridge the substantial gap between Enomoto and Applicant's independent claim 1.

Meifu discloses a system that enables a user of a user terminal to readily retrieve and refer information in an analog-like manner closer to human sensations, and to provide the information to many and unspecified users with a less number of information bubbles, by virtually registering information or service information relating to an object existing in the user's view, for example, as an information bubble, in providing an information service using a terminal such as a portable telephone or the like. (Meifu, Paragraph [0011]).

Serial No. 11/088,073
Page 10 of 14

Meifu, however, fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

In the Office Action, the Examiner cites a specific portion of Meifu (namely, Paragraph [0424]), asserting that the cited portion of Meifu discloses this limitation of Applicant's claim 1.  Applicant disagrees.

The cited portion of Meifu merely states that "[t]he normal end identifier 495 is information representing whether the communication has normally ended or not (whether the communication has abnormally ended due to occurrence of a failure or a congestion)."  (Meifu, Para. [0424], Emphasis added).

The cited portion of Meifu is devoid of any teaching or suggestion of any congestion message or any address information, much less that a congestion message includes address information or that a congestion message includes address information of at least one end-node associated with a congestion condition.  The cited portion of Meifu clearly does not teach or suggest that a congestion message includes address information of at least one end-node associated with a congestion condition, as claimed in Applicant's claim 1.

Thus, Meifu fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Thus, since Enomoto and Meifu each fail to teach or suggest the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," a combination of Enomoto and Meifu (assuming *arguendo* that such a combination is possible) fails to teach or suggest the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

1023418_1

Serial No. 11/088,073
Page 11 of 14

As such, independent claim 1 is allowable under 35 U.S.C. 103(a) over Enomoto in view of Meifu. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are allowable under 35 U.S.C. 103(a) over Enomoto in view of Meifu. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is allowable under 35 U.S.C. 103(a) over Enomoto in view of Meifu.

Therefore, the rejection should be withdrawn.

**Claims 4 and 5**

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu further in view of Paul. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Meifu. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Meifu to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

**Claims 7, 8, 10, and 11**

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu further in view of Kawakami. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Meifu. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Meifu to render the independent claims unpatentable, this ground of rejection cannot be maintained.

1023418_1

Serial No. 11/088,073
Page 12 of 14

Therefore, the rejection should be withdrawn.

## Claim 12

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and Kawakami, applied to claim 11, and in further view of Lee. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Meifu. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Meifu to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 13 and 14

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Meifu and Kawakami, applied to claims 11 and 13, and in further view of Bare. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Meifu. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Meifu to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto view Meifu and further in view of Agrawal. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in

Serial No. 11/088,073
Page 13 of 14

view of Meifu.  Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Meifu to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

1023418_1

Serial No. 11/088,073
Page 14 of 14

### **Conclusion**

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 842-8110 x120 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: _1/8/10_

_Eamon J. Wall_
Registration No. 39,414
Attorney for Applicant(s)

WALL & TONG, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-842-8110
Facsimile: 732-842-8388

1023418_1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 6784378 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 11-JAN-2010 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 14:24:36 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | ALU126709eAmend_001.pdf | 587466 <br> e98b9abb9a3570b546465e433e2ec2b6a1 d368b4 | yes | 14 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 14 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 587466 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 11/088,073 | Filing Date 03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  | | (Column 1) | (Column 2) | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **01/11/2010** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $ = | | OR X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus ***3 | = 0 | X $ = | | OR X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | **0** |

|  | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/PARTHENIA MERRILL/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

| | | |
|---|---|---|
| 46363        7590        05/10/2010 | | |

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
595 SHREWSBURY AVENUE
SHREWSBURY, NJ 07702

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/10/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2462 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>11th January 2010</u>.
2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8 and 10-18</u> is/are pending in the application.
  4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5)☐ Claim(s) _____ is/are allowed.
6)☒ Claim(s) <u>1-8 and 10-18</u> is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  a)☐ All   b)☐ Some * c)☐ None of:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
  * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

Application/Control Number: 11/088,073                                  Page 2
Art Unit: 2462

## DETAILED ACTION

### *Response to Arguments*

Applicant's arguments filed *11th January 2010* have been considered but they are

*moot*.

Applicants raised the issue that Enomoto does not teach "congestion message

comprises address information of at least one end-node associated with the congestion

condition" (Remarks: page. 10). See **Doshi**.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of
> matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

Claims **17** is *maintained* rejected under 35 U.S.C. 101 because the claimed
invention is directed to non-statutory subject matter.  The specification fails to clearly
define the term "computer-readable storage medium."
On page 2 lines 21-31 of the applicant's specification, it quotes:

"In one embodiment of the invention, the learned address information is the
MAC address of a destination node to which the data is flowing towards. In another
embodiment, the learned address information is the MAC address of a source node
generating the data flow. In another embodiment, the learned address information is a
MAC address pair of the nodes between which the data is flowing. The method may be
practiced in for example a computer readable medium containing a program which,
when executed, performs an operation of controlling data flow in the prescribed manner.
As a result, data flows causing congestion are differentiated from data flows that are not
causing congestion allowing improved performance of Ethernet-based networks."

Though the so-called "Computer-Readable Storage Medium" has been claimed
to be executed by "a computer," it is noted that the "method" to be performed is still
done by the "storage medium" and the "computer" is not the main object to be claimed.
Such ambiguity appears to cover both transitory and non-transitory embodiments. The
United States Patent and Trademark Office (USPTO) is **required** to give claims their
broadest reasonable interpretation consistent with the specification during proceedings
before the USPTO.  *See In re Zletz*, 893 F.2d 319 (Fed. Cir. 1989) (during patent

Application/Control Number: 11/088,073                                   Page 3
Art Unit: 2462

examination the pending claims must be interpreted as broadly as their terms
reasonably allow). The broadest reasonable interpretation of a claim drawn to a
computer readable medium (also called machine readable medium and other such
variations) typically covers forms of non-transitory tangible media **and** transitory
propagating signals *per se* in view of the ordinary and customary meaning of computer
readable media, <u>particularly when the specification is silent</u>. *See* MPEP 2111.01.
When the broadest reasonable interpretation of a claim covers a signal *per se*, the claim
**must** be rejected under 35 U.S.C. § 101 as covering non-statutory subject matter. *See
In re Nuijten*, 500 F.3d 1346, 1356-57 (Fed. Cir. 2007) (transitory embodiments are not
directed to statutory subject matter) and *Interim Examination Instructions for Evaluating
Subject Matter Eligibility Under 35 U.S.C. § 101*, Aug. 24, 2009; p. 2.

   The Examiner suggests that the Applicant add the limitation "non-transitory computer-
readable storage medium" to the claim(s) in order to properly render the claims in
statutory form in view of their broadest reasonable interpretation in light of the originally
filed specification. The Examiner also suggests that the specification be amended to
include the term "non-transitory computer-readable storage medium" to avoid a potential
objection to the specification for a lack of antecedent basis of the claimed terminology.


### *Claim Rejections - 35 USC § 103*

   The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

   Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al

(US 6219339 B1, Doshi).

   Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-

readable medium containing a program which when executed performs an operation of

controlling data flow in a network (figs. 1-4) comprising:

   means for detecting a congestion condition at a network node in the network

([0126]; fig. 1: congestion control part A13 of node A1); and

   means for sending a congestion message from the network node (A1) at which

Application/Control Number: 11/088,073                                    Page 4
Art Unit: 2462

the congestion condition is detected to one or more network nodes upstream of the

congestion condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to

node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction

determination part A11);

said congestion message adapted to enable said one or more upstream network

nodes to enable thereby the control of at least one data flow in a manner tending to

reduce the congestion condition ([0154, 156 & 158]).

Enomoto does not very expressively mention "wherein address information is learned

of at least one end-node associated with the congestion condition."  Doshi teaches

address information is learned of at least one end-node associated with the congestion

condition (col. 2 lines 38-49: each AAL2 voice packet comprising a sequence number, the

values of which range from 0 to n-1, and a source identifier, k; when traffic congestion is

detected, the transmitter portion of the SSCS System selectively discards one packet

from a source k at the input of the transmission buffer; fig. 8: each voice source 1-K is

connected to a source node). It would have been obvious to one of ordinary skill in the

art at the time the invention was created to learn address of an end-node generating

congestion notification as taught by Doshi to the congestion handling method of

Enomoto for effective retransmission error recovery to recover lost packets based on

the congestion state and quickly identify the root cause of a possible failure along a

communication route and facilitate dropping packets from that source that caused the

congestion.

Application/Control Number: 11/088,073                                    Page 5
Art Unit: 2462

Claim 2, applied to claim 1: Enomoto, in combination with Doshi, disclose the

congestion condition is determined when a queue maximum occupancy is exceeded

([0227]).

Claim 3, applied to claim 1: Enomoto, in combination with Doshi, disclose the

congestion condition is determined when data received by a network node exceeds an

output link capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto, in combination with Doshi, disclose the

congestion message comprises an indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al (US 6219339 B1,

Doshi) and in further view of Paul et al (US 6,148,005, Paul).

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed

invention yet not *very specifically* mentioned congestion condition is dependent of a

queue data drop rate exceeding a threshold level wherein the threshold is determined

by at least one of an amount of data dropped, an amount of data dropped over time and

a number of data drops over time. Paul mentions the *concept* of when a packet loss

(drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves

into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been obvious

to one of ordinary skill in the art at the time the invention was created to apply such

congestion condition determination policies taught by Paul to the congestion buffer used

amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error

recovery to recover lost packets based on the congestion state.


Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al

(US 6219339 B1, Doshi) and in further view of Kawakami et al (US 2002/0136163 A1,

Kawakami).

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the

claimed invention yet the specifics of: the congestion message comprising a MAC

address pair, which has source and destination addresses, of a traffic flow or an end-

node contributing to the congestion are not *very expressively* mentioned. Kawakami

mentions the congestion notification packet wherein a MAC address of a terminal (end-

node) to which flow (data flow) control is to be applied is specified as the destination

address of the packet; and in a data packet, the transmission source address specified

in the packet is the MAC address of a source terminal, however in the case of a

congestion notification packet a unique address is specified as the source address

([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to

the congestion notification of Enomoto to avoid packet loss from a congested flow.


Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al (US 6219339 B1,

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2462

Doshi) and Kawakami et al (US 2002/136163 A1, Kawakami), applied to claim 11, and

in further view of Lee et al (US 6,636,510 B1, Lee).

Claim 12, applied to claim 11: Enomoto, modified by Doshi and Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned dropping

packets associated with the *destination address*. Lee discloses destination address

modification for congestion may be accompanied by partial packet discard, through

destination address modification of the remaining cells forming part of a multiple cell

packet to remove the destination address for the congested port; and, sending with

destination address modification and optional partial packet discard if the queue size is

above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify

the packet dropping policy of Enomoto, modified by Kawakami, to use the destination

address based packet dropping policy of Lee to avoid overflow buffer in transmission.


Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al (US

6219339 B1, Doshi) and Kawakami et al (US 2002/136163 A1, Kawakami), applied to

claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the

dropping of packets associated with *source and destination addresses* wherein when

the *source end-node address is unknown*, the data flow is controlled by dropping those

packets associated only with the destination address. Bare mentions both source and

destination addresses are used to determine packet dropping conditions; and, that a

packet with unknown source address is dropped directed to a specific destination MAC

address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary skill

in the art at the time the invention was created to modify the packet dropping policy of

Enomoto, modified by Kawakami, to use the source and destination addresses as

taught by Bare to maintain load balancing by checking whether a packet from a certain

source address were received within a predetermined time window.


Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Doshi et al (US

6219339 B1, Doshi) and in further view of Agrawal et al (US 2003/0081546 A1,

Agrawal).

Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed

invention yet not specifically about Service Level Agreement flow control and dropping

policies. Agrawal teaches flows are given various priority levels depending upon the

customer's Service Level Agreements (SLA), which determine whether the flows are

delayed or dropped when there is congestion in the network or within the source node

itself ([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is

interpreted as a condition for inability to drop since there are the options of "flows are

delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in

the art at the time the invention was made to use the well-known SLA to determine flow

control policies as taught by Agrawal to the flow control function of Enomoto to realize

Application/Control Number: 11/088,073                                    Page 9
Art Unit: 2462

the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and

leads to minimum de-jittering delay at an end receiving unit.


### Conclusion

The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

1. Lee, US 2005/0052994 A1: ORIGINATOR_ID values, a receiver node may

determine the location in the network that is affected by congestion [0047]

2. Peng et al, US 6650618 B1: an identifier to identify the node as being part of a

congested span; and adjuster to adjust the output bandwidth of the node as a function

of the congestion in the span (col. 2 lines 30-38)

3. Kawakami et al, US 7180857 B2: each said congestion notification packet

which is transmitted upon occurrence of said second degree of congestion is a group-

specific congestion notification packet containing group identifier information identifying

said congestion origin terminal group (col. 20 lines 29-45)

4. Watanabe, US 6751195 B1: congestion notification data contains the

identification of the source-end CCD or the identification of the source-end transmission

line (col. 10 lines 50-62)

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Szewai Wong whose telephone number is

571.270.1780. The examiner can normally be reached on Monday through Friday 8:30

am - 6:00 pm (EST).

Application/Control Number: 11/088,073                                     Page 10
Art Unit: 2462

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571.272.3174.  The fax phone number for

the organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866.217.9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

*/Xavier Szewai Wong/*                                    /Kevin C. Harper/
Patent Examiner AU 2462                              Primary Examiner, Art Unit 2462
22nd April 2010

| \textbf{\textit{Notice of References Cited}} | Application/Control No.  11/088,073 | Applicant(s)/Patent Under Reexamination  MALHOTRA, RICHA | |
|---|---|---|---|
| | Examiner  Xavier Szewai Wong | Art Unit  2462 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number  Country Number-Kind Code | Date  MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,219,339 B1 | 04-2001 | Doshi et al. | 370/235 |
| | B | US- | | | |
| * | C | US-6,650,618 B1 | 11-2003 | Peng et al. | 370/229 |
| * | D | US-6,751,195 B1 | 06-2004 | Watanabe, Yoshihiro | 370/236.1 |
| * | E | US-2005/0052994 A1 | 03-2005 | Lee, Man-Ho Lawrence | 370/230 |
| * | F | US-7,180,857 B2 | 02-2007 | Kawakami et al. | 370/231 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN  PATENT DOCUMENTS

| * | | Document Number  Country Code-Number-Kind Code | Date  MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes*  | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2462 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 03.01.09 | XSW |
| updated | above | 05.06.2010 | XSW |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | XSW |
| updated above | 05.06.2010 | XSW |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

|  |  |
|---|---|
| | |

Part of Paper No. : 20100506

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7015 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:17 |
| L3 | 1 | L1 and (end$1node (terminal end) adj (node station) root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:19 |
| L4 | 47 | L1 and (end$1node terminal node root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:22 |
| L5 | 2 | L1 and (end$1node terminal node root) with (ID identifier identification) with congest$5 with caus$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:22 |
| L6 | 36 | L1 and (source origin$5) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:44 |

## EAST Search History (Interference)

< This search history is empty>

**5/7/2010 5:05:50 AM**
**C:\ Documents and Settings\ xwong\ My Documents\ EAST\ Workspaces\ Malhotra_05.05.10.wsp**

Serial No. 11/088,073
Page 1 of 13

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit**: | 2462 |
| **Filed:** | March 23, 2005 | | |
| **Examiner**: | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### <u>RESPONSE AMENDMENT</u>

In response to the non-final Office Action mailed May 10, 2010, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response.  In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

1036656_1

Serial No. 11/088,073
Page 2 of 13

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1.    (previously presented) A method for controlling data flow in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.    (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.    (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.    (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.    (original) The method of claim 4, wherein:

1036656_1

Serial No. 11/088,073
Page 3 of 13

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

Serial No. 11/088,073
Page 4 of 13

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.    (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.    (previously presented) The method of claim 15, further comprising:
receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.    (currently amended) A <u>non-transitory</u> computer readable storage medium having stored thereon a program which, when executed by a computer, causes the computer to perform a method for controlling data flow in a network, the method comprising:
detecting a congestion condition at a network node in the network; and
sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;
wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.    (previously presented) Apparatus for controlling data flow in a network comprising:
means for detecting a congestion condition at a network node in the network; and
means for sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

Serial No. 11/088,073
Page 5 of 13

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 6 of 13

## R e m a r k s

Claims 1-8 and 10-18 are pending in the application.

Claim 17 is rejected under 35 U.S.C. 101 as being directed to non-statutory subject matter.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al. (US 2003/0076781 A1, "Enomoto") in view of Doshi et al. (US 6219339 B1, "Doshi").

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and further in view of Paul et al. (US 6,148,005, "Paul").

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and further in view of Kawakami et al. (US 2002/0136163 A1, "Kawakami").

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and further in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, "Lee").

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and further in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, "Bare").

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and further in view of Agrawal et al (U.S. 2003/0081546 A1, "Agrawal").

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any

Serial No. 11/088,073
Page 7 of 13

amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

### Rejection Under 35 U.S.C. 101

Claim 17 is rejected under 35 U.S.C. 101 as being directed to non-statutory subject matter. The rejection is traversed.

Applicant has herein amended claim 17 from "computer readable storage medium" to "non-transitory computer readable storage medium." Thus, claim 17 satisfies the requirements of 35 U.S.C. 101.

Therefore, the rejection should be withdrawn.

### Rejection Under 35 U.S.C. 103(a)

#### Claims 1, 2, 3, 6, 17 and 18

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi. The rejection is traversed.

Serial No. 11/088,073
Page 8 of 13

Enomoto and Doshi, alone or in any permissible combination, fail to teach all elements of Applicant's independent claim 1.

Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Rather, Enomoto merely discloses a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the address of the congestion control node that generates the congestion notification.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a notification generation node." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a node ID of a congestion notification sender." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification message includes an address of the node that generates the congestion notification message. Enomoto is devoid of any teaching or suggestion that a congestion message includes address information of at least one end-node associated with a congestion condition, as claimed in Applicant's claim 1.

Thus, Applicant submits that Enomoto fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Furthermore, Doshi fails to bridge the substantial gap between Enomoto and Applicant's independent claim 1.

Doshi discloses selective discarding of packets where discarding of a packet is performed as a function of previously discarded packets.

Serial No. 11/088,073
Page 9 of 13

Doshi, however, fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

In the Office Action, the Examiner cites a specific portion of Doshi (namely, Col. 2, Lines 38 – 49), asserting that the cited portion of Doshi teaches that "...address information is learned of at least one end-node associated with the congestion condition...." (See Office Action, Pg. 4).

First, Applicant submits that the Examiner's assertion regarding the teachings of Doshi fails to accurately address the limitation of Applicant's claim 1. Namely, contrary to the Examiner's assertion, Applicant's claim 1 does not state that "address information is learned of at least one end-node associated with the congestion condition." Applicants submit that, while address information is learned by the upstream node receiving the message (via inclusion of address information of at least one end-node associated with the congestion condition within the congestion message), Applicant's claim 1 recites a limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition...." Thus, the Examiner fails to accurately address the limitation of Applicant's claim 1.

Second, Applicant submits that the portion of Doshi cited by the Examiner fails to teach or suggest a congestion message including address information of at least one end-node associated with a congestion condition. Rather, the cited portion of Doshi merely discloses packets for transmission where each packet for transmission includes a source identifier. In Doshi, the packet for transmission is not a congestion message. Thus, the cited portion of Doshi clearly fails to teach or suggest a congestion message including address information of at least one end-node associated with a congestion condition.

Thus, Doshi fails to teach or suggest at least the limitation of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

As such, independent claim 1 is allowable under 35 U.S.C. 103(a) over Enomoto in view of Doshi. Similarly, independent claims 17 and 18 recite relevant limitations

Serial No. 11/088,073
Page 10 of 13

similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are allowable under 35 U.S.C. 103(a) over Enomoto in view of Doshi. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is allowable under 35 U.S.C. 103(a) over Enomoto in view of Doshi.

Therefore, the rejection should be withdrawn.

### Claims 4 and 5

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi further in view of Paul. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Doshi. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Doshi to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### Claims 7, 8, 10, and 11

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi further in view of Kawakami. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Doshi. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Doshi to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 11 of 13

## Claim 12

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and Kawakami, applied to claim 11, and in further view of Lee. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Doshi. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Doshi to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 13 and 14

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Doshi and Kawakami, applied to claims 11 and 13, and in further view of Bare. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Doshi. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Doshi to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto view Doshi and further in view of Agrawal. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Doshi. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply

1036656_1

Serial No. 11/088,073
Page 12 of 13

that which is missing from Enomoto and Doshi to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 13 of 13

## <u>Conclusion</u>

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley or Eamon Wall at (732) 842-8110 x120 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: 7/12/10

_____
Eamon J. Wall
Registration No. 39,414
Attorney for Applicant(s)

WALL & TONG, LLP
595 Shrewsbury Avenue, Suite 100
Shrewsbury, New Jersey 07702
Telephone: 732-842-8110
Facsimile: 732-842-8388

1036656_1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 7996970 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 12-JUL-2010 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:42:38 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | ALU126709eAmend_001.pdf | 512671<br>a7d4ba25816f15eda288fb70d89dc5567da4db31 | yes | 13 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 13 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 512671 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/088,073 | Filing Date<br>03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **07/12/2010** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus ** 20 | = 0 | X $ = | | OR X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus *** 3 | = 0 | X $ = | | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | (Column 2) | (Column 3) | | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/ROLITA WIMBUSH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        10/06/2010
WALL & TONG, LLP/
ALCATEL-LUCENT  USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/06/2010 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2462 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>12th July 2010</u>.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-8 and 10-18</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-8 and 10-18</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____

Application/Control Number: 11/088,073                                      Page 2
Art Unit: 2462

## DETAILED ACTION

### *Response to Arguments*

Applicant's arguments filed *12*th *July 2010* have been considered but they are

*moot*.

Applicants raised the issue that neither Enomoto nor Doshi does not teach

"congestion message comprises address information of at least one end-node

associated with the congestion condition" (Remarks: pages 8-10). The examiner

disagrees with Doshi not teaching said limitation (e.g. Doshi does mention a "source

identifier k" where traffic congestion is detected and "discarding packets" from that

"source k (e.g. end-node)" – col. 2 lines 28-34) but has chosen to bring attention to a

more detailed reference, **Kwan**, to address the concerned issue. See **Kwan** rejection

for claims 1, 17 and 18.

MPEP chapter 2100, section 2111 R-5:

During patent examination, the pending claims must be "given their **broadest reasonable interpretation** consistent with the specification." >The Federal Circuit's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005) expressly recognized that the USPTO employs the "broadest reasonable interpretation" standard:
The Patent and Trademark Office ("PTO") determines the scope of claims in patent applications not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction "in light of the specification as it would be interpreted by one of ordinary skill in the art." In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1364[, 70 USPQ2d 1827] (Fed. Cir. 2004). Indeed, the rules of the PTO require that application claims must "conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 CFR  1.75(d)(1). 415 F.3d at 1316, 75 USPQ2d at 1329. See also< In re Hyatt, 211 F.3d 1367, 1372, 54 USPQ2d 1664, 1667 (Fed. Cir. 2000). Applicant always has the opportunity to amend the claims during prosecution, and broad interpretation by the examiner reduces the possibility that the claim, once issued, will be interpreted more broadly than is justified. In re Prater, 415 F.2d 1393, 1404-05, 162 USPQ 541, 550-51 (CCPA 1969) (Claim 9 was directed to a process of analyzing data generated by mass spectrographic analysis of a gas. The process comprised selecting the data to be analyzed by subjecting the data to a mathematical manipulation. The

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2462

examiner made rejections under 35 U.S.C. 101 and 102. In the 35 U.S.C. 102 rejection, the
examiner explained that the claim was anticipated by a mental process augmented by pencil and
paper markings. The court agreed that the claim was not limited to using a machine to carry out
the process since the claim did not explicitly set forth the machine. The court explained that
"reading a claim in light of the specification, to thereby interpret limitations explicitly recited in
the claim, is a quite different thing from reading limitations of the specification into a claim,' to
thereby narrow the scope of the claim by implicitly adding disclosed limitations which have no
express basis in the claim." The court found that applicant was advocating the latter, i.e., the
impermissible importation of subject matter from the specification into the claim.). See also In re
Morris, 127 F.3d 1048, 1054-55, 44 USPQ2d 1023, 1027-28 (Fed. Cir. 1997) (The court held
that the PTO is not required, in the course of prosecution, to interpret claims in applications in
the same manner as a court would interpret claims in an infringement suit. Rather, the "PTO
applies to verbiage of the proposed claims the broadest reasonable meaning of the words in their
ordinary usage as they would be understood by one of ordinary skill in the art, taking into
account whatever enlightenment by way of definitions or otherwise that may be afforded by the
written description contained in applicant's specification.").

Previous **101** rejection has been withdrawn based on amendments to address

*non-transitory* computer readable medium.

### *Claim Rejections - 35 USC § 103*

The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan).

Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-

readable medium containing a program which when executed performs an operation of

controlling data flow in a network (figs. 1-4) comprising:

means for detecting a congestion condition at a network node in the network

([0126]; fig. 1: congestion control part A13 of node A1); and

Application/Control Number: 11/088,073                                         Page 4
Art Unit: 2462

means for sending a congestion message from the network node (A1) at which the congestion condition is detected to one or more network nodes upstream of the congestion condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction determination part A11);

said congestion message adapted to enable said one or more upstream network nodes to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition ([0154, 156 & 158]).

Enomoto does not very expressively mention "wherein address information is learned of at least one end-node associated with the congestion condition."  Kwan teaches address information is learned of at least one end-node associated with the congestion condition ([0037] lines 7-13: …the data packets are marked with the congestion detection experience bit tag, and the destination endpoint 12 reads the source addresses of the marked data packets and notifies the associated source endpoint 10 of its contribution to the congestion event. Upon receipt of the notification or the CN message each source endpoint 10 identified as contributing to the congestion; see also [0042] lines 7-12). It would have been obvious to one of ordinary skill in the art at the time the invention was created to learn address of an end-node generating congestion notification as taught by Kwan to the congestion handling method of Enomoto for effective retransmission error recovery to recover lost packets based on the congestion state and quickly identify the root cause of a possible failure along a communication route and facilitate adjustment to traffic to ease the congestion.

Claim 2, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion condition is determined when a queue maximum occupancy is exceeded

([0227]).

Claim 3, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion condition is determined when data received by a network node exceeds an

output link capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion message comprises an indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and in further view of Paul et al (US 6,148,005, Paul).

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed

invention yet not *very specifically* mentioned congestion condition is dependent of a

queue data drop rate exceeding a threshold level wherein the threshold is determined

by at least one of an amount of data dropped, an amount of data dropped over time and

a number of data drops over time. Paul mentions the *concept* of when a packet loss

(drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves

into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been obvious

to one of ordinary skill in the art at the time the invention was created to apply such

congestion condition determination policies taught by Paul to the congestion buffer used

Application/Control Number: 11/088,073                                    Page 6
Art Unit: 2462

amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error

recovery to recover lost packets based on the congestion state.


Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan) and in further view of Kawakami et al (US 2002/0136163

A1, Kawakami).

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the

claimed invention yet the specifics of: the congestion message comprising a MAC

address pair, which has source and destination addresses, of a traffic flow or an end-

node contributing to the congestion are not *very expressively* mentioned. Kawakami

mentions the congestion notification packet wherein a MAC address of a terminal (end-

node) to which flow (data flow) control is to be applied is specified as the destination

address of the packet; and in a data packet, the transmission source address specified

in the packet is the MAC address of a source terminal, however in the case of a

congestion notification packet a unique address is specified as the source address

([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to

the congestion notification of Enomoto to avoid packet loss from a congested flow.


Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

Application/Control Number: 11/088,073                                          Page 7
Art Unit: 2462

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claim 11, and in further view of Lee et al (US 6,636,510 B1, Lee).

Claim 12, applied to claim 11: Enomoto, modified by Kwan and Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned dropping

packets associated with the *destination address*. Lee discloses destination address

modification for congestion may be accompanied by partial packet discard, through

destination address modification of the remaining cells forming part of a multiple cell

packet to remove the destination address for the congested port; and, sending with

destination address modification and optional partial packet discard if the queue size is

above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify

the packet dropping policy of Enomoto, modified by Kawakami, to use the destination

address based packet dropping policy of Lee to avoid overflow buffer in transmission.


Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the

dropping of packets associated with *source and destination addresses* wherein when

the *source end-node address is unknown*, the data flow is controlled by dropping those

packets associated only with the destination address. Bare mentions both source and

Application/Control Number: 11/088,073                                      Page 8
Art Unit: 2462

destination addresses are used to determine packet dropping conditions; and, that a

packet with unknown source address is dropped directed to a specific destination MAC

address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary skill

in the art at the time the invention was created to modify the packet dropping policy of

Enomoto, modified by Kawakami, to use the source and destination addresses as

taught by Bare to maintain load balancing by checking whether a packet from a certain

source address were received within a predetermined time window.


Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and in further view of Agrawal et al (US 2003/0081546 A1,

Agrawal).

Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed

invention yet not specifically about Service Level Agreement flow control and dropping

policies. Agrawal teaches flows are given various priority levels depending upon the

customer's Service Level Agreements (SLA), which determine whether the flows are

delayed or dropped when there is congestion in the network or within the source node

itself ([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is

interpreted as a condition for inability to drop since there are the options of "flows are

delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in

the art at the time the invention was made to use the well-known SLA to determine flow

control policies as taught by Agrawal to the flow control function of Enomoto to realize

Application/Control Number: 11/088,073                                    Page 9
Art Unit: 2462

the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and

leads to minimum de-jittering delay at an end receiving unit.


### *Conclusion*

The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

1. Lee, US 2005/0052994 A1: ORIGINATOR_ID values, a receiver node may

determine the location in the network that is affected by congestion [0047]

2. Peng et al, US 6650618 B1: an identifier to identify the node as being part of a

congested span; and adjuster to adjust the output bandwidth of the node as a function

of the congestion in the span (col. 2 lines 30-38)

3. Kawakami et al, US 7180857 B2: each said congestion notification packet

which is transmitted upon occurrence of said second degree of congestion is a group-

specific congestion notification packet containing group identifier information identifying

said congestion origin terminal group (col. 20 lines 29-45)

4. Watanabe, US 6751195 B1: congestion notification data contains the

identification of the source-end CCD or the identification of the source-end transmission

line (col. 10 lines 50-62)

5. Doshi et al, US 6219339 B1: col. 2 lines 38-49 – teaches each AAL2 voice

packet comprising a sequence number, the values of which range from 0 to n-1, and a

source identifier, k; when traffic congestion is detected, the transmitter portion of the

SSCS System selectively discards one packet from a source k at the input of the

Application/Control Number: 11/088,073                                     Page 10
Art Unit: 2462

transmission buffer; fig. 8 – teaches each voice source 1-K is connected to a source node

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Xavier Wong whose telephone number is 571.270.1780. The examiner can normally be reached on Monday through Friday 10:30 am - 8:00 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Seema Rao can be reached on 571.272.3174.  The fax phone number for the organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866.217.9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

*/Xavier Szewai Wong/*
Patent Examiner AU 2462
30th September 2010

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 11/088,073 | MALHOTRA, RICHA |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | Xavier Szewai Wong | 2462 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2006/0092840 A1 | 05-2006 | Kwan et al. | 370/230.1 |
| * | B | US-6,219,339 B1 | 04-2001 | Doshi et al. | 370/235 |
| * | C | US-6,650,618 B1 | 11-2003 | Peng et al. | 370/229 |
| * | D | US-6,751,195 B1 | 06-2004 | Watanabe, Yoshihiro | 370/236.1 |
| * | E | US-2005/0052994 A1 | 03-2005 | Lee, Man-Ho Lawrence | 370/230 |
| * | F | US-7,180,857 B2 | 02-2007 | Kawakami et al. | 370/231 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)              **Notice of References Cited**              Part of Paper No. 20100930

| *Search Notes*  | Application/Control No. 11088073 | Applicant(s)/Patent Under Reexamination MALHOTRA, RICHA |
|---|---|---|
| | Examiner Xavier Szewai Wong | Art Unit 2462 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 03.01.09 | XSW |
| updated | above | 05.06.2010 | XSW |
| updated | above | 09.30.2010 | /XSW/ |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | XSW |
| updated above | 05.06.2010 | XSW |
| Updated Above | 09.30.2010 | /XSW/ |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L3 | 7305 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/09/30 16:33 |
| L4 | 5 | L3 and (end$1node end$1station (terminal end) adj (node station) root) with (ID identifier identification address) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/09/30 16:36 |
| L5 | 5 | L3 and (end$1point (terminal end) adj point root) with (ID identifier identification address) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/09/30 16:42 |
| L6 | 7 | L3 and origin with (ID identifier identification address) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/09/30 16:45 |
| S1 | 7015 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:17 |
| S2 | 1 | S1 and (end$1node (terminal end) adj (node station) root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:19 |
| S3 | 47 | S1 and (end$1node terminal node root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:22 |
| S4 | 2 | S1 and (end$1node terminal node root) with (ID identifier identification) with congest$5 with caus$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:22 |
| S5 | 36 | S1 and (source origin$5) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2010/05/07 04:44 |

**EAST Search History (Interference)**

< This search history is empty>

**9/30/2010 4:52:24 PM**
**C:\Documents and Settings\xwong\Desktop\Amendo\Malhotra\Malhotra_05.05.10.wsp**

Serial No. 11/088,073
Page 1 of 13

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2462 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### RESPONSE

In response to the non-final Office Action mailed October 6, 2010, please reconsider the above-identified patent application as follows.

In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, any necessary extension of time is hereby petitioned for.

Applicant does not believe that any fee is due in connection with this response. In the event Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

Serial No. 11/088,073
Page 2 of 13

## IN THE CLAIMS:

This listing of claims will replace all prior versions, and listings, of claims in the application:

## LISTING OF CLAIMS:

1.      (previously presented) A method for controlling data flow in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

Serial No. 11/088,073
Page 3 of 13

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (original) The method of claim 1, wherein:

the congestion message comprises an indication that a congestion condition exists.

7.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.      (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.      (cancelled)

10.     (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.     (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

Serial No. 11/088,073
Page 4 of 13

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.    (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.    (previously presented) The method of claim 15, further comprising:

receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.    (previously presented) A non-transitory computer readable storage medium having stored thereon a program which, when executed by a computer, causes the computer to perform a method for controlling data flow in a network, the method comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.    (previously presented) Apparatus for controlling data flow in a network comprising:

means for detecting a congestion condition at a network node in the network; and

means for sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

Serial No. 11/088,073
Page 5 of 13

 wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 6 of 13

## **R e m a r k s**

Claims 1-8 and 10-18 are pending in the application, with claims 1, 17 and 18 being independent.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al. (US 2003/0076781 A1, "Enomoto") in view of Kwan et al. (US 2006/0092840 A1, "Kwan").

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Paul et al. (US 6,148,005, "Paul").

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Kawakami et al. (US 2002/0136163 A1, "Kawakami").

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Kawakami, applied to claim 11, and in further view of Lee et al. (U.S. Patent No. 6,636,510 B1, "Lee").

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Kawakami as applied to claims 11 and 13, and in further view of Bare (U.S. Patent No. 7,283,476 B2, "Bare").

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Agrawal et al (U.S. 2003/0081546 A1, "Agrawal").

Each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims. They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language. Any amendments to any claim expressly made in order to distinguish such claim from known

Serial No. 11/088,073
Page 7 of 13

prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Also, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, it is submitted that the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent form. That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed. This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it. Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered. If the Examiner is of a different view, he is respectfully requested to so indicate.

## Rejection Under 35 U.S.C. 103(a)

### Claims 1, 2, 3, 6, 17 and 18

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan. The rejection is traversed.

Enomoto and Kwan, alone or in any permissible combination, fail to teach all elements of Applicant's independent claim 1.

Enomoto fails to teach or suggest at least the limitation of "sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition; wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Serial No. 11/088,073
Page 8 of 13

Rather, Enomoto merely discloses a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the <u>address of the congestion control node that generates the congestion notification</u>.

Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>." (Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a congestion notification *sender*</u>." (Enomoto, Para. 398, Emphasis added).

In other words, Enomoto merely discloses a system in which a congestion notification message includes an address of the node that generates the congestion notification message. Enomoto is devoid of any teaching or suggestion that a congestion message includes <u>address information of at least one *end-node* associated with a congestion condition,</u> as claimed in Applicant's claim 1.

Thus, Applicant submits that Enomoto fails to teach or suggest at least the limitation of "sending a congestion message from the network node at which the congestion condition is detected <u>toward one or more network nodes upstream of the congestion condition; wherein said congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Furthermore, Kwan fails to bridge the substantial gap between Enomoto and Applicant's independent claim 1.

Kwan discloses an intelligent fabric congestion detection apparatus and method provided to receive data packets from source endpoints and output the data packets to destination endpoints.

Kwan, however, fails to teach or suggest at least the limitation of "sending a congestion message from the network node at which the congestion condition is detected <u>toward one or more network nodes upstream of the congestion condition; wherein said</u>

Serial No. 11/088,073
Page 9 of 13

congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Rather, Kwan merely discloses an arrangement in which (1) the intelligent fabric congestion detection apparatus, upon detection of a persistent congestion event, attaches a congestion experience bit tag to a header of each data packet output from the particular egress queue experiencing congestion and then outputs the marked data packet to the destination endpoint and (2) the destination endpoint receives and reads the source address of each data packet to determine whether one or more data packets have been marked with the congestion experience bit tag in order to identify each source endpoint contributing to the congestion and then sends a message to notify each identified source endpoint that is contributing to the congestion of the particular egress queue. (See Kwan, Paragraphs [0029] and [0033]).

Thus, Kwan merely discloses that a congestion detection node sends a congestion notification to a destination node and, therefore, fails to teach or suggest at least the limitation of "sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition; wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

Thus, Applicant submits that a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is possible) would merely teach an arrangement in which a congestion control node (1) sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the address of the congestion control node that generates the congestion notification and (2) sends a congestion notification to a destination node, where the congestion notification includes an address of a source node. In other words, given that Enomoto and Kwan teach sending of congestion control messages having different types of address information (i.e., Enomoto has an address of the congestion control node that detected the congestion whereas Kwan has source address information) to different types of recipients

Serial No. 11/088,073
Page 10 of 13

(i.e., Enomoto sends the congestion control message to other congestion control nodes whereas Kwan sends the congestion control message to the destination node), a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is possible) fails to teach or suggest the arrangement of Applicants' claim 1. Namely, a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is possible) fails to teach or suggest "sending a congestion message from the network node at which the congestion condition is detected <u>toward one or more network nodes upstream of the congestion condition</u>; wherein said <u>congestion message comprises address information of at least one end-node associated with the congestion condition</u> to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Applicant's claim 1.

As such, independent claim 1 is allowable under 35 U.S.C. 103(a) over Enomoto in view of Kwan. Similarly, independent claims 17 and 18 recite relevant limitations similar to those recited in independent claim 1 and, at least for the same reasons discussed above, independent claims 17 and 18 also are allowable under 35 U.S.C. 103(a) over Enomoto in view of Kwan. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is allowable under 35 U.S.C. 103(a) over Enomoto in view of Kwan.

Therefore, the rejection should be withdrawn.

## Claims 4 and 5

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan further in view of Paul. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

Serial No. 11/088,073
Page 11 of 13

## Claims 7, 8, 10, and 11

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan further in view of Kawakami. The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claim 12

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and Kawakami, applied to claim 11, and in further view of Lee. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 13 and 14

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and Kawakami, applied to claims 11 and 13, and in further view of Bare. The rejection is traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in

Serial No. 11/088,073
Page 12 of 13

view of Kwan.  Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## Claims 15 and 16

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto view Kwan and further in view of Agrawal.  The rejections are traversed.

Applicant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan.  Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 13 of 13

## **Conclusion**

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Eamon Wall at (732) 542-2280 x120 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated: _11/19/10_

Eamon J. Wall
Registration No. 39,414
Attorney for Applicant(s)

WALL & TONG, LLP
25 James Way
Eatontown, New Jersey 07724
Telephone: 732-542-2280
Facsimile: 732-542-2283

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 8876948 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 19-NOV-2010 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 14:41:50 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | ALU126709eResponse_001.pdf | 547048<br>77a9f3f980c357fb675ca6e78d4c9de94aebe3ee | yes | 13 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 13 |

| Warnings: | |
|---|---|
| Information: | |

| | |
|---|---|
| **Total Files Size (in bytes):** | 547048 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 11/088,073 | Filing Date 03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

## APPLICATION AS FILED – PART I

|  |  |  | SMALL ENTITY ☐ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A |  | N/A |  |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  | N/A |  |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  | N/A |  |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = |  | X $ = |  |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = |  | X $ = |  |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). |  |  |  |  |  |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) |  |  |  |  |  |  |
| * If the difference in column 1 is less than zero, enter "0" in column 2. |  |  | TOTAL |  | TOTAL |  |

## APPLICATION AS AMENDED – PART II

|  |  |  |  |  | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|---|

### AMENDMENT

| 11/19/2010 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | X $ = |  | OR | X $52= | 0 |
| Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | X $ = |  | OR | X $220= | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  |  | OR |  |  |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  |  | OR |  |  |
|  |  |  |  |  | TOTAL ADD'L FEE |  | OR | TOTAL ADD'L FEE | **0** |

### AMENDMENT

|  | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = |  | OR | X $ = |  |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = |  | OR | X $ = |  |
| ☐ Application Size Fee (37 CFR 1.16(s)) |  |  |  |  |  |  | OR |  |  |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) |  |  |  |  |  |  | OR |  |  |
|  |  |  |  |  | TOTAL ADD'L FEE |  | OR | TOTAL ADD'L FEE |  |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/JASON B. EADDY/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363          7590          02/15/2011

WALL & TONG, LLP/
ALCATEL-LUCENT  USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/15/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit |
| | Xavier Szewai Wong | 2462 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *19ᵗʰ November 2010*.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-8 and 10-18* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-8 and 10-18* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

Application/Control Number: 11/088,073                                    Page 2
Art Unit: 2462

### DETAILED ACTION

### *Response to Arguments*

Applicant's arguments filed *19*[th] *November 2010* have been considered but they are *not persuasive*.

Applicants raised the issue that neither **Enomoto** nor **Kwan** teaches "a congestion message... toward one or more network node upstream of the congestion condition... [said] congestion message comprises address information of at least one end-node associated with the congestion condition" (Remarks: pages 7-10). The examiner maintains that **Enomoto**, in combination with **Kwan**, addresses the concerned issue above.

First, Enomoto clearly shows a congestion message sent "<u>upstream</u>" in fig. 2 from A1 to node A2; fig. 2: R11 → A13 → L105 → A14 → L104 → A2; Enomoto *may not* have explicitly shown address information is learned of at least one *end-node* associated with the congestion. Secondly, Kwan cures the deficiency by stating in [0037] lines 7-13 "data packets are marked with the congestion detection experience bit tag, and the destination endpoint 12 reads the <u>source addresses</u> of the marked data packets and notifies the <u>associated source endpoint</u> 10 of <u>its contribution to the congestion</u> event. Upon receipt of the <u>notification</u> or the CN message <u>each source endpoint</u> 10 <u>identified as contributing to the congestion</u>." It is *unclear* in the applicant's *claim limitation* whether the so-called *end-point* is referring to which type of end-point (e.g. from a source? a destination?). Therefore, by *broadest reasonable interpretation*, the concept and function of "a congestion message... toward one or more network node

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2462

upstream of the congestion condition… [said] congestion message comprises address

information of at least one end-node associated with the congestion condition" is met by

Enomoto, in combination with Kwan.

MPEP chapter 2100, section 2111 R-5:

     During patent examination, the pending claims must be "given their **broadest reasonable interpretation** consistent with the specification." >The Federal Circuit's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005) expressly recognized that the USPTO employs the "broadest reasonable interpretation" standard:
     The Patent and Trademark Office ("PTO") determines the scope of claims in patent applications not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction "in light of the specification as it would be interpreted by one of ordinary skill in the art."  In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1364[, 70 USPQ2d 1827] (Fed. Cir. 2004). Indeed, the rules of the PTO require that application claims must "conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 CFR  1.75(d)(1). 415 F.3d at 1316, 75 USPQ2d at 1329. See also< In re Hyatt, 211 F.3d 1367, 1372, 54 USPQ2d 1664, 1667 (Fed. Cir. 2000). Applicant always has the opportunity to amend the claims during prosecution, and broad interpretation by the examiner reduces the possibility that the claim, once issued, will be interpreted more broadly than is justified. In re Prater, 415 F.2d 1393, 1404-05, 162 USPQ 541, 550-51 (CCPA 1969) (Claim 9 was directed to a process of analyzing data generated by mass spectrographic analysis of a gas. The process comprised selecting the data to be analyzed by subjecting the data to a mathematical manipulation. The examiner made rejections under 35 U.S.C. 101 and 102. In the 35 U.S.C. 102 rejection, the examiner explained that the claim was anticipated by a mental process augmented by pencil and paper markings. The court agreed that the claim was not limited to using a machine to carry out the process since the claim did not explicitly set forth the machine. The court explained that "reading a claim in light of the specification, to thereby interpret limitations explicitly recited in the claim, is a quite different thing from reading limitations of the specification into a claim,' to thereby narrow the scope of the claim by implicitly adding disclosed limitations which have no express basis in the claim." The court found that applicant was advocating the latter, i.e., the impermissible importation of subject matter from the specification into the claim.). See also In re Morris, 127 F.3d 1048, 1054-55, 44 USPQ2d 1023, 1027-28 (Fed. Cir. 1997) (The court held that the PTO is not required, in the course of prosecution, to interpret claims in applications in the same manner as a court would interpret claims in an infringement suit. Rather, the "PTO applies to verbiage of the proposed claims the broadest reasonable meaning of the words in their ordinary usage

Application/Control Number: 11/088,073                                      Page 4
Art Unit: 2462

as they would be understood by one of ordinary skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in applicant's specification.").

### *Claim Rejections - 35 USC § 103*

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US 2006/0092840 A1, Kwan).

Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-readable medium containing a program which when executed performs an operation of controlling data flow in a network (figs. 1-4) comprising:

means for detecting a congestion condition at a network node in the network ([0126]; fig. 1: congestion control part A13 of node A1); and

means for sending a congestion message from the network node (A1) at which the congestion condition is detected to one or more network nodes upstream of the congestion condition ([0130 & 0386]: wherein congestion notification sent back "upstream" to node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2; transfer direction determination part A11);

said congestion message adapted to enable said one or more upstream network nodes to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition ([0154, 156 & 158]).

Application/Control Number: 11/088,073                                        Page 5
Art Unit: 2462

Enomoto does not very expressively mention "wherein address information is learned of at least one end-node associated with the congestion condition." Kwan teaches address information is learned of at least one end-node associated with the congestion condition ([0037] lines 7-13: …the data packets are marked with the congestion detection experience bit tag, and the destination endpoint 12 reads the source addresses of the marked data packets and notifies the associated source endpoint 10 of its contribution to the congestion event. Upon receipt of the notification or the CN message each source endpoint 10 identified as contributing to the congestion; see also [0042] lines 7-12). It would have been obvious to one of ordinary skill in the art at the time the invention was created to learn address of an end-node generating congestion notification as taught by Kwan to the congestion handling method of Enomoto for effective retransmission error recovery to recover lost packets based on the congestion state and quickly identify the root cause of a possible failure along a communication route and facilitate adjustment to traffic to ease the congestion.

Claim 2, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion condition is determined when a queue maximum occupancy is exceeded ([0227]).

Claim 3, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion condition is determined when data received by a network node exceeds an output link capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion message comprises an indication that a congestion condition exists ([0210]).

Application/Control Number: 11/088,073                                   Page 6
Art Unit: 2462

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US 2006/0092840 A1, Kwan) and in further view of Paul et al (US 6,148,005, Paul).

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed invention yet not *very specifically* mentioned congestion condition is dependent of a queue data drop rate exceeding a threshold level wherein the threshold is determined by at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time. Paul mentions the *concept* of when a packet loss (drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been obvious to one of ordinary skill in the art at the time the invention was created to apply such congestion condition determination policies taught by Paul to the congestion buffer used amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission error recovery to recover lost packets based on the congestion state.

Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US 2006/0092840 A1, Kwan) and in further view of Kawakami et al (US 2002/0136163 A1, Kawakami).

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the claimed invention yet the specifics of: the congestion message comprising a <u>MAC</u>

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2462

address pair, which has source and destination addresses, of a traffic flow or an end-node contributing to the congestion are not *very expressively* mentioned. Kawakami mentions the congestion notification packet wherein a MAC address of a terminal (end-node) to which flow (data flow) control is to be applied is specified as the destination address of the packet; and in a data packet, the transmission source address specified in the packet is the MAC address of a source terminal, however in the case of a congestion notification packet a unique address is specified as the source address ([0108]). It would have been obvious to one of ordinary skill in the art to apply the concept of pair MAC (source, destination) address congestion message of Kawakami to the congestion notification of Enomoto to avoid packet loss from a congested flow.

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US 2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami), applied to claim 11, and in further view of Lee et al (US 6,636,510 B1, Lee).

Claim 12, applied to claim 11: Enomoto, modified by Kwan and Kawakami, disclose the claimed invention yet may not have *very expressively* mentioned dropping packets associated with the *destination address*. Lee discloses destination address modification for congestion may be accompanied by partial packet discard, through destination address modification of the remaining cells forming part of a multiple cell packet to remove the destination address for the congested port; and, sending with destination address modification and optional partial packet discard if the queue size is

Application/Control Number: 11/088,073                                  Page 8
Art Unit: 2462

above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify

the packet dropping policy of Enomoto, modified by Kawakami, to use the destination

address based packet dropping policy of Lee to avoid overflow buffer in transmission.


        Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

        Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the

dropping of packets associated with *source and destination addresses* wherein when

the *source end-node address is unknown*, the data flow is controlled by dropping those

packets associated only with the destination address. Bare mentions both source and

destination addresses are used to determine packet dropping conditions; and, that a

packet with unknown source address is dropped directed to a specific destination MAC

address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary

skill in the art at the time the invention was created to modify the packet dropping policy

of Enomoto, modified by Kawakami, to use the source and destination addresses as

taught by Bare to maintain load balancing by checking whether a packet from a certain

source address were received within a predetermined time window.

Application/Control Number: 11/088,073                                      Page 9
Art Unit: 2462

Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US
2006/0092840 A1, Kwan) and in further view of Agrawal et al (US 2003/0081546 A1,
Agrawal).

Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed
invention yet not specifically about Service Level Agreement flow control and dropping
policies. Agrawal teaches flows are given various priority levels depending upon the
customer's Service Level Agreements (SLA), which determine whether the flows are
delayed or dropped when there is congestion in the network or within the source node
itself ([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is
interpreted as a condition for inability to drop since there are the options of "flows are
delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in
the art at the time the invention was made to use the well-known SLA to determine flow
control policies as taught by Agrawal to the flow control function of Enomoto to realize
the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and
leads to minimum de-jittering delay at an end receiving unit.


### *Conclusion*

**THIS ACTION IS MADE FINAL**. Applicant is reminded of the extension of time
policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action.  In the event a first reply is filed within

Application/Control Number: 11/088,073                                    Page 10
Art Unit: 2462

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Xavier Szewai Wong whose telephone number is

571.270.1780.  The examiner can normally be reached on Monday through Friday

10:30 am - 8:00 pm (EST).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Seema Rao can be reached on 571.272.3174.  The fax phone number for

the organization where this application or proceeding is assigned is 571.273.8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866.217.9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

Application/Control Number: 11/088,073                                      Page 11
Art Unit: 2462


/Xavier Szewai Wong/
Patent Examiner AU 2462
13th February 2011

| *Search Notes*  | **Application/Control No.** 11088073 | **Applicant(s)/Patent Under Reexamination** MALHOTRA, RICHA |
|---|---|---|
| | **Examiner** Xavier Szewai Wong | **Art Unit** 2462 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 03.01.09 | XSW |
| updated | above | 05.06.2010 | XSW |
| updated | above | 09.30.2010 | /XSW/ |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | XSW |
| updated above | 05.06.2010 | XSW |
| Updated Above | 2011.02.14 | /XSW/ |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L3 | 7501 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 04:27 |
| L4 | 1 | L3 and (end$1node (terminal end) adj (node station) root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 04:27 |
| L5 | 50 | L3 and (end$1node terminal node root) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 06:05 |
| L6 | 7 | L3 and origin with (ID identifier identification address) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 06:05 |
| L7 | 69234 | (Malhotra).in. (Alcatel Lucent).as. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 06:05 |
| L8 | 9 | L7 and congestion.clm. and upstream. clm. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2011/02/14 06:05 |

**EAST Search History (Interference)**

< This search history is empty>

**2/14/2011 6:11:45 AM**
**C:\ Documents and Settings\ xwong\ Desktop\ Amendo\ Malhotra\ Malhotra_09.30.2010.wsp**

U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **NOTICE OF APPEAL** FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional) Malhotra 7 (LCNT/126709) |
|---|---|

In re Application of
Malhotra 7

| Application Number 11/088,073 | Filed 3/23/05 |
|---|---|

For  METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK

| Art Unit 2462 | Examiner Xavier S. Wong |
|---|---|

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the last decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))                                                            $          0

☐ Applicant claims small entity status.  See 37 CFR 1.27.  Therefore, the fee shown above is reduced by half, and the resulting fee is:                                                               $

☐ A check in the amount of the fee is enclosed.

☒ **Applicants filed a Notice of Appeal on 5/29/09.  The Appeal fee at that time was $540 and the fee was paid by credit card.  Therefore, no Appeal Fee is due at this time.  In the event any further fees are due, the Commissioner is authorized to charge any such fees to Counsel's Deposit Account 50-4802..**

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☐ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment to Deposit Account No.

☐ A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

I am the

☐ applicant /inventor.

☐ assignee of record of the entire interest. See 37 CFR  3.71.  Statement under 37 CFR 3.73(b) is enclosed.  (Form PTO/SB/96)

☒ attorney or agent of record. Registration number     39,414

☐ attorney or agent acting under 37 CFR 1.34. Registration number if acting under 37 CFR 1.34.

_____
Signature

Eamon J. Wall
Typed or printed name

732-842-8110 X120
Telephone number

3/17/11
Date

NOTE:  Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

1058750-1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9686912 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 18-MAR-2011 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 10:58:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Notice of Appeal Filed | ALU126709eNotApp_001.pdf | 49405 <br> 7042b23b5af62f397ccf9739ba651c94618a65c9 | no | 1 |

**Warnings:**

**Information:**

**Total Files Size (in bytes):**                                          49405

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

<u>National Stage of an International Application under 35 U.S.C. 371</u>
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

<u>New International Application Filed with the USPTO as a Receiving Office</u>
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Serial No. 11/088,073
Page 1 of 26

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s)**: | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit**: | 2462 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF | | |

DATA IN A NETWORK

**MAIL STOP APPEAL BRIEF-PATENTS**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

**SIR:**

### APPEAL BRIEF

Appellant submits this Appeal Brief to the Board of Patent Appeals and Interferences on appeal from the decision of the Examiner of Group Art Unit 2462 mailed February 15, 2011 finally rejecting claims 1-8 and 10-18.

In the event that an extension of time is required for this Appeal Brief to be considered timely, and a petition therefor does not otherwise accompany this Appeal Brief, any necessary extension of time is hereby petitioned for.

The **$540** Appeal Brief fee was paid at the time of filing Appellant's Appeal Brief filed on July 28, 2009.  Appellant does not believe that any additional fees are due.  In the event Appellant is incorrect, the Commissioner is authorized to charge any other fees to Deposit Account No. 50-4802/**ALU/126709**.

Serial No. 11/088,073
Page 2 of 26

# <u>TABLE OF CONTENTS</u>

1.   Identification Page…………………………………………………   1

2.   Table of Contents …………………………………………….....   2

3.   Real Party in Interest ……………………………………….....   3

4.   Related Appeals and Interferences …………………………….........   4

5.   Status of Claims ……………………………………………….   5

6.   Status of Amendments ……………………………………….....   6

7.   Summary of Claimed Subject Matter ………………………………   7

8.   Grounds of Rejection to be Reviewed on Appeal ………………….  10

9.   Arguments …………………………………………………....  11

10.   Conclusion …………………………………………….......  21

11.   Claims Appendix …………………………………………….  22

12.   Evidence Appendix ……………………………………….......  25

13.   Related Proceedings Appendix …………………………….........  26

Serial No. 11/088,073
Page 3 of 26

## **REAL PARTY IN INTEREST**

The real party in interest is Alcatel-Lucent.

Serial No. 11/088,073
Page 4 of 26

## RELATED APPEALS AND INTERFERENCES

Appellant asserts that no appeals or interferences are known to Appellant, Appellant's legal representative, or assignee which will directly affect or be directly affected by or have a bearing on the Board's decision in the pending appeal.

Serial No. 11/088,073
Page 5 of 26

## STATUS OF CLAIMS

Claims 1-8 and 10-18 are pending in the application.  Claims 1-18 were originally presented in the application. Claims 1, 3, 10 and 12-18 have been amended.  Claim 9 has been canceled.  The final rejection of claims 1-8 and 10-18 is appealed.

Serial No. 11/088,073
Page 6 of 26

## STATUS OF AMENDMENTS

All claim amendments have been entered.

Serial No. 11/088,073
Page 7 of 26

## SUMMARY OF CLAIMED SUBJECT MATTER

Embodiments include a method, computer readable storage medium, and apparatus for controlling data flow in a network using a congestion message.

In one embodiment, a method includes detecting a congestion condition at a network node in the network and sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition.  The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

In one embodiment, a non-transitory computer readable storage medium has stored thereon a program which, when executed by a computer, causes the computer to perform a method for controlling data flow in a network, the method including detecting a congestion condition at a network node in the network and sending a congestion message from the network node at which the congestion condition is detected to one or more network nodes upstream of the congestion condition.  The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

In one embodiment, an apparatus includes means for detecting a congestion condition at a network node in the network and means for sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition. The congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

For the convenience of the Board of Patent Appeals and Interferences, Appellant's independent claims 1, 17, and 18 are presented below with citations to various figures and appropriate citations to at least one portion of the Specification for elements of the appealed claims.

1058787_1

Claim 1 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

> 1.      (previously presented) A method (300) for controlling data flow in a network (100, 200), comprising: (FIGs. 1-3; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16)
>
> detecting (303) a congestion condition at a network node (102) in the network (100, 200); and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)
>
> sending (304, 306, 308) a congestion message from the network node (102) at which the congestion condition is detected toward one or more network nodes (102) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)
>
> wherein said congestion message comprises address information of at least one end-node (102) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Claim 17 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

> 17.      (previously presented) A non-transitory computer readable storage medium (436) having stored thereon a program (432, 438) which, when executed by a computer, causes the computer to perform a method for controlling data flow in a network (100, 200), the method comprising: (FIGs. 1-4; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16; Pg. 9, Lines 9 – 31)
>
> detecting (303) a congestion condition at a network node (106) in the network; and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)
>
> sending (304, 306, 308) a congestion message from the network node (106) at which the congestion condition is detected toward one or

Serial No. 11/088,073
Page 9 of 26

more network nodes (106) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)

wherein said congestion message comprises address information of at least one end-node (102) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Claim 18 positively recites (with reference numerals, where applicable, and cites to at least one portion of the Specification added):

18.    (previously presented) Apparatus (102) for controlling data flow in a network (100, 200) comprising: (FIGs. 1-4; Pg. 3, Lines 24 – 34; Pg. 4, Lines 1 – 24; Pg. 4, Line 34 – Pg. 5, Line 16; Pg. 9, Lines 9 – 31)

means for detecting (424) a congestion condition at a network node (102) in the network (100, 200); and (Pg. 5, Line 17 – Pg. 6, Line 3; Pg. 6, Lines 28 – 33)

means for sending (424) a congestion message from the network node (102) at which the congestion condition is detected toward one or more network nodes (102) upstream of the congestion condition; (Pg. 6, Lines 3 – 6; Pg. 6, Lines 25 – 27)

wherein said congestion message comprises address information of at least one end-node (106) associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition. (Pg. 6, Lines 6 – 22; Pg. 7, Line 1 – Pg. 8, Line 14; Pg. 8, Line 23 – Pg. 9, Line 8)

Serial No. 11/088,073
Page 10 of 26

## <u>GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL</u>

I.   Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent Application Publication No. 2003/0076781 A1 by Enomoto et al. (hereinafter "Enomoto") in view of U.S. Patent Application Publication No. 2006/0092840 A1 by Kwan et al. (hereinafter "Kwan").

II.   Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of U.S. Patent No. 6,148,005 to Paul et al. (hereinafter "Paul").

III.  Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of U.S. Patent Application Publication No. 2002/0136163 A1 by Kawakami et al. (hereinafter "Kawakami").

IV.   Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Kawakami, applied to claim 11, and further in view of U.S. Patent No. 6,636,510 B1 to Lee et al. (hereinafter "Lee").

V.    Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of Kawakami as applied to claims 11 and 13, and in further view of U.S. Patent No. 7,283,476 B2 to Bare (hereinafter "Bare").

VI.   Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and further in view of U.S. Patent Application Publication No. 2003/0081546 A1 by Agrawal et al (hereinafter "Agrawal").

## ARGUMENTS

## I.      Rejection of Claims 1, 2, 3, 6, 17 and 18 Under 35 U.S.C. 103(a)

### A.  Claims 1, 2, 3, and 6

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan. The rejection is traversed.

*1.      The Office Action failed to establish a prima facie case of obviousness of Appellant's independent claim 1, because the portions of Kwan cited in the Office Action to show certain features of Appellant's independent claim 1 fail to teach or suggest those features.*

The Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the portions of Kwan cited in the Office Action to show certain features of Appellant's independent claim 1 fail to teach or suggest those features.

The Office Action cites specific portions of Kwan (namely, Paragraph [0037], Lines 7 – 13 and Paragraph [0042], Lines 7-12), asserting that the cited portions of Kwan disclose the feature of "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition." Appellant disagrees.

As recited in Appellant's claim 1, a congestion message is sent from a network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition, where the congestion message includes address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

By contrast, Kwan discloses an arrangement in which (1) the intelligent fabric congestion detection apparatus, upon detection of a persistent congestion event, attaches

Serial No. 11/088,073
Page 12 of 26

a congestion experience bit tag to a header of each data packet output from the particular egress queue experiencing congestion and then <u>outputs the marked data packet to the destination endpoint</u> and (2) the <u>destination endpoint</u> receives and reads the source address of each data packet to determine whether one or more data packets have been marked with the congestion experience bit tag in order to identify each source endpoint contributing to the congestion and then <u>sends a message to notify each identified source endpoint that is contributing to the congestion</u> of the particular egress queue. (See Kwan, Paragraphs [0029] and [0033]).   This is further described in the portions of Kwan cited in the Office Action.

The first portion of Kwan cited in the Office Action merely describes the response of a source endpoint to the notification received from the destination endpoint.   Namely, this portion of Kwan states that "[u]pon receipt of the notification or the CN message each source endpoint 10 identified as contributing to the congestion may either reduce the transmission rate, pause, or interrupt the transmission of the data packets." (See Kwan, Paragraph [0037], Lines 7-9).   In other words, this portion of Kwan merely discusses a message sent <u>from a destination endpoint to a source endpoint</u>.   This portion of Kwan fails to teach or suggest a congestion message that includes <u>address information of at least one end-node associated with the congestion condition</u> where the congestion message is sent from a network node at which the congestion condition is detected toward <u>one or more network nodes upstream of the congestion condition</u>.

The second portion of Kwan cited in the Office Action merely describes the operation of a destination endpoint in determining whether received packets are marked with a congestion experienced bit.   Namely, this portion of Kwan states that "[a]t operation 390, the method receives and reads the source address associated with each data packet to determine whether one or more data packets have been marked with the congestion experience bit tag during transit through the controller 20 to thereby identify each source endpoint 32 contributing to the congestion." (See Kwan, Paragraph [0042], Lines 7-12).   In other words, this portion of Kwan merely discusses a message sent <u>from an intelligent fabric congestion detection apparatus that detects a persistent congestion event to a destination endpoint</u>.   This portion of Kwan fails to teach or suggest a congestion message that includes <u>address information of at least one end-node associated</u>

with the congestion condition where the congestion message is sent from a network node at which the congestion condition is detected <u>toward one or more network nodes upstream of the congestion condition</u>.

Thus, Appellant submits that the Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the portions of Kwan cited in the Office Action to show certain features of Appellant's independent claim 1 fail to teach or suggest those features.

2. *The Office Action failed to establish a prima facie case of obviousness of Appellant's independent claim 1, because the suggested combination of Enomoto and Kwan fails to teach or suggest all of the elements of Appellant's independent claim 1.*

The Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the suggested combination of Enomoto and Kwan fails to teach or suggest all of the elements of Appellant's independent claim 1.

The Office Action cites specific portions of Enomoto, which disclose a system in which a congestion control node, in response to detecting a congestion condition, sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the <u>address of the congestion control node that generates the congestion notification</u>. Specifically, with respect to the congestion notification, Enomoto states that "[t]his congestion notification includes not only the allowable output amount but also an address for a <u>notification generation node</u>." (See Enomoto, Para. 210, Emphasis added). Similarly, Enomoto states that "[t]his congestion notification includes not only the control command determined by the steps 305-308 but also a <u>node ID of a congestion notification *sender*</u>." (See Enomoto, Para. 398, Emphasis added). In other words, Enomoto merely discloses a system in which a congestion notification message includes an <u>address of the node that generates the congestion notification message</u>.

As described hereinabove, Kwan discloses an arrangement in which (1) the intelligent fabric congestion detection apparatus, upon detection of a persistent congestion event, attaches a congestion experience bit tag to a header of each data packet output from the particular egress queue experiencing congestion and then <u>outputs the</u>

marked data packet to the destination endpoint and (2) the destination endpoint receives and reads the source address of each data packet to determine whether one or more data packets have been marked with the congestion experience bit tag in order to identify each source endpoint contributing to the congestion and then sends a message to notify each identified source endpoint that is contributing to the congestion of the particular egress queue. (See Kwan, Paragraphs [0029] and [0033]).

Thus, Appellant submits that a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is possible) would merely teach an arrangement in which a congestion control node (1) sends a congestion notification to other congestion control nodes, where the congestion notification includes an allowable bandwidth amount and the address of the congestion control node that generates the congestion notification and (2) sends a congestion notification to a destination node, where the congestion notification includes an address of a source node. In other words, given that Enomoto and Kwan teach sending of congestion control messages having different types of address information (i.e., Enomoto has an address of the congestion control node that detected the congestion whereas Kwan has source address information) to different types of recipients (i.e., Enomoto sends the congestion control message to other congestion control nodes whereas Kwan sends the congestion control message to the destination node), a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is even possible) fails to teach or suggest the arrangement of Appellant's claim 1. Namely, a combination of Enomoto and Kwan (assuming *arguendo* that such a combination is possible) fails to teach or suggest "sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition; wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition," as claimed in Appellant's claim 1.

Thus, Appellant submits that the Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the suggested combination of Enomoto and Kwan fails to teach or suggest all of the elements of Appellant's independent claim 1.

3.     *The Office Action failed to establish a prima facie case of obviousness of Appellant's independent claim 1, because the Examiner failed to consider all of the words of Appellant's claim 1 in judging the patentability of Appellant's independent claim 1.*

The Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the Examiner failed to consider all of the words of Appellant's claim 1 in judging the patentability of Appellant's independent claim 1.

In purporting to discuss Appellant's claim 1, the Examiner asserts that "Enomoto does not very expressively mention 'wherein address information is learned of at least one end-node associated with the congestion condition'" and that "Kwan teaches address information is learned of at least one end-node associated with the congestion condition." (See Office Action, Pg. 5). However, it is noted that the limitation of Appellant's claim 1 which the Examiner purports to discuss states that "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition."

Similarly, in purporting to discuss Appellant's claim 1, the Examiner states that "[i]t would have been obvious to one of ordinary skill in the art at the time the invention was created to learn address of an end-node generating congestion notification as taught by Kwan...." (See Office Action, Pg. 5, Emphasis added). In other words, the Examiner appears to assert that Kwan discloses that the address of an end-node that generates a congestion notification is learned. By contrast, as noted above, the limitation of Appellant's claim 1 which the Examiner purports to discuss states that "wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition." Furthermore, it is noted that the cited portions of Enomoto, not Kwan, indicate that the congestion notification message includes an address of the node that generates the congestion notification message, such that the Examiner's statement does not comport with the teachings of the cited portions of Kwan and the Examiner's other discussions of Enomoto and Kwan in the Office Action.

Serial No. 11/088,073
Page 16 of 26

Appellant submits that, in the Office Action, the Examiner clearly misquotes features of Appellant's claim 1 and, similarly, discusses alleged teachings of Enomoto and Kwan, in a manner indicative that the Examiner has failed to consider all of the words of Appellant's claim 1 in judging the patentability of Appellant's claim 1.

Thus, Appellant submits that the Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the Examiner failed to consider all of the words of Appellant's independent claim 1 in judging the patentability of Appellant's claim 1.

*4.     The Final Office Action failed to establish a prima facie case of obviousness of Appellant's independent claim 1, because the Examiner fails to provide an articulated reasoning with some rational underpinning to support the legal conclusion of obviousness of Appellant's independent claim 1.*

Appellant submits that the Examiner fails to provide an articulated reasoning with some rational underpinning to support the legal conclusion of obviousness of Appellant's claim 1.

In the Office Action, in an attempt to provide reasoning for the alleged obviousness of Appellant's claim 1, the Examiner asserts that:

> "It would have been obvious to one of ordinary skill in the art at the time the invention was created to learn address of an end-node generating congestion notification as taught by Kwan to the congestion handling method of Enomoto for effective retransmission error recovery to recover lost packets based on the congestion state and quickly identify the root cause of a possible failure along a communication route and facilitate adjustment to traffic to ease the congestion."
>     [See Office Action, Pg. 5].

Appellant submits that the Examiner's reasoning is unclear, inconsistent, and does not address the features of Appellant's claim 1 and, thus, fails to provide an articulated reasoning, with a rational underpinning, to support a legal conclusion of obviousness of Appellant's claim 1.   The Examiner references an end-node generating congestion notification which, as described hereinabove, appears to be unrelated to Appellant's claim 1. Additionally, it is unclear as to what is meant by "effective retransmission error recovery to recover lost packets based on the congestion state," at least because it is

Serial No. 11/088,073
Page 17 of 26

unclear how lost packets would be recovered based on congestion state and, further, this statement appears to be unrelated to the features of Appellant's claim 1. Similarly, it also is unclear as to what is meant by "effective retransmission error recovery to...quickly identify the root cause of a possible failure along a communication route," at least because, again, it is unclear how retransmission error recovery would identify a root cause of a failure and, further, this statement appears to be unrelated to the features of Appellant's claim 1. Thus, at least for these reasons, Appellant submits that the Examiner's reasoning is unclear, inconsistent, and does not address the features of Appellant's claim 1 and, thus, fails to provide an articulated reasoning, with a rational underpinning, to support a legal conclusion of obviousness of Appellant's claim 1.

Thus, at least for these reasons, Appellant submits that the Office Action fails to establish a *prima facie* case of obviousness of Appellant's independent claim 1, because the Examiner fails to provide an articulated reasoning with some rational underpinning to support the legal conclusion of obviousness of Appellant's independent claim 1.

### 5.    Conclusion

As such, Appellant submits that the Office Action failed to establish *prima facie* case of obviousness of Appellant's independent claim 1 in view of Enomoto and Kwan. Furthermore, since all of the dependent claims that depend from the independent claim include all the limitations of the respective independent claim from which they ultimately depend, each such dependent claim also is allowable.

Therefore, the rejection should be withdrawn.

### B.  Claim 17

Claim 17 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan. The rejection is traversed.

As described hereinabove, the Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1.

Appellant's independent claim 17 recites limitations similar to those of independent claim 1. Thus, at least for the reasons provided hereinabove with respect to

Appellant's independent claim 1, the Office Action also failed to establish a *prima facie* case of obviousness of Appellant's independent claim 17.

Therefore, the rejection should be withdrawn.

### C.  Claim 18

Claim 18 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan.  The rejection is traversed.

As described hereinabove, the Office Action failed to establish a *prima facie* case of obviousness of Appellant's independent claim 1.

Appellant's independent claim 18 recites limitations similar to those of independent claim 1.  Thus, at least for the reasons provided hereinabove with respect to Appellant's independent claim 1, the Office Action also failed to establish a *prima facie* case of obviousness of Appellant's independent claim 18.

Therefore, the rejection should be withdrawn.

### II.    Rejection of Claims 4 and 5 Under 35 U.S.C. 103(a)

Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan further in view of Paul.  The rejections are traversed.

Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan.  Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejections should be withdrawn.

### III.   Rejection of Claims 7, 8, 10, and 11 Under 35 U.S.C. 103(a)

Claims 7, 8, 10, and 11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan further in view of Kawakami.  The rejections are traversed.

Serial No. 11/088,073
Page 19 of 26

Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## IV.    Rejection of Claim 12 Under 35 U.S.C. 103(a)

Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and Kawakami, applied to claim 11, and in further view of Lee. The rejection is traversed.

Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

## V.    Rejection of Claims 13 and 14 Under 35 U.S.C. 103(a)

Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto in view of Kwan and Kawakami, applied to claims 11 and 13, and in further view of Bare. The rejection is traversed.

Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 20 of 26

## VI.    Rejection of Claims 15 and 16 Under 35 U.S.C. 103(a)

Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto view Kwan and further in view of Agrawal. The rejections are traversed.

Appellant notes that this ground of rejection applies only to dependent claims, and is predicated on the validity of the rejection under 35 U.S.C. 103(a) given Enomoto in view of Kwan. Since such rejection has been overcome, as described hereinabove, and there is no argument put forth by the Office Action that the additional references supply that which is missing from Enomoto and Kwan to render the independent claims unpatentable, this ground of rejection cannot be maintained.

Therefore, the rejection should be withdrawn.

Serial No. 11/088,073
Page 21 of 26

## **CONCLUSION**

Thus, Appellant submits that all of the claims presently in the application are allowable.

For the reasons advanced above, Appellant respectfully urges that the rejection of claims 1-8 and 10-18 is improper.  Reversal of the rejection of the Office Action is respectfully requested.

Respectfully submitted,

Dated:    4/5/11                                    E J Wall

Eamon J. Wall
Registration No. 39,414
Wall & Tong, L.L.P.
25 James Way
Eatontown, New Jersey 07724
Telephone: 732-542-2280
Facsimile: 732-542-2283
Attorney for Appellant(s)

Serial No. 11/088,073
Page 22 of 26

## CLAIMS APPENDIX

1.      (previously presented) A method for controlling data flow in a network, comprising:

        detecting a congestion condition at a network node in the network; and

        sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

        wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

2.      (original) The method of claim 1, wherein:

        the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (previously presented) The method of claim 1, wherein:

        the congestion condition is determined when data received by a network node exceeds an output link capability of the node.

4.      (original) The method of claim 1, wherein:

        the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

        the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (original) The method of claim 1, wherein:

Serial No. 11/088,073
Page 23 of 26

the congestion message comprises an indication that a congestion condition exists.

7.    (original) The method of claim 6, wherein:

the congestion message comprises a MAC address associated with a traffic flow to be restricted such that the congestion may be reduced.

8.    (original) The method of claim 6, wherein:

the congestion message comprises a MAC address pair associated with a traffic flow to be restricted such that the congestion may be reduced.

9.    (cancelled)

10.    (previously presented) The method of claim 1, wherein the address information is the MAC address of a destination end-node.

11.    (original) The method of claim 8, wherein the MAC address pair is the source address and destination address of a data flow contributing to the congestion condition.

12.    (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

13.    (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.    (previously presented) The method of claim 13, wherein:

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

Serial No. 11/088,073
Page 24 of 26

15.     (previously presented) The method of claim 1, wherein said controlling is performed in accordance with a Service Level Agreement associated with said at least one flow to be controlled.

16.     (previously presented) The method of claim 15, further comprising:

receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.     (previously presented) A non-transitory computer readable storage medium having stored thereon a program which, when executed by a computer, causes the computer to perform a method for controlling data flow in a network, the method comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

18.     (previously presented) Apparatus for controlling data flow in a network comprising:

means for detecting a congestion condition at a network node in the network; and

means for sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition.

Serial No. 11/088,073
Page 25 of 26

## **EVIDENCE APPENDIX**

None

Serial No. 11/088,073
Page 26 of 26

## <u>RELATED PROCEEDINGS APPENDIX</u>

None

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9822981 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 06-APR-2011 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 15:46:45 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Appeal Brief Filed | ALU126709eAppBr_001.pdf | 880566 <br> a7548d65ca301acf32c50d676d0dd3be6904eb82 | no | 26 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

**Total Files Size (in bytes):** 880566

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        06/27/2011
WALL & TONG, LLP/
ALCATEL-LUCENT  USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/27/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

Application Number:  11/088,073
Filing Date: March 23, 2005
Appellant(s): MALHOTRA, RICHA

—————————————
Eamon J. Wall
<u>For Appellant</u>

**EXAMINER'S ANSWER**

This is in response to the appeal brief filed 6th April 2011 appealing from the Office action mailed 15th February 2011.

I. Real Party in Interest (37 C.F.R § 41.37(c)(1)(i))

A statement identifying the real party in interest is contained in the brief.

II. Related Appeals and Interferences (37 C.F.R § 41.37 (c)(1)(ii))

A statement of related appeals and interferences contained in the brief is

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2462

correct.

III.  Status of Claims (37 C.F.R § 41.37 (c)(1)(iii))

A statement of the status of the claims contained in the brief is correct.

IV. Status of Amendments (37 C.F.R § 41.37 (c)(1)(iv))

The appellant's statement of the status of amendments after final rejection

contained in the brief is correct.

V. Summary of Claimed Subject Matter (37 C.F.R § 41.37 (c)(1)(v))

The summary of claimed subject matter contained in the brief is correct.

VI. Grounds of Rejection to be Reviewed on Appeal (37 C.F.R § 41.37 (c)(1)(vi))

The appellant's statement of the grounds of rejection to be reviewed on appeal is

correct.

### *Grounds of Rejection*

### *Claim Rejections - 35 USC § 103*

The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan).

Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-

readable medium containing a program which when executed performs an operation of

controlling data flow in a network (figs. 1-4) comprising:

means for detecting a congestion condition at a network node in the network

Application/Control Number: 11/088,073                                    Page 4
Art Unit: 2462

([0126]; fig. 1: congestion control part A13 of node A1); and

   means for sending a congestion message from the network node (A1) at which

the congestion condition is detected to one or more network nodes upstream of the

congestion condition ([0130 & 0386]: wherein congestion notification sent back

"upstream" to node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2;

transfer direction determination part A11);

   said congestion message adapted to enable said one or more upstream network

nodes to enable thereby the control of at least one data flow in a manner tending to

reduce the congestion condition ([0154, 156 & 158]).

   Enomoto does not very expressively mention "wherein address information is

learned of at least one end-node associated with the congestion condition."  Kwan

teaches address information is learned of at least one end-node associated with the

congestion condition ([0037] lines 7-13: …the data packets are marked with the

congestion detection experience bit tag, and the destination endpoint 12 reads the

source addresses of the marked data packets and notifies the associated source

endpoint 10 of its contribution to the congestion event. Upon receipt of the notification or

the CN message each source endpoint 10 identified as contributing to the congestion;

see also [0042] lines 7-12). It would have been obvious to one of ordinary skill in the art

at the time the invention was created to learn address of an end-node generating

congestion notification as taught by Kwan to the congestion handling method of

Enomoto for effective retransmission error recovery to recover lost packets based on

Application/Control Number: 11/088,073                                    Page 5
Art Unit: 2462

the congestion state and quickly identify the root cause of a possible failure along a

communication route and facilitate adjustment to traffic to ease the congestion.

   Claim 2, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion condition is determined when a queue maximum occupancy is exceeded

([0227]).

   Claim 3, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion condition is determined when data received by a network node exceeds an

output link capability of the node ([0227]).

   Claim 6, applied to claim 1: Enomoto, in combination with Kwan, disclose the

congestion message comprises an indication that a congestion condition exists ([0210]).


   Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and in further view of Paul et al (US 6,148,005, Paul).

   Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed

invention yet not *very specifically* mentioned congestion condition is dependent of a

queue data drop rate exceeding a threshold level wherein the threshold is determined

by at least one of an amount of data dropped, an amount of data dropped over time and

a number of data drops over time. Paul mentions the *concept* of when a packet loss

(drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves

into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been

obvious to one of ordinary skill in the art at the time the invention was created to apply

Application/Control Number: 11/088,073                                    Page 6
Art Unit: 2462

such congestion condition determination policies taught by Paul to the congestion buffer

used amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission

error recovery to recover lost packets based on the congestion state.


Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan) and in further view of Kawakami et al (US 2002/0136163

A1, Kawakami).

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the

claimed invention yet the specifics of: the congestion message comprising a MAC

address pair, which has source and destination addresses, of a traffic flow or an end-

node contributing to the congestion are not *very expressively* mentioned. Kawakami

mentions the congestion notification packet wherein a MAC address of a terminal (end-

node) to which flow (data flow) control is to be applied is specified as the destination

address of the packet; and in a data packet, the transmission source address specified

in the packet is the MAC address of a source terminal, however in the case of a

congestion notification packet a unique address is specified as the source address

([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to

the congestion notification of Enomoto to avoid packet loss from a congested flow.

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2462

　　　Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claim 11, and in further view of Lee et al (US 6,636,510 B1, Lee).

　　　Claim 12, applied to claim 11: Enomoto, modified by Kwan and Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned dropping

packets associated with the *destination address*. Lee discloses destination address

modification for congestion may be accompanied by partial packet discard, through

destination address modification of the remaining cells forming part of a multiple cell

packet to remove the destination address for the congested port; and, sending with

destination address modification and optional partial packet discard if the queue size is

above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify

the packet dropping policy of Enomoto, modified by Kawakami, to use the destination

address based packet dropping policy of Lee to avoid overflow buffer in transmission.


　　　Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

　　　Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the

dropping of packets associated with *source and destination addresses* wherein when

Application/Control Number: 11/088,073                                        Page 8
Art Unit: 2462

the *source end-node address is unknown*, the data flow is controlled by dropping those

packets associated only with the destination address. Bare mentions both source and

destination addresses are used to determine packet dropping conditions; and, that a

packet with unknown source address is dropped directed to a specific destination MAC

address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary

skill in the art at the time the invention was created to modify the packet dropping policy

of Enomoto, modified by Kawakami, to use the source and destination addresses as

taught by Bare to maintain load balancing by checking whether a packet from a certain

source address were received within a predetermined time window.


        Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and in further view of Agrawal et al (US 2003/0081546 A1,

Agrawal).

Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed invention

yet not specifically about Service Level Agreement flow control and dropping policies.

Agrawal teaches flows are given various priority levels depending upon the customer's

Service Level Agreements (SLA), which determine whether the flows are delayed or

dropped when there is congestion in the network or within the source node itself

([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is

interpreted as a condition for inability to drop since there are the options of "flows are

delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in

Application/Control Number: 11/088,073                                    Page 9
Art Unit: 2462

the art at the time the invention was made to use the well-known SLA to determine flow

control policies as taught by Agrawal to the flow control function of Enomoto to realize

the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and

leads to minimum de-jittering delay at an end receiving unit.


VII. Argument (37 C.F.R § 41.37 (c)(1)(vii))

### *Response to Arguments*

**Argument #A for claims 1**, **2**, **3 and 6**:

**Issues #1**-**4**: Appellant, in general, argues that Enomoto and Kwan failed to

establish a prima facie case of obviousness of independent claim 1 because portions of

Kwan cited in the Office Action (dated 15th February 2011) failed to show certain

features of the independent claim 1. Appellant disagrees that Enomoto, in combination

with Kwan, shows "a network node at which the congestion condition is detected toward

one or more network nodes upstream of the congestion condition... address information

of at least one end-node associated with the congestion condition."

**Examiner's response** –

The examiner first reminds the appellant that although the claims are interpreted

in light of the specification, *limitations from the specification* are **not read into the**

**claims**.  See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).

The examiner interprets that in **Enomoto** figure 1, for example, a congestion

notification message is transferred from congestion control node A1 to congestion

control node A2 through link R11 to notify the congestion control node A2 that

Application/Control Number: 11/088,073                                    Page 10
Art Unit: 2462

congestion control node A1 has experienced a congestion at client end-node C1 [see
paragraphs 0109 and 0113-0115]. Further, *in reference to* said link R11 and said
congestion control node A1, said *congestion node A2* is "*Upstream*" node of said
congestion node A1. Thus, this clearly reads on "a network node at which the
congestion condition is detected (at A1) toward one or more network nodes *upstream* of
the congestion condition (at A2)."

However, Enomoto *may not* have very explicitly/clearly mentioned "address
information of at least one end-node associated with the congestion condition",
therefore, **Kwan** is brought in to cure this *assumed* deficiency. Kwan teaches in
paragraph 0033 lines 4-6 "destination endpoint may need to send a Congestion
Notification (CN) message to each source endpoint that is contributing to the congestion
event"; and, paragraph 0037 lines 7-14 mention "the destination endpoint reads [the]
<u>source addresses</u> of the marked data packets and notifies the associated <u>source</u>
<u>endpoint of its contribution to the congestion event</u>. Upon receipt, of the congestion
notification of the CN message, each source endpoint identified as contributing to the
congestion may either reduce the transmission rate, pause, or interrupt the transmission
of the data packets" (emphasis added). Therefore, in order for those *source endpoints
that caused congestion to be identified*, their source addresses *must* be *known* for
identification purposes.

Therefore, the rejection of claim 1 should be maintained.

**Arguments #B** and **#C** (Issues **II – IV**)::

Application/Control Number: 11/088,073                                        Page 11
Art Unit: 2462

    Appellant merely argues patentability because of the claims' dependence on

claim 1, which is addressed above.


    For the above reasons, it is believed that the rejections should be sustained by

the Honorable Board.


VIII. Claims Appendix (37 C.F.R § 41.37 (c)(1)(viii))

    The copy of the appealed claims contained in the Appendix to the brief is correct.


IX. Evidence Appendix (37 C.F.R § 41.37 (c)(1)(ix))

    There is no such evidence.

X. Related Processing Appendix (37 C.F.R § 41.37 (c)(1)(x))

    No decision rendered by a court or the Board is identified by the examiner in the

Related Appeals and Interferences section of this Examiner's Answer.


                                                    Respectfully submitted,

                                                    /Xavier Szewai Wong/
                                                    Art Unit 2462
                                                    18th June 2011


Conferees:

/Seema S. Rao/

Supervisory Patent Examiner, Art Unit 2462

Application/Control Number: 11/088,073                                    Page 12
Art Unit: 2462


/Nittaya  Juntima/

Primary Examiner, Art Unit 2462



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363     7590     07/18/2011

WALL & TONG, LLP/
ALCATEL-LUCENT  USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/18/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR / PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 11/088,073 (LCNT/126709 | 23 March 2005 | MALHOTRA, RICHA | R Malhotra 7 |

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| Xavier Wong |

| ART UNIT | PAPER |
|---|---|
| 2462 | 20110715 |

DATE MAILED:

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner for Patents

References for EVIDENCE RELIED UPON section added.

/Xavier Szewai Wong/
Primary Examiner AU 2462
15th July 2011

PTO-90C (Rev.04-03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## BEFORE THE BOARD OF PATENT APPEALS
## AND INTERFERENCES

Application Number:  11/088,073
Filing Date: March 23, 2005
Appellant(s): MALHOTRA, RICHA

_____
Eamon J. Wall
For Appellant

## EXAMINER'S ANSWER

This is in response to the appeal brief filed 6th April 2011 appealing from the Office

action mailed 15th February 2011.

I. Real Party in Interest (37 C.F.R § 41.37(c)(1)(i))

A statement identifying the real party in interest is contained in the brief.

II. Related Appeals and Interferences (37 C.F.R § 41.37 (c)(1)(ii))

A statement of related appeals and interferences contained in the brief is

Application/Control Number: 11/088,073                                    Page 3
Art Unit: 2462

correct.

III.  Status of Claims (37 C.F.R § 41.37 (c)(1)(iii))

     A statement of the status of the claims contained in the brief is correct.

IV. Status of Amendments (37 C.F.R § 41.37 (c)(1)(iv))

     The appellant's statement of the status of amendments after final rejection

contained in the brief is correct.

V. Summary of Claimed Subject Matter (37 C.F.R § 41.37 (c)(1)(v))

     The summary of claimed subject matter contained in the brief is correct.

VI. Grounds of Rejection to be Reviewed on Appeal (37 C.F.R § 41.37 (c)(1)(vi))

     The appellant's statement of the grounds of rejection to be reviewed on appeal is

correct.

### *Grounds of Rejection*

### *Claim Rejections - 35 USC § 103*

     The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

     Claims 1, 2, 3, 6, 17 and 18 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan).

     Claims 1, 17 and 18: Enomoto discloses an apparatus comprising computer-

readable medium containing a program which when executed performs an operation of

controlling data flow in a network (figs. 1-4) comprising:

     means for detecting a congestion condition at a network node in the network

Application/Control Number: 11/088,073                          Page 4
Art Unit: 2462

([0126]; fig. 1: congestion control part A13 of node A1); and

      means for sending a congestion message from the network node (A1) at which
the congestion condition is detected to one or more network nodes upstream of the
congestion condition ([0130 & 0386]: wherein congestion notification sent back
"upstream" to node A2 from A1; fig. 2: R11 → A13 → L105 → A14 → L104 → A2;
transfer direction determination part A11);

      said congestion message adapted to enable said one or more upstream network
nodes to enable thereby the control of at least one data flow in a manner tending to
reduce the congestion condition ([0154, 156 & 158]).

      Enomoto does not very expressively mention "wherein address information is
learned of at least one end-node associated with the congestion condition."  Kwan
teaches address information is learned of at least one end-node associated with the
congestion condition ([0037] lines 7-13: …the data packets are marked with the
congestion detection experience bit tag, and the destination endpoint 12 reads the
source addresses of the marked data packets and notifies the associated source
endpoint 10 of its contribution to the congestion event. Upon receipt of the notification or
the CN message each source endpoint 10 identified as contributing to the congestion;
see also [0042] lines 7-12). It would have been obvious to one of ordinary skill in the art
at the time the invention was created to learn address of an end-node generating
congestion notification as taught by Kwan to the congestion handling method of
Enomoto for effective retransmission error recovery to recover lost packets based on

Application/Control Number: 11/088,073                                    Page 5
Art Unit: 2462

the congestion state and quickly identify the root cause of a possible failure along a communication route and facilitate adjustment to traffic to ease the congestion.

Claim 2, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion condition is determined when a queue maximum occupancy is exceeded ([0227]).

Claim 3, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion condition is determined when data received by a network node exceeds an output link capability of the node ([0227]).

Claim 6, applied to claim 1: Enomoto, in combination with Kwan, disclose the congestion message comprises an indication that a congestion condition exists ([0210]).


Claims 4 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US 2006/0092840 A1, Kwan) and in further view of Paul et al (US 6,148,005, Paul).

Claims 4 and 5, applied to claims 1 and 4: Enomoto discloses the claimed invention yet not *very specifically* mentioned congestion condition is dependent of a queue data drop rate exceeding a threshold level wherein the threshold is determined by at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time. Paul mentions the *concept* of when a packet loss (drop) rate goes above a certain level (threshold), a network node (e.g. receiver) moves into a congested state (col. 8 lines 39-67; col. 10 lines 55-62). It would have been obvious to one of ordinary skill in the art at the time the invention was created to apply

Application/Control Number: 11/088,073                                          Page 6
Art Unit: 2462

such congestion condition determination policies taught by Paul to the congestion buffer

used amount measuring part of Enomoto (fig. 3 part A138) for effective retransmission

error recovery to recover lost packets based on the congestion state.


Claims 7, 8, 10 and 11 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al

(US 2006/0092840 A1, Kwan) and in further view of Kawakami et al (US 2002/0136163

A1, Kawakami).

Claims 7, 8, 10 and 11, applied to claims 6, 1 and 8: Enomoto discloses the

claimed invention yet the specifics of: the congestion message comprising a <u>MAC</u>

address pair, which has source and destination addresses, of a traffic flow or an end-

node contributing to the congestion are not *very expressively* mentioned. Kawakami

mentions the congestion notification packet wherein a MAC address of a terminal (end-

node) to which flow (data flow) control is to be applied is specified as the destination

address of the packet; and in a data packet, the transmission source address specified

in the packet is the MAC address of a source terminal, however in the case of a

congestion notification packet a unique address is specified as the source address

([0108]). It would have been obvious to one of ordinary skill in the art to apply the

concept of pair MAC (source, destination) address congestion message of Kawakami to

the congestion notification of Enomoto to avoid packet loss from a congested flow.

Application/Control Number: 11/088,073                                    Page 7
Art Unit: 2462

　　　Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over

Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claim 11, and in further view of Lee et al (US 6,636,510 B1, Lee).

　　　Claim 12, applied to claim 11: Enomoto, modified by Kwan and Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned dropping

packets associated with the *destination address*. Lee discloses destination address

modification for congestion may be accompanied by partial packet discard, through

destination address modification of the remaining cells forming part of a multiple cell

packet to remove the destination address for the congested port; and, sending with

destination address modification and optional partial packet discard if the queue size is

above the threshold (abstract; col. 3 lines 20-30). It would have been obvious to modify

the packet dropping policy of Enomoto, modified by Kawakami, to use the destination

address based packet dropping policy of Lee to avoid overflow buffer in transmission.


　　　Claims 13 and 14 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US

2006/0092840 A1, Kwan) and Kawakami et al (US 2002/0136163 A1, Kawakami),

applied to claims 11 and 13, and in further view of Bare (US 7,283,476 B2).

　　　Claims 13 and 14, applied to claims 11 and 13: Enomoto, modified by Kawakami,

disclose the claimed invention yet may not have *very expressively* mentioned the

dropping of packets associated with *source and destination addresses* wherein when

Application/Control Number: 11/088,073                                        Page 8
Art Unit: 2462

the *source end-node address is unknown*, the data flow is controlled by dropping those
packets associated only with the destination address. Bare mentions both source and
destination addresses are used to determine packet dropping conditions; and, that a
packet with unknown source address is dropped directed to a specific destination MAC
address (col. 13 lines 42-50 & 66-67). It would have been obvious to one of ordinary
skill in the art at the time the invention was created to modify the packet dropping policy
of Enomoto, modified by Kawakami, to use the source and destination addresses as
taught by Bare to maintain load balancing by checking whether a packet from a certain
source address were received within a predetermined time window.


    Claims 15  and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Enomoto et al (US 2003/0076781 A1, Enomoto) in view of Kwan et al (US
2006/0092840 A1, Kwan) and in further view of Agrawal et al (US 2003/0081546 A1,
Agrawal).

    Claims 15 and 16, applied to claims 1 and 15: Enomoto discloses the claimed
invention yet not specifically about Service Level Agreement flow control and dropping
policies. Agrawal teaches flows are given various priority levels depending upon the
customer's Service Level Agreements (SLA), which determine whether the flows are
delayed or dropped when there is congestion in the network or within the source node
itself ([0003]); wherein clearly flows are controlled by SLA and flows being *delayed* is
interpreted as a condition for inability to drop since there are the options of "flows are
delayed *or* dropped" specifically. It would have been obvious to one of ordinary skill in

Application/Control Number: 11/088,073                                      Page 9
Art Unit: 2462

the art at the time the invention was made to use the well-known SLA to determine flow

control policies as taught by Agrawal to the flow control function of Enomoto to realize

the benefit of end-to-end bandwidth guarantees while maintaining per flow shaping and

leads to minimum de-jittering delay at an end receiving unit.


VII. Argument (37 C.F.R § 41.37 (c)(1)(vii))

### *Response to Arguments*

**Argument #A for claims 1**, **2**, **3 and 6**:

**Issues #1-4**: Appellant, in general, argues that Enomoto and Kwan failed to

establish a prima facie case of obviousness of independent claim 1 because portions of

Kwan cited in the Office Action (dated 15th February 2011) failed to show certain

features of the independent claim 1. Appellant disagrees that Enomoto, in combination

with Kwan, shows "a network node at which the congestion condition is detected toward

one or more network nodes upstream of the congestion condition... address information

of at least one end-node associated with the congestion condition."

**Examiner's response** –

The examiner first reminds the appellant that although the claims are interpreted

in light of the specification, *limitations from the specification* are **not read into the**

**claims**.  See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).

The examiner interprets that in **Enomoto** figure 1, for example, a congestion

notification message is transferred from congestion control node A1 to congestion

control node A2 through link R11 to notify the congestion control node A2 that

congestion control node A1 has experienced a congestion at client end-node C1 [see paragraphs 0109 and 0113-0115]. Further, *in reference to* said link R11 and said congestion control node A1, said *congestion node A2* is "*Upstream*" node of said congestion node A1. Thus, this clearly reads on "a network node at which the congestion condition is detected (at A1) toward one or more network nodes *upstream* of the congestion condition (at A2)."

However, Enomoto *may not* have very explicitly/clearly mentioned "address information of at least one end-node associated with the congestion condition", therefore, **Kwan** is brought in to cure this *assumed* deficiency. Kwan teaches in paragraph 0033 lines 4-6 "destination endpoint may need to send a Congestion Notification (CN) message to each source endpoint that is contributing to the congestion event"; and, paragraph 0037 lines 7-14 mention "the destination endpoint reads [the] source addresses of the marked data packets and notifies the associated source endpoint of its contribution to the congestion event. Upon receipt, of the congestion notification of the CN message, each source endpoint identified as contributing to the congestion may either reduce the transmission rate, pause, or interrupt the transmission of the data packets" (emphasis added). Therefore, in order for those *source endpoints that caused congestion to be identified*, their source addresses *must* be *known* for identification purposes.

Therefore, the rejection of claim 1 should be maintained.

**Arguments #B** and **#C** (Issues **II – IV**)::

Application/Control Number: 11/088,073                                         Page 11
Art Unit: 2462

    Appellant merely argues patentability because of the claims' dependence on

claim 1, which is addressed above.


    For the above reasons, it is believed that the rejections should be sustained by

the Honorable Board.


VIII. Claims Appendix (37 C.F.R § 41.37 (c)(1)(viii))

    The copy of the appealed claims contained in the Appendix to the brief is correct.


IX. Evidence Appendix (37 C.F.R § 41.37 (c)(1)(ix))

    These are the references relied upon by the examiner::

US Patent Pub 2003/0076781 A1, Enomoto et al;
US Patent Pub 2006/0092840 A1, Kwan et al;
US Patent 6,148,005, Paul et al;
US Patent Pub 2002/0136163 A1, Kawakami et al;
US Patent 6,636,510 B1, Lee et al; and,
US Patent Pub 2003/0081546 A1, Agrawal et al


X. Related Processing Appendix (37 C.F.R § 41.37 (c)(1)(x))

    No decision rendered by a court or the Board is identified by the examiner in the

Related Appeals and Interferences section of this Examiner's Answer.


                           Respectfully submitted,

                           */Xavier Szewai Wong/*
                           Art Unit 2462
                           18th June 2011

Application/Control Number: 11/088,073                                Page 12
Art Unit: 2462

    Conferees:

    /Seema S. Rao/

    Supervisory Patent Examiner, Art Unit 2462


    /Nittaya  Juntima/

    Primary Examiner, Art Unit 2462

Reply Brief
U.S. S/N 11/088,073
Page 1 of 6

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

| | | | |
|---|---|---|---|
| **Inventor(s):** | Richa Malhotra | | |
| **Case:** | R Malhotra 7 (ALU/126709) | | |
| **Serial No.:** | 11/088,073 | **Group Art Unit:** | 2462 |
| **Filed:** | March 23, 2005 | | |
| **Examiner:** | Wong, Xavier S | **Confirmation #:** | 7089 |
| **Title:** | METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK | | |

**MAIL STOP APPEAL BRIEF-PATENTS**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

Dear Sir or Madam:

### REPLY BRIEF

Appellant submit this Reply Brief to the Board of Patent Appeals and Interferences in response to the Examiner's Answers, dated June 27, 2011 and July 18, 2011, in the Appeal of the above-identified application.

The Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/ALU/**126709**.

### Remarks

Appellant's response to the Examiner's Answers is provided hereinbelow.

### Section 10 (Response to Arguments)

In Section 10 (Response to Arguments) of the Examiner's Answers, the Examiner purports to provide answers to the various arguments made by the Appellant in the Appeal Brief filed for the above-identified application.    Appellant addresses the Examiner's arguments hereinbelow.

### *Enomoto*

In the Examiner's Answers, the Examiner discusses portions of Enomoto and concludes that the portions of Enomoto disclose "…'a network node at which the congestion condition is detected (at A1) toward one or more network nodes upstream of the congestion condition (at A2).'" (See Examiner's Answer, Pgs. 9 – 10).  Appellant disagrees.

#### *First Point*

First, the Examiner states that "[t]he Examiner interprets that in Enomoto figure 1, for example, a congestion notification message is transferred from congestion control node A1 to congestion control node A2 through link R11 to notify the congestion control node A2 that congestion control node has experienced a congestion at client end-node C1 [see paragraphs 0109 and 0113-0115]." (See Examiner's Answer, Pgs. 9-10).

In response, Appellant submits that the Examiner's statement is not supported by the cited portions of Enomoto.  Namely, none of the cited portions of Enomoto indicates that a congestion notification message is transferred from congestion control node A1 to congestion control node A2 <u>through link R11</u>.  Rather, Paragraph [0113] states that "[t]he first congestion control node A1 sends congestion notification toward the second through the fourth congestion control nodes A2 to A4 laid on the ring-shaped network R1 via <u>the second one-way link L102 or the fourth one-way link L104</u>." (See Enomoto, Paragraph [0113], Emphasis added). Similarly, paragraph [0115] states that "[t]he first congestion control node A1 transfers the congestion notification received from the ring-shaped network R1 (the first and the third one-way links

(L101 and L103) to adjacent nodes (the second congestion control node A2 or the fourth congestion control node A4) laid on the ring-shaped network R1 via the fourth or the second one-way links L102 or L104." (See Enomoto, Paragraph [0115], Emphasis added). The cited portions of Enomoto do not state that a congestion notification message is transferred from congestion control node A1 to congestion control node A2 through link R11.

_Second Point_

Second, the Examiner states that "...in reference to said link R11 and said congestion control node A1, said congestion node A2 is 'Upstream' node of said congestion node A1." (See Examiner's Answer, Pg. 10).

In response, it is noted that the first portion of Enomoto cited by the Examiner (namely, Paragraph [0109]) states that "[t]he first congestion control node A1 receives a frame from the first client group C1 through the two-way link L100 and transfers the frame on the ring-shaped network R1 via the second one-way link L102 or the fourth one-way link L104." (See Enomoto, Paragraph [0109], Emphasis added). In other words, the cited portion of Enomoto clearly indicates that the direction of transmission is from congestion control node A1 toward congestion control node A2, such that congestion control node A1 is upstream of congestion control node A2. This clearly contradicts the Examiner's assertion in the Examiner's Answers that "...said congestion node A2 is 'Upstream' node of said congestion node A1." (See Examiner's Answer, Pg. 10).

_Third Point_

As noted above, the Examiner discusses portions of Enomoto and concludes that the portions of Enomoto disclose "...'a network node at which the congestion condition is detected (at A1) toward one or more network nodes upstream of the congestion condition (at A2).'" (See Examiner's Answer, Pgs. 9 – 10).    From the portions of Enomoto discussed hereinabove, however, it is clear that the cited portions of Enomoto indicate that (1) first congestion control node A1 transmits frames in a direction from congestion control node A1 toward congestion control node A2 via the second one-way link L102 or the fourth one-way link L104 such that congestion control node A1 is upstream of congestion control node A2 and (2) first congestion control node A1 sends a congestion notification toward the second through the fourth congestion

Reply Brief
U.S. S/N 11/088,073
Page 4 of 6

control nodes A2 to A4 laid on the ring-shaped network R1 via the second one-way link L102 or the fourth one-way link L104. It is noted that no combination of use of second one-way link L102 and fourth one-way link L104 to transmit the frames and the congestion notification results in an arrangement in which a congestion message is sent from a network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition.

### *Conclusion*

Thus, the Examiner's assertions regarding the cited portions of Enomoto are not supported by the cited portions of Enomoto and, further, the cited portions of Enomoto fail to teach or suggest features of Appellant's claims asserted by the Examiner to be disclosed.

Therefore, the rejection of Appellant's claims on this basis cannot be maintained.

### *Kwan*

In the Examiner's Answer, the Examiner discusses portions of Kwan and concludes that the portions of Kwan disclose "...address information of at least one end-node associated with the congestion condition'" (See Examiner's Answer, Pg. 10). Appellant disagrees.

In response, Appellant submits that the cited portions of Kwan fail to teach or suggest a congestion message that includes address information of at least one end-node associated with the congestion condition where the congestion message is sent from a network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition. Rather, the cited portions of Kwan merely discuss sending of a congestion notification message from a destination endpoint to a source endpoint and the associated response of the source endpoint after receiving the congestion notification message. For example, the first portion of Kwan cited in the Examiner's Answers (namely, Paragraph [0033], lines 4-6]) states that "[t]he destination endpoint 12 may need to send a Congestion Notification (CN) message to each source endpoint that is contributing to the congestion event." Similarly, for example, the second portion of Kwan cited in the Examiner's Answers (namely, Paragraph [0037, lines 7-14]) states that "the destination endpoint 12 reads the source addresses of the marked data packets and notifies the associated source endpoint 10 of its contribution to the congestion event" and, further, that "[u]pon receipt of the notification or the CN message each

Reply Brief
U.S. S/N 11/088,073
Page 5 of 6

source endpoint 10 identified as contributing to the congestion may either reduce the transmission rate, pause, or interrupt the transmission of the data packets." Thus, even assuming *arguendo* that cited portions of Kwan may be interpreted as disclosing "address information of at least one end-node associated with the congestion condition" as asserted by the Examiner, the cited portions of Kwan still would fail to teach or suggest "address information" in the same context as recited in Appellant's claims, at least because the cited portions of Kwan fail to teach or suggest a congestion message that includes address information of at least one end-node associated with the congestion condition <u>where the congestion message is sent from a network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition.</u>   Furthermore, Appellant maintains that the cited portions of Enomoto also are deficient in this regard.

Thus, Appellant submits that the cited portions of Kwan, alone or in combination with the cited portions of Enomoto, fail to teach or suggest a congestion message that includes <u>address information of at least one end-node associated with the congestion condition</u> where the congestion message is sent <u>from a network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition.</u>

Reply Brief
U.S. S/N 11/088,073
Page 6 of 6

## CONCLUSION

Appellant respectfully requests that the Board reverse the rejections and pass the claims to allowance.

Respectfully submitted,

Eamon J. Wall
Registration No. 39,414
Wall & Tong, L.L.P.
25 James Way
Eatontown, New Jersey 07724
Telephone: 732-542-2280
Telephone: 732-542-2283

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10576297 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall/Carol Wilson |
| **Filer Authorized By:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 22-JUL-2011 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 11:55:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Reply Brief Filed | ALU126709eReplyBrief_001.pdf | 233801<br>02c561b3904426cc3e18431edeaf46989dcb644d | no | 6 |

| | |
|---|---|
| Warnings: | |
| Information: | |

**Total Files Size (in bytes):** 233801

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        08/15/2011
WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/15/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

Application/Control Number: 11/088,073                                     Page 2
Art Unit: 2462

### *Acknowledgement of Reply Brief*

The reply brief filed 22nd July 2011 has been entered and considered. The application has

been forwarded to the Board of Patent Appeals and Interferences for decision on the appeal.

*/Xavier Szewai Wong/*
Primary Examiner, Art Unit 2462
10th August 2011



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363      7590      08/16/2011

WALL & TONG, LLP/
ALCATEL-LUCENT  USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2462 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/16/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

Page 1



United States Patent and Trademark Office

**Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov**

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.          Appeal No:    2011-012052
25 JAMES WAY                     Application:  11/088,073
EATONTOWN, NJ 07724              Appellant:    Richa Malhotra

# Board of Patent Appeals and Interferences
# Docketing Notice

Application 11/088,073 was received from the Technology Center at the Board on August 15, 2011 and has been assigned Appeal No: 2011-012052.

In all future communications regarding this appeal, please include both the application number and the appeal number.

The mailing address for the Board is:

BOARD OF PATENT APPEALS AND INTERFERENCES
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VIRGINIA 22313-1450

The facsimile number of the Board is 571-273-0052.  Because of the heightened security in the Washington D.C. area, facsimile communications are recommended.  Telephone inquiries can be made by calling 571-272-9797 and referencing the appeal number listed above.

By order of the Board of Patent Appeals and Interferences.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363      7590      06/19/2014

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2413 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/19/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

*Ex parte* RICHA MALHOTRA

———————

Appeal 2011-012052
Application 11/088,073
Technology Center 2400

———————

Before CAROLYN D. THOMAS, MICHAEL J. STRAUSS, and
DANIEL N. FISHMAN, *Administrative Patent Judges*.

FISHMAN, *Administrative Patent Judge*.


DECISION ON APPEAL

This is an appeal under 35 U.S.C. § 134(a) of finally rejected claims
1-8 and 10-18.  Claim 9 is cancelled.

We have reviewed the Examiner's rejection in light of Appellant's
arguments that the Examiner has erred.  We concur with Appellant's
contention (Appeal Brief 16-17) that the Examiner erred by failing to
articulate a reason based on rational underpinnings for combining Enomoto
(US 2003/0076781 A1) and Kwan (US 2006/0092840 A1).

The Examiner expresses a reason for combining the references
stating:

Appeal 2011-012052
Application 11/088,073

> It would have been obvious to one of ordinary skill in the art at the time the invention was created *to learn address* of an end-node generating congestion notification as taught by Kwan to the congestion handling method of Enomoto for effective retransmission error recovery to recover lost packets based on the congestion state and quickly identify the root cause of a possible failure along a communication route and facilitate adjustment to traffic to ease the congestion.

Answer 4-5 (emphasis added). Initially, we observe the italicized phrase above does not appear in the present claims but rather appeared in the originally filed claims. The original claims were amended removing the italicized phrase. Appellant argues:

> [I]t is unclear as to what is meant by "effective retransmission error recovery to recover lost packets based on the congestion state," at least because it is unclear how lost packets would be recovered based on congestion state . . . Similarly, it also is unclear as to what is meant by "effective retransmission error recovery to . . . quickly identify the root cause of a possible failure along a communication route," at least because, again, it is unclear how retransmission error recovery would identify a root cause of a failure . . . .

Appeal Brief 16-17. We agree that the Examiner's reasoning is unclear and inconsistent. We find no teaching or suggestion in Enomoto, Kwan, or Appellant's Specification that efficacy of the retransmission error recovery of lost packets is a problem to be addressed by the invention or the applied references. Neither do we find any indication that such effective retransmission aids in quickly identifying the root cause of congestion. While it may well be the case that the references can be properly combined, on the record before us, we find the Examiner has failed to express a reason based on rational underpinnings for the proposed combination.

Appeal 2011-012052
Application 11/088,073

Independent claims 17 and 18 include similar limitations and are rejected for essentially the same reasons.  Accordingly, we will not sustain the Examiner's rejection of independent claims 1, 17, and 18 and the dependent claims (2-8 and 10-16).  Appellant's contentions present additional issues.  Because we are persuaded of error with regard to the identified issue, which is dispositive as to all claims, we do not reach these additional issues.

## DECISION

For the above reasons, the Examiner's decision rejecting claims 1-8 and 10-18 is reversed.

## <u>REVERSED</u>

tj



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        03/09/2015

WALL & TONG, LLP/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2413 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/09/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.** 11/088,073 | **Applicant(s)** MALHOTRA, RICHA | |
|---|---|---|---|
| | **Examiner** Xavier Szewai Wong | **Art Unit** 2413 | **AIA (First Inventor to File) Status** No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>19th June 2014</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) <u>1-8 and 10-18</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1-6 and 15-18</u> is/are rejected.
8) ☒ Claim(s) <u>7, 8 and 10-14</u> is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☐ All  b)☐ Some**  c)☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☒ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

Application/Control Number: 11/088,073                                    Page 2
Art Unit: 2413

1.  The present application is being examined under the pre-AIA first to invent

provisions.

    In view of the patent board decision docketed on 19th June 2014, prosecution is

hereby reopened. New grounds of rejection set forth below.

### *Response to Arguments*

2.      Applicant's arguments have been considered but are moot because the

arguments do not apply to any of the references being used in the current rejection.

Please see **Hatta** and **Henderson** rejections below.

### *Claim Rejections - 35 USC § 102*

3.      The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C.

102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country
> or in public use or on sale in this country, more than one year prior to the date of application
> for patent in the United States.

4.      Claims **1**, 2, 3, 6, **17** and **18** are rejected under pre-AIA 35 U.S.C. 102(b)

as being anticipated by Hatta et al (US 6,418,119 B1, Hatta).

**Regarding claims 1 and 18,** Hatta shows apparatus and method for controlling data
flow in a network *(abstract: prevent disability of a data transmission; fig. 1: network)*
comprising:
    means for detecting a congestion condition *(fig. 3: congestion test section 150 of
multiplexer 14-2)* at a network node *(fig. 1: multiplexer 14-2)* in the network *(col. 9 lines 8-
10: multiplexer 14-2 congestion test section 150 detects congestion)*; and
    means for sending a congestion message from the network node *(fig. 3: frame
multiplexer / sender section 152)* at which the congestion condition is detected toward one
or more network nodes upstream of the congestion condition *(col. 9 lines 14-21: FECN /*

*BECN for indicating congestion status in <u>upstream</u> and downstream; fig. 1: FR frames, which contains the congestion status information, are sent in both <u>upstream</u> and downstream directions)*;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition *(fig. 2A: User Information and Address; fig. 2B: FECN and BECN)* to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition *(col. 6 lines 53-60 and 62-65: CN (congestion controlling) bits for notifying congestion in the network… FR terminals have been notified of congestion occurrence and <u>suppress sending frames</u>, thereby, <u>performing congestion control</u>)*.

**Regarding claim 17**, Hatta shows a non-transitory computer readable storage medium having stored thereon a program *(col. 8 lines 29-30: a <u>readable/writable memory circuit</u> such as a RAM; see also claim 8 for computer readable storage medium)* which, when executed by a computer *(fig. 3)*, causes the computer to perform a method for controlling data flow in a network *(abstract: prevent disability of a data transmission; fig. 1: network)*, the method comprising:

detecting a congestion condition at a network node in the network *(col. 9 lines 8-10: multiplexer 14-2 congestion test section 150 detects congestion)*; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition *(col. 9 lines 14-21: FECN / BECN for indicating congestion status in <u>upstream</u> and downstream; fig. 1: FR frames, which contains the congestion status information, are sent in both <u>upstream</u> and downstream directions)*;

wherein said congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition *(col. 6 lines 53-60 and 62-65: CN (congestion controlling) bits for notifying congestion in the network… FR terminals have been notified of congestion occurrence and <u>suppress sending frames</u>, thereby, <u>performing congestion control</u>)*.

Regarding claim 2, Hatta shows the method of claim 1, wherein:
the congestion condition is determined when a queue maximum occupancy is exceeded *(col. 8 lines 45-50: the congestion test section 150 determines an occurrence of congestion if a data amount of user frames inputted from the user frame <u>queue 148 exceeds a threshold value "th,"</u> which was previously calculated based on a transmission capacity "x" of the data transmission path 18 (committed transmission capacity of a virtual circuit) and the like)*.

Regarding claim 3, Hatta shows the method of claim 1, wherein:
the congestion condition is determined when data received by a network node exceeds an output link capability of the node *(col. 8 lines 57-62: frames are transmissible in a remaining portion "z" of the <u>transmission capacity</u> "x" (z=x-y; where y is a complementary portion of the <u>transmission capacity</u> required for transmitting all of LMI frames queued in the LMI frame*

Application/Control Number: 11/088,073                                    Page 4
Art Unit: 2413

*queue 146) of the data transmission path).*

Regarding claim 6, Hatta shows the method of claim 1, wherein:
the congestion message comprises an indication that a congestion condition exists *(col. 10 lines 55-63: FECN, BECN and CN bits).*

-------- ------- ------

### *Claim Rejections - 35 USC § 103*

5.      The text of those sections of Title 35, U.S. Code not included in this action

can be found in a prior Office action.

6.      Claim 4 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable

over Hatta et al (US 6,418,119 B1, Hatta) in view of Henderson et al (US 2004/0037276

A1, Henderson).

Regarding claim 4, Hatta shows the method of claim 1; Hatta does not very explicitly mention wherein:
the congestion condition is determined when a queue data drop rate exceeds a threshold level.
Henderson teaches feature of a congestion condition is determined when a queue data drop rate exceeds a threshold level *([0037] lines 8-11: <u>Congestion avoidance</u> algorithms like RED can be performed when packets are added to <u>queues</u>; [0038] lines 18-23: the average queue size is then compared to the minimum and maximum thresholds, packets are never dropped when the average queue size is below the minimum threshold, and packets are always dropped when the <u>average queue size is above the maximum threshold</u>. However, if the average queue size is between the minimum and <u>maximum thresholds, the <u>drop rate is proportional to the average queue size</u> – therefore, drop rate of queue data cannot exceed a maximum threshold or else congestion will happen).*
It would have been obvious to one of ordinary skill in the art when the invention was made to implement the congestion condition determination feature of Hatta to utilize a queue data drop rate threshold exceeding algorithm as taught by Henderson provide a high level of flexibility for creating queues and avoid congestion (Henderson, [0037] lines 10-11).

-------- ------- ------

Application/Control Number: 11/088,073                                          Page 5
Art Unit: 2413

       7.      Claim 5 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable

over Hatta et al (US 6,418,119 B1, Hatta) in view of Henderson et al (US 2004/0037276

A1, Henderson), applied to claim 4, and in further view of Paul et al (US 6,148,005,

Paul).

Regarding claim 5, Hatta, modified by Henderson, shows the method of claim 4; Hatta,
modified by Henderson, does not very explicitly mention wherein:
the threshold level is determined with respect to at least one of an amount of data
dropped, an amount of data dropped over time and a number of data drops over time.
       Paul teaches function of when a packet loss (drop) rate goes above a certain
level (threshold), a network node (e.g. receiver) moves into a congested state *(col. 8
lines 39-67; col. 10 lines 55-62)*.
       It would have been obvious to one of ordinary skill in the art at the time the
invention was created to apply such congestion condition determination policies taught
by Paul to the congestion buffer used amount measuring part of Hatta, modified by
Henderson, for effective retransmission error recovery to recover lost packets based on
the congestion state.

-------- ------- ------

       8.      Claims 15 and 16 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Hatta et al (US 6,418,119 B1, Hatta) in view of Agrawal et al (US

2003/0081546 A1, Agrawal).

Regarding claim 15, Hatta shows the method of claim 1; Hatta does not explicitly
mention wherein said controlling is performed in accordance with a Service Level
Agreement associated with said at least one flow to be controlled.
Agrawal teaches flows are given various priority levels depending upon the customer's
Service Level Agreements (SLA) *([0003] lines 9-10)*.
It would have been obvious to one of ordinary skill in the art at the time the invention
was made to use the well-known SLA to determine flow control policies as taught by
Agrawal to the method of Hatta to realize the benefit of end-to-end bandwidth
guarantees while maintaining per flow shaping and leads to minimum de-jittering delay
at an end receiving unit.

Regarding claim 16, Hatta, modified by Agrawal, shows the method of claim 15, further
comprising:
receiving an indication of an inability to drop packets in accordance with the

Service Level Agreement *(Agrawal, [0003] lines 9-13: the flows are given various priority levels depending upon the customer's Service Level Agreements, which determine whether the flows are delayed or dropped when there is congestion in the network or within the source node itself).*

### *Allowable Subject Matter*

9.      Claims 7, 8 and 10 – 14 are objected to as being dependent upon a

rejected base claim, but would be allowable if rewritten in independent form including *all*

of the limitations of the base claim and *all* intervening claims.

### *Conclusion*

10.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

1. Moore, US 6,463,035 B1: method and apparatus for initiating an upward signaling control channel in a fast packet network.

2. Kawakami et al, US 2002/0136163 A1: flow control apparatus formed of a network of switching hubs in a hierarchy configuration for performing data packet transfer within each of a plurality of respectively separate groups of terminals in which congestion can be judged for a terminal group based on a level of utilization of a port output buffer that is used only by that group, or based on a rate of flow of data from that group into a port output buffer which is used in common for all terminal groups, and congestion notification packets may be transmitted from a single port or from a plurality of ports of a switching hub, in accordance with the detected degree of congestion.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Xavier Szewai Wong whose telephone number is 571.270.1780. The examiner can normally be reached on Monday through Friday 11:30 am - 9:00 pm (EST).
If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Un C. Cho can be reached on 571.272.7919. The fax phone number for the organization where this application or proceeding is assigned is 571.273.8300.

Application/Control Number: 11/088,073                                             Page 7
Art Unit: 2413

   Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system. Status information for published
applications may be obtained from either Private PAIR or Public PAIR. Status
information for unpublished applications is available through Private PAIR only. For
more information about the PAIR system, see http://pair-direct.uspto.gov. Should you
have questions on access to the Private PAIR system, contact the Electronic Business
Center (EBC) at 866.217.9197 (toll-free). If you would like assistance from a USPTO
Customer Service Representative or access to the automated information system, call
800.786.9199 (IN USA OR CANADA) or 571.272.1000.


*/Xavier Szewai Wong/*
Primary Examiner, Art Unit 2413
17th September 2014

/TIMOTHY P. CALLAHAN/
Director, Technology Center 2400

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2413 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Xavier Wong_.                         (3) _____.

(2) _Michael Bentley_.                     (4) _____.

Date of Interview: _18 September 2014_.

Type:  ☒ Telephonic   ☐ Video Conference
       ☐ Personal [copy given to: ☐ applicant   ☐ applicant's representative]

Exhibit shown or demonstration conducted:  ☐ Yes   ☐ No.
If Yes, brief description: _____.

Issues Discussed  ☐101 ☐112 ☐102 ☐103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _1,17 and 18_.

Identification of prior art discussed: _n/a_.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_The examiner proposed possible amendments to independent claims 1, 17 and 18 to render the application allowable to the applicant's representative on 10th September 2014. The applicant's representative consulted the applicant but the applicant indicated that the proposal is not acceptable on 18th September 2014. Therefore, the examiner is hereby re-opening prosecution for this application._

**Applicant recordation instructions**: It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| | /Xavier Szewai Wong/ |
|---|---|
| | Primary Examiner, Art Unit 2413 |

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 11/088,073 | MALHOTRA, RICHA |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | Xavier Szewai Wong | 2413 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,418,119 B1 | 07-2002 | Hatta et al. | 370/235 |
| * | B | US-6,463,035 B1 | 10-2002 | Moore, Gregory D. | 370/236 |
| * | C | US-6,424,620 B1 | 07-2002 | Nishihara, Motoo | 370/229 |
| * | D | US-6,771,601 B1 | 08-2004 | Aydemir et al. | 370/231 |
| * | E | US-6,148,005 A | 11-2000 | Paul et al. | 370/469 |
| * | F | US-2003/0081546 A1 | 05-2003 | Agrawal et al. | 370/229 |
| * | G | US-2004/0037276 A1 | 02-2004 | Henderson et al. | 370/371 |
| * | H | US-2002/0136163 A1 | 09-2002 | Kawakami et al. | 370/229 |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|-------------|-----|------------------|---------|------------|
| L1 | 124652 | (MOTOROLA AT$1T American).AS. AND (@RLAD < "20050323" @AD < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/10 14:43 |
| L2 | 3 | L1 AND congest$5 same (MAC near3 address) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/10 14:44 |
| L3 | 0 | L1 AND congest$5 same MAC same (F$1CN B$1CN) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/10 14:45 |

**EAST Search History (Interference)**

< This search history is empty>

**9/10/2014 2:45:48 PM**
**C:\Users\xwong\Desktop\XASES\Malhotra\11088073_Post-Reversed-Appeal**
**2014.09.03.wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 9233 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:47 |
| L2 | 11 | L1 and (congest$3 SAME (end adj node end edge border) SAME ((media adj access adj control MAC) adj address)) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:47 |
| L3 | 11 | L1 and congest$3 with (end adj node end) with address | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:49 |
| L4 | 2 | L1 and congest$3 with node with address with (uplink upstream) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:54 |
| L5 | 3 | L1 and congest$3 with address with (uplink upstream) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:54 |
| L6 | 11 | L1 and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:58 |
| L7 | 16 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) AND (queue buffer FIFO) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:02 |
| L8 | 13 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) NOT ATM.AB. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:43 |
| L9 | 0 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME ((IP MAC) adj address) SAME (F$1CN B$1CN back adj pressure) NOT ATM.AB. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:44 |

**EAST Search History (Interference)**

<This search history is empty>

EAST Search History

**9/ 18/ 2014 7:44:32 PM**
**C:\ Users\ xwong\ Documents\ EAST\ Workspaces\ Malhotra_09.30.2010.wsp**

| *Search Notes*  | Application/Control No. 11088073 | Applicant(s)/Patent Under Reexamination MALHOTRA, RICHA |
|---|---|---|
| | Examiner Xavier Szewai Wong | Art Unit 2413 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 2009.03.01 | /XSW/ |
| updated | above | 05.06.2010 | /XSW/ |
| updated | above | 09.30.2010 | /XSW/ |
| updated | above | 2014.09.15 | /XSW/ |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | /XSW/ |
| updated searches above | 05.06.2010 | /XSW/ |
| Updated Searches Above | 2011.02.14 | /XSW/ |
| Consulted TQAS Chau Nguyen regarding patentability and prior art searches | 2014.09.10 | /XSW/ |
| Updated Searches Above | 2014.09.10 | /XSW/ |
| Updated EAST Searches | 2014.09.26 | /XSW/ |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | |

| | *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 11088073 | MALHOTRA, RICHA |
| | | **Examiner** | **Art Unit** |
| | | Xavier Szewai Wong | 2413 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| ☐ Claims renumbered in the same order as presented by applicant | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | 04/01/2008 | 08/08/2008 | 03/01/2009 | 09/17/2014 | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 9 | ✓ | - | - | - | - | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | O | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 9233 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:47 |
| L17 | 3 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 with (MAC adj address) with destination | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 22:13 |

**EAST Search History (Interference)**

< This search history is empty>

**9/18/2014 10:21:25 PM**
**C:\Users\xwong\Documents\EAST\Workspaces\Malhotra_09.30.2010.wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 9233 | 370/229,230,230.1,231,235.ccls. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 18:47 |
| L8 | 13 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) NOT ATM.AB. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:43 |
| L9 | 4 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) AND MAC NOT ATM.AB. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:48 |
| L10 | 0 | (L1 (370/236.CCLS. AND (@rlad < "20050323" @ad < "20050323"))) and congest$3 SAME address SAME (F$1CN B$1CN back adj pressure) AND MAC AND upstream NOT ATM.AB. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2014/09/18 19:51 |

**EAST Search History (Interference)**

<This search history is empty>

9/18/2014 7:51:33 PM
C:\Users\xwong\Documents\EAST\Workspaces\Malhotra_09.30.2010.wsp

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 137464 | "370".clas. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 04:18 |
| L2 | 46 | L1 AND MAC adj address with congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 04:18 |

**EAST Search History (Interference)**

<This search history is empty>

**9/27/2014 4:19:00 AM**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L4 | 7086 | 370/229,235,236.CCLS. AND (@RLAD < "20050323" @AD < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/09 22:35 |
| L5 | 3 | L4 AND congest$5 same (MAC adj address) same ("backward explicit congestion notification" "forward explicit congestion notification" BECN FECN back$1pressure back adj pressure) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/09 22:38 |
| L6 | 0 | L4 AND (MAC near3 address) same (F$1CN B$1CN forward adj2 congest$3 backward adj2 congest$3) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/09 22:41 |

**EAST Search History (Interference)**

< This search history is empty>

**9/9/2014 10:42:16 PM**
**C:\Users\xwong\Desktop\XASES\Malhotra\ 11088073_Post-Reversed-Appeal 2014.09.03.wsp**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L5 | 136999 | "370".clas. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 01:30 |
| L6 | 54 | L5 AND queue with drop$4 with rate with congest$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 01:36 |
| L7 | 10 | L5 AND queue with drop$4 with rate with congest$6 with threshold | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 01:42 |
| L9 | 14 | L5 AND queue with drop$4 near rate with congest$6 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 01:55 |
| L10 | 16 | L5 AND queue near2 drop$4 near rate | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:00 |
| L11 | 13 | L5 AND queue near2 drop$4 near rate and congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:03 |
| L12 | 2 | L5 AND (queue near2 drop$4 near rate) same congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:03 |
| L13 | 2 | L5 AND (queue near2 drop$4 near rate) same congest$3 and (queue near2 drop$4 near rate) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:04 |
| L14 | 2 | L5 AND (queue near2 (discard$3 drop$4) near rate) same congest$3 and (queue near2 drop$4 near rate) | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:06 |
| L15 | 2 | (queue near2 (discard$3 drop$4) near rate) same congest$3 AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:10 |
| L16 | 41 | (queue with (discard$3 drop$4) near rate) same congest$3 AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:18 |
| L17 | 1 | (queue with (discard$3 drop$4) near rate) same congest$3 same threshold AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:19 |

| L18 | 18 | (queue with (discard$3 drop$4) near rate) with congest$3 AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:21 |
| L19 | 2 | ((fifo buffer) near2 (discard$3 drop$4) near rate) same congest$3 AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:22 |
| L20 | 21 | ((FIFO buffer) with (discard$3 drop$4) near rate) with congest$3 AND (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 02:25 |

**EAST Search History (Interference)**

<This search history is empty>

**9/27/2014 3:35:35 AM**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 1 | "6148005".pn. and threshold | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 03:38 |
| L2 | 137492 | "370".clas. and (@rlad < "20050323" @ad < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 03:39 |
| L3 | 14 | L2 AND (queue buffer FIFO) near3 ((discard$3 dump$3 drop$6) near rate) with threshold | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 03:41 |
| L4 | 12 | L2 AND (queue buffer FIFO) near3 ((discard$3 dump$3 drop$6) near rate) with threshold and packet adj drop$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 03:44 |
| L5 | 5 | L2 AND (queue buffer FIFO) near3 ((discard$3 dump$3 drop$6) near rate) with threshold and packet adj drop$3 AND congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT | OR | ON | 2014/09/27 03:52 |

**EAST Search History (Interference)**

<This search history is empty>

**9/27/2014 4:06:53 AM**

Serial No. 11/088,073
Page 1 of 11

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

### Patent Application

**Serial No.**:   11/088,073                    **Filed**:        March 23, 2005
**Case**:         R Malhotra 7 (LCNT/126709)    **Inventor(s)**:  Richa Malhotra
**Examiner**:     Wong, Xavier S               **Group Art Unit**:    2413
**Conf. No.:**    7089
**Title**:        METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A
                  NETWORK

**MAIL STOP AMENDMENT**
**COMMISSIONER FOR PATENTS**
**P.O. BOX 1450**
**ALEXANDRIA, VA  22313-1450**

### <u>RESPONSE TO OFFICE ACTION</u>

In response to the non-final Office Action mailed March 9, 2015, please reconsider the above-identified patent application as follows.

Applicant does not believe that an extension of time is required for this response to be considered timely.  In the event that an extension of time is required for this response to be considered timely, and a petition therefor does not otherwise accompany this amendment, Applicant hereby petitions for any necessary extension of time.

Applicant submits herein payment of fees for four additional claims ($320) including one additional independent claim ($420).  Applicant does not believe that any additional fees are due in connection with this response.  In the event that the Applicant is incorrect, the Commissioner is authorized to charge any fees due, including extension of time and excess claim fees, to counsel's Deposit Account No. 50-4802/**ALU/126709**.

1152706_1

Serial No. 11/088,073
Page 2 of 11

**<u>IN THE CLAIMS:</u>**

Please amend the claims as follows:

1.      (cancelled)

2.      (currently amended) The method of claim [[1]]7, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

3.      (currently amended) The method of claim [[1]]7, wherein:

the congestion condition is determined when data received by [[a]]the network node exceeds an output link capability of the network node.

4.      (currently amended) The method of claim [[1]]7, wherein:

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

5.      (original) The method of claim 4, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

6.      (cancelled)

7.      (currently amended) ~~The method of claim 6, wherein:~~ A method for controlling data flow in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein the congestion message comprises an indication that a congestion condition exists;

Serial No. 11/088,073
Page 3 of 11

wherein the congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition;

wherein the congestion message comprises a MAC address associated with a ~~traffic~~ data flow to be restricted such that the congestion may be reduced or the congestion message comprises a MAC address pair associated with a data flow to be restricted such that the congestion may be reduced.


8.    (cancelled)


9.    (cancelled)


10.    (currently amended) ~~The method of claim 1,~~ A method for controlling data flow in a network, comprising:

detecting a congestion condition at a network node in the network; and

sending a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein the congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition, wherein the address information is the MAC address of a destination end-node.


11.    (currently amended) The method of claim [[8]]7, wherein the MAC address pair is [[the]]a source address and a destination address of a data flow contributing to the congestion condition.


12.    (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

Serial No. 11/088,073
Page 4 of 11

13.     (previously presented) The method of claim 11, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

14.     (previously presented) The method of claim 13, wherein:

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

15.     (currently amended) The method of claim [[1]]7, wherein [[said]]the controlling is performed in accordance with a Service Level Agreement associated with [[said]]the at least one data flow to be controlled.

16.     (previously presented) The method of claim 15, further comprising:

receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

17.     (cancelled)

18.     (cancelled)

19.     (new) The method of claim 10, wherein:

the congestion condition is determined when a queue maximum occupancy is exceeded.

20.     (new) The method of claim 10, wherein:

the congestion condition is determined when data received by the network node exceeds an output link capability of the network node.

21.     (new) The method of claim 10, wherein:

Serial No. 11/088,073
Page 5 of 11

the congestion condition is determined when a queue data drop rate exceeds a threshold level.

22. (new) The method of claim 21, wherein:

the threshold level is determined with respect to at least one of an amount of data dropped, an amount of data dropped over time and a number of data drops over time.

23. (new) The method of claim 10, wherein the MAC address pair is a source address and a destination address of a data flow contributing to the congestion condition.

24. (new) The method of claim 23, wherein the data flow is controlled by dropping at least a portion of those packets associated with the destination address.

25. (new) The method of claim 23, wherein the data flow is controlled by dropping at least a portion of those packets associated with the source and destination addresses.

26. (new) The method of claim 25, wherein:

in response to the source address end-node being unknown, the data flow is controlled by dropping at least a portion of those packets associated with only the destination address.

27. (new) The method of claim 10, wherein the controlling is performed in accordance with a Service Level Agreement associated with the at least one data flow to be controlled.

28. (new) The method of claim 27, further comprising:

receiving an indication of an inability to drop packets in accordance with the Service Level Agreement.

29. (new) An apparatus configured for controlling data flow in a network, the apparatus comprising:

Serial No. 11/088,073
Page 6 of 11

a processor and a memory communicatively connected to the processor, the processor configured to:

detect a congestion condition at a network node in the network; and

send a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein the congestion message comprises an indication that a congestion condition exists;

wherein the congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition;

wherein the congestion message comprises a MAC address associated with a data flow to be restricted such that the congestion may be reduced or the congestion message comprises a MAC address pair associated with a data flow to be restricted such that the congestion may be reduced.

30.     (new) An apparatus configured for controlling data flow in a network, the apparatus comprising:

a processor and a memory communicatively connected to the processor, the processor configured to:

detect a congestion condition at a network node in the network; and

send a congestion message from the network node at which the congestion condition is detected toward one or more network nodes upstream of the congestion condition;

wherein the congestion message comprises address information of at least one end-node associated with the congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition, wherein the address information is the MAC address of a destination end-node.

## R e m a r k s

Claims 1, 2, 3, 6, 17, and 18 are rejected under 35 U.S.C. 102 as being unpatentable over U.S. Patent No. 6,418,119 to Hatta et al. (hereinafter Hatta).   Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta in view of U.S. Patent Application Publication No. 2004/0037276 to Henderson et al (hereinafter Henderson).   Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta in view of Henderson and in further view of U.S. Patent No. 6,148,005 to Paul et al. (hereinafter Paul).   Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta in view of U.S. Patent Application Publication No. 2003/0081546 to Agrawal et al (hereinafter Agrawal).   Claims 7, 8, and 10 - 14 are indicated as being allowable, but are objected to as being dependent upon a rejected base claim.

Applicant submits that each of the various rejections and objections are overcome by amendments that are made to the specification, drawing, and/or claims, as well as, or in the alternative, by various arguments that are presented.

Applicant submits that any amendments to any claim for reasons other than as expressly recited herein as being for the purpose of distinguishing such claim from known prior art are not being made with an intent to change in any way the literal scope of such claims or the range of equivalents for such claims.   They are being made simply to present language that is better in conformance with the form requirements of Title 35 of the United States Code or is simply clearer and easier to understand than the originally presented language.   Any amendments to any claim expressly made in order to distinguish such claim from known prior art are being made only with an intent to change the literal scope of such claim in the most minimal way, i.e., to just avoid the prior art in a way that leaves the claim novel and not obvious in view of the cited prior art, and no equivalent of any subject matter remaining in the claim is intended to be surrendered.

Applicant submits that, since a dependent claim inherently includes the recitations of the claim or chain of claims from which it depends, the scope and content of any dependent claims that have been herein rewritten in independent form is exactly the same as the scope and content of those claims prior to having been rewritten in independent

Serial No. 11/088,073
Page 8 of 11

form.  That is, although by convention such rewritten claims are labeled herein as having been "amended," it is submitted that only the format, and not the content, of these claims has been changed.  This is true whether a dependent claim has been rewritten to expressly include the limitations of those claims on which it formerly depended or whether an independent claim has been rewritten to include the limitations of claims that previously depended from it.  Thus, by such rewriting no equivalent of any subject matter of the original dependent claim is intended to be surrendered.  If the Examiner is of a different view, he is respectfully requested to so indicate.

### **Claim Amendments**

Applicant has herein amended the claims to accept the allowable subject matter indicated in the Office Action.

Applicant has herein amended dependent claim 7, which is indicated as being allowable, to rewrite the claim in independent form.  It is noted that amended claim 7 includes the features of claims 6 and 1 from which it depends.  It is further noted that claim 7 also includes the feature of dependent claim 8, which also depends from claim 1 via claim 6 and is also indicated as being allowable.  Applicant has herein cancelled claim 8.  It is noted that the features of claim 7 and 8 are recited in claim 7 in the alternative so as to provide coverage for the embodiments of claims 7 and 8 which, again, were indicated as being allowable.

Applicant has herein amended claims 2 – 4, 11, and 15 to depend from newly independent claim 7.

Applicant has herein added new claims 19 – 28 which depend from newly independent claim 10 and which correspond in scope, respectively, to claims 2 – 5 and 11 – 16 which depend from newly independent claim 7.

Applicant has herein added new claims 29 and 30 which correspond in scope to allowable claims 7 and 10, respectively.

Applicant submits that no new matter has been entered by the amendments made herein.

Serial No. 11/088,073
Page 9 of 11

Applicant has herein cancelled claims 1, 6, 8 – 9, and 17 – 18.  Applicant reserves the right to file one or more continuation or divisional applications to pursue the subject matter of any of the cancelled claims.

**Rejection Under 35 U.S.C. 103(a)**

**Claims 1, 2, 3, 6, 17, and 18**

Claims 1, 2, 3, 6, 17, and 18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta.  The rejection is traversed.

Applicant has herein cancelled claims 1, 6, 17, and 18, and has herein amended claims 2 and 3 to depend from newly independent claim 7 which was indicated as being allowable.  Thus, the rejection of these claims is moot.

Therefore, Applicant respectfully requests that the rejection be withdrawn.

**Claims 4, 5, 15, and 16**

Claim 4 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta and Henderson.  Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta, Henderson, and Paul.  Claims 15 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hatta and Agrawal.  The rejections are traversed.

Applicant has herein amended claims 4, 5, 15, and 16 to depend from newly independent claim 7.  Thus, the rejection of these claims is moot.

Therefore, Applicant respectfully requests that the rejection be withdrawn.

**Allowable Subject Matter**

Claims 7, 8, and 10 - 14 are objected to as being dependent upon a rejected base claim.  Applicant has herein amended dependent claim 7, which is indicated as being allowable, to rewrite the claim in independent form.  It is noted that amended claim 7 includes the features of claims 6 and 1 from which it depends.  It is further noted that claim 7 also includes the feature of dependent claim 8, which also depends from claim 1 via claim 6 and is also indicated as being allowable.  Applicant has herein cancelled claim 8.  It is noted that the features of claim 7 and 8 are recited in claim 7 in the

Serial No. 11/088,073
Page 10 of 11

alternative so as to provide coverage for the embodiments of claims 7 and 8 which, again, were indicated as being allowable.  Applicant has herein amended claim 11 to depend from newly independent claim 7.

Therefore, Applicant respectfully requests that the objection be withdrawn.

Serial No. 11/088,073
Page 11 of 11

## **Conclusion**

It is respectfully submitted that the Office Action's rejections have been overcome and that this application is now in condition for allowance. Reconsideration and allowance are, therefore, respectfully solicited.

If, however, the Examiner still believes that there are unresolved issues, the Examiner is invited to call Michael Bentley at (732) 542-2280 x124 so that arrangements may be made to discuss and resolve any such issues.

Respectfully submitted,

Dated:   06-05-2015

/Michael S. Bentley/
Michael S. Bentley
Registration No. 52,613
Attorney for Applicant

WALL & TONG, LLP
25 James Way
Eatontown, New Jersey 07724
Telephone: 732-542-2280
Facsimile: 732-542-2283

1152706_1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11088073 |
| **Filing Date:** | 23-Mar-2005 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa Malhotra |
| **Filer:** | Eamon J. Wall |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in Excess of 20 | 1202 | 4 | 80 | 320 |
| Independent claims in excess of 3 | 1201 | 1 | 420 | 420 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **740** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22554416 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Eamon J. Wall |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709) |
| **Receipt Date:** | 05-JUN-2015 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 17:15:41 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $740 |
| RAM confirmation Number | 4028 |
| Deposit Account | 504802 |
| Authorized User | BENTLEY, MICHAEL |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

    Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

    Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 126709-RESPONSE-nfoa-FILED-6-5-2015.pdf | 100636<br><br>99f96c203bd13ae66f4323b82ad0ce776d566b | yes | 11 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Amendment/Req. Reconsideration-After Non-Final Reject | | 1 | 1 |
| Claims | | 2 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | | 7 | 11 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31814<br><br>a5b4cefcce5d5cb424849102fbo4dc61ef4212b1 | no | 2 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 132450 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>11/088,073 | Filing Date<br>03/23/2005 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☒ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **06/05/2015** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 24 | Minus | ** 20 | = 4 | x $80 = | 320 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 3 | = 1 | x $420 = | 420 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **740** |

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/eugenia v. hardy/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 46363 | 7590 | 07/06/2015 |
| --- | --- | --- |

WALL & TONG, LLC/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
| --- |
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2413 | |

DATE MAILED: 07/06/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

TITLE OF INVENTION: Method and apparatus for flow control of data in a network

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/06/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax**    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

| 46363 | 7590 | 07/06/2015 |
|---|---|---|

WALL & TONG, LLC/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

TITLE OF INVENTION: Method and apparatus for flow control of data in a network

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/06/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| WONG, XAVIER S | 2413 | 370-230100 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent):    ☐ Individual    ☐ Corporation or other private group entity    ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Page 2 of 3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709 | 7089 |

46363    7590    07/06/2015

WALL & TONG, LLC/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

| EXAMINER |
|---|
| WONG, XAVIER S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2413 | |

DATE MAILED: 07/06/2015

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 11/088,073 | | Applicant(s) MALHOTRA, RICHA | |
|---|---|---|---|---|
| | Examiner Xavier Szewai Wong | | Art Unit 2413 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to 5th *5ᵗʰ June 2015*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *2-5,7,10-16 and 19-30 renumbered as 2-5,1,12,6-11 and 13-24*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All      b) ☐ Some   *c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/Xavier Szewai Wong/
Primary Examiner, Art Unit 2413

Application/Control Number: 11/088,073                                    Page 2
Art Unit: 2413

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### Examiner's Comment

The amendments that were filed on 5th June 2015 are entered.

### Conclusion

2.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

3.      1. Kawakami et al, US 2002/0136163 A1: In flow control apparatus formed of a
network of switching hubs in a hierarchy configuration for performing data packet
transfer within each of a plurality of respectively separate groups of terminals, based on
use of group identifiers contained in the data packets, occurrence of congestion of the
output section of a port of a switching hub is judged respectively separately for each of
the terminal groups, and one or more congestion notification packets for effecting a
pause in data packet transmission are generated and transmitted from that switching
hub, directed only to one or more terminals of a group relating to the congestion.

        Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Xavier Szewai Wong whose telephone number is
571.270.1780. The examiner can normally be reached on Monday through Friday 11:30
am - 9:00 pm (EST).
        If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Un C. Cho can be reached on 571.272.7919.  The fax phone number for the
organization where this application or proceeding is assigned is 571.273.8300.
        Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system.  Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.
For more information about the PAIR system, see http://pair-direct.uspto.gov. Should
you have questions on access to the Private PAIR system, contact the Electronic
Business Center (EBC) at 866.217.9197 (toll-free). If you would like assistance from a
USPTO Customer Service Representative or access to the automated information
system, call 800.786.9199 (IN USA OR CANADA) or 571.272.1000.

*/Xavier Szewai Wong/*
Primary Examiner, Art Unit 2413
1st July 2015

Application/Control Number: 11/088,073                                         Page 3
Art Unit: 2413

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11/088,073 | MALHOTRA, RICHA |
| | Examiner | Art Unit | |
| | Xavier Szewai Wong | 2413 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0136163 A1 | 09-2002 | Kawakami et al. | 370/229 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes*  | **Application/Control No.** 11088073 | **Applicant(s)/Patent Under Reexamination** MALHOTRA, RICHA |
|---|---|---|
| | **Examiner** Xavier Szewai Wong | **Art Unit** 2413 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| H04L47/10 | 2015.06.30 | /XSW/ |
| H04L47/11 | 2015.06.30 | /XSW/ |
| H04L47/32 | 2015.07.01 | /XSW/ |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 370 | 229-231,235,236,236.1,236.2,253,312,349,389,471,395.71 | 2009.03.01 | /XSW/ |
| updated | above | 05.06.2010 | /XSW/ |
| updated | above | 09.30.2010 | /XSW/ |
| updated | above | 2014.09.15 | /XSW/ |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST image, class and keyword search in USPAT, US-PGPUB, DERWENT, EPO, JPO, and IBM_TDB (please see search history) | 03.01.09 | /XSW/ |
| updated searches above | 05.06.2010 | /XSW/ |
| Updated Searches Above | 2011.02.14 | /XSW/ |
| Consulted TQAS Chau Nguyen regarding patentability and prior art searches | 2014.09.10 | /XSW/ |
| Updated Searches Above | 2014.09.10 | /XSW/ |
| Updated EAST Searches | 2014.09.26 | /XSW/ |
| Updated Searches Above | 2015.07.01 | /XSW/ |

## INTERFERENCE SEARCH

| | |
|---|---|
| | |

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| See | Above | 2015.07.01 | /XSW/ |

| *Issue Classification*  | **Application/Control No.** 11088073 | **Applicant(s)/Patent Under Reexamination** MALHOTRA, RICHA |
|---|---|---|
| | **Examiner** Xavier Szewai Wong | **Art Unit** 2413 |

| **CPC** | | | | |
|---|---|---|---|---|
| **Symbol** | | | **Type** | **Version** |
| H04L | 47 | 10 | F | 2013-01-01 |
| H04L | 47 | 11 | I | 2013-01-01 |
| H04L | 47 | 17 | I | 2013-01-01 |
| H04L | 47 | 263 | I | 2013-01-01 |
| H04L | 47 | 32 | I | 2013-01-01 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| **CPC Combination Sets** | | | | | |
|---|---|---|---|---|---|
| **Symbol** | | **Type** | **Set** | **Ranking** | **Version** |
| | | | | | |
| | | | | | |

| | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 24 | |
| /Xavier Szewai Wong/ Primary Examiner, Art Unit 2413 | 2015.07.01 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 (Final) | 3 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2413 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | |
| | | H | 0 | 4 | L | 47 / 10 | | | | | |
| **CROSS REFERENCE(S)** | | H | 0 | 4 | L | 47 / 32 | | | | | |
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 24 | |
| /Xavier Szewai Wong/ Primary Examiner, Art Unit 2413 | 2015.07.01 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 (Final) | 3 |

Part of Paper No.  20150630

| *Issue Classification* | **Application/Control No.** | | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|---|
| | 11088073 | | MALHOTRA, RICHA |
| | **Examiner** | | **Art Unit** |
| | Xavier Szewai Wong | | 2413 |

| ☐ | Claims renumbered in the same order as presented by applicant | | | | ☐ | CPA | ☐ | T.D. | ☐ | R.1.47 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| | 1 | | 17 | | | | | | | | | | | | |
| 2 | 2 | | 18 | | | | | | | | | | | | |
| 3 | 3 | 13 | 19 | | | | | | | | | | | | |
| 4 | 4 | 14 | 20 | | | | | | | | | | | | |
| 5 | 5 | 15 | 21 | | | | | | | | | | | | |
| | 6 | 16 | 22 | | | | | | | | | | | | |
| 1 | 7 | 17 | 23 | | | | | | | | | | | | |
| | 8 | 18 | 24 | | | | | | | | | | | | |
| | 9 | 19 | 25 | | | | | | | | | | | | |
| 12 | 10 | 20 | 26 | | | | | | | | | | | | |
| 6 | 11 | 21 | 27 | | | | | | | | | | | | |
| 7 | 12 | 22 | 28 | | | | | | | | | | | | |
| 8 | 13 | 23 | 29 | | | | | | | | | | | | |
| 9 | 14 | 24 | 30 | | | | | | | | | | | | |
| 10 | 15 | | | | | | | | | | | | | | |
| 11 | 16 | | | | | | | | | | | | | | |

| | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 24 | |
| (Assistant Examiner) | (Date) | | |
| /Xavier Szewai Wong/ Primary Examiner, Art Unit 2413 | 2015.07.01 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 (Final) | 3 |

U.S. Patent and Trademark Office                                                          Part of Paper No.  20150630

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L9 | 7 | (congestion and (upstream uplink) and (MAC adj address)).CLM. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:33 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L8 | 19992 | Malhotra.in. (Alcatel Lucent).as. | USPAT; UPAD | OR | ON | 2015/06/30 17:33 |
| L10 | 14 | L8 and (congest$3 and (upstream uplink)).CLM. | USPAT; UPAD | OR | ON | 2015/06/30 17:35 |

6/30/2015 5:35:43 PM
C:\Users\xwong\Desktop\Malhotra\Malhotra_09.30.2010.wsp

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 83075 | (Malhotra).in. (Alcatel Lucent).as. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:02 |
| L2 | 1 | L1 and (congestion and (upstream uplink) and (MAC adj address)).CLM. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:02 |
| L3 | 9319 | (H04L47/10 H04L47/11 H04L47/32).CPC. AND (@RLAD < "20050323" @AD < "20050323") | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:13 |
| L4 | 40 | L3 AND (end$1node terminal node root edge border) with (ID identifier identification) with congest$5 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:13 |
| L5 | 7 | L4 AND (MAC adj address) SAME congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:13 |
| L6 | 8 | L3 AND (end$1node terminal node root edge border) with (ID identifier identification) with congest$5 WITH (flow stream train) | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:17 |
| L7 | 2 | L6 AND (MAC adj address) SAME congest$3 | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:18 |
| L9 | 7 | (congestion and (upstream uplink) and (MAC adj address)).CLM. | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2015/06/30 17:33 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L8 | 19992 | Malhotra.in. (Alcatel Lucent).as. | USPAT; UPAD | OR | ON | 2015/06/30 17:33 |
| L10 | 0 | L8 and (congestion and (upstream uplink) and (MAC adj address)).CLM. | USPAT; UPAD | OR | ON | 2015/06/30 17:33 |

**6/ 30/ 2015 5:34:37 PM**
**C:\ Users\ xwong\ Desktop\ Malhotra\ Malhotra_09.30.2010.wsp**

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Index of Claims*** | 11088073 | MALHOTRA, RICHA |
| | **Examiner** | **Art Unit** |
| | Xavier Szewai Wong | 2413 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

☐ **Claims renumbered in the same order as presented by applicant**     ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 10/26/2007 | 04/01/2008 | 08/08/2008 | 03/01/2009 | 09/17/2014 | 07/01/2015 | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| 2 | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| 3 | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| 4 | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| 5 | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| 1 | 7 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | O | - | | | |
| | 9 | ✓ | - | - | - | - | - | | | |
| 12 | 10 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 6 | 11 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 7 | 12 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 8 | 13 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 9 | 14 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 10 | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| 11 | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | - | | | |
| 13 | 19 | | | | | | = | | | |
| 14 | 20 | | | | | | = | | | |
| 15 | 21 | | | | | | = | | | |
| 16 | 22 | | | | | | = | | | |
| 17 | 23 | | | | | | = | | | |
| 18 | 24 | | | | | | = | | | |
| 19 | 25 | | | | | | = | | | |
| 20 | 26 | | | | | | = | | | |
| 21 | 27 | | | | | | = | | | |
| 22 | 28 | | | | | | = | | | |
| 23 | 29 | | | | | | = | | | |
| 24 | 30 | | | | | | = | | | |

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

**Patent Application**

| | | | |
|---|---|---|---|
| **Serial No.**: | 11/088,073 | **Filed**: | March 23, 2005 |
| **Case**: | R Malhotra 7 (LCNT/126709) | **Inventor(s)**: | Richa Malhotra |
| **Examiner**: | Wong, Xavier S | **Group Art Unit**: | 2413 |
| **Conf. No.**: | 7089 | | |
| **Title**: | METHOD AND APPARATUS FOR FLOW CONTROL OF DATA IN A NETWORK | | |

MAIL STOP ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## COMMENTS ON STATEMENT OF REASONS FOR ALLOWANCE

Applicants note that the allowed claims have a scope defined by their specific recitations rather than by the statement of reasons for allowance. Applicants do not admit that any element or feature, which is listed in the statement of reasons for allowance, limits any allowed claim unless that element or feature is specifically recited in that allowed claim.

Applicants believe that the record of the prosecution as a whole, including Applicants' specification and claims, provides additional reasons for allowance. The Examiner's Reasons for Allowance do not necessarily state all the reasons for allowance or all the details why the claims are allowed and, therefore, should not be used to interpret the scope of the claims in place of the record of the prosecution as a whole.

Respectfully submitted,

Dated:   07-07-2015

/Michael S. Bentley/
Michael S. Bentley
Registration No. 52,613
Attorney for Applicants
Wall & Tong, LLC
25 James Way
Eatontown, New Jersey 07724
Telephone: 732-542-2280
Facsimile: 732-542-2283

1157846_1.DOC

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22847912 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Michael Bentley |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 07-JUL-2015 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 16:48:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Post Allowance Communication - Incoming | 126709-comments-reasons-allowance-7-7-2015.pdf | 70865  65866cc4a3ea2f72f54bf190ae23cfa358c0be 250 | no | 1 |

**Warnings:**

**Information:**

Total Files Size (in bytes):                        70865

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

    46363      7590      07/06/2015
WALL & TONG, LLC/
ALCATEL-LUCENT USA INC.
25 James Way
Eatontown, NJ 07724

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 03/23/2005 | Richa Malhotra | R Malhotra 7 (LCNT/126709) | 7089 |

TITLE OF INVENTION: Method and apparatus for flow control of data in a network

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/06/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| WONG, XAVIER S | 2413 | 370-230100 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Wall & Tong, LLC
2
3

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

    Alcatel Lucent   -   Boulogne-Billancourt, France

Please check the appropriate assignee category or categories (will not be printed on the patent):  ☐ Individual  ☒ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.   12-2325

☒ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____Patty Giebler_____   Date ___10-1-15___

Typed or printed name ___Patty Giebler___   Registration No. _____

| Electronic Patent Application Fee Transmittal |||||
|:---|:---|---|---|---|
| **Application Number:** | 11088073 |||||
| **Filing Date:** | 23-Mar-2005 |||||
| **Title of Invention:** | Method and apparatus for flow control of data in a network |||||
| **First Named Inventor/Applicant Name:** | Richa Malhotra |||||
| **Filer:** | Gregory J. Murgia/Patty Giebler |||||
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |||||

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|:---:|:---:|:---:|:---:|:---:|
| **Basic Filing:** |||||
| **Pages:** |||||
| **Claims:** |||||
| **Miscellaneous-Filing:** |||||
| **Petition:** |||||
| **Patent-Appeals-and-Interference:** |||||
| **Post-Allowance-and-Post-Issuance:** |||||
| Utility Appl Issue Fee | 1501 | 1 | 960 | 960 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **960** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 23661082 |
| **Application Number:** | 11088073 |
| **International Application Number:** | |
| **Confirmation Number:** | 7089 |
| **Title of Invention:** | Method and apparatus for flow control of data in a network |
| **First Named Inventor/Applicant Name:** | Richa  Malhotra |
| **Customer Number:** | 46363 |
| **Filer:** | Gregory J. Murgia/Patty Giebler |
| **Filer Authorized By:** | Gregory J. Murgia |
| **Attorney Docket Number:** | R Malhotra 7 (LCNT/126709 |
| **Receipt Date:** | 01-OCT-2015 |
| **Filing Date:** | 23-MAR-2005 |
| **Time Stamp:** | 11:26:17 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 960 |
| RAM confirmation Number | 15740 |
| Deposit Account | 122325 |
| Authorized User | GIEBLER, PATTI |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | 2015-10-01_Malhotra-7_Issue_ Fee_Payment.pdf | 372031<br>f6af1363523a5ebfd27dcf6b94ebbe40c6795 578 | no | 1 |

| Warnings: |
|---|

| Information: |
|---|

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30529<br>78b082f404fecbb46518c1d20e5ddaa8dc9c 66690 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| | | Total Files Size (in bytes): | 402560 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

.underline**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/088,073 | 11/10/2015 | 9185036 | R Malhotra 7 (LCNT/126709 | 7089 |

46363        7590        10/21/2015
WALL & TONG, LLC/
ALCATEL-LUCENT USA INC.
12 Christopher Way
Suite 105
Eatontown, NJ 07724

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 1967 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Richa Malhotra, Enschede, NETHERLANDS;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit <u>SelectUSA.gov</u>.

IR103 (Rev. 10/09)

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____ Western District of Texas _____ on the following

☐ Trademarks or  ☑ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>6:20-cv-494 | DATE FILED<br>6/3/2020 | U.S. DISTRICT COURT<br>Western District of Texas |
|---|---|---|
| PLAINTIFF<br><br>WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT | | DEFENDANT<br><br>ZTE CORPORATION, ZTE (USA) INC.;<br>ZTE (TX), INC. |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | U.S. 9,185,036 | 11/10/2015 | WSOU Investments, LLC |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**