# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00489-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00492-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00495-ADA** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ZTE CORPORATION, ZTE (USA)** | § | |
| **INC.; AND ZTE (TX), INC.,** | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Table of Contents .................................................................................................. i

Table of Authorities ............................................................................................. ii

Exhibits ................................................................................................................ iv

Abbreviations ........................................................................................................ v

I.    U.S. Patent No. 7,487,240 (Case No. 6:20-cv-00489) ...........................1

      A.    "verifying connectivity in the network relating to at least Layer-2 and
            Layer-3 objects" (claims 1, 6, and 13) ...........................................1

      B.    "a given containment hierarchy for the network" (claims 1, 6, and 13) ...........3

II.   U.S. Patent No. 8,147,071 (Case No. 6:20-cv-00492) ...........................4

      A.    ZTE Effectively Concedes Indefiniteness in in Parallel IPR
            Proceedings ......................................................................................4

      B.    "the processor" / "wherein the processor is configured to" (claims 1,
            9, 13, and 14) ...................................................................................5

      C.    "movement signalling" / "receiv[ing] movement signalling associated
            with the movement of the projector" / "corresponding movement
            signalling" (claims 1, 9, 13, and 14) ...............................................7

      D.    "discriminate" / "discriminate a movement criterion" / "the processor
            is configured to discriminate a movement criterion" (claims 1, 13, 14) ...........8

      E.    "provide associated image data signalling to project associated image
            data" (claims 1, 13, 14) ...................................................................9

III.  U.S. Patent No. 9,258,232 (Case No. 6:20-cv-00495) .........................10

      A.    "flow control" (claims 1) ...............................................................10

      B.    "transmission over a link" (claims 1 & 14) ....................................11

      C.    "instructions for execution by a traffic flow control system for
            performing flow control on a flow of data packets for transmission
            over a link" (claim 14) ....................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Capital Sec. Sys., Inc. v. NCR Corp.*,
   725 F. App'x 952 (Fed. Cir. Mar. 7, 2018)................................................................. 4

*CloudofChange, LLC v. NCR Corp.*,
   6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020)........................... 10, 11

*Collaborative Agreements,*
   Case No. A-14-CV-356-LY, 2015 WL 2250391  (collecting cases)........................ 15

*Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005).................................................................................. 6

*Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*,
   No. A 00 CA 217 SS, 2000 WL 35731852 (W.D. Tex. July 27, 2000) .................... 14

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
   382 F. Supp. 3d 586 (E.D. Tex. 2019)........................................................ 12, 13, 14

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   6-19-CV-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020).................... 10

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366 (Fed. Cir. 2006)................................................................................. 5

*Enzo Biochem, Inc. v. Applera Corp.*,
   599 F.3d 1325 (Fed. Cir. 2010).................................................................................. 4

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
   2:15-CV-00011-RSP, 2017 WL 5137401  (E.D. Tex. Nov. 4, 2017) ....................... 5

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)................................................................................. 6

*In re Beauregard*,
   53 F.3d 1583 (Fed. Cir. 1995)................................................................................... 15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)................................................................................... 1, 2, 10

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)................................................................................. 3

*PPS Data, LLC v. Jack Henry & Associates, Inc.*,
   2:18-CV-00007-JRG, 2019 WL 1040742 (E.D. Tex. Mar. 4, 2019)...................... 4

*S3 Inc. v. NVIDIA Corp.*,
  259 F.3d 1364 (Fed. Cir. 2001)............................................................................. 6, 7, 11

*SmithKline Beecham Corp. v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005)................................................................................. 8, 12

*Zeroclick, LLC v. Apple Inc.*,
  891 F. 3d 1003 (Fed. Cir. 2018)............................................................................. 14, 15

**Statutes**

35 U.S.C. § 112 ......................................................................................................................... 2

**Rules**

37 CFR §1.72 ........................................................................................................................... 19

MPEP §608.01(b) (8th ed. Rev. 7 July 2008)...................................................................... 19

**Exhibits**

| Exhibit | Description |
|---------|-------------|
| A | ZTE's Invalidity Contentions (served Jan. 6, 2021) (previously filed) |
| B | Email from Joshua J. Yi, Ph.D. to Counsel of 04/14/21. |
| C | *ZTE Corp. et. al v. WSOU Investments, LLC*, IPR2021-00695, Paper 1, Petition for Inter Partes Review (filed Mar. 26, 2021). |

### Abbreviations[1]

| Abbreviation | Description |
|---|---|
| '071 Patent | U.S. Patent No. 8,147,071 |
| '232 Patent | U.S. Patent No. 9,258,232 |
| '240 Prosecution History | U.S. Application Serial No. 10/820,111 (filed in -489 Case, Dkt. 67-10) |
| '240 Patent | U.S. Patent No. 7,487,240 |
| Br. | Plaintiff's Opening Claim Construction Brief |
| IPR | *Inter Partes* Review |
| OGP 3.3 | Order Governing Proceedings – Patent Case Ver 3.3 |
| POSITA | Person of ordinary skill in the art |
| PTAB | Patent Trial and Appeal Board |
| Resp. | Defendants' Responsive Claim Construction Brief |
| WSOU | WSOU Investments LLC D/B/A Brazos Licensing and Development |
| ZTE | Defendants ZTE Corporation, ZTE (USA) Inc. and ZTE (TX), Inc. |

---

[1] Emphasis is added unless otherwise noted.

I.     **U.S. Patent No. 7,487,240 (Case No. 6:20-cv-00489)**[2]

   A.     **"verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects" (claims 1, 6, and 13)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

*First*, as a threshold matter, ZTE misstates the law regarding indefiniteness. For this term and throughout its Brief, ZTE relies on the Federal Circuit's pre-*Nautilus* indefiniteness standard by stating that terms are "insolubly ambiguous." Resp. at 7, 8, 13, 14, 16. As the Court is well-aware, the Supreme Court overruled the "insolubly ambiguous" standard 7 years ago. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("We conclude that the Federal Circuit's [insolubly ambiguous] formulation, which tolerates some ambiguous claims but not others, does not satisfy the statute's definiteness requirement."). ZTE pays lip service to *Nautilus* (*e.g.*, Resp. at 8), but its inconsistent and confusing invocation of both standards makes it impossible to determine which of two standards ZTE applies.

*Second*, ZTE argues that the "claims and specification fail to provide a meaning to what 'connectivity in the network relating to at least Layer-2 and Layer-3 objects.'" *Id.* at 7. ZTE also states that "the claims and the specification fail to provide sufficient support for 'verifying' said connectivity, as well as, verifying the connectivity to Layer 2 and Layer 3 objects." *Id.* Because ZTE does not provide any explanation for these bald assertions and because ZTE relies on the pre-*Nautilus* standard, ZTE has not adequately explained why the claims and specification "fail to provide a meaning" or "fail to provide sufficient support." *See id.* Moreover, because the terms "verifying" and "connectivity" are commonly understood in the field, a POSITA would understand the scope of this term with reasonable certainty. To the extent ZTE

---

[2] The Court has indicated that both written description (absent agreement) and enablement are not properly part of the claim construction proceedings. **Ex. B** (Email from J. Yi. to Counsel of 04/14/21). Accordingly, in this Reply, WSOU has not addressed in this Reply the terms that solely address these issues, *i.e.,* terms in Sections II.B.3., II.B.4., IV.B.3, and IV.B.4. of WSOU's Opening Brief.

is suggesting that a claim term is indefinite because the claim language lacks express definitions of "verifying" or "connectivity," that is not the law. Rather, the claim must be read "read ***in light of*** the specification delineating the patent, and the prosecution history," and only found indefinite if the claims "fail to inform, with reasonable certainty" a POSITA. *Nautilus*, 572 U.S. at 901. Here, a POSITA would understand with reasonable certainty the claim language without any description in the specification. And here the specification avoids any doubt by describing an embodiment where the connectivity verification application 502 is described in the context of verifying connectivity in the network relating to Layer-2 and Layer-3 objects:

> Subsequent to providing 632 connectivity verification results to the connectivity verification application 502. The ***connectivity verification*** application 502 uses the ***connectivity verification*** results and alarm information to display 640 and highlight ***Layer-2*** (506) and ***Layer-3*** (504) ***objects*** 40 affected by the alarm. The connectivity verification results may be interacted with 642 to cause the display 640 of Layer-2 and Layer-3 objects associated with a particular connectivity verification job and/or connectivity verification test.

'240 patent at 9:36-44. The specification also describes at least two examples of connectivity verification jobs (ping and traceroute) in a preferred embodiment and examples of where the connectivity may be verified in a network. *Id.* at 10:66-11:42; id. at 15:25-42 (performing verification tests between "specified source and destination managed entities, "between routers and IP Interfaces," "within VPNs," and "between selected managed entities and unmanaged entities"). All these examples would enable a POSITA to understand the term with reasonable certainty.

**Third**, after noting that this term was introduced in an amendment, ZTE claims that the amendment was not "discussed." Resp. at 8 (citing '240 Prosecution History at 272-88). This is not accurate. Rather, the record shows that the Applicants specifically addressed the amendment of "verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects" in the prosecution history by discussing both the amendment itself and how the specification supported the amendment:

> Exemplary elements of the invention defined by the examined claims 1, 6, and 14 include performing a ***connectivity verification capable of generating a***

*connectivity verification* ….For purposes of expediting examination by simplifying issues, and without any disclaimer of claim scope or subject matter, Applicant[s] respectfully amends the form of base claims 1, 6, and 14 to positively recite the verification test being capable, as is necessarily included in a proper interpretation of the examined claims 1, 6, and 14, *of detecting connectivity in terms of Layer 2 and Layer 3 objects of the network*…. *Enabling and descriptive support for all of the amended recital appears throughout Applicant[s'] originally filed specification, drawings and original claims including, but not limited to, FIG. 5, paragraphs [47]- [56], and original claims 1, 6, and 14*.

'240 Prosecution History at 283-84.[3] Thus, the Applicants specifically discussed the amended language and specifically identified the support for the amendment. These statements would further inform a POSITA as to the scope of the term with reasonable certainty.

### B. "a given containment hierarchy for the network" (claims 1, 6, and 13)

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

*First*, ZTE's *own arguments* establish that plain and ordinary meaning should apply and that the term is not indefinite. Notably, ZTE concedes that the plain and ordinary meaning of "given" includes "particular" or "specified." Resp. at 8 (conceding that the definition of "given" is "commonly understood") (citing Merriam-Webster at 530). Ignoring that definition, ZTE then argues that "the claims provide no information as to what this term [*i.e.*, 'given'] means." Resp. at 8. But given ZTE's concession that "given" is a "commonly understood" word, the Court need only apply that commonly understood definition. *Phillips v. AWH Corp.* 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of *commonly understood* words."). Thus, there is no need, as ZTE claims, for the claims to provide information on what "given" means because a POSITA would apply the "commonly understood" definition and the scope would be reasonably certain to the POSITA.

---

[3] WSOU references to the ECF page number. ZTE appears to be citing the page count of the document without the Exhibit cover page.

*Second*, ZTE attempts to make much of the fact that the **verbatim** phrase "given containment hierarchy" is not "used in the specification at any point." Resp. at 9. But a term need not appear verbatim in the specification to avoid indefiniteness. *See PPS Data, LLC v. Jack Henry & Associates, Inc.*, 2:18-CV-00007-JRG, 2019 WL 1040742, at *10 (E.D. Tex. Mar. 4, 2019) ("Defendant emphasizes that the specification does not explicitly refer to a "central system," but explicit use of the term at issue is not necessarily required."); *Capital Sec. Sys., Inc. v. NCR Corp.*, 725 F. App'x 952, 956–57 (Fed. Cir. Mar. 7, 2018) (agreeing that "although the term ... does not appear verbatim  in the specification, the term is not indefinite when considered in the context of the claims and the specification"). Applying the "commonly understood" meaning of "given," a POSITA would understand its scope with reasonable certainty.

*Third*, applying the "commonly understood" meaning of "given" comports with the prosecution history. ZTE concedes indefiniteness by acknowledging a statement by the Applicants during prosecution that a "given containment hierarchy" is defined in the context of Layer-2 and Layer-3 objects. Resp. at 9. ZTE then goes onto complain that the prosecution history "provides no basis for what the specified containment hierarchy is in the claim other than it defines Layer 2 and Layer 3 objects." *Id.* But because "given" is a commonly understood word that is definite, there is no need for the prosecution history to further define the term. A POSITA would understand this term with reasonable certainty.

## II.    U.S. Patent No. 8,147,071 (Case No. 6:20-cv-00492)

### A.    ZTE Effectively Concedes Indefiniteness in in Parallel IPR Proceedings

In parallel proceedings, ZTE has petitioned for IPR review on anticipation grounds. **Ex. C** (Petition for *Inter Partes* Review) at 8. ZTE concedes the weakness of its indefiniteness positions before this Court by applying plain and ordinary meaning before the PTAB for the terms listed in II.B.-II.E. below. *Id.* at 7. A fundamental tenet of patent law holds that "[a] claim cannot be both indefinite and anticipated." *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). And in filing its IPR petition, "the petition must specify where each element of the claim is found in the prior art patents or printed publications relied upon" 37 C.F.R. § 42.104(b)(4)

(emphasis added). Thus, by filing an IPR Petition asserting anticipation grounds, ZTE effectively concedes that the below-listed disputed claim terms for the '071 patent are not indefinite.

**B.**   **"the processor" / "wherein the processor is configured to" (claims 1, 9, 13, and 14)[4]**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

ZTE raises two distinct arguments regarding these grouping of terms.[5]

*First*, with respect to the term "the processor," ZTE concedes that the term "the processor" is not indefinite in the context of claim 1. Resp. at 13-14 (noting that "[a] processor" is first recited in the preamble and "the processor" is subsequently recited). For claim 13, however, ZTE argues the term is indefinite due to a "lack of antecedent basis." *Id.* at 14. But lack of antecedent basis for a term does not necessarily render a claim indefinite. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006). Here, the intrinsic record would inform a POSITA that the antecedent basis is implied. For instance, parallel independent claim 1 recites "processor for providing image data signalling to a projector." '071 patent at 11:13-14.[6] In addition, the specification describes a "***processor*** 1 ***in combination*** with the connected ***projector*** 2." *Id.* at 4:29-30; *accord* Abstract ("Described herein is ***processor*** for providing image data signalling to a projector."); FIG. 1; 4:34-36 ("The apparatus 100 comprises the ***processor*** 1, projector 2,

---

[4] WSOU also objects to ZTE's apparent attempt to change the disputed claim term. Resp. at 14 (identifying term as "processor is configured to provide image data signalling to the projector based on received movement signalling" where ZTE has attempted to add the underlined language).

[5] ZTE only addressed independent claims 1 and 13 and failed to address independent claim 14. Resp. at 13-14. ZTE has thus waived any arguments with respect to claim 14. *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017), rev'd on other grounds, 955 F.3d 1317 (Fed. Cir. 2020) (finding waiver when party did not assert theory in original responsive brief).

[6] In its IPR Petition, ZTE concedes that "limitations of claim 13 are substantially similar to those of claim 1, except that claim 13 is a 'method of' performing the same functionality claimed in claim 1." **Ex. C** at 36, 69. Thus, ZTE essentially concedes that antecedent basis in claim 13 should be implied to comport with claim 1.

movement sensor 3, user interface 4 and printed circuit board (PCB) 5."). Here, the term in claim 13 is not indefinite because the antecedent basis, while not express, is present by implication. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("a claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable"); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (affirming summary judgment that claim reciting "said longitudinal axis" was not indefinite since Federal Circuit's correction of the district court's claim construction made clear that phrase implicitly referred to the longitudinal axis of a rod, and therefore the antecedent basis was present by implication).

**Second**, ZTE argues that the term "wherein the processor is configured to" is indefinite because the "claim fails to state *how* processor is configured to 'provide image data signalling … based on received movement signalling.'" Resp. at 14. But the "purpose of claims is not to explain the technology or *how* it works, but to state the legal boundaries of the patent grant." *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1369 (Fed. Cir. 2001) (ruling claim term is not indefinite because "claims are not a self-contained explanation of every step … [t]hat is not the role of claims."). Moreover, "a claim is not 'indefinite' simply because it is hard to understand when viewed without benefit of the specification." *Id.* Here, the specification explains that in an embodiment the "input 1a [of the processor] is configured to be connected to the movement sensor 3 and to receive movement signalling that is provided by the movement sensor 3" and "output 1b [of the processor] is configured to be connected to the projector 2 and to provide image data signalling as an output signal." With those portions of the specification and other intrinsic evicence, a POSITA would understand this term with reasonable certainty in view of the intrinsic evidence. *See, e.g.*, Br. at 12 (citing '071 patent at 4:37-65).

C.     **"movement signalling" / "receiv[ing] movement signalling associated with the movement of the projector" / "corresponding movement signalling" (claims 1, 9, 13, and 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

With respect to claims 1, 13, and 14, ZTE argues these claims are indefinite because they "fail to recite what creates the movement signaling and only recite that something receives it." Resp. at 15. But, as noted above, it is not the role of a claim to be a self-contained explanation of every step. *S3*, 259 F.3d at 1369. Accordingly, there is nothing indefinite for claims 1, 13, and 14 to only recite what is received and not recite what creates the "movement signalling." Along the same lines, ZTE also errs by arguing that claims "fail to recite" the "movement sensor" recited in the specification. The Applicants were under no obligation to sweep in every limitation of a preferred embodiments into the claims. *See S3*, 259 F.3d at 1369 ("purpose of claims is not to explain the technology or ***how*** it works, but to state the legal boundaries of the patent grant").

With respect to claim 9, ZTE concedes that claim 9 recites "what provides the movement signaling" (the movement sensor) but then attempts to cast claim 9 as "fail[ing] to inform with reasonable certainty what the claimed 'corresponding movement signaling [sic]' is ***provided to***." Resp. at 15. ZTE is wrong. The surrounding claim language of claim 9 itself recites "wherein the movement sensor is configured to ***provide corresponding movement signalling to the processor***." '071 patent at 12:8-10. Even if "provided to" was lacking in the claim language (it is not lacking as noted in the prior sentence), the claim would not be indefinite as claims are not required to be self-contained units as ZTE would demand. *See S3*, 259 F.3d at 1369.

**D.**    **"discriminate" / "discriminate a movement criterion" / "the processor is configured to discriminate a movement criterion" (claims 1, 13, 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

*First*, ZTE argues that these terms are indefinite because the claims "fail to recite what it means to discriminate." Resp. at 15. Once again, ZTE rigidly implies that the claims themselves must expressly define the term—in this case "discriminate." A POSITA would readily understand the meaning of "discriminate," especially "in light of" the specification's description of detecting a given movement criteria:

> In this embodiment, the processor 1 is configured to have associations between image(s) and corresponding movement criterion. This provides for a corresponding link between a detected movement criterion representing physical movement of the projector and an image represented by image data signalling. This means that, upon ***detection of a given movement criterion***, the processor 1 will provide the associated image data signalling to the projector 2 to project said image associated with the detected movement.

'071 patent, 6:50-58. A POSITA would understand that the ability to "detect[] a given movement criteria," provides the ability to discriminate among different movement criteria. The specification also provides multiple examples of movement criteria. *Id.* at Figs. 2a-2c, 3a-3c, 4; id. at 7:15-34; 8:26-9:27.

*Second*, ZTE argues that the claims "fail to state whether the processor receives code, analog signals, electrical signals, or some other communication—and if received, ***how*** it uses such communication data to discriminate anything." Resp. at 16. As noted, however, the "purpose of claims is not to explain the technology or ***how*** it works, but to state the legal boundaries of the patent grant. *S3*, 259 F.3d at 1369. And with respect to ZTE's argument that the claims must recite a particular method to "discriminate" (*e.g.*, receive code, analog signals, etc.), ZTE is also confusing breadth with indefiniteness. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) ("[B]readth is not indefiniteness."). Notably, ZTE does not claim that a POSITA reading the claims in light of the specification would not understand the scope of "discriminate" with reasonable certainty. Instead, as noted above, ZTE merely argues that the

8

claims are not restricted to one particular way of "*how* the processor discriminates." Resp. at 16. That is an issue that relates to breadth of the claim, not indefiniteness.

> E.   **"provide associated image data signalling to project associated image data" (claims 1, 13, 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

ZTE wrongly asserts that this term is indefinite because claims 1, 13, and 14 "fail to recite to what the image data signaling [sic] and image data is *associated* with." Resp. at 16 (emphasis in original). But ZTE ignores the surrounding claim language.

Claims 1, 13, and 14 each recite:

> wherein the processor is configured to discriminate *a movement criterion* and to provide *associated image data signalling* to project *associated image data*.

'071 patent at claim 1 (11:25-28); claim 13 (12:31-34); claim 14 (12:45-48). As evident from the syntax and context of surrounding claim language, the "*associated* image data signalling" and "*associated* image data" are "*associated*" with the movement.

Moreover, in light of the specification, a POSITA would further confirm his understanding that the "associated image data signalling" and "associated image data" are associated with the movement:

> In this embodiment, the processor 1 is configured to have *associations* between image(s) and *corresponding movement criterion*. This provides for a corresponding link between a *detected movement criterion* representing physical movement of the projector and *an image* represented by *image data signalling*. This means that, upon detection of a given movement criterion, the processor 1 will provide the associated image data signalling to the projector 2 to project said image associated with the detected movement.

'240 patent, 6:50−58.

Indeed, ZTE acknowledges that the specification provides the association to movement, but then suggest that the claims should be read in a vacuum without the benefit of the specification. Resp. at 16 ("Without further explanation [of the specification], the claims is ambiguous as to what is means to provide 'associated image data signaling' [sic] or 'to project associated image data.'").

9

ZTE's approach directly contradicts the Supreme Court's mandate that the claims must be read "read *in light of* the specification." *Nautilus*, 572 U.S. at 901. Even if the claims were unclear in a vacuum (they are not as explained above), ZTE's concession that the specification teaches that "associated" refers to movement establishes that the claims are not indefinite

### III.    U.S. Patent No. 9,258,232 (Case No. 6:20-cv-00495)

### A.    "flow control" (claims 1)[7]

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "regulate movement of a series of data packets" |

ZTE attempts to fault WSOU for not affirmatively proposing a definition for the plain and ordinary meaning of "flow control." Resp. at 18. The only support ZTE cites is a single case from the District of New Jersey. This Court, however, frequently construes claim terms as its plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it and without further defining that plain and ordinary meaning. *E.g., CloudofChange, LLC v. NCR Corp.*, 6-19-CV-00513-ADA, 2020 WL 4004810, at *4 (W.D. Tex. July 15, 2020) (construing "vendor's remote servers" is the "plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it."); *Digital Retail Apps, Inc. v. H-E-B, LP*, 6-19-CV-00167-ADA, 2020 WL 376664, at *3 (W.D. Tex. Jan. 23, 2020) (construing "user of the retailer device," "verifying," "currently unavailable for purchase," "transmitting to the electronic device the goods or services purchased by the consumer," and "displaying on the electronic device the goods or services purchased" each "be given their plain and ordinary meaning that a person of ordinary skill in the art would ascribe to it."). ZTE's reliance on the New Jersey case conflicts with this Court's settled practice.

---

[7] WSOU noted why "flow control" and "instructions for execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link" are not "same or similar terms" to be ordered together as required by OGP 3.2. Br. at 14 n.5. If counted as two terms, ZTE would be beyond the limit authorized by the Court. *See* Email from R. Earle to Counsel of 02/26/21.

With respect to "series of data packets" in ZTE's proposed construction, that language is superfluous of the surrounding claim language which recite "[a] method performed by a traffic flow control system for performing ***flow control*** on a ***flow of data packets for transmission over a link***." '232 patent at claim 1 (6:7-9). For the balance of ZTE's construction, ZTE has offered no principled reason why it is necessary to replace the term "flow control" with "regulate movement." ZTE concedes that a POSITA "would have understood" the term. Resp. at 18. And this is not a situation (and ZTE does not allege) where the term is a "difficult technical term[] for which a construction would help the jury understand the meaning of the term." *CloudofChange*, 2020 WL 4004810, at *2 (citing *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014)).

B.      **"transmission over a link" (claims 1 & 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite under § 112(b) |

ZTE wrongly argues that the term "transmission over a link" is indefinite because "[n]either the claims nor the specification describe what is the claimed 'link' does or what the link connects." Resp. at 22.

***First***, the claims need not specify what the link "does" or "connects" because the "purpose of claims is not to explain the technology or how it works, but to state the legal boundaries of the patent grant." *S3*, 259 F.3d at 1369. ZTE complains that the specification describes a "more elaborate" system than what is recited in independent claims 1 and 14). Resp. at 22. But just because a specification provides more detail than the claims does not make any claims lacking that detail indefinite.

***Second***, ZTE fails to acknowledge that a POSITA would reasonably understand the term "transmission over a link" both in the context of the claim language and "in light of" the specification. ZTE even acknowledges that the specification "elaborate[s]"  that the "link of exemplary claim 1 is a 'serial link'" but complains that "there is no discussion of what the serial

link might be or what it connects to." *Id.* (citing '232 patent at 2:1-4, 2:20-24). Ultimately, ZTE confuses breadth with indefiniteness. *SmithKline.*, 403 F.3d at 1341 ("[B]readth is not indefiniteness."). Notably, ZTE does not claim that a POSITA reading the claims in light of the specification would not understand the scope of "transmission over a link."

C. **"instructions for execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link" (claim 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Governed by 35 U.S.C. § 112(f) |
| | **Function:** execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link |
| | Indefinite under 35 U.S.C. § 112(b); |
| | **Structure:** none disclosed. |

ZTE argues that this term is subject to §112(f) because the term "instructions" is a "nonce word that recites no structure ***by itself***." Resp. at 19.

***First***, ZTE errs by focusing merely on the word "instructions" in isolation "***by itself***." *See id.* In examining an analogous claim term, the Eastern District of Texas found that the term "instructions to" was not indefinite. *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 643 (E.D. Tex. 2019), *reconsideration denied*, 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019). In particular, the *Cypress* court reasoned that "whether recitation of 'instruction' performing a function is governed by § 112, ¶ 6 depends on whether the stated objectives and operation of the code connote sufficiently definite structure." *Id.* (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" was sufficiently definite structure because the claim recited the "objectives and operations" of the circuit)). In focusing on these "objectives and operations," the *Cypress* court highlighted the recitation in the claims of structure that "execute the recited instructions" (a processor in the *Cypress* case) and also noted that the "claims further describe the structural interactions among" various structural components. *Cypress*, 382 F. Supp. 3d at 643.

Based on these objectives and operations, the *Cypress* court held that "a POSITA would understand that the claim language recites sufficient structure and that the term 'instructions' is not used as a generic term or black box recitations of structure or abstractions." *Id.* (citing *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007-09 (Fed. Cir. 2018) ("[A] person of ordinary skill in the art could reasonably discern from the claim language that the words 'program,'...and 'user interface code,'...are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.")). Notably, the *Cypress* court correctly looked at the claim language holistically. *Id.* ("the ***claim language*** recites sufficient structure"). [8]

Here, similar to the processor that executed instructions in *Cypress*, claim 14 recites a "traffic flow control system" that executes the instructions. '232 patent at claim 14 (7:35-36) ("instructions for execution by a traffic flow control system"). The "traffic flow control system 10" is depicted in the specification as structure. *Id.* at 3:7-29; FIG. 1. Also, just as in *Cypress*, claim 14 recites other structural components including a "link," "non-transitory machine-readable storage medium," and a "controller." *Id.* at 7:37-42. These structural components are also described and depicted as structural. '232 patent at 3:7-29; FIG. 1. Thus, the correct approach is to look at these "objectives and operations" of the claim as a whole, and not, as ZTE proposes, to focus solely on whether "instructions" connotes sufficient structure "by itself." *See* Resp. at 19.

---

[8] ZTE also cites to *Cypress* suggesting that the district court found § 112(f) applicable to a different term ("code for") merely based on that term itself. Resp. at 21 (citing *Cypress*, 382 F. Supp. 3d at 614) (ZTE describing in the parenthetical "finding that recitations of 'code for' is governed by 35 U.S.C. § 112(f)"). But contrary to ZTE's simplistic description of the holding, the *Cypress* court's holding did not depend on that phrase "code for" itself. *Cypress*, 382 F. Supp. 3d at 615. Rather, the *Cypress* court applied the very same "objectives and operations" analysis as it did with "instructions to." *Id.* Under that analysis, the court found that the "surrounding claim language [of the claims with 'code for'] does not identify any specific structure of 'code' to perform the recited function*." Id.* This is not the case here as described above. Moreover, specification in *Cypress* expressly equated "code for" and "means for" by using the same functional language as in the claims except that the specification recites "means for" performing those functions, whereas the claims recite "code for" doing so. *Id.* Here, the specification lacks any reference to "means." Thus, the *Cypress* court's analysis of "code for" is inapposite, while its analysis of "instructions to" is on point for the reasons noted above.

The *Cypress* court's analysis comports with this Court's precedent. Br. at 19 (citing *Crossroads Sys., (Texas), Inc. v. Chaparral Network Storage, Inc.*, No. A 00 CA 217 SS, 2000 WL 35731852, at *4 4 (W.D. Tex. July 27, 2000)). In particular, this Court in *Crossroads* opined:

> From a review of the ***claim language as a whole***, the Court agrees with the plaintiff that the term "supervisor unit" is not purely functional, but refers instead to a device that can perform the tasks specifically listed in the claim language of the ′972 patent. Specifically, claims 1, 2 and 10 of the ′972 patent describe a "supervisor unit" that can: (1) maintain and map the configuration of networked Fibre Channel and SCSI storage devices; (2) include in this configuration an allocation of specific storage space to specific Fibre Channel devices; (3) implement access controls for the SCSI storage devices; and (4) process data in the storage router's buffer to allow an exchange between the Fibre Channel and SCSI storage devices.

*Crossroads*, No. A 00 CA 217 SS, 2000 WL 35731852, at *4.

ZTE attempts to distinguish *Crossroads* by omitting the "claim language as a whole" language from the opinion and the Court's discussion of structure in the surrounding claim language. ZTE's reliance on its "by itself" approach conflicts with the "claim language as a whole" analysis of *Crossroads*.

**Second**, ZTE attempts to distinguish prior precedent finding that the recitation of "code" or "program" to not invoke § 112(f). ZTE attempts to do so by distinguishing the term at issue here ( "instructions") from "code" or "program." Resp. at 19. ZTE, however, provides no evidence for its purported distinction and instead resorts to attorney argument. *See id.* ZTE's attempt to distinguish between "instructions" and "code/program" also reveals the flaw in its myopic, "by itself" approach of focusing only on the word "instructions" in isolation without an understanding of the "objectives and operations" of the claim as a whole. *See Cypress*, 382 F. Supp. 3d at 643. Accordingly, even if ZTE had proved that a POSITA would appreciate a meaningful difference between "instructions" (on the one hand) and "code" or "program" (on the other hand), that difference does not in and of itself resolve whether § 112 (f) applies to the facts here.

**Third**, ZTE fails to adequately distinguish *Zeroclick, LLC v. Apple Inc.*, 891 F. 3d 1003, 1007–09, (Fed. Cir. 2018), which WSOU cited in its Opening Brief. Br. at 19-20. ZTE argues that *Zeroclick* is distinguishable because the Federal Circuit determined that POSITA could

"reasonably discern from the claim language that the words 'program,' and 'user interface code,' were used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the invention." Br. at 20 (citing *Zeroclick,*891 F.3d at 1008). But while ZTE accurately quoted the *Zeroclick* opinion, it provides no evidence to support a finding that POSITA would "reasonably discern from the claim language" that "instructions for" language is merely a black box or generic term. And as noted above, under the correct "objectives and operations" holistic approach, a POSITA would view "instructions for" as structure given the surrounding claim language and specification.

*Third*, ZTE failed to address that claim 14 is recited as a *Beauregard* claim, which has long been recognized as a patentable form of claiming a computer program, where the claim is directed to an article of manufacture—*e.g.*, a computer-readable medium on which are encoded, typically, instructions for carrying out a process. *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995). ZTE does not dispute WSOU's assertion that *Beauregard* claims have long been recognized. *Compare* Br. at 19-20 *with* Resp. at 19-21. Nor does ZTE address this Court's holding that "computer readable medium" was an article of manufacture and not a means-plus-function limitation. *Compare* Br. at 19-20 (citing *Collaborative Agreements, LLC v. Adobe Systems Inc.,* Case No. A-14-CV-356-LY, 2015 WL 2250391, *12–*14 (W.D. Tex. 2015), *denying reconsideration after transfer*, Case No. 15-cv-03853-EMC, 2015 WL 7753293, *4-*8 (N.D. Cal. Dec. 2, 2015)) *with* Resp. at 19-21.  As this Court noted, "systems claims [which] are essentially a method carried out on an apparatus by a computer-implemented software code contained on a storage device[,] as in the code-segment claims[,] [employ] a standard claiming technique that has been repeatedly upheld as definite." *Collaborative Agreements,* Case No. A-14-CV-356-LY, 2015 WL 2250391, at *12–*14 (collecting cases). ZTE has remained silent and utterly failed to address this point.

15

Dated: April 23, 2021                Respectfully submitted,

By:     */s/ Ryan Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeffrey Huang
Brian M. Koide
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on April 23, 2021.

*/s/ Ryan Loveless*
Ryan Loveless

16