**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT**, | C.A. NO. 6:20-cv-00489-ADA |
| | C.A. NO. 6:20-cv-00492-ADA |
| *Plaintiff,* | C.A. NO. 6:20-cv-00495-ADA |
| v. | |
| **ZTE CORPORATION, ZTE (USA) INC. AND ZTE (TX), INC.**, | |
| *Defendants.* | |

**<u>DEFENDANTS' SUR-REPLY AND SUPPLEMENTAL REPLY CLAIM
CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.      U.S. PATENT NO. 7,487,240 (CASE NO. 6:20-CV-00489-ADA) ...................................1

    A.      Disputed Term 1: "verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects" (Claims 1, 6, and 13) ......................................1

    B.      Disputed Term 2: "a given containment hierarchy for the network" (Claims 1, 6, and 13) ...............................................................................................4

    C.      Disputed Term 5: "the connectivity verification result(s) associated with the alarm" (Claims 1, 6, and 13) ...............................................................................5

II.     U.S. PATENT NO. 8,147,071 (CASE NO. 6:20-CV-00492-ADA) ...................................7

    A.      Disputed Term 1: "the processor" / "wherein the processor is configured to" (Claims 1, 9, 13, and 14) ............................................................................7

    B.      Disputed Term 2: "movement signaling" / "receiv[ing] movement signaling associated with the movement of the projector" / "corresponding movement signaling" (Claims 1, 9, 13, and 14) ......................................9

    C.      Disputed Term 3: "discriminate" / "discriminate a movement criterion" / "the processor is configured to discriminate a movement criterion" (Claims 1, 13, and 14) ........................................................................................10

    D.      Disputed Term 4: "provide associated image data signaling to project associated image data" (Claims 1, 13, and 14) ......................................................11

    E.      Disputed Term 5: "a movement sensor configured to detect movement of the apparatus and/or a projector" (Claim 9).......................................................12

III.    U.S. PATENT NO. 9,258,232 (CASE NO. 6:20-CV-00495-ADA) ................................13

    A.      Disputed Term 1: "instructions for execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link" (Claim 14) ........................................................................13

        1.      "Flow Control"................................................................................................13

        2.      Means-plus-function Term.......................................................................14

    B.      Disputed Term 2: "transmission over a link" (Claims 1 & 14) ...........................17

    C.      Disputed Term 5: "instructions for receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion" (Claim 14)............................................17

IV.     CONCLUSION............................................................................................................18

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*CloudofChange, LLC v. NCR Corporation*,
   Civ. No. 6:19-cv-00513-ADA, 2020 WL 4004810 (W.D. Tex. Jul. 15, 2020) .....................14

*Collaborative Agreements, LLC v. Adobe Systems Inc.,*
   Case No. A-14-CV-356-LY, 2015 WL 2250391 (W.D. Tex. May 12, 2015) .......................16

*Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*,
   382 F. Supp. 3d 586 (E.D. Tex. May 10, 2019)..........................................................5, 6

*International Test Solutions, Inc. v. Mipox International Corp.*,
   2017 WL 1367975 at *5-6 (N.D. Cal. Apr. 10, 2017) .............................................7, 9, 10, 16

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ............................................................................ 7-8

*Halliburton Energy Services, Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) .....................................................................1, 4, 12

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)..................................................................................3, 6, 7

*O2 Micro Int'l Ltd. v. NCR Corporation, v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351, 1362 (Fed. Cir. 2008) ......................................................................14

*Saso Golf, Inc. v. Nike*,
   843 Fed.Appx. 291 (Fed. Cir. 2021) .................................................................1, 4, 12

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339, 1350 (Fed. Cir. 2015).....................................................................16

I.      **U.S. Patent No. 7,487,240 (Case No. 6:20-cv-00489-ADA)**

A.      **Disputed Term 1: "verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects" (Claims 1, 6, and 13)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112 (b) |

WSOU's substantive arguments are that (1) "verifying" and "connectivity" are commonly understood and thus cannot be indefinite; and (2) the specification provides sufficient support. WSOU is incorrect.

First, with respect to alleged commonly used "verifying" and "connectivity," WSOU Reply Brief, pp. 1-2, individual words may certainly have individual meanings but still be indefinite when used in phrases in a claim. *See, e.g., Saso Golf, Inc. v. Nike*, 843 Fed.Appx. 291, 292-93, 298 (Fed. Cir. 2021) (affirming a district court's judgment that a claim was indefinite because the court could not be reasonably certain what was being claimed, although individual claim terms "toe" and "heel," specifically of a golf club, had identifiable individual meanings); *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008) (affirming a district court that found the claim term "fragile gel" to be indefinite). Thus, WSOU's argument here is utterly at odds with Federal Circuit precedent. Merely because "connectivity" and "verification" have individual meanings, the terms cannot be automatically considered definite or to convey the scope of the claims. Instead, like the above-cited cases, the test is whether a PHOSITA can reasonably ascertain the meaning of the claims.

Here, the claim does not recite limitations that explain what it means for "verifying connectivity" to occur, and a PHOSITA would not be able to ascertain whether "verifying connectivity" was occurring or not, particular in relation to "at least Layer-2 and Layer-3 objects."

1

Second, WSOU points to the specification as somehow resolving this issue, but the specification fails to recite what it means to verify connectivity of Layer-2 and Layer-3 objects. WSOU cites the '240 patent, 9:36-44, however, nothing in this disclosure describes how the connectivity of Layer-2 and Layer-3 objects is verified—only that Layer-2 and Layer-3 objects are highlighted. Nothing in the specification links "connectivity verification application 502" to verifying connectivity of Layer-2 and Layer-3 objects, and WSOU's claim that this portion of this specification is "in the context of verifying connectivity in the network relating to Layer-2 and Layer-3 objects," WSOU Reply Brief, p. 2, does not and cannot remedy this deficiency. WSOU's post-hoc rationalization cannot be allowed to convey the requisite definiteness.

WSOU next resorts to citing to portions of the specification where Layer-2 and Layer-3 objects are not recited. WSOU Reply Brief, p. 2. WSOU implies that Layer-2 and Layer-3 objects might be "specified source and destination managed entities," "routers and IP interfaces," and "selected managed entities and unmanaged entities," citing '240 patent, 10:66-11:42, 15:25-42, but nothing in the specification bears this out. WSOU also does not explain which of these nouns apply as descriptions to "Layer-2 objects" or "Layer-3 objects." Even if WSOU had, it would be error to read the various limitations implied here by WSOU into the claims. WSOU further argues that connectivity verification may be accomplished by ping and traceroute commands. WSOU Reply Brief, p. 2. But the specification discussion of ping and traceroute commands does not and cannot explain the meaning of the claimed "verifying connectivity in the network relating to at least Layer-2 and Layer-3 objects" because ping and traceroute commands are never discussed in the specification in relation to "Layer-2" and "Layer-3" objects. *See generally*, '240 patent. At one point, the specification states that "verifying connectivity in a service provider IP/MPLS communication network in a network manage-ment context using an NMS system is addressed

2

by: performing directed ping and traceroute connectivity verification tests between specified source and destination managed entities." '240 patent, 15:25-31. WSOU cites to this section as support in the specification for definiteness, but it is plainly evidence that Layer-2 and Layer-3 objects are not recited here. For example, a PHOSITA would not have been able to ascertain whether the claimed "at least Layer-2 and Layer-3 objects" are either or both "source and destination managed entities." Additionally, a number of limitations from the above-cited portion and in the portions cited by WSOU for support would need to be included in the claims for the claim to be understood by a PHOSITA, and the need to read and link multiple elements into the claims−that are not linked in the specification−provides ample support for a finding of indefiniteness.

WSOU's remaining arguments are not relevant to the substantive issues raised by ZTE. WSOU appeals to the Court that ZTE cites the incorrect standard for this analysis. As is plainly evident, ZTE only cites to *Nautilus*, and not some pre-*Nautilus* standard. And, WSOU's complaint is immaterial because the Supreme Court explicitly stated that "<u>imprecision just short of that rendering a claim 'insolubly ambiguous'</u> would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone-of-uncertainty.'" *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (emphasis added). Satisfying the "insolubly ambiguous" standard that is demonstrably and logically more rigorous than the new standard in *Nautilus* would clearly satisfy the *Nautilus* standard for indefiniteness. Moreover, ambiguity that cannot be resolved inherently means that a PHOSITA would not be able to reasonably determine the scope of the claim. *Id.* at 901.

B.      **Disputed Term 2: "a given containment hierarchy for the network" (Claims 1, 6, and 13)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112 (b) |

WSOU argues that because one word in a claim has a meaning that the claim cannot be indefinite. WSOU Reply Brief, p. 3. This is demonstrably incorrect.

Individual words may certainly have individual meanings but still be indefinite when used in phrases in a claim. *See, e.g., Saso Golf, Inc. v. Nike*, 843 Fed.Appx. 291, 292-93, 298 (Fed. Cir. 2021); *see also Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008). Thus, WSOU's argument here is utterly at odds with Federal Circuit precedent. Merely because "given" has a commonly understood meaning does not confer definiteness for the full term "a given *containment hierarchy for the network*." Instead, like the above-cited cases, the test is whether a PHOSITA can reasonably ascertain the meaning of the claims. Here, the claim does not recite limitations that explain why the "containment hierarchy" is "given," under any definition or understanding of the word "given."

WSOU provides a conclusory analysis that the claims and specification explain what this *full* limitation means, WSOU Reply Brief, p. 4, but fails to identify anything in the claims or the specification that provides such an explanation. This is because nothing in the claims and specification contains any discussion of what a "given containment hierarchy" might be.

WSOU states that the prosecution history does not define the term, WSOU Reply Brief, p.. 4, and ZTE agrees. As ZTE explains in its brief, stating that the "given containment hierarchy" defines "Layer 2 and Layer 3 objects" does nothing to explain the meaning of "given containment hierarchy." Furthermore, the limitation that "given containment hierarchy defines Layer 2 and Layer 3 objects" is not recited in the claims, and it is not discussed anywhere in the specification.

WSOU avoids any explanation of this statement in the prosecution history, and ZTE agrees that the applicant's statement cannot be relied on for definiteness. Without any reasonably ascertainable meaning of what "a given containment hierarchy for the network" is, and without any relevant discussion or recitations in the claims, specification or prosecution history, this claim term is indefinite.

### C.    Disputed Term 5[1]: "the connectivity verification result(s) associated with the alarm" (Claims 1, 6, and 13)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

WSOU's sole substantive argument is that a PHOSITA would have understood with reasonable certainty that "the phrase 'associated with the alarm' is linked to [] other elements" of claim 1. WSOU Supp. Brief, pp. 1-3. However, WSOU's post-hoc rationale is unsupported by the claims and the specification. The claims fail to indicate when "connectivity verification results" may be "associated with the alarm" or when they are not. WSOU is unable to point to anything in the claims and specification that resolves this ambiguity. WSOU highlights further portions of claim 1 only to claim that the blue highlighted portions, *see* WSOU Supp. Brief, p. 2, "makes the scope clear to a PHOSITA with reasonable certainty." This is not true, and WSOU fails to provide further explanation. None of the blue highlighted portions, *see* WSOU Supp. Brief, p. 2, provide what it means to be associated to any "alarm." Further, the claim does not state whether connectivity verification results become "associated with the alarm" once a number of results are collected, once the specified connectivity verification threshold is reached, or when some other criterion is met.

---

[1] This supplemental term, and the respective allowed briefing pages, is included herein from ZTE Defendants' respective "reply" brief. The numbering "5" acknowledges the first 4 terms as briefed in ZTE Defendants' Opening Brief (of which Terms 3-4 were withdrawn).

WSOU further cites to a portion of the specification that WSOU admits does not contain the claim language. WSOU Supp. Brief, p. 3 (citing '240 patent, 9:20-30). Nothing in this citation states when "connectivity verification thresholds" are "associated with the alarm." At best, the citation portion recites both "results" and "the alarm" in the same sentence, however, this does nothing to explain which results are selected for propagation or what causes results to become "associated with the alarm," as claimed. Further, by citing to this paragraph, it is unclear if WSOU attempts to read in portions of this sentence relating to "connectivity verification thresholds," but it would be error to do so.

WSOU's remaining arguments are not relevant to the substantive issues raised by ZTE.

First, WSOU appeals to the Court that ZTE cites the incorrect standard for this analysis. As is plainly evident, ZTE only cites to *Nautilus*, and not some pre-Nautilus standard. And, WSOU's complaint is at best immaterial because the Supreme Court explicitly stated that "imprecision just short of that rendering a claim 'insolubly ambiguous' would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone-of-uncertainty.'" *Nautilus*, 572 U.S. at 809 (emphasis added). Satisfying the "insolubly ambiguous" standard that is demonstrably and logically more rigorous than the new standard in *Nautilus* would clearly satisfy the *Nautilus* standard for indefiniteness. Moreover, ambiguity that cannot be resolved inherently means that a PHOSITA would not be able to reasonably determine the scope of the claim. *Id.* at 901.

Second, WSOU argues that the prosecution history contains support for the claim limitation, WSOU Supp. Brief, pp. 2-3, but it does not. WSOU fails to cite a portion of the specification that recites "verifying connectivity in the network for at least Layer-2 and Layer-3 objects." Like WSOU's flawed analysis of the specification, this claim term is simply not recited

in cited portion. To the extent WSOU asks the Court to incorporate some portions of the cited paragraph into the claims, WSOU does not explain what those portions are, and this need to incorporate whole paragraphs and entirely new elements and limitations into the claims for them to be understood demonstrates the indefiniteness issues with the claim terms.

## II.    U.S. Patent No. 8,147,071 (Case No. 6:20-cv-00492-ADA)[2]

### A.    Disputed Term 1: "the processor" / "wherein the processor is configured to" (Claims 1, 9, 13, and 14)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

First, ZTE does not waive its indefinite arguments with respect to claim 1, despite WSOU's claim to the contrary. WSOU Reply Brief, p. 5. Claims may still be indefinite for additional reasons beyond lack of antecedent basis.

Second, WSOU argues that the claim term "the processor is configured to" sufficiently describes the legal boundaries of the patent grant, WSOU Reply Brief, p. 6, but it does not. A PHOSITA would not have been able to ascertain whether a processor is configured in any particular way because it is impossible for a PHOSITA to determine with reasonable certainty what a configured processor is. Nothing in the claims or the specification provide meaning for this claim limitation in the form it is presented in the claims. When nothing provides a "clearly defined

---

[2] As a preliminary matter, WSOU generally alleges that Defendants' filing of Inter Partes Review (IPR) petitions at U.S. Patent and Trademark Office (USPTO) indicate that the claims are not indefinite. This is incorrect. First, a claim is not definite merely because a party "can ascribe *some* meaning to a patent's claims." *Nautilus*, 572 U.S. at 911 (emphasis in original). Second, the PTAB has no jurisdiction to consider indefiniteness arguments in IPR proceedings. *See* 35 U.S.C. § 311(b). All pending IPR petitions expressly reserve the right to advance this very indefiniteness position in the litigation, so WSOU's complaints of inconsistency is meritless. And for each disputed issue, the IPR petitions adopt WSOU's proposed constructions and do not weigh in on whether the respective terms are indefinite.

embodiment of what the skilled artisan would understand[,] [s]uch ambiguity falls within the innovation-discouraging zone of uncertainty against which [the Supreme Court] warned." *International Test Solutions, Inc. v. Mipox International Corp.*, 2017 WL 1367975 at *5-6 (N.D. Cal. Apr. 10, 2017) (citing *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1374 (Fed. Cir. 2014)) (stating that "[b]readth stemming from ambiguity is not [permitted].").

Here, WSOU cites to portions of the specification, WSOU Reply Brief, p. 6, that include a number of limitations that are not included in the claims (i.e., "to be *connected to the movement sensor 3* and to receive movement signaling *that is provided by the movement sensor 3*" and "*to be connected to the projector 2* and to provide image data signalling *as an output signal*"). WSOU argues that the claims are conferred meaning when read in light of the specification, but several important limitations present in the specification are not present in the claims, and thus the scope of the claims is unhinged from the specification. Accordingly, a PHOSITA would be unable to ascertain the scope and meaning of the claims.

Third, WSOU argues that claim 13 does not have an antecedent basis issue because any missing terms that exist from claim 1 may simply be read into claim 13. WSOU Reply Brief, p. 6. For instance, WSOU states that the processor provides image data signalling to a projector. But, WSOU does not state what receives "movement signaling associated with movement of the projector" as required by claim 13. This demonstrates the issue with attempting to read limitations into the claims because, even though WSOU is motivated to do so, WSOU does not resolve the ambiguity created by antecedent basis issue. Simply switching "the" to "a" in this circumstance does not resolve the ambiguity. In this case, claim 13 fails to recite what does the "receiving" and what does the "providing." Accordingly, the antecedent basis issue may not simply be resolved and claim 13 is indefinite.

**B.**     **Disputed Term 2: "movement signaling" / "receiv[ing] movement signaling associated with the movement of the projector" / "corresponding movement signaling" (Claims 1, 9, 13, and 14)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

WSOU argues that the claim term sufficiently describes the legal boundaries of the patent grant, WSOU Reply Brief, p. 7, but it does not. A PHOSITA would not have been able to ascertain whether movement signaling was being received or not because it is impossible for a PHOSITA to determine with reasonable certainty what movement signaling is in the context of the patent. Nothing in the claims or the specification provide meaning for this claim limitation in the form it is presented in the claims. When nothing provides a "clearly defined embodiment of what the skilled artisan would understand[,] [s]uch ambiguity falls within the innovation-discouraging zone of uncertainty against which [the Supreme Court] warned." *International Test Solutions, Inc.*, 2017 WL 1367975 at *5-6 (stating that "[b]readth stemming from ambiguity is not [permitted].").

Here, WSOU provides no support for meaning of the claimed "movement signaling" in the specification, and there is none. WSOU claims that an applicant need not sweep in every embodiment into the claims, but "movement signaling" is not explained in the specification in relation to *any* embodiment. There is nothing to separate the claimed "movement signaling" from electronic signals and smoke signals. And, the subject claims are ambiguous as to its outer bounds because the claimed "movement signaling" is not sufficiently connected to other claim limitations (i.e., "associated," "corresponding"). Accordingly, a PHOSITA would be unable to ascertain the meaning of the claims.

C.      **Disputed Term 3: "discriminate" / "discriminate a movement criterion" / "the processor is configured to discriminate a movement criterion" (Claims 1, 13, and 14)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

WSOU points to detection as an analog to "discriminate," WSOU Reply Brief, p. 8, but the claims and specification provide no link that connects the term "discriminate" to the term "detect." WSOU's position is nonsensical as well. If "discriminate" in claim 1 is meant to mean "detect," then the claims would effectively be re-written to claim that "the processor is configured to detect a movement criterion." Nothing in the claims or specification indicate that the processor detects a movement criterion. Each recitation in the specification reflects detection of the movement criterion by the movement sensor, not the processor. Indeed, WSOU's formulation is problematic because dependent claims 9 and 10 already recite a "movement sensor is configured to *detect* movement." (emphasis added). Thus, WSOU's argument that "discriminate" means "detect" cannot be correct.

WSOU also argues that the claim term "discriminate" sufficiently describes the legal boundaries of the patent grant, WSOU Reply Brief, p. 8, but it does not. A PHOSITA would not have been able to ascertain whether discriminate was being conducted or not because it is impossible for a PHOSITA to determine with reasonable certainty what it means to "discriminate" is in the context of the patent. Nothing in the claims or the specification provide meaning for this claim limitation in the form it is presented in the claims. When nothing provides a "clearly defined embodiment of what the skilled artisan would understand[,] [s]uch ambiguity falls within the innovation-discouraging zone of uncertainty against which [the Supreme Court] warned." *International Test Solutions*, 2017 WL 1367975 at *5-6 (stating that "[b]readth stemming from ambiguity is not [permitted]."). Here, WSOU provides no support for the claimed "discriminate"

in the specification outside its flawed construction of "detect" as discussed above, and there is none. The claims are wholly divorced from the specification. And, the subject claims are ambiguous as to its outer bounds. Accordingly, a PHOSITA would be unable to ascertain the meaning of the claims and the claims are indefinite.

### D. Disputed Term 4: "provide associated image data signaling to project associated image data" (Claims 1, 13, and 14)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

WSOU explicitly supplies a definition for this term—beyond its proposed "plain & ordinary meaning"—but this definition is not apparent from reading the claim and further demonstrates why this limitation is ambiguous and thus indefinite. WSOU states "that the 'associated image data signaling' and the 'associated image data' are associated with the movement." WSOU Reply Brief, p. 9. If this were true, this meaning should have been included in WSOU's construction, but fatally, it is not.

Nevertheless, WSOU's newly proposed construction is not evident from the claim. Claims 1, 13, and 14, recite several limitations preceding the recitation of "associated image data signaling" and "associated image data," including "the processor," "the projector," "received movement signaling," "indication of one or more movement criterion of the projector," and "a movement criterion." WSOU presents yet another option of being associated with "movement" that the reader must somehow assume applies from the prior paragraph. This claim is ambiguous because it is impossible for a PHOSITA to discern which of these associations is correct. As such, a PHOSITA would be unable to ascertain the meaning of the claims.

E.    **Disputed Term 5[3]: "a movement sensor configured to detect movement of the apparatus and/or a projector" (Claim 9)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112(b) |

WSOU argues that because one word in a claim has a meaning that the claim cannot be indefinite. WSOU Supp. Brief, pp. 4-5. This is demonstrably incorrect. Individual words may certainly have individual meanings but still be indefinite when used in phrases in a claim. *See, e.g., Saso Golf, Inc. v. Nike*, 843 Fed.Appx. 291, 292-93, 298 (Fed. Cir. 2021); *see also Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008). Thus, WSOU's argument here is utterly at odds with Federal Circuit precedent.  Merely because "and/or" has a commonly understood meaning does not confer definiteness. Instead, like the above-cited cases, the test is whether a PHOSITA can reasonably ascertain the scope of the claims. WSOU admits that the claim attempts to claim two different embodiments. WSOU Supp. Brief, pp. 4-5. However, the claim cannot satisfy the 35 U.S.C. § 112(b) requirement of particularly pointing out subject matter if it recites multiple distinct, exclusive embodiments.

WSOU attempts to identify sections of the specification that match up to the two exclusive embodiments, WSOU Supp. Brief, pp. 4-5, but is unsuccessful in doing so. For the first embodiment, WSOU assumes the apparatus includes the projector and "the movement sensor is mounted to the apparatus." WSOU Supp. Brief, p. 4. In doing so, WSOU reads limitations into the claims that would exclude the other embodiment. For the second embodiment, WSOU identifies a section of the specification that identifies that "the projector aspect may be a sub-aspect of the totality of the apparatus." WSOU Supp. Brief, p. 5 (citing '071 patent, 9:45-55). However, the

---

[3] This supplemental term, and the respective allowed briefing pages, is included herein from ZTE Defendants' respective "reply" brief. The numbering "5" acknowledges the first 4 terms as briefed in ZTE Defendants' Opening Brief.

projector as a "sub-aspect" has nothing to do with the subject claim limitation that recites "a movement sensor configured to detect movement of the apparatus and/or a projector." Merely because a projector may be a sub-aspect does not alleviate the issue that the specification fails to state anywhere that a movement sensor is somehow supposed to detect movement of the projector either as some sub-component of the apparatus or as a distinct and separate component of the apparatus. *See generally*, '071 patent. WSOU fails to address how the movement sensor would interact in the second embodiment altogether. This is unsurprising because the specification never discusses such an embodiment. WSOU's attempted rationalizations further illustrate the ambiguity of the subject limitation and the lack of disclosure in the specification that might resolve the ambiguity.

## III.    U.S. Patent No. 9,258,232 (Case No. 6:20-cv-00495-ADA)

### A.    Disputed Term 1: "instructions for execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link" (Claim 14)

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Governed by 35 U.S.C. § 112(f)<br><br>**Function:** execution by a traffic flow control system for performing flow control on a flow of data packets for transmission over a link<br><br>Indefinite under 35 U.S.C. § 112(b);<br><br>**Structure:** none disclosed.<br><br>Additionally, "flow control" means "regulate movement of a series of data packets" |

### 1.    "Flow Control"

WSOU's sole substantive argument is that ZTE's proposed definition for "flow control" is superfluous and baseless. WSOU Reply Brief, p. 11. On the contrary, ZTE briefed the Court as to why the data packets moving through the claimed "link" constitute <u>a series</u> of data packets, as is

supported by the '232 specification. ZTE Defendants Opening Brief, pp. 18-19. WSOU ignored this point entirely, and ZTE's point stands unrebutted that the definition of "flow control" should be defined as "regulate movement of a series of data packets." ZTE also states that a PHOSITA would have understood flow control to have ZTE's construction at the time of the invention. ZTE Defendants Opening Brief, p. 18. WSOU did not respond to this point either.

"Because the parties disagree about the scope of the term, the term requires construction by the Court." *CloudofChange, LLC v. NCR Corporation*, Civ. No. 6:19-cv-00513-ADA, 2020 WL 4004810 at *3 (W.D. Tex. Jul. 15, 2020) (citing *O2 Micro Int'l Ltd. v. NCR Corporation, v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)). In such construction disputes, this Court and every other patent Court have a long history of resolving such disputes by determining appropriate meaning of claim terms. *Id.*

### 2. Means-plus-function Term

WSOU fails to address the lack of disclosure of "instructions," a "computer-readable medium," a "processor," or any similar term in the '232 specification, as pointed out by ZTE in its opening brief—thereby confirming the lack of structure for this term. ZTE Defendants Opening Brief, p. 21. In fact, the claim only recites the bare recitation that the instructions are on a computer-readable medium. And, unlike the *Cypress* case,[4] here, the '232 specification is void of any discussion of "instructions" or similar supporting the alleged function, or means for supporting any relevant structure. The '232 patent claims and specification certainly do not describe a touchscreen, one or more processors, or any other structural element that interacts with the claimed "instructions" other than the "computer-readable storage medium" in the claims. Specifically,

---

[4] *Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*, 382 F. Supp. 3d 586 (E.D. Tex. May 10, 2019).

without some system of carrying out the claimed "instructions," the claims lack sufficient structure.

WSOU admits that "a processor" is recited in the patent discussed in the *Cypress* case, but WSOU fails to point to similar structural components relevant to the claimed "instructions" of the '232 patent. The claims and specification do not recite "a processor" or any other system of carrying out or executing the claimed "instructions." WSOU clings to a bare recital by claim 14 of a "traffic flow control system," a "link," and a "controller," but these limitations are not particular to the claimed "instructions" or claim 14. *See* '232 patent, claims 1, 8. And, of course, nothing in the specification discusses sufficient structure to tie a "traffic flow control system," a "link," or a "controller" to the claimed instructions—limitations that were determined necessary in the *Cypress* case. *Cypress*, 382 F. Supp. 3d at 655-56; *see id.*, 643, 649, 660, 661, 665.

WSOU's concentration on an "objectives and operations" analysis is incomplete, and WSOU fails to identify any objectives and operations relevant to the claimed "instructions."[5] WSOU Reply Brief, p. 12. For instance, for claim 14 of the '232 patent, no limitation exists for "a processor." WSOU states that claim 14 states the "instructions for execution by a traffic flow control system," but nothing in claim 14 or the specification describes the traffic flow control system as including a processer, having the capability to execute code, or any similar limitation. Thus, even under the "objectives and operations" standard, claim 14 fails to recite enough structure

---

[5] Tellingly, each time "objections and operations" is applied in *Cypress*, it is because the claims in *Cypress* were determined to describe "the objectives and operations of the processor programmed to execute the recited 'code configured to.' In other words, the claim language provides a description of how the processor is specifically programmed to operate." *Cypress*, 382 F. Supp. 3d at 655-56; *see id.*, 643, 649, 660, 661, 665. Every time this analysis is applied, specific structure is recited, and in particular specific programming by a processor. The reason for this is that the Federal Circuit's test is whether "persons skilled in the art would understand the [claim term] to connote <u>the structure needed to perform the operations</u> recited by the claim language." *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319 (Fed. Cir. 2004) (emphasis added).

because they do not claim a processor, a computer, or any other system that would execute the claimed "instructions" or the requisite specific programming. WSOU attempts to gloss over the processor and specific programming that would be necessary to implement any such claimed "instructions," but WSOU's attempt to change the method of analysis cannot hide the lack of structure recited in claim 14 and the specification.

WSOU also erroneously argues that ZTE isolates the analysis of only the claimed "instructions," and WSOU takes a single sentence from ZTE's brief to extrapolate this theory.[6] WSOU Reply Brief, p. 12. WSOU is incorrect. ZTE recites the entirety of claim 14 in its briefing, and explicitly states that "instructions for" is recited four times in claim 14, illustrating the use of "instructions" as a placeholder and demonstrating a need for means-plus-function construction because the term as used in the claim fails to denote sufficient structure. ZTE Defendant Opening Brief, pp. 20-21. WSOU does not deny or address this point.

WSOU next cites to a Federal Circuit case discussing 35 U.S.C. § 101, *Beauregard*, WSOU Reply Brief, p. 8, but the case has nothing to do with means-plus-function and the Federal Circuit certainly did not bless all versions of future claims that claim "a computer-readable medium" under 35 U.S.C. § 112. *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995).

WSOU also cites to *Collaborative Agreements*, but the court there analyzed claims incorporating "processors" that were coupled to a computer-readable medium with computer

---

[6] ZTE's statement that the term "instructions" does not denote sufficient structure follows Federal Circuit precedent that "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015). This is the case when a term, like module, "is simply a generic description for software or hardware that performs a specified function." *Id.* Accordingly, it is appropriate to consider whether the word itself is a nonce word, and "instructions" is a nonce word because it fails to denote sufficient structure.

programs—unlike claim 14 here. *Collaborative Agreements, LLC v. Adobe Systems Inc.,* Case No.

A-14-CV-356-LY, 2015 WL 2250391, *16 (W.D. Tex. May 12, 2015).

**B.      Disputed Term 2: "transmission over a link" (Claims 1 & 14)**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite under 35 U.S.C. § 112 (b) |

WSOU argues that the claim term sufficiently describes the legal boundaries of the patent

grant, WSOU Reply Brief, p. 11, but it does not. A PHOSITA would not have been able to

ascertain whether flow control was being conducted or not because it is impossible for a PHOSITA

to determine with reasonable certainty what "a link" is in the context of the patent. Nothing in the

claims or the specification provide meaning for this claim limitation in the form it is presented in

the claims. When nothing provides a "clearly defined embodiment of what the skilled artisan

would understand[,] [s]uch ambiguity falls within the innovation-discouraging zone of uncertainty

against which [the Supreme Court] warned."[7] Here, WSOU provides no support for the claimed

"link" in the specification without further limitations (i.e., "serial link"), and there is none. The

claims are wholly departed from the specification. The subject claims are ambiguous as to its

bounds because the claimed "link" is not connected to any other limitation except that it conveys

data packets.

**C.      Disputed Term 5[8]: "instructions for receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion" (Claim 14)[9]**

| WSOU's Proposed Construction | Defendants' Proposed Construction |
|---|---|
|  |  |

---

[7] *International Test Solutions,* 2017 WL 1367975 at *5-6.

[8] This supplemental term, and the respective allowed briefing pages, is included herein from ZTE Defendants' respective "reply" brief. The numbering "5" acknowledges the first 4 terms as briefed in ZTE Defendants' Opening Brief (of which Terms 3-4 were withdrawn).

[9] WSOU argues that ZTE's '071 patent IPR somehow affects this '232 patent term. WSOU Supp. Reply Br. at 8-9. This appears to be a copy-and-paste error, and WSOU is incorrect.

| Plain and ordinary meaning | Governed by 35 U.S.C. § 112(f) |
|---|---|
| | **Function:** receiving, by a controller of the traffic flow control system, a backpressure signal, wherein the back pressure signal indicates a period of congestion |
| | Indefinite under 35 U.S.C. § 112(b); |
| | **Structure:** none disclosed. |

WSOU merely copies its arguments for the first "instructions" term, disputed term 1, and fails to address the claim distinctions for this term. *See* WSOU Supp. Brief, pp. 5-8. As such, ZTE Defendants further incorporate their reply from the first "instructions" term, *see* Section III.A.2 above and the arguments raised in its opening brief. ZTE Defendants Supp. Brief, pp. 5-6.

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that the Court adopt Defendants' proposed constructions.

DATED:  May 7, 2021                              Respectfully submitted,

                                                 */s/Lionel M. Lavenue*
                                                 Lionel M. Lavenue
                                                 Virginia Bar No. 49,005
                                                 lionel.lavenue@finnegan.com
                                                 **FINNEGAN, HENDERSON, FARABOW,**
                                                 **GARRETT & DUNNER, LLP**
                                                 1875 Explorer Street, Suite 800
                                                 Reston, VA 20190
                                                 Phone:  (571) 203-2700
                                                 Fax:      (202) 408-4400

                                                 **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on May 7, 2021.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
