**PUBLIC VERSION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § | C.A. NO. 6:20-cv-00487-ADA C.A. NO. 6:20-cv-00488-ADA C.A. NO. 6:20-cv-00489-ADA |
| *Plaintiff*, | § § | C.A. NO. 6:20-cv-00490-ADA C.A. NO. 6:20-cv-00491-ADA |
| v. | § § | C.A. NO. 6:20-cv-00493-ADA C.A. NO. 6:20-cv-00494-ADA |
| ZTE CORPORATION, | § § | C.A. NO. 6:20-cv-00495-ADA C.A. NO. 6:20-cv-00496-ADA |
| *Defendant*. | § § | C.A. NO. 6:20-cv-00497-ADA |
| | § § | **JURY TRIAL DEMANDED** |
| | § § § | ████████████ |

### ZTE CORPORATION'S MOTION TO STRIKE PLAINTIFF'S FINAL INFRINGEMENT CONTENTIONS[1]

---

[1] It is noted that WSOU insisted on double briefing of these issues pertaining to WSOU's Final Infringement Contentions. ZTE Corporation followed the local procedures and requested a meeting with WSOU in good faith to resolve the underlying issues pertaining to ZTE Corporation's Motion to Strike WSOU's Final Infringement Contentions, but WSOU refused to act in accordance with the local rules. ZTE Corporation, on Monday, October 17, 2022, first requested a meeting by Wednesday October 19, 2022. WSOU failed to respond to that meeting request. ZTE Corporation then again requested on Tuesday, October 18, 2022, for a meeting, where upon WSOU insisted on delaying the meeting until Friday, October 21, 2022 (the filing date of this motion). In the meantime, however, WSOU unilaterally filed on Thursday, October 20, 2022, its own Motion for Leave to Amend its Final Infringement Contentions *without meeting or offering to meet* with ZTE Corporation before filing. WSOU further improperly and erroneously stated that it met and conferred with ZTE Corporation before filing its Thursday motion (Dkt. 264)—WSOU never even attempted to meet with ZTE Corporation first (instead it insisted on delaying ZTE Corporation's own motion until after it filed its own motion). The respective parties' motions both pertain to WSOU's Final Infringement Contentions, however, the issues here differ from WSOU's motion in that this motion addresses the substance and deficiencies of WSOU's Final Infringement Contentions in-whole warranting striking them in whole, as well as addresses WSOU's dilatory tactics and improper attempts to expand the number of Named Devices in these cases **from approximately 75 devices to over 475 devices**.

i

PUBLIC VERSION

## TABLE OF CONTENTS

I.      INTRODUCTION: THE INFRINGEMENT CONTENTIONS ARE DEFICIENT .......... 1

II.     BACKGROUND: WSOU HAD NEARLY TWO YEARS TO CURE
        DEFICIENCIES WITHIN ITS INFRINGEMENT CONTENTIONS, YET
        FAILED ................................................................................................................. 3

        A.      Procedural Background ........................................................................ 3

        B.      Overview of WSOU's Deficient Final Infringement Contentions ........................ 4

III.    LEGAL STANDARD ........................................................................................ 6

IV.     ARGUMENT: THE COURT SHOULD STRIKE WSOU'S INFRINGEMENT
        CONTENTIONS ................................................................................................ 7

        A.      WSOU Failed to Fairly Disclose its Infringement Theories and Should be
                Precluded from Accusing Any Products That Have Not Been Charted. ............... 7

        B.      WSOU's Infringement Contentions Under the Doctrine of Equivalents
                Should be Struck with Prejudice ........................................................... 10

        C.      WSOU's Infringement Contentions Related to Means-Plus-Function
                Limitations Should be Struck with Prejudice ......................................... 11

        D.      WSOU Should Not be Granted Leave to Amend ................................. 12

        E.      This Court Previously Rejected WSOU's Infringement Contentions With
                Similar Deficiencies, and Should Also Reject WSOU's Infringement
                Contentions Here ................................................................................. 14

V.      CONCLUSION ............................................................................................... 15

PUBLIC VERSION

## TABLE OF AUTHORITIES

Cases

*Mobile Telecomms. Techs., LLC v. Blackberry Corp.*, No. 3:12-CV-1652, 2016 WL 2907735, at *1 (N.D. Tex. May 17, 2016) ................................................................. 6

*Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007). ...................................................................................................... 7

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009) ........ 7, 14

*Silicon Labs. Inc. v. Cresta Tech. Corp.*, Case No. 5:14-cv-03227, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015) .................................................................................... 8

*Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) ....................................................................... 9

*Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) ......................................................................................... 10

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ........................................................................................................... 11

*Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1548 n. 8 (Fed. Cir. 1994) ......................................... 12

*WSOU Investments LLC v. OnePlus Technology (Shenzhen) Co., Ltd.*, 2022 WL 174517 (W.D. Tex. 2022) ......................................................................................... 14, 15

**PUBLIC VERSION**

**TABLE OF EXHIBITS**

| Exhibit | Document |
|---|---|
| 1 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-487, Complaint, Dkt. 1 |
| 2 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-488, Complaint, Dkt. 1 |
| 3 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-489, Complaint, Dkt. 1 |
| 4 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-490, Complaint, Dkt. 1 |
| 5 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-491, Complaint, Dkt. 1 |
| 6 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-492, Complaint, Dkt. 1 |
| 7 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-493, Complaint, Dkt. 1 |
| 8 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-494, Complaint, Dkt. 1 |
| 9 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-495, Complaint, Dkt. 1 |
| 10 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-496, Complaint, Dkt. 1 |
| 11 | *WSOU Investments, LLC. d/b/a Brazos Licensing and Development v. ZTE Corporation*, 6:20-cv-497, Complaint, Dkt. 1 |
| 12 | Exhibit C: Brazos Proposed Preliminary List - Reasonably Similar Products as of April 28, 2022 |
| 13 | May 23, 2022 Letter from ZTE to Brazos RE Infringement Contentions |
| 14 | May 12, 2022 Discovery Hearing Transcript |
| 15 | Brazos' First Amended Final Infringement Contentions -487 |
| 16 | Brazos' First Amended Final Infringement Contentions -488 |
| 17 | Brazos' First Amended Final Infringement Contentions -489 |
| 18 | Brazos' First Amended Final Infringement Contentions -490 |
| 19 | Brazos' First Amended Final Infringement Contentions -491 |
| 20 | Brazos' First Amended Final Infringement Contentions -493 |
| 21 | Brazos' First Amended Final Infringement Contentions -494 |
| 22 | Brazos' First Amended Final Infringement Contentions -495 |
| 23 | Brazos' First Amended Final Infringement Contentions -496 |
| 24 | Brazos' First Amended Final Infringement Contentions -497 |

**PUBLIC VERSION**

| 25 | Detailed Table of WSOU's Newly Added Accused Devices |
|----|---|
| 26 | Brazos' Final Infringement Contentions -487 |
| 27 | Brazos' Final Infringement Contentions -488 |
| 28 | Brazos' Final Infringement Contentions -489 |
| 29 | Brazos' Final Infringement Contentions -490 |
| 30 | Brazos' Final Infringement Contentions -491 |
| 31 | Brazos' Final Infringement Contentions -493 |
| 32 | Brazos' Final Infringement Contentions -494 |
| 33 | Brazos' Final Infringement Contentions -495 |
| 34 | Brazos' Final Infringement Contentions -496 |
| 35 | Brazos' Final Infringement Contentions -497 |

**PUBLIC VERSION**

## I.      INTRODUCTION: THE INFRINGEMENT CONTENTIONS ARE DEFICIENT

Defendant ZTE Corporation ("ZTE") respectfully moves to strike Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development's ("WSOU") Final Infringement Contentions (served July 17, 2021), and any amendments thereafter, as untimely and deficient. WSOU's Final Infringement Contentions do not provide fair notice as to how and why WSOU contends all of the accused products infringe the asserted products. Furthermore, WSOU fails to provide contentions for all of the accused products. In sum, WSOU's ***Final*** Infringement Contentions continue to fail to satisfy the Court's requirements—warranting striking in full.

In all but one case, each of WSOU's infringement claim charts accuse multiple products. But rather than providing a claim chart in each case for each of the multiple accused products, WSOU instead maps only a single product. These charts remain deficient, however, because they fail to fully explain within the *lone* claim chart, how the individual mapped product is representative of the entire set—***of more than 70 products***.

In lieu of providing infringement contentions for all of the accused products, WSOU instead purports that a single *lone* infringement chart for a single accused product is sufficient in each respective case—ten total charts for ten cases with more than seventy total named devices. WSOU contends that each of the single charts is representative of all of the accused products, without any further analysis of how each single charted product is representative of the uncharted products ("Uncharted Accused Products"). WSOU's only explanation for use of the lone "representative chart" is that the accused products allegedly comply with similar standards and/or run similar operating systems—many of which are third-party Android OS.

WSOU failed to provide further reasoning for its "representative chart." When confronted of the deficiencies within WSOU's Final Infringement Contentions, WSOU doubled down, by further relying on alleged similarities across industry standards and stating that the "representative

1

**PUBLIC VERSION**

charts" are reasonable because "[e]ach of these [accused products] . . . follow[s] the [respective] standard." Discovery Hr'g. Tr. May 12, 2022, 48:18-20. But WSOU further failed to connect each of the Uncharted Accused Products to the representative chart beyond implementation of similar third-party operating software and alleged compliance with industry standards.

Despite the prominence of these standards (e.g., IEEE, ETSI, etc.) in its Final Infringement Contentions, WSOU's counsel however refuses to confirm whether its patents are essential to the cited standards—underscoring WSOU's improper reliance on the standards in defining "representative charting." Nor do WSOU's Final Infringement Contentions provide any further clarification of the standard essential status of the asserted patents. If WSOU's infringement contentions are based on a claim that the asserted patents are standard essential, WSOU must candidly disclose that this is the basis of its infringement theory, and those asserted patents would be subject to FRAND licensing obligations. If this is not its infringement theory, then WSOU's charted accused product lacks any plausible basis to be representative of the uncharted products, leaving ZTE without notice as to how the uncharted products allegedly infringe.

And with respect to the *lone* mapped claim charts, each of WSOU's Final Infringement Contentions remain deficient with mere empty boilerplate language failing to map every limitation to the claim elements. Not every claim element is mapped to a named device component—and in many instances the contentions improperly rely on the doctrine of equivalents as a crutch—neither properly connecting the infringement theories to the claim elements nor connecting the device components to infringing equivalents. WSOU not only fails to properly explain its infringement theories for the *lone* mapped claim chart for each claim element, but further fails to identify basis under the doctrine of equivalents. The *lone* mapped claim charts are further deficient for failing to

PUBLIC VERSION

identify the necessary claimed function and means within the accused product for performing the claimed function for the means-plus-function limitations.

The requested relief—striking WSOU's Final Infringement Contentions in whole—is entirely reasonable given that nearly two full years passed since WSOU first submitted its preliminary contentions, and even after WSOU untimely served its Final Infringement Contentions after the July 16, 2021 (requiring leave of court thereafter), the Final Infringement Contentions remain deficient. Even with over one year of discovery, easy access to the accused products and extensive source code inspection, WSOU still failed to prepare sufficient contentions.

WSOU's failure to provide compliant infringement contentions for each claim element—even for *lone* charted "representative products"—warrants striking the Final Infringement Contentions for all ten cases and for all Accused Products (both charted and uncharted) to rectify prejudice to ZTE. Although redundant, ZTE further requests that the Court strike all contentions pertaining to the Uncharted Accused Products (and remove those devices from the cases entirely). Furthermore (and again redundant), since WSOU has not disclosed a basis to seek relief for alleged infringement under the doctrine of equivalents, ZTE respectfully requests that the Court strike WSOU's boilerplate contentions for all ten cases and preclude WSOU from pursuing these undisclosed theories. Also redundant, ZTE requests that the Court strike WSOU's theories encapsulating means-plus-function limitations for failure to identify the means and functions.

## II.    BACKGROUND: WSOU HAD NEARLY TWO YEARS TO CURE DEFICIENCIES WITHIN ITS INFRINGEMENT CONTENTIONS, YET FAILED

### A.    Procedural Background

WSOU sued ZTE in this Court on June 3, 2020, alleging infringement of eleven different patents, in eleven different cases, with each case concerning only one of the asserted patents. *See*

Exs. 1-11. One case, concerning U.S. Pat. No. 8,147,071, was dismissed on October 3, 2022. *See*

*WSOU Investments LLC v. ZTE Corporation et al.*, 6:20-cv-00494-ADA-DTG, Dkt. 230.

On November 3, 2020, WSOU served ZTE with its preliminary infringement contentions

alleging infringement by approximately forty devices. The Court set July 16, 2021, as the due date

for serving Final Infringement Contentions without leave,[2] but WSOU nevertheless untimely

served its Final Infringement Contentions on July 17, 2021 without leave. The Final contentions

remain substantially the same as WSOU's preliminary infringement contentions.

Nearly a year after serving its "final" contentions, on April 28, 2022, WSOU requested

discovery over thirty-four additional products (effectively doubling the number of named devices).

*See* Ex. 12. Shortly thereafter, on May 12th, the Court held a discovery hearing in which ZTE

reiterated the deficiencies of WSOU's Final Infringement Contentions stated herein, and then

further echoed those deficiencies in a letter dated May 23rd. *See* Exs. 13, 14, p. 35-37; *see also*

*WSOU Investments LLC v. OnePlus Tech.*, 6:20-cv-00952, Dkt. 77 (W.D. Tex. Jan. 18, 2022).

After nearly two full years of WSOU presenting deficient infringement contentions, and repeatedly

being made aware of the deficiencies within the contentions, ZTE now moves for WSOU's Final

Infringement Contentions to be struck.

**B.     Overview of WSOU's Deficient Final Infringement Contentions**

As stated above, WSOU served its Final Infringement Contentions on July 17, 2021, and

they contained all of the same deficiencies as WSOU's preliminary infringement contentions. In

nine of the remaining ten cases, WSOU charted a *lone* "representative" accused product for nearly

seventy uncharted products. Additionally, even the *lone* "representative" charts with plagued with

---

[2] As provided by the First Amended Scheduling Order and the Standing Order Governing Proceedings (OGP) 4.1, after July 16, 2021, "leave of Court is required for any amendment to Infringement o [*sic*] Invalidity contentions." Dkt. 45. WSOU has not sought leave of Court, nor has the Court granted such a request.

PUBLIC VERSION

further deficiencies and failures to map every claim element, failures to describe Doctrine of Equivalent theories, and failures to identify proper means-plus-function components. These deficiencies were never resolved. Nonetheless, WSOU proceeded to add further accused products on April 28, 2022, and seeks to add more.[3] The below table depicts the large disparity between the few products WSOU charted (four for ten cases) and the many products WSOU failed to chart:

| Charted Products | Uncharted Accused Products (*see also* Ex. 25) | | |
|---|---|---|---|
| | Preliminary Infringement Contentions / Complaints | Final Infringement Contentions | April 28, 2022 Additions |
| ZTE ZXR10 5900 Series<br>ZTE NetNumen U31<br>ZTE Axon 10 Pro<br>ZTE ZXR10 5960 Series | ZXR10 5916E<br>5928E-FI<br>5952E<br>ZTE ZXSDR<br>BS8800<br>ZXSDR<br>BS8900A<br>ZXSDR 8900B<br>ME3630<br>ZM8620<br>MF279<br>Blade 10<br>Blade 10 Prime<br>Blade A7 Prime<br>Blade Vantage 2<br>Gabb Z1<br>Visible R2<br>ZFIVE G LTE<br>Avid 4<br>Overture 3<br>Blade X<br>Maven 3<br>Blade Z<br>Blade X Max<br>AT&T Velocity 2<br>MF923<br>Z915 | Axon 30 Ultra | NetNumen N31<br>NetNumen M31<br>ZTE MF971<br>ZTE Falcon Z917<br>ZTE ZMAX Connect MF928<br>ZTE Nubia Z17 miniS<br>ZTE Nubia Z17 Lite<br>Blaze Z Max<br>Blade Force<br>ZTE Nubia M2<br>ZTE Nubia M2 Play<br>ZTE Nubia Z17<br>ZTE Max XL<br>ZTE Nubia Z17 mini<br>ZTE Grand X4<br>ZTE Nubia Z17s<br>ZXR10 5960X Series Switch<br>ZXR10 5250-H Series<br>ZTE Z291DL<br>ZTE MF64<br>ZTE MF920U<br>ZTE MF920V<br>ZTE MF980<br>ZTE MF79<br>Avid 589<br>Axon 30 5G<br>Blade X1 5G<br>Blade 11 Prime |

---

[3] WSOU improperly seeks to add, ***yet again***, almost 400 new products (first 40 products, then 74 after serving its Final Infringement Contentions, now over 375). *See* Exs. 12, 15-24.

**PUBLIC VERSION**

| | | |
|---|---|---|
| | Z700A<br>ZXWE A5224<br>ZXHN F2867S<br>Axon M<br>Axon 7<br>Qualcomm<br>Snapdragon X12<br>LTE Modem<br>Qualcomm<br>Snapdragon X16<br>LTE Modem<br>Qualcomm<br>Snapdragon X20<br>LTE Modem<br>Qualcomm<br>Snapdragon X24<br>LTE Modem<br>ZXR10 5960-<br>32DL<br>5960-52TM<br>ZXR10 5960-H<br>Series<br>ZXR10 5960-<br>64DL<br>ZXSDR BS8700<br>BS8906<br>ZTE SyncUP<br>DRIVE<br>ZXR10 5250<br>series<br>ZXR10 2900<br>series<br>Macro Base<br>Station | | Blade A3 Prime<br>Axon 20 5G<br>Blade A3Y<br>Quest 5<br>Avid 559 |

Now, more than year after serving its Final Infringement Contentions, WSOU seeks to further add nearly 400 new products *without* leave from the Court.

## III.    LEGAL STANDARD

Proper infringement contentions provide a defendant with notice of plaintiff's particular infringement theories beyond that which is provided by the language of the patent claims themselves. *Mobile Telecomms. Techs., LLC v. Blackberry Corp.*, No. 3:12-CV-1652, 2016 WL

**PUBLIC VERSION**

2907735, at *1 (N.D. Tex. May 17, 2016). Judge Albright's Standing Order Governing Proceedings regarding Patent Cases requires that the "plaintiff shall serve [a] preliminary infringement contentions chart setting forth where in the accused product(s) each element of the asserted claim(s) are found." OGP Version 4.1 (April 14, 2022); Dkt No. 193; *see also OnePlus Tech.*, 6:20-cv-00952, Dkt. 77, p. 2.

"Deciding whether infringement contentions should be struck is similar to deciding whether evidence should be excluded for discovery violations" and is "akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007). "The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009). In particular, Courts consider "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Id.*

## IV.     ARGUMENT: THE COURT SHOULD STRIKE WSOU'S INFRINGEMENT CONTENTIONS

### A.     WSOU Failed to Fairly Disclose its Infringement Theories and Should be Precluded from Accusing Any Products That Have Not Been Charted.

WSOU's Final Infringement Contentions are deficient because the conclusory analysis linking the Uncharted Accused Products to the accused product within the "representative chart" does not provide ZTE fair notice of WSOU's particular infringement theories nor does it comply with the Court's Local Patent Rules.

WSOU's Final Infringement Contentions ***fail to chart 70 (of the 74) named devices***. This shortcoming is highlighted by WSOU's vague and conclusory statements that the charted products

**PUBLIC VERSION**

somehow represent, or are analogous to, the Uncharted Accused Products. Each Final Infringement Contention contains the phrasing, "[t]he contentions below are explained in the context of the exemplary product, [name of single charted device]. Analogous contentions apply in general to [names of Uncharted Accused Products]." These conclusory allegations are improper. *See, e.g.*, *Silicon Labs. Inc. v. Cresta Tech. Corp.*, Case No. 5:14-cv-03227, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015) ("[I]n order to rely on a claim that one accused product represents another… a patentee must do more than state as much. A patentee must state **how**.") (emphasis in original).

WSOU's Final Infringement Contentions overwhelmingly rely on attenuated and strained connections between the named devices and the four *lone* "representative" charts. First, WSOU alleges that the devices are similar because several named devices run third-party Android 10 operating systems—but WSOU fails to address significant differences in those systems implemented on the specific named devices (e.g., in many instances, the "similar" devices are unable to run the same versions of the operating software).[4] Second, WSOU alleges that the devices are similar because they (as alleged by WSOU) must comply with industry standards, such as cellular standards (IEEE standard 802.11ac standard for Wireless Communication).[5] WSOU fails, however, to explain the similarities across these products beyond mere handwaves

---

[4] *See, e.g.* Ex. 29 (-490 chart accusing "mobile devices such as ZTE AXON 10 Pro, which can run over the Android 10 operating system"), Ex. 27 (-488 chart accusing "ZTE Instrumentalities… that support LTE telecommunication system"), Ex. 30 (-491 chart accusing "mobile devices… implementing IEEE standard 802.11ac"), Ex. 32 (-494 accusing devices that "implement the IEE 802.1Q (Media Access Control (MAC) Bridges and Virtual Bridged Local Area Networks) standard for detection and control of a congestion condition in the network.").

[5] *See e.g.,* Ex. 32 ("[c]ertain contentions are described herein in the example context of ZTE ZXR10 5960 series switches (*e.g.*, including but not limited to ZXR10 5960, ZXR105960-H). However, the relevant ZTE Instrumentalities at least encompass all ZTE products which have similar functionality. Certain ZTE Instrumentalities implement the IEEE 802.1Q (Media Access Control (MAC) Bridges and Virtual Bridged Local Area Networks) standard for detection and control of a congestion condition in the network.").

**PUBLIC VERSION**

contending that any product complying with these standards or operating systems infringe the asserted patents. The infringement contentions contain no substantive analysis of how the charted products are "representative" of the Uncharted Accused Products and remain deficient for this reason.

In light of WSOU's dependence on standards in lieu of charting the *lone* "representative" product to the claim elements, WSOU indirectly contends that the asserted patents are essential to, or necessary to implement, the cited portions of the standards. Yet, WSOU refuses to identify the asserted patents as standard essential, and during the May 12, 2022 discovery hearing, WSOU's counsel stated, "in this case, none of the patents… have been declared standard essential." Ex. 13, p. 38, lines 11-13. Thus, if WSOU's analysis is true, that none of the asserted patents are standard essential, then WSOU's Final Infringement Contentions fail to reasonably inform ZTE as to (1) how the charted accused product is "representative" of the Uncharted Accused Products and (2) how the Uncharted Accused Products allegedly infringe the asserted patents. *See Silicon Labs. Inc.*, 2015 WL 846679, at *2. For example, in the -491 case, WSOU purports to show that its single infringement chart for a single product is representative of all the other Uncharted Accused Products by merely listing basic properties of the accused products, such as the following:

**PUBLIC VERSION**

| Claims | Example Features of ZTE Instrumentalities |
|---|---|
| | ZTE offers wireless handsets and networking products in the US. ZTE provides mobile devices (including but not limited to ZTE Axon 10 Pro) and Mobile Hotspots & Broadband Routers (including but not limited to AT&T Velocity® 2) implementing IEEE standard 802.11ac. |
| | ZTE's accused products implement the IEEE 802.11ac standard for Wireless Communication (Wi-Fi) as shown in FIG. 2 and FIG. 1. |

Citation 53: ZTE Axon 10 Pro implementing 802.11ac standard

| | |
|---|---|
| Battery | 4000mAh (typical), Qualcomm®Quick Charge™ 4+, wireless charging v3.0 |
| Memory | 8GB or 12GB RAM + 256GB ROM<br>Expandable Storage (up to 2 TB via Micro SD memory card*) |
| Display | 6.47" quad curved 3D AMOLED screen, FHD+(2340x1080) |
| Features | In-display fingerprint, Dual super linear speaker, DTS:X® Ultra , Hi-Fi, Face ID, NFC, GPS/A-GPS /Galileo, 802.11a/b/g/n/ac, 2.4 GHz/5 GHz, BT 5.0 |
| OS | Android P (upgrading to Android 10 by end of calendar 2019) |

FIG. 53

Source: https://www.zteusa.com/axon10pro, Page 4, Last Accessed on Feb 28, 2020, Exhibit A

Ex. 30 at 87. This simple recitation of high-level product specifications and various standards (*e.g.* "IEEE 802.11ac") fails to explain how any one charted product is representative of the Uncharted Accused Products.

### B.    WSOU's Infringement Contentions Under the Doctrine of Equivalents Should be Struck with Prejudice

The Court should also strike WSOU's boilerplate and conclusory allegations that the accused products infringe the asserted patents under the doctrine of equivalents. *See Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (explaining that courts "have been clear that doctrine of equivalents theories must be laid out in detail in a party's infringement contentions and that the type of boilerplate allegations contained in [Plaintiff's] infringement contentions are insufficient"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) ("[i]t is improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion."). An example of WSOU's allegations with respect to the doctrine of equivalents is below:

**PUBLIC VERSION**

United States Patent No. 8,451,839
Charted Against ZTE Instrumentalities
Claims 1-12

| Claims | Example Features of ZTE Instrumentalities |
|---|---|
| 1. A method, in an access device of the communication network, for managing route information, comprising: | To the extent the preamble is deemed limiting, ZTE Instrumentalities practice a method in an access device of the communication network, for managing route information.<br><br>Any claim element not literally present in ZTE Instrumentalities, as set forth below, is found in those Instrumentalities under the doctrine of equivalents because any differences between such claim element and ZTE Instrumentalities are insubstantial and/or ZTE Instrumentalities perform substantially the same function, in substantially the same way to achieve substantially the same result as the corresponding claim element(s).<br><br>See, e.g., example features of ZTE Instrumentalities emphasized below.<br><br>ZTE Instrumentalities support at least all the Layer 2 features.  Among other features, ZTE Instrumentalities provide an aggregation switch used in various applications, including, for example, Metro area networks and IP RAN.  In addition, ZTE Instrumentalities provide ways to manage route information such as IP address, MAC address, etc. |

Ex. 26 at 3 (annotated); *see also* Exs. 27, 29-32, 34-35 (including the same, or similar, language).

WSOU fails to state with specificity how the accused products allegedly infringe the asserted claims under the doctrine of equivalents and are insufficient to put ZTE on notice of WSOU's theories under this doctrine. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.").

Since WSOU's Final Infringement Contentions remain deficient, the Court should strike WSOU's boilerplate contentions alleging infringement under the doctrine of equivalents.

## C.     WSOU's Infringement Contentions Related to Means-Plus-Function Limitations Should be Struck with Prejudice

Various claims of the asserted patents include elements in "mean-plus-function" format, and WSOU fails to identify how and where those limitations are met in the accused products. The Federal Circuit has held that "in order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function

**PUBLIC VERSION**

using the structure disclosed in the specification or an equivalent structure." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1548 n. 8 (Fed. Cir. 1994). WSOU's Final Infringement Contentions fail to identify when the accused products perform the claimed function, and further fail to identify the structure from the patent specification and where it is found in the accused products. For example, the Court's claim construction order of March 3, 2022, confirms that claim 6 of the '534 patent includes means-plus-function language, but WSOU's Final Infringement Contentions fail to identify any particular means or any particular function of an accused device that meet such a claim limitation. An example of WSOU's allegations with respect to means-plus-function limitations is below:

| means for selecting a set of sub-carriers from the plurality of sub-carriers on which user data is to be communicated from a transmitter to a receiver, | ZTE Instrumentalities provide means for selecting a set of sub-carriers from the plurality of sub-carriers on which user data is to be communicated from a transmitter to a receiver, said selecting based at least in part on at least one of sub-carrier quality levels and a threshold indication associated with sub-carriers, said quality levels communicated from the receiver to the transmitter and said threshold indication communicated from the transmitter to the receiver. |
|---|---|

Ex. 34 at 44.

As shown above, WSOU provides no analysis in its allegation that the accused products infringe claims of the asserted patents containing means-plus-function language. Indeed, WSOU fails to identify any means or any particular function of the accused products that meet the asserted patents' limitations. In view of these deficiencies, the Court should strike WSOU's boilerplate contentions alleging infringement of claims containing means-plus-function limitations.

**D.     WSOU Should Not be Granted Leave to Amend**

WSOU had nearly two years to cure any deficiencies in its infringement contentions, and thus should not be granted leave to amend. WSOU first submitted its preliminary infringement contentions on November 3, 2020. WSOU then untimely served without leave its Final Infringement Contentions on July 17, 2021. Since that time, WSOU has conducted over *six months* of source code review and ZTE completed production of all technical documents. Despite ample

12

**PUBLIC VERSION**

time to correct its contentions (and even seek leave to do so)—ZTE notified WSOU, in a letter dated May 23, 2022, that WSOU's infringement contentions were deficient for the reasons listed herein (Ex. 13)—WSOU still acted without haste and never sought leave to amend.

Nevertheless, WSOU failed to provide charts for all of the accused products, failed to explain how the allegations in the "representative" charts are actually representative of any of the Uncharted Accused Products, failed to identify its basis for its claims of infringement under the Doctrine of Equivalents, and failed to identify how the accused products infringe claims of the asserted patents containing means-plus-function language.

In a further egregious shortcoming, WSOU attempts to amend its Final Infringement Contentions to add nearly 400 new accused devices that were not mentioned in WSOU's previous infringement contentions. *See* Exs. 15-25. The addition of hundreds of new accused devices, only weeks from the close of fact discovery, is improper. *See Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 1911388, *5 (E.D. Tex. 2020)(refusing to allow the patentee to amend its contentions to include hundreds of newly accused products that the patentee had allegedly identified with "catch-all" general descriptive phrase in its original contentions). In *Sol IP*, the Plaintiff used a "catch-all" phrase in its early infringement contentions by identifying only a subset of accused products, and then followed that with all other devices "configured to communicate in accordance with LTE Release 8 (or later)." *Id.* at *3. WSOU used similar language in its preliminary infringement contentions (*see* Ex. 27 (-488 chart accusing "ZTE Instrumentalities… that support LTE telecommunication system")) and similarly seeks to add hundreds of new accused devices. Therefore, WSOU's Amended Final Infringement Contentions should similarly be stricken.

Given WSOU's lack of diligence the Court should not grant leave for WSOU to amend its infringement contentions. WSOU is entitled only to pursue a case on the products for which it has

**PUBLIC VERSION**

provided proper infringement contentions—which it failed to do for both the *four* charted products and the *seventy* uncharted products. Furthermore, WSOU will not be unfairly prejudiced by its own decision to avoid investigating and properly identifying additional accused devices. *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *4 (E.D. Tex. Jan. 12, 2009)("the relative importance of including these products in its [infringement contentions] should have generated a commensurate amount of diligence.").

**E.      This Court Previously Rejected WSOU's Infringement Contentions With Similar Deficiencies, and Should Also Reject WSOU's Infringement Contentions Here**

This same Court held that this same plaintiff submitted insufficient infringement contentions wherein the contentions similarly contained a single charted product that was allegedly representative of other accused products. *See WSOU Investments LLC v. OnePlus Technology (Shenzhen) Co., Ltd.*, 2022 WL 174517 at *2 (W.D. Tex. 2022) (addressing *preliminary* contentions). In those five cases, regarding five separate patents, WSOU charted one product for each case and listed several other accused products and—without any further analysis—simply highlighted words or phrases WSOU deemed to be "representative." *See id.* Upon finding this approach unsatisfactory, the Court stated, "in an effort to provide fair notice and fulsome, albeit repetitive responses in WSOU's eyes, WSOU must more fully explain why the charted product is representative of each individual uncharted product or chart each product individually." *Id.* The Court further declared that WSOU must confirm whether the asserted patents are standard essential because "[t]he Court is not persuaded that this is an issue reserved for the experts." *Id.*

In the case at hand, WSOU presents ***Final*** Infringement Contentions that were constructed in the same deficient fashion. WSOU's Final Infringement Contentions provide no full explanation of why the charted product is representative of each Uncharted Accused Product, nor does WSOU chart each product individually. ZTE was not, however, given the benefit of having the

**PUBLIC VERSION**

"representative" information highlighted for each Uncharted Accused Product, as was done for OnePlus—for *preliminary* contention charting no less. Thus, ZTE was provided even less notice of how the single charted product is "representative" of the Uncharted Accused Products.

One further parallel between the *OnePlus* case and the case at hand is the deficiencies within WSOU's allegations of infringement under the Doctrine of Equivalents. In *OnePlus*, WSOU's infringement contentions also used "boilerplate and conclusory allegations that the accused products infringe the asserted patents under the doctrine of equivalents." Defendant OnePlus Technology (Shenzhen) Co., Ltd.'s Motion to Strike Plaintiffs' Amended Infringement Contentions at 14, *WSOU Investments LLC v. OnePlus Technology (Shenzhen) Co., Ltd.*, 6:20-cv-00952-ADA (W.D. Tex. 2021), 2022 WL 174517, Dkt. 62. In ruling that WSOU should provide final infringement contentions without these deficiencies, the Court noted it "agrees with OnePlus's characterizations regarding the… doctrine of equivalents claims." *Id.* at *3. In this case, WSOU already served its both its preliminary infringement contentions *and* Final Infringement Contentions, but the allegations of infringement under the doctrine of equivalents remain deficient.

Considering the similar issues that arise in both our case, and that of OnePlus, the Court should find WSOU's Final Infringement Contentions equally deficient.

## V.    CONCLUSION

For the above reasons, the Uncharted Accused Products and doctrine of equivalents allegations should be struck from WSOU's Final Infringement Contentions with prejudice.

DATED:  October 21, 2022                    Respectfully submitted,


                                            */s/ Lionel M. Lavenue*
                                            Lionel M. Lavenue
                                            Virginia Bar No. 49,005
                                            lionel.lavenue@finnegan.com

**PUBLIC VERSION**

**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
   Phone:  (571) 203-2700
   Fax:      (202) 408-4400

Attorney for Defendant,
ZTE Corporation

PUBLIC VERSION

## **CERTIFICATE OF CONFERENCE**

The parties complied with Local Rule CV-7(i). On October 21, 2022, Defendant's counsel conferred with Plaintiff's counsel via telephone, and on Plaintiff's counsel confirmed that Plaintiff opposes the relief sought in this motion.

*/s/Lionel M. Lavenue*

Lionel M. Lavenue

17

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on October 21, 2022.

*/s/Lionel M. Lavenue*

Lionel M. Lavenue
